FILED

2017 DEC 29 AM 9: 14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NUVASIVE, INC., )
)
    Plaintiff, )
)
v. ) Civil Case No. 6:17-cv-2206-Orl-18 GJK
)
ABSOLUTE MEDICAL, LLC, GREG ) INJUNCTIVE RELIEF SOUGHT
SOUFLERIS, and DAVE HAWLEY, )
)
    Defendants, )
_____)

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

For its Complaint against Absolute Medical, LLC ("Absolute Medical"), Greg Soufleris ("Soufleris"), and Dave Hawley ("Hawley"), NuVasive, Inc. ("NuVasive"), through its attorneys, alleges that:

### NATURE OF ACTION

1. Absolute Medical, an exclusive distributor of NuVasive's products, Soufleris, the owner of that distributorship, and Hawley, a sales representative of the distributorship, are unfairly competing with NuVasive.

2. Absolute Medical is breaching numerous contractual obligations imposed on it by, without limitation:

    a. attempting to terminate the contracts between it and NuVasive without cause;

    b. failing to maintain sufficient personnel to service its sales territory;

    c. failing to comply with its reasonable non-compete and non-solicit obligations; and

    d. failing to ensure that its former sales representatives comply with their reasonable non-compete and non-solicit obligations.

3. Soufleris—who is actively seeking to convert NuVasive's business to one of its direct competitors—is personally liable for Absolute Medical's contractual breaches and his own wrongful acts.

4. Hawley is selling products manufactured by one of NuVasive's competitors to surgeons he serviced on NuVasive's behalf, and, upon information and belief, stole two custom instruments NuVasive created for one of those surgeon customers and mailed them to that competitor so that they could be copied.

5. NuVasive asks this Court to: (1) issue preliminary and permanent injunctions which require Absolute Medical to comply with the contractual obligations imposed on it by the agreement with NuVasive; (2) award it damages against Soufleris and Hawley; and (3) transfer its claims for damages against Absolute Medical to binding arbitration in San Diego, California.

## THE PARTIES

6. NuVasive is a citizen of Delaware and California. It is incorporated under the laws of Delaware, and maintains its principal place of business in San Diego, California.

7. Absolute Medical—a single-member Florida Limited Liability Company—is a citizen of Florida, with its principal place of business in Heathrow, Florida.

8. The relationship between NuVasive and Absolute Medical is governed by the January 1, 2017 Exclusive Sales Representative Agreement (the "Agreement") as amended by the July 1, 2017 Territory Transition Agreement (the "Transition Agreement").

9. Soufleris is Absolute Medical's president and sole member. He is a citizen of the State of Florida who resides in Heathrow, Florida. Upon information and belief, Soufleris exercises complete control and dominion over Absolute Medical and has transferred funds out of

2

Absolute Medical's accounts into other businesses and entities that he controls so that, among other reasons, Absolute Medical's creditors cannot collect on any claims or judgments against it.

10. Hawley is a sales representative for Absolute Medical. He is a citizen of the State of Florida who, upon information and belief, resides in Orlando, Florida.

### JURISDICTION, VENUE, AND GOVERNING LAW

11. This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. Venue for NuVasive's request for equitable relief is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 as: (a) Absolute Medical resides in this District; and (b) a substantial part of the events or omissions giving rise to the claim occurred in this District.

13. Paragraph 12.01 of the Agreement and paragraph 13 of the Transition Agreement provide that they "shall be governed by and construed in accordance with the laws of the State of Delaware, without giving any effect to the choice of law principles thereunder."

14. Paragraph 12.02 of the Agreement and paragraph 13 of the Transition Agreement require NuVasive and Absolute Medical to submit all disputes to binding arbitration in San Diego, California, other than requests for injunctive or other equitable relief which may proceed pending arbitration. Neither the Agreement nor the Transition Agreement requires NuVasive to submit its claims against Soufleris and Hawley to mediation.

### ALLEGATIONS RELATING TO ALL COUNTS

A. **NuVasive's Business.**

15. NuVasive is an innovative, market-leading, medical device company focused on the design, development, and marketing of products for the surgical treatment of spine disorders.

16. NuVasive markets its surgical products through its exclusive sales force which consists of directly-employed personnel and exclusive sales agents. NuVasive invests substantial funds into providing this sales force with extraordinary, specialized, comprehensive, and industry-leading training. This training supplies NuVasive's sales force with a deep understanding of NuVasive's products, methodology, trade secrets, and other valuable confidential or proprietary information.

17. NuVasive invests significant time, money, and resources into its sales personnel so that they are able to favorably represent the company and create goodwill with potential and existing NuVasive customers. This goodwill, arising from the substantial customer relationships developed between NuVasive's sales personnel and its customers, belongs to NuVasive as it is the product of NuVasive's significant investment.

**B.   Absolute Medical's Contractual Obligations to NuVasive.**

18. Absolute Medical became an exclusive distributor of NuVasive's products on January 1, 2013. On January 1, 2017, after many months of negotiations, Absolute Medical and NuVasive entered into the Agreement, which, among other things, required Absolute Medical to exclusively distribute NuVasive's products for five years.

19. To assist in distributing NuVasive's products, Absolute Medical, pursuant to Section 5.03 of the Agreement, hired a staff of sales representatives ("Representative Affiliates") to assist in promoting NuVasive's products in its sales territory.

20. Section 5.04 of the Agreement requires Absolute Medical to "promptly advise NuVasive of . . . any changes in [Absolute Medical's] status, organization, personnel, and similar matters . . ."

21. Like all NuVasive exclusive distributors, Absolute Medical (and Absolute Medical's Representative Affiliates) receives NuVasive's extraordinary, industry-leading training, has access to and knowledge of NuVasive's trade secrets and other proprietary information, and is the face of NuVasive to customers within its sales territory. Accordingly, to protect its legitimate business interests, NuVasive required that Absolute Medical agree to certain reasonable confidentiality, non-competition, and non-solicitation obligations as a condition of NuVasive allowing Absolute Medical to sell its products.

22. Section 5.09(a) of the Agreement requires Absolute Medical to: (a) identify all products and services that it and its Representative Affiliates promote; and (b) update that list of products and services as needed. It provides:

> Representative has identified in **Exhibit G** all products and services for which Representative or Representative Affiliates (directly or indirectly) act as a sales representative, agent, employee, or similar position. Representative shall update **Exhibit G** so that it is complete and accurate at all times and Representative agrees that failure to update **Exhibit G** shall constitute a material breach of the Agreement and may result in NuVasive exercising its rights under Section 9.03.

23. Section 5.09(c) of the Agreement imposes reasonable non-competition and non-solicitation obligations on Absolute Medical. It provides:

> During the Term and for a period of twelve (12) months thereafter, Representative and Representative Affiliates shall not (i) represent, promote, sell, solicit, or otherwise commercialize (directly or indirectly) any products or services that are, in NuVasive's reasonable judgment, competitive with any of NuVasive's products or services (including the Products) without the prior written consent of NuVasive, (ii) solicit, encourage, or induce, or cause to be solicited, encouraged or induced (directly or indirectly) any Restricted Persons within the Territory, to terminate or adversely modify any business relationship with NuVasive, or not to proceed with, or enter into, any business relationship with NuVasive, nor otherwise interfere with any business relationship between NuVasive, and any Restricted Persons within the Territory, or (iii) solicit or offer to work (directly or indirectly) or hire any of NuVasive's employees, agents or representatives. The twelve (12) month period during which the restrictions of this Section are applicable after the Term shall toll for any period of time in which Representative is not in compliance herewith.

24. Section 5.09(e) of the Agreement requires Absolute Medical to ensure that its Representative Affiliates enter into non-competition and non-solicitation agreements. It provides:

> Representative (i) represents, warrants and covenants that each Representative Affiliate engaged by it as of the Effective Date or any time thereafter during the Term, will have executed an agreement in form and substance sufficient to contractually obligate such person or entity to comply with the restrictions contained in this Section 5.09 prior to performing any services for the benefit of NuVasive, or Promoting the Products or receiving any information regarding the Products (a "**Compliance Agreement**"), (ii) shall cause each Compliance Agreement to name NuVasive as an intended third party beneficiary with full right to directly enforce provisions necessary to comply with this Section 5.09, and (iii) will vigorously enforce the restrictions contained in this Section 5.09 and each Compliance Agreement at its own cost (and in the event Representative fails to adequately enforce such restrictions, NuVasive may do so at Representative's cost). Representative shall provide NuVasive a copy of each Compliance Agreement with respect to each Representative Affiliate immediately upon such person or entity becoming a Representative Affiliate. Each Compliance Agreement shall require all sales representatives to comply with the terms of Section 5.08 and Section 5.09 hereof. Representative shall be liable to NuVasive for any breaches by the Representative Affiliate of the Compliance Agreement.

25. The restrictive covenants described in the preceding two paragraphs are reasonable because: (a) their temporal restrictions are limited to the term of the Agreement plus the following twelve months after that term concludes; and (b) their geographic restrictions are limited to Absolute Medical's NuVasive sales territory.

26. Section 8.01 of the Agreement imposes confidentiality obligations on Absolute Medical. It provides:

> Non-Disclosure. Each Party shall not, except as otherwise expressly provided herein, use, disclose, disseminate or otherwise allow access to the Confidential Information of the other Party to anyone other than to employees that have a need to know such Confidential Information to implement this Agreement and who are bound by written confidentiality obligations with provisions no less stringent than those contained in this Article VIII. Each Party shall prevent unauthorized disclosure or use of the Confidential Information of the other Party. Each Party shall execute all documents and otherwise shall take all necessary steps to ensure that each be able to enforce rights hereunder pertaining to Confidential

Information. Each Party shall be responsible for any breach of this Section 8.01 by employees, contractors or agents.

27. Section 10.01 of the Agreement provides, in relevant part:

Indemnification by Representative. Representative shall indemnify, defend and hold harmless NuVasive and its present and former, direct and indirect, subsidiaries, affiliates, employees, officers, directors, stockholders, members, agents, representatives, and permitted successors and permitted assigns (each a "**NuVasive Indemnitee**") from and against...subject to Section 10.03, any Litigation Costs incurred by a NuVasive Indemnitee while investigating or conducting the defense of any Claim, in any such case, solely to the extent such Claim is directly based on or directly arises out of or from any breach by Representative of any of its representations, warranties and covenants under this Agreement...the gross negligence and willful misconduct of Representative or any Representative Affiliates...

28. Section 12.04 of the Agreement provides:

Further Assurances. On NuVasive's request, Representative shall, at its sole cost and expense, execute and deliver all such further documents and instruments, and take all such further acts, necessary to give full effect to this Agreement.

C. **Absolute Medical's Breaches of its Contractual Obligations.**

29. In a November 27, 2017 email, Soufleris notified NuVasive of Absolute Medical's intent to resign from its "partnership" with NuVasive. NuVasive attaches a copy of this email as **Exhibit A**.

30. Neither the Agreement nor the Transition Agreement allow for Absolute Medical to terminate the Agreement without cause.

31. The only grounds for Absolute Medical to terminate the Agreement are contained in Article IX of the Agreement, none of which are relevant to this case.

32. In a December 5, 2017 email, Absolute Medical's counsel stated that three Representative Affiliates—Hawley, Ryan Miller ("Miller"), and Brandon Gottstein ("Gottstein") resigned from Absolute Medical. (NuVasive attaches a copy of this email as **Exhibit B**).

7

33. At least two of the Representative Affiliates, Hawley and Miller, now serve as sales representatives for one of NuVasive's direct competitors, Alphatec Spine, Inc. ("Alphatec").

34. Hawley and Miller are soliciting business from, and performing services for, the same customers they solicited business from and performed services on NuVasive's behalf.

35. Contrary to the obligations imposed on it by Section 5.09(e) of the Agreement, Absolute Medical has taken no steps to stop Hawley and Miller from violating their contractual obligations not to solicit or service the customers they solicited or serviced on Absolute Medical's behalf. Indeed, Absolute Medical has refused to even provide NuVasive with copies of their non-compete and non-solicit agreements.

36. Upon information and belief, Absolute Medical's attorney's statement that Hawley and Miller resigned from Absolute Medical is not true.[1] In support of this allegation, NuVasive notes that on December 12, 2017, Hawley utilized his Absolute Medical email address to correspond with Alphatec about custom instruments needed to convert the business of a surgeon within his non-compete territory.

37. Soufleris has solicited business from at least two of Absolute Medical's customers on behalf of Alphatec.

38. Miller and Soufleris attended a December 6, 2017 dinner with one of Absolute Medical's surgeon-customers and asked that surgeon-customer to try Alphatec's products.

39. To date, Absolute Medical has not updated Exhibit G to the Agreement or otherwise informed NuVasive that it is working with competitive companies.

---

[1] To be clear, NuVasive does not believe that Absolute Medical's attorney made an intentional misrepresentation. Rather, it believes that Absolute Medical provided its attorney with misinformation, which its attorney then provided to NuVasive.

40. As noted in paragraph 37, on December 12, 2017, Hawley utilized his Absolute Medical email address to send a message to Alphatec regarding custom instruments needed by a surgeon to whom he (through Absolute Medical) regularly sold NuVasive products. This email:

   a. Provided Alphatec with precise descriptions of the instruments; and

   b. Upon information and belief, promised to send the custom instruments NuVasive previously made for the surgeon to Alphatec so that Alphatec could copy them.

(NuVasive attaches a copy of this email as **Exhibit C**).

### COUNT I (Breach of Contract – Injunctive Relief against Absolute Medical)

41. Plaintiff fully incorporates and realleges paragraphs 15-40 as if fully set forth herein.

42. The Agreement, including, without limitation, Sections 5.09 and 8.01, is a valid and enforceable contract.

43. The geographic and temporal restrictions contained in Section 5.09 are reasonable.

44. Even if Section 5.09 were overbroad, Delaware law permits courts to make reasonable alterations to overbroad covenants to the extent necessary to protect NuVasive's interests.

45. NuVasive fully performed all of the obligations imposed on it by the Agreement.

46. Absolute Medical has breached or intends to breach many of the obligations imposed on it by the Agreement by, without limitation:

   a. attempting to unilaterally terminate the Agreement;

   b. not enforcing Hawley's and Miller's non-compete and non-solicit obligations or, alternatively, releasing Hawley and Miller from their non-compete and non-solicit obligations without NuVasive's permission;

   c. soliciting business on Alphatec's behalf; and

   d. not updating Exhibit G to the Agreement.

9

47. There is a reasonable probability that NuVasive will prevail on the merits of this action as Absolute Medical is breaching and/or threatening to breach valid and enforceable contractual obligations.

48. NuVasive will be irreparably harmed if the Court does not require Absolute Medical to specifically perform the obligations imposed on it by the Agreement as it will, without limitation, likely lose the goodwill it developed with Absolute Medical's customers as well as sales to those customers. Additionally, if Absolute Medical does not fully perform its contractual obligations, NuVasive will find itself with insufficient sales personnel to fully service its business in Absolute Medical's sales territory.

49. No legal remedy can fully compensate NuVasive for the harm Absolute Medical's actions are causing. NuVasive bargained for a five-year relationship with Absolute Medical, and now Absolute Medical is working for one of NuVasive's competitors in the same territory it is contractually obligated to work for NuVasive.

50. The balance of equities tips in favor of issuing the requested injunction because it will not harm Absolute Medical, as Absolute Medical is contractually obligated to perform all of the tasks identified in the Agreement.

51. Issuing the requested injunction will benefit the public's interest as the public has an interest in seeing contracts enforced as written.

### COUNT II (Breach of Contract – Damages/Arbitration against Absolute Medical)

52. Plaintiff fully incorporates and realleges paragraphs 15-40 as if fully set forth herein.

53. The Agreement is a valid and enforceable contract.

54. Absolute Medical has breached or intends to breach the obligations imposed on it by the Agreement by, without limitation:

    a. attempting to unilaterally terminate the Agreement;

    b. not enforcing Hawley's and Miller's non-compete and non-solicit obligations or, alternatively, releasing Hawley and Miller from their non-compete and non-solicit obligations without NuVasive's permission; and

    c. soliciting business on Alphatec's behalf without updating Exhibit G to the Agreement.

55. NuVasive has incurred and continues to incur damages as a result of Absolute Medical's breach of its obligations under the Agreement.

56. Pursuant to 9 U.S.C. § 4, this Court should order NuVasive's breach of contract claim for damages proceed to arbitration in the manner provided for in the Agreement.

### COUNT III (Conversion against Hawley)

57. Plaintiff fully incorporates and realleges paragraphs 15-40 as if fully set forth herein.

58. Upon information and belief, Hawley shipped custom surgical instruments that NuVasive created and owned to Alphatec so that Alphatec could create substantially-identical instruments.

59. Hawley did not have the right to exercise dominion over or send the custom surgical instruments to Alphatec.

60. Hawley's conversion of NuVasive's custom surgical instruments harmed NuVasive and caused it to suffer damages.

### COUNT IV (Statutory Individual Liability against Soufleris)

61. Plaintiff fully incorporates and realleges paragraphs 15-40 and 53-56 as if fully set forth herein.

62. Absolute Medical is a Limited Liability Company formed and existing under the Florida Revised Limited Liability Company Act. Fla. Stat. §§ 605.0101, *et seq.*

63. Soufleris—as its sole managing member—owes Absolute Medical certain duties, including without limitation, fiduciary duties of loyalty and care.

64. Soufleris' actions and failures to act on behalf of Absolute Medical constitute breaches and/or failures to perform the duties he owes to Absolute Medical.

65. Soufleris' breaches and/or failures to perform were, without limitation, reckless, committed in bad faith and with malicious purposes, and constitute transactions from which Soufleris derived improper personal benefits, directly and indirectly.

66. Pursuant to the Florida Revised Limited Liability Company Act, Florida Statutes § 605.04093, Soufleris is personally liable for the monetary damages Absolute Medical owes NuVasive.

### COUNT V (Piercing the Corporate Veil against Soufleris)

67. Plaintiff fully incorporates and realleges paragraphs 15-40 and 53-56 as if fully set forth herein.

68. Soufleris dominates and exercises complete control over Absolute Medical to the extent that Absolute Medical's independence is non-existent and Soufleris is, in fact, an alter ego of Absolute Medical.

69. Soufleris—by his unfair and inequitable conduct—fraudulently and/or improperly organized and used Absolute Medical to mislead and/or defraud NuVasive in an attempt to, without limitation, evade its existing personal liability to NuVasive.

70. Soufleris' fraudulent and improper use of the corporate form is the proximate cause of the damages NuVasive has incurred and continues to incur as a result of Absolute Medical's breach of its obligations under the Agreement.

71. Accordingly, this Court should disregard the corporate form and hold Soufleris personally liable for any judgment rendered against Absolute Medical in this matter.

**COUNT VI (Florida Deceptive and Unfair Trade Practices Act against all Defendants)**

72. Plaintiff fully incorporates and realleges paragraphs 15-40 as if fully set forth herein.

73. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Annotated Statues §§ 501.201, *et seq.*, makes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce unlawful.

74. Any person aggrieved by a violation of the FDUTPA may bring a private action to obtain declaratory and injunctive relief and any person who has suffered a loss by a violation of the FDUTPA may recover damages, as well as attorney's fees and costs, on account of that loss.

75. Absolute Medical and Soufleris have violated the FDUTPA by, without limitation: (i) unfairly competing with NuVasive by soliciting business on Alphatec's behalf, and (ii) engaging in unfair and/or deceptive acts and practices by:

   a. attempting to unilaterally terminate the Agreement;

   b. not enforcing Hawley's and Miller's non-compete and non-solicit obligations or, alternatively, releasing Hawley and Miller from their non-compete and non-solicit obligations without NuVasive's permission; and

   c. soliciting business on Alphatec's behalf without updating Exhibit G to the Agreement.

76. Upon information and belief, Hawley has violated the FDUTPA by unfairly competing with NuVasive and engaging in unfair and/or deceptive acts and practices by shipping custom surgical instruments that NuVasive created and owned to Alphatec so that Alphatec could create substantially identical instruments.

77. Defendants' violations of the FDUTPA have aggrieved NuVasive and caused it to suffer damages.

### COUNT VII (Tortious Interference With Business Relationships against Soufleris)

78. Plaintiff fully incorporates and realleges paragraphs 15-40 as if fully set forth herein.

79. Business relationships exist between NuVasive and its surgeon-customers who purchase and utilize its products via its exclusive distributor Absolute Medical.

80. Soufleris possessed actual knowledge of these business relationships at the time he began soliciting business from NuVasive's surgeon-customers.

81. Soufleris' solicitation of NuVasive's surgeon customers was, and is, an intentional and unjustified interference with NuVasive's business relationship with its surgeon-customers.

82. NuVasive has incurred, and continues to incur, damages due to Soufleris' tortious interference with NuVasive's business relationship with its surgeon-customers.

### PRAYER FOR RELIEF

WHEREFORE, NuVasive respectfully requests that this Court:

A. Issue a preliminary and final injunction which requires Absolute Medical to comply with all of the contractual obligations it owes to NuVasive including, without limitation:

1. fulfilling its contractual obligations for the entire term of the Agreement;

2. providing NuVasive with copies of the current and former Representative Affiliates' Compliance Agreements; and

3. enforcing the former Representative Affiliates' Compliance Agreements or pay to NuVasive the reasonable costs (including reasonable attorney's fees) it incurs in prosecuting those actions.

B. Award NuVasive the reasonable costs, including attorney's fees, it incurs in obtaining the requested equitable relief;

C. Compel NuVasive's claim for monetary damages to binding arbitration;

D. Award any and all relief, including without limitation declaratory relief, injunctive relief, and monetary damages, including attorney's fees and costs, available to NuVasive under the FDUTPA;

E. Disregard the corporate form and hold Soufleris personally liable for NuVasive's damages pursuant to the Florida Revised Limited Liability Company Act and/or the doctrine of piercing the veil; and

F. Grant any other further and general relief it deems just and proper.

Respectfully submitted,

/s/ R. Craig Mayfield

R. Craig Mayfield (Fla. Bar No. 0429643)
cmayfield@bradley.com
Diana Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
**Bradley Arant Boult Cummings LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

*Attorneys for Plaintiff NuVasive*