**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| NUVASIVE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:17-cv-2206-Orl-41GJK |
| ) | |
| ABSOLUTE MEDICAL, LLC, GREG ) | INJUNCTIVE RELIEF SOUGHT |
| SOUFLERIS, and DAVE HAWLEY, ) | |
| ) | |
| Defendants, ) | |
| _____) | |

**PLAINTIFF NUVASIVE INC.'S MOTION AND INCORPORATED**
**MEMORANDUM OF LAW FOR PRELIMINARY INJUNCTION**

By and through its counsel of record, and pursuant to Federal Rule of Civil Procedure 65, Plaintiff, NuVasive, Inc., ("NuVasive") respectfully requests that this Court preliminarily enjoin Defendant, Absolute Medical, LLC ("Absolute Medical"), from violating the terms and conditions of its January 1, 2017 Exclusive Sales Representative Agreement (the "Agreement").

**INTRODUCTION**

The Court should order Absolute Medical to do what it is contractually obligated to do until January 1, 2022—exclusively distribute NuVasive's medical devices pursuant to the terms and conditions of their written agreement. Absolute Medical has no valid reason for not complying with its contractual obligations and will suffer no harm if required to do so; but NuVasive will be irreparably harmed if the Court allows Absolute Medical to continue to shirk its clear and unambiguous contractual obligations.

## STATEMENT OF RELEVANT FACTS

NuVasive is an innovative medical device company focused on creating implants and systems that are used to treat spine disease, and Absolute Medical is a distributor of such medical devices. The parties' relationship is governed by the Exclusive Sales Representative Agreement (the "Agreement"), as amended by the July 1, 2017 Territory Transition Agreement (the "Transition Agreement"). (Singer Dec., attached as **Exhibit 1**, at ¶ 3, Ex. A). The Agreement is "a legal and valid obligation upon the Parties and is enforceable in accordance with its terms." (*Id.* at Ex. A § 6.02). It obligates Absolute Medical to exclusively distribute NuVasive's medical devices for five years, and it cannot be terminated by Absolute Medical without cause or NuVasive's insolvency. (*Id.* at Ex. A §§ 1.01, 1.02, 5.09, 9.01, 9.02, 9.04). Additionally, the Agreement requires Absolute Medical to, without limitation:

1. hire a staff of sales representatives ("Representative Affiliates");
2. require its Representative Affiliates to adhere to reasonable non-compete obligations;
3. promptly advise NuVasive of any changes in its status, organization, personnel, etc.; and
4. keep NuVasive aware of any other products that it distributes.

(*Id.* at Ex. A §§ 5.03, 5.04, 5.09).

NuVasive fully complied with the Agreement. (*Id.* at ¶ 4). Nevertheless, on November 27, 2017, Absolute Medical's sole owner emailed NuVasive and stated Absolute Medical's intent to "resign" from its "partnership" with NuVasive. (*Id.* at Ex. B). NuVasive responded to this email by providing Absolute Medical with notice of Absolute Medical's breach of the Agreement pursuant to Section 12.03 of the Agreement. (Cardwell Dec., attached as **Exhibit**

**2**, at Ex. A).  After receiving no material response from Absolute Medical, NuVasive followed up with a December 13, 2017 demand letter which, without limitation:

1. shared NuVasive's belief that Absolute Medical's Representative Affiliates are violating their non-compete obligations;

2. stated that it appears Absolute Medical's owner is violating his non-compete obligations; and

3. requested a meeting to discuss bringing Absolute Medical into compliance with the Agreement.

(*Id.* at Ex. C).  Absolute Medical has not responded to this letter.  (*Id.* at ¶ 4).

Now, in direct violation of the Agreement, Absolute Medical, through its sole owner, Greg Soufleris, and Representative Affiliates, Steve Hawley ("Hawley") and Ryan Miller ("Miller"),[1] is selling spinal hardware manufactured by NuVasive's direct competitor, Alphatec Spine, Inc. ("Alphatec") to at least three surgeons to whom it previously sold—and remains contractually obligated to sell—NuVasive's products. (Bragulla Dec., attached as **Exhibit 3**, at ¶¶ 4-11).  Additionally, on December 12, 2017, Hawley utilized his Absolute Medical email address[2] to correspond with Alphatec about creating custom instruments for a surgeon customer he formerly serviced on NuVasive's behalf.  (**Exhibit 1** at Ex. C).

The harm caused by Absolute Medical's actions is not limited to the conversion of NuVasive customers.  NuVasive now finds itself shorthanded in Absolute Medical's territory, and unable to support its remaining customers in the territory without requiring experienced

---

[1] NuVasive named Soufleris and Hawley as defendants but has not yet named Miller as a defendant because it was aware of Soufleris' and Hawley's unlawful actions at the time it filed suit but had no such knowledge of Miller's behavior.

[2] This email is particularly disturbing because, on December 5, 2017, Absolute Medical represented to NuVasive that Hawley was no longer affiliated with it.  (**Exhibit 2** at Ex. B).

sales representatives to travel from their assigned territories. (*Id.* at ¶ 5). Simply put, NuVasive cannot, at least in the short term,[3] properly support Absolute Medical's assigned territory without Absolute Medical's participation. (*Id.* at ¶ 6).

## STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

Securing a preliminary injunction requires movants to demonstrate:

1. a substantial likelihood of success on the merits;

2. that it will suffer irreparable injury unless the injunction issues;

3. that the threatened injury to the moving party outweighs whatever the damage the proposed injunction may cause the opposing party; and

4. if issued, that the injunction would not be adverse to the public interest.

*Lucky Cousins Trucking, Inc. v. QC Energy Res. Tex., LLC*, 223 F. Supp. 3d 1221, 1224 (M.D. Fla. 2016). As a preliminary injunction "is an extraordinary and drastic remedy," movants "must 'clearly' establish the burden of persuasion as to each of the four criteria." *Id.* (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 1998)).

## ARGUMENT

NuVasive easily satisfies the criteria for obtaining a preliminary injunction in this case. All it seeks is for Absolute Medical to do what it is contractually obligated to do until January 1, 2022—exclusively distribute its products pursuant to the Agreement's terms and conditions. This relief will not harm Absolute Medical, as it will earn commissions from its sales of

---

[3] This is not a situation where NuVasive can simply go hire sales representatives to replace Absolute Medical. It takes months of training for a newly-hired sales representative to be able to competently support some of the surgeries where NuVasive's medical devices are implanted. (**Exhibit 1** at ¶ 7).

NuVasive's products, but denying the requested relief will, at least in the short term, leave NuVasive shorthanded and unable to properly service its customers. Preliminary injunctive relief is particularly appropriate in this case involving NuVasive and its exclusive distributor. *See Paradee Oil Co. v. Phillips Petroleum Co.*, 320 A.2d 769, 776-77 (Del. Ch. 1974) (issuing a preliminary injunction "so as to maintain the existing status between" a supplier and its exclusive distributor "pending final hearing on all issues" when one attempted to unilaterally terminate their distributor relationship).[4]

**There is a substantial likelihood that NuVasive will succeed on the merits.**

First, there is a substantial likelihood that NuVasive will prevail on the merits of its claim that Absolute Medical breached the Agreement. The Agreement is a valid contract between two businesses, which Absolute Medical acknowledged is "binding upon the Parties and enforceable in accordance with its terms." (**Exhibit 1** at Ex. A § 6.02). It has a five year term which cannot be terminated by Absolute Medical absent circumstances that are not present in this case. (*Id.* at §§ 9.01, 9.02, and 9.04). And NuVasive is in full compliance with the Agreement. (*Id.* at ¶ 4). These facts, coupled with the fact that Absolute Medical is ignoring the obligations imposed on it by the Agreement, demonstrate that NuVasive will ultimately succeed on the merits of its claim that Absolute Medical is breaching the Agreement. *See SLC Beverages, Inc. v. Burnup & Sims, Inc.*, No. 8860, 1987 WL 16035, at *2 (Del. Ct. Ch. Aug. 20, 1987).

---

[4] The Agreement states that it is to be governed by the substantive law of the state of Delaware. (**Exhibit 1**. at Ex. A § 12.01).

**NuVasive will suffer irreparable injury unless the injunction issues.**

The second element—that NuVasive will suffer irreparable harm in the absence of the requested injunction—is also easily met as the Agreement provides that breaches of it will cause irreparable harm and the facts show that Absolute Medical's breach is causing NuVasive to suffer such harm. Indeed, the facts show that Absolute Medical converted the business of two of NuVasive's surgeon customers to Alphatec on January 26, 2018. (**Exhibit 3** at ¶¶ 7-11). If not restrained, Absolute Medical will continue to convert NuVasive's business to Alphatec. (*Id.*).

Delaware law holds that contractual stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing injunctive relief. *AM Gen. Holdings, LLC v. Renco Group, Inc.*, No. 7639-VCN, 2012 WL 6681994, at*4 (Del. Ct. Ch. Dec. 21, 2012). The specific language the *AM General Holdings* court found to constitute a stipulation of irreparable harm was:

> The parties hereto agree that any party by whom this Agreement is enforceable shall be entitled to specific performance in addition to any other relief or remedy. Such party may, in its sole discretion, apply to a court of competent jurisdiction for specific performance or injunctive relief or such other relief as such court may deem just and proper in order to enforce this Agreement or prevent any violation hereof and, to the extent permitted by applicable law, each party waives any objection to such relief.

*Id.* The Agreement's language is remarkably similar to that examined by the *AM General Holdings* court, and also creates a waiver of the irreparable harm requirement. More specifically, Section 12.02 of the Agreement states, in relevant part, that "[N]othing contained in this Agreement shall in any way deprive either Party of its right to obtain injunctions or

other equitable relief from a court of competent jurisdiction, including preliminary relief, pending arbitration." (**Exhibit 1** at Ex. A § 12.02).

Further, there is no doubt NuVasive will suffer irreparable injury if Absolute Medical is not required to comply with its contractual obligations. Absolute Medical's initial breaches of the Agreement caused NuVasive to lose Dr. Sawin's business and led to Alphatec obtaining detailed information about custom instruments desired by Dr. Sawin. (**Exhibit 1** at ¶ 3, Ex. C; **Exhibit 3** at ¶ 4). Its recent breaches caused it to lose business from Dr. Rodas and Dr. Burry in late January and early February 2018. (**Exhibit 3** at ¶¶ 6-11). And more losses—both financial and of confidential information—are likely unless Absolute Medical is ordered to comply with the Agreement. (*Id.* at ¶ 12). Additionally, Absolute Medical's behavior threatens to irreparably damage NuVasive's reputation in this territory as NuVasive now finds itself shorthanded and, at least in the short term, unable to properly service its needs in the territory without Absolute Medical or help from its sales representatives in other territories. (**Exhibit 1** at ¶¶ 5-7). Finally, the fact that Absolute Medical is not providing NuVasive with the consideration it bargained for is grounds to find irreparable injury. *See Am Gen. Holdings*, 2012 WL 6681994, at *5.

**The threatened injury to NuVasive outweighs whatever damage the injunction may cause Absolute Medical.**

Not only is the injury NuVasive will suffer if the injunction does not issue irreparable, it also dwarfs any harm the requested injunction will cause Absolute Medical. Indeed, Absolute Medical will suffer no damage if the requested injunction issues. To the contrary, it will only be required to comply with the Agreement, which includes it receiving commissions for selling NuVasive's products. *See W. Sur. Co. v. Merkury Corp.*, No. 12-22938-CIV-

ZLOCH, 2013 WL 12092472, at *5 (S.D. Fla. June 17, 2013) (finding that the threatened harm to the movant outweighed any potential harm to the defendants if the injunction was granted because the defendants were simply being required to perform their contractual obligations). Further, while NuVasive, frankly, has no idea what burden Absolute Medical will claim, under Delaware law, when, as in this case, "there is a reasonable probability" that a defendant breached an agreement, that defendant "cannot invoke general equity principles to save it from an injunction enforcing the agreement." *AM Gen. Holdings*, 2012 WL 6681994, at *6 (citing *Kansas City S. v. Grupo TMM, S.A.*, No. 20518-NC, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003)).[5]

**Issuing the injunction will benefit the public interest.**

Finally, requiring Absolute Medical to adhere to its contractual obligations will further the public's interest in having valid contracts enforced. *In re: BankAtlantic, Inc. Litig.*, 39 A.3d 824, 846 (Del. Ch. 2012) ("The public has a strong interest in seeing that contract and property rights are respected.").

**RELIEF REQUESTED**

NuVasive has shown that it is entitled to a preliminary injunction which requires Absolute Medical to comply with the Agreement's terms and conditions. Accordingly, NuVasive respectfully requests that this Court:

---

[5] NuVasive notes that Delaware courts routinely permit specific performance of contracts between business entities under their equity jurisdiction. *See, e.g.*, *W. Air Lines, Inc. v. Allegheny Airlines, Inc.*, 313 A.2d 145, 151 (Del. Ch. 1973) ("Specific performance of a contract is, without doubt, a proper basis for equity jurisdiction. This is especially true when a mandatory injunction compelling some positive action to change existing conditions may prove necessary."); *see also TA Operating LLC v. Comdata, Inc.*, No. 12954-CB, 2017 WL 3981138, at *21-22, *34 (Del. Ch. Sep. 11, 2017) (applying Tennessee substantive law to the agreement at issue, but ordering specific performance pursuant to Delaware law); *AM Gen. Holdings*, 2012 WL 6681994, at *7 (granting mandatory preliminary injunctive relief requiring a party to adhere to its contractual obligations).

1. Grant this motion for preliminary injunction;[6]

2. Preliminary enjoin Absolute Medical from violating the terms of the Agreement, including without limitation, compelling Absolute Medical to:

   a. work exclusively for NuVasive and not for NuVasive's competitors;
   b. maintain sufficient Representative Affiliates to service its sales territory;
   c. require its Representative Affiliates to sign non-compete agreements and provide those agreements to NuVasive;
   d. enforce the non-compete agreements between it and its Representative Affiliates; and
   e. inform NuVasive in any change in the product lines it carries; and

3. Grant any other relief the Court deems just and proper.

Dated: February 6, 2018

Respectfully submitted,

*s/Diana N. Evans*
Diana Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
R. Craig Mayfield (Fla. Bar No. 0429643)
cmayfield@bradley.com
**Bradley Arant Boult Cummings LLP**
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

and

Christopher W. Cardwell, Esq. (Pro Hac Vice)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com

*Attorneys for Plaintiff NuVasive*

---

[6] Pursuant to Local Rules 4.05(b)(3)(iii) and 4.06(b)(1), a proposed form of the preliminary injunction sought by NuVasive is attached as **Exhibit 4**.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of February, 2018, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notice of electronic filing to all counsel of record, including:

Louis M. Ursini
Adams and Reese LLP
101 E. Kennedy Boulevard, Suite 4000
Tampa, FL 33602
Phone: (813) 227-5536
Fax: (813) 227-5636
louis.ursini@arlaw.com

Bryan E. Busch
Adams and Reese LLP
3424 Peachtree Road, NE, Suite 1600
Atlanta, GA 30326
Phone: (470) 427-3676
Fax: (470) 427-3702
bryan.busch@arlaw.com

**Attorneys for Defendants**

        *s/Diana N. Evans*
        Diana N. Evans
        Attorney for NuVasive, Inc.