# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NUVASIVE, INC.                              )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )      Civil Case No. 6:17-cv-2206-orl-18-GJK
                                            )
ABSOLUTE MEDICAL, LLC, GREG                 )      INJUNCTIVE RELIEF SOUGHT
SOUFLERIS, and DAVE HAWLEY,                 )
                                            )
            Defendants,                     )
                                            )

## SECOND DECLARATION OF MARK SINGER

Under penalty of perjury and pursuant to 28 U.S.C. Section 1746, Declarant, Mark Singer, states that:

1.      My name is Mark Singer. I am above the age of 18 and am fully competent to give the testimony contained in this Second Declaration, all of which comes from my personal knowledge.

2.      **Exhibit A** to my Second Declaration is a true and exact copy of the August 17, 2017, Territory Transition Agreement between NuVasive, Inc. and Absolute Medical, LLC. The Territory Transition Agreement reflects NuVasive's agreement to pay Absolute Medical $636,403 by August 25, 2017, in exchange for Absolute Medical's agreement to (a) release a portion of its sales territory; and (b) release three of its sales representatives from their non-compete obligations so that they could work for another NuVasive distributor.

3.      NuVasive timely made the payment described in the preceding paragraph.

EXHIBIT
1

Further sayeth Declarant not.

I declare under penalty of perjury the foregoing is true and correct.

Date: _March 6, 2018_         _____

                                            Mark Singer

# EXHIBIT A

## TERRITORY TRANSITION AGREEMENT

This **TERRITORY TRANSITION AGREEMENT** (the **"Transition Agreement"**), is entered into as of August 17, 2017 and is effective as of July 1, 2017 (the **"TTA Effective Date"**), by and between **NUVASIVE, INC.**, a Delaware corporation ("NuVasive"), and **ABSOLUTE MEDICAL LLC**, a Florida limited liability company (on behalf of itself, its affiliated entities and its employees, officers, agents and representatives, **"Representative"**). Representative and NuVasive are referred to herein individually as a **"Party"** and collectively as the **"Parties"**.

### Background

**WHEREAS,** the Parties have entered into that certain Exclusive Sales Representative Agreement dated January 1, 2017, as amended from time to time (the **"Sales Agreement"**); and

**WHEREAS,** the Parties desire to reduce the Territory (as defined in the Sales Agreement) in certain respects.

**NOW, THEREFORE,** in consideration of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the Parties hereto, NuVasive and Representative agree as follows.

### Agreement

1. **Definitions:** Capitalized terms not otherwise defined in this Transition Agreement shall have the meanings given to them in the Sales Agreement.

2. **Territory Transition:**

    (a) Upon the TTA Effective Date, Representative shall transition the business conducted by Representative in the territory set forth on **Annex I** attached hereto (the **"Reduced Territory"**) to Skyway Surgical, Inc. (or its affiliates) (the **"Transition"**). Representative will cease acting as a distributor/agent for NuVasive in the Reduced Territory as of the TTA Effective Date.

    (b) In order to effectuate the foregoing and to remove such Reduced Territory from the "Territory" under the Sales Agreement, the Parties agree that, as of the TTA Effective Date:

        (i) "Exhibit B, Territory" to the Sales Agreement, shall be amended and restated in its entirety as set forth on **Annex II** attached hereto; and

        (ii) all references in the Sales Agreement to the "Territory" shall mean the "Territory" as provided in such amended and restated Exhibit B set forth on **Annex II**.

3. **Consideration:** In consideration of the covenants, terms and conditions set forth herein and for the transfer of the customer-relationships, the release of the Sales Reps (set forth in Section 7) and other goodwill associated with Representative's business that is a material part of the value of the

**EXHIBIT**

**A**

Transition, NuVasive shall make a payment to Representative on or prior to August 25, 2017 in an amount equal to $636,403.

4. **Additional Payment under Sales Agreement:** NuVasive shall make a payment to Representative of previously deferred commissions under the Sales Agreement on or prior to August 25, 2017 in an amount equal to $40,792. Notwithstanding the foregoing, this payment of deferred commissions shall not be construed as a waiver by NuVasive with respect to any other term, provision, or condition of the Sales Agreement, including but not limited to Section 2.02 (Basis of Commission) and Section 2.04 (Commission Charge Back). NuVasive shall have the right to defer future Commissions in accordance with the Sales Agreement.

5. **Amendments to Sales Agreement:**

   (a) *Stated Percentage Letter Agreement.* The Parties shall execute the Stated Percentage Letter Agreement attached hereto as **Annex III** as of the date hereof; and

   (b) *Quota under the Sales Agreement.* The Parties shall execute the Revised Quota Letter attached hereto as **Annex IV** as of the date hereof.

6. **Transition Activities:** The Parties hereby agree to undertake the following activities on or prior to August 25, 2017:

   (a) *Return of Inventory in the Reduced Territory.* Any and all Products that NuVasive has supplied to Representative for use in the Reduced Territory which have not been sold to third parties shall be promptly returned by Representative to NuVasive in full saleable condition, but shall remain in the custody of Representative's sales and/or service personnel in the Reduced Territory that transition to Skyway Surgical, Inc. (or its affiliates).

   (b) *Business Plan.* Representative shall prepare and furnish to NuVasive a business plan that accurately summarizes all of Representative's existing business, customers, employees and/or agents, commission plans, and other pertinent matters related to serving as the sales representative for Products in the Reduced Territory.

   (c) *Meetings.* Representative shall meet with NuVasive's Leader, U.S. Commercial, and/or Sales Vice Presidents, at such times and places as reasonably requested thereby, to provide advisory services regarding the Transition; *provided, however,* that, if any such meeting is outside of the Reduced Territory, then any reasonable and related transportation and lodging costs shall be at the expense of NuVasive.

   (d) *Announcements.* Representative agrees to conduct any and all messaging regarding the Transition only as authorized and directed by NuVasive's Leader, U.S. Commercial, and/or Sales Vice Presidents (it being understood that at no point shall Representative disclose the financial terms hereof).

7. **Release of Sales Representatives:** Effective as of July 1, 2017, Representative hereby releases Casey Camero, Matt Camero and Evan Menjivar (the "**Sales Reps**") from all restrictive covenants

as between such Sales Reps and Representative solely with respect to NuVasive's or Skyway Surgical, Inc.'s (or its affiliates) ability to employ or contract with the Sales Reps and agrees to take all other actions necessary for NuVasive or Skyway Surgical, Inc.'s (or its affiliates) to employ or contract with such Sales Reps. Representative hereby covenants and agrees to take all such actions and to execute all such documents as may be reasonably necessary to implement the provisions and intentions of this Section 7 of this Transition Agreement.

8. **Restrictive Covenants.** During the Term (as defined in the Sales Agreement) and for a period of twelve (12) months thereafter, Representative and Representative Affiliates not released by Representative pursuant to this Transition Agreement shall not solicit, encourage, or induce, or cause to be solicited, encouraged or induced (directly or indirectly) any Restricted Persons within the Reduced Territory, to terminate or adversely modify any business relationship with NuVasive or its affiliates, or not to proceed with, or enter into, any business relationship with NuVasive or its affiliates, nor otherwise interfere with any business relationship between NuVasive or its affiliates, and any Restricted Persons within the Reduced Territory.

9. **Relationship.** The relationship of Representative to NuVasive shall continue to be that of an independent contractor. Representative understands and agrees that it will not be an employee of NuVasive under this Transition Agreement and that no employer-employee relationship will exist between Representative and NuVasive on account of this Transition Agreement. Furthermore, this Transition Agreement shall in no way render Representative a partner, agent of, or joint venture with NuVasive for any purpose.

10. **Taxes.** Representative shall be solely responsible for payment of all taxes, interest, or penalties resulting from any and all amounts paid hereunder. NuVasive shall not be responsible for withholding taxes with respect to any compensation Representative receives under this Transition Agreement. Representative shall have no claim against NuVasive under this Transition Agreement or otherwise for vacation pay, sick leave, retirement benefits, social security, workers' compensation, health or disability benefits, unemployment insurance benefits, or other employee benefits of any kind arising out of this Transition Agreement.

11. **Strict Confidentiality.** Representative acknowledges and agrees that (a) the terms and conditions of this Transition Agreement are strictly confidential and proprietary as related to NuVasive's business, and (b) disclosure of such terms could cause material harm to NuVasive's business. Accordingly, Representative, as a material inducement to NuVasive's willingness to enter into this Transition Agreement, hereby agrees to refrain from disclosing, or causing to be disclosed, any of the terms of this Transition Agreement to any third party or (including other employees, consultants or members of NuVasive's sales team); *provided, however,* that the foregoing shall not prohibit (i) Representative from making confidential communication with its legal or financial counsel, or (ii) the Parties from generally disclosing - consistent with the terms and conditions of this Transition Agreement (and without any reference to associated compensation) - that the Transition has occurred.

12. **Waiver and Release of Claims Relating to the Reduced Territory.** As consideration for the conditions, commitments and all obligations contained herein each Party hereby releases and forever discharges the other Party, including any officers, directors, employees, agents, representatives, affiliates, successors, predecessors, attorneys and assigns, whether past, present or future, from any and all manners of action, causes of action, suits, debts, losses, liabilities,

obligations, liens, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, expenses, claims and demands, of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, in contract, tort, statute, law, equity or otherwise, which a Party had or have, upon or by reason of any fact, matter, cause or thing whatsoever, arising out of or relating to the Reduced Territory.

Each Party understands that it may later discover claims or facts that may be different from, or in addition to, those that it now knows or believes to exist regarding the subject matter of the release contained in this Section 12, and which, if known at the time of signing this Transition Agreement, may have materially affected this Transition Agreement and such Party's decision to enter into it and grant the release contained in this Section 12. Nevertheless, each Party intends to fully, finally and forever settle and release all claims that now exist, may exist or previously existed, as set forth in the release contained in this Section 12, whether known or unknown, foreseen or unforeseen, or suspected or unsuspected, and the release given herein is and will remain in effect as a complete release, notwithstanding the discovery or existence of such additional or different facts. Each Party hereby waives any right or claim that might arise as a result of such different or additional claims or facts. Each Party has been made aware of, and understands, the provisions of California Civil Code Section 1542 ("**Section 1542**"), which provides:

> "**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**"

Each Party expressly, knowingly and intentionally waives any and all rights, benefits and protections of Section 1542 and of any other state or federal statute or common law principle limiting the scope of a general release.

For clarity, nothing in this Section 12 shall be deemed to be a waiver or release by Representative of any rights to payments under this Transition Agreement.

13. **Governing Law; Arbitration.** This Transition Agreement is effective as of the TTA Effective Date  and shall be governed, construed and enforced in all respects solely and exclusively under the laws of the State of Delaware, without giving any effect to the choice of law principles thereunder. The Parties agree that the U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Transition Agreement. Any controversy, dispute or question arising out of or in connection with this Transition Agreement, or related to the interpretation, performance or non-performance of this Transition Agreement or any breach hereof, shall be fully and finally resolved by binding arbitration conducted before a single neutral arbitrator from AAA in San Diego, California pursuant to the then current commercial dispute rules of the AAA (which can be accessed at www.adr.com), provided, however that if the dispute or claim involves a Party seeking at least one million dollars ($1,000,000) from the other Party, then the arbitration will be conducted by a panel of three arbitrators from AAA, with one arbitrator chosen by each of the Parties and the third appointed by the other two arbitrators. The arbitrator(s) shall permit adequate discovery. In addition, the arbitrator(s) shall be empowered to award all remedies otherwise available in a court of competent jurisdiction. Any judgment rendered by the arbitrator(s) may be entered by any court of competent jurisdiction. The arbitrator(s) shall issue an award in writing and state the essential findings and conclusions on which the award is based.

By executing this Transition Agreement, the Parties are both waiving the right to a jury trial with respect to any such disputes. In all other jurisdictions the Parties shall split the costs of the arbitrator, forum and filings fees equally. Each Party shall bear its own respective attorneys' fees and all other costs, unless otherwise provided by law and awarded by the arbitrator(s). This arbitration section does not include claims that, by law, may not be subject to mandatory arbitration. Nothing contained in this Transition Agreement shall in any way deprive either Party of its right to obtain injunctions or other equitable relief from a court of competent jurisdiction, including preliminary relief, pending arbitration.

14. **Assignment:** NuVasive may assign this Transition Agreement, any of its rights hereunder or delegate any of its obligations hereunder without notice to, or the consent of, Representative. Representative may not assign or transfer this Transition Agreement or assign, transfer, or delegate any of its rights and obligations under this Transition Agreement without the prior written consent of NuVasive, which may be withheld, denied, or conditioned in the sole discretion of NuVasive. Any purported assignment or delegation in violation of this Section is null and void. No assignment or delegation relieves Representative of any of its obligations under this Transition Agreement.

15. **Severability:** If any provision(s) of this Transition Agreement shall be held invalid, illegal or unenforceable by a court of competent jurisdiction, the remainder of the Transition Agreement shall be valid and enforceable and the Parties shall negotiate in good faith a substitute, valid and enforceable provision which most nearly effects the Parties' intent in entering into this Transition Agreement. If a court holds that the duration, scope, geographic range, or any other restriction stated in any provision of this Transition Agreement is unreasonable under circumstances then existing, the Parties agree that the maximum duration, scope, geographic range, or other restriction that the court deems reasonable under such circumstances will be substituted and that the court will have the power to revise any of those restrictions to cover the maximum period, scope, geographic range, and/or other restriction permitted by law.

16. **Advice of Counsel:** Each of the Parties represent that they have had the opportunity to seek the advice of counsel with respect to the negotiation and execution of this Transition Agreement. Representative further represents that it has executed this Transition Agreement of its own free will and is not relying on counsel for NuVasive with respect to any portion of this Transition Agreement.

17. **Interpretation:** Each Party acknowledges and agrees that (a) any applicable rule of construction to the effect that ambiguities are to be resolved against a drafting Party shall not be applied in connection with the construction or interpretation of this Transition Agreement or any provision hereof; (b) no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Transition Agreement; (c) "including" (and any of its derivative forms) meaning including without limitation; (d) "may" means has the right but not the obligation to do something and "may not" means does not have the right to do something; and (e) "will" and "shall" are expressions of command, not merely expressions of future intent or expectation.

18. **Counterparts; Execution:**   This Transition Agreement may be signed in two or more counterparts, all of which together shall constitute one and the same agreement, binding on the Parties as if each had signed the same document.  Signatures to this Transition Agreement may be made via electronic signature (.pdf format included).

19. **No Other Modifications:** Except as expressly modified herein, the terms of the Sales Agreement will remain in full force and effect.

*{Signature page to follow}*

This **TERRITORY TRANSITION AGREEMENT** is entered into and binding upon the Parties as of the TTA Effective Date:

NUVASIVE, INC.

By: _____
Name: Paul McClintock
Title: Leader, U.S. Commercial

ABSOLUTE MEDICAL LLC

By: _____
GREG SOUFLERIS
Authorized Signatory

ANNEX I

**Reduced Territory**

The Reduced Territory shall constitute the following:

- The following medical centers and hospital in Brevard County, Florida: Wuesthoff Medical Center Melbourne; Holmes Regional Medical Center, and Palm Bay Hospital;

- Indian River County, Florida;

- Martin County, Florida;

- Palm Beach County, Florida;

- St. Lucie County, Florida;

- The Gable Surgical Center located in Miami-Date County, Florida; and

- The following hospitals in Broward County, Florida: Advanced Orthopedics, Beth Israel Surgical Center and North Broward General.

ANNEX II

The content of this ANNEX II is incorporated by reference into and completely amends and restates the content set forth in Exhibit B to the Sales Agreement as follows:

"**EXHIBIT B**

**TERRITORY**

- The following counties in the State of Florida: Flagler, Volusia, Lake, Seminole, Osceola, Orange, Highlands;

- The county of Brevard in the State of Florida, excluding Wuesthoff Medical Center Melbourne; Holmes Regional Medical Center, and Palm Bay Hospital;*

- The following hospital in Polk County, Florida: Heart of Florida Regional Medical Center.

* For clarity, the Territory shall include Wuesthoff Medical Center Rockledge."

ANNEX III

August ____, 2017

Absolute Medical, LLC
382 Devon Place
Heathrow, FL 32746
Attn: Greg Soufleris

**Re: Stated Percentage Amount**

Dear Greg,

Reference is made to the Exclusive Sales Representative Agreement, by and between NuVasive, Inc. and Absolute Medical, LLC, effective as of January 1, 2017, as amended from time to time (the "**Agreement**"). Capitalized terms used in this letter but not otherwise defined shall have the meaning ascribed to such terms in the Agreement.

Pursuant to the Key Terms Summary under the Agreement, the Stated Percentage is defined at 10%. The parties hereby agree that the Stated Percentage under the Agreement shall be increased from 10% up to a maximum of 14% upon the achievement of growth in the Territory (as amended pursuant to that certain Territory Transition Agreement dated as of even date herewith) pursuant to the following formula:

---

Effective as of January 1, 2019, the "Stated Percentage" shall equal the 2018 Growth Modifier.

*Where:*

"2018 Growth Modifier" =

   If 2018 GP < 12%, then 2018 Growth Modifier = 10%;

   If 2018 GP ≥ 12%, then 2018 Growth Modifier = 11%;

   If 2018 GP ≥ 14%, then 2018 Growth Modifier = 12%;

   If 2018 GP ≥ 16%, then 2018 Growth Modifier = 13%;

   If 2018 GP ≥ 18%, then 2018 Growth Modifier = 14%;

*Defined Terms for 2018 Growth Modifier formula:*

   NS18 = Net Sales in the Territory in calendar year 2018.

   NS17 = Net Sales in the Territory in calendar year 2017.

   2018 GP = $\dfrac{NS18 - NS17}{NS17}$

---

Please confirm your acknowledgment and agreement to be bound by this letter agreement by countersigning below and sending a copy of the same back to my attention. For clarity, other than with respect to amending the Stated Percentage under the Agreement, all other terms and provisions of the Agreement remain in effect without modification.

Sincerely,

_____

NuVasive, Inc.

**Agreed and Acknowledged:**

Absolute Medical LLC

By:_____
    Greg Soufleris
    Authorized Signatory

ANNEX IV

August ___, 2017

Absolute Medical, LLC
382 Devon Place
Heathrow, FL 32746
Attn: Greg Soufleris

**Re: Revised Quota for Q3 2017 and Q4 2017**

Dear Greg,

Reference is made to: (a) the Exclusive Sales Representative Agreement, by and between NuVasive, Inc. and Absolute Medical, LLC, effective as of January 1, 2017, as amended from time to time (the "**Sales Agreement**"), and (b) the Territory Transition Agreement, by and between NuVasive, Inc. and Absolute Medical, LLC, effective as of July 1, 2017 (the "**Transition Agreement**"). Capitalized terms used in this letter but not otherwise defined shall have the meaning ascribed to such terms in the Sales Agreement.

In connection with reduction in Territory pursuant to the Transition Agreement and in accordance with Section 1.03 of the Sales Agreement, the parties hereby agree that the Quota Commitment for the Territory as of the date hereof shall be as follows:

| Period | Quota Commitment |
|---|---|
| July 1, 2017 – September 30, 2017 | $2,345,760 |
| October 1, 2017 – December 31, 2017 | $2,576,080 |

Please confirm your acknowledgment and agreement to be bound by this letter agreement by countersigning below and sending a copy of the same back to my attention. For clarity, other than with respect to amending the Stated Percentage under the Agreement, all other terms and provisions of the Agreement remain in effect without modification.

Sincerely,

_____
NuVasive, Inc.


**Agreed and Acknowledged:**

Absolute Medical LLC

By:_____
   Greg Soufleris
   Authorized Signatory