# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| NUVASIVE, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 6:17-cv-2206-Orl-41GJK |
| | ) |
| ABSOLUTE MEDICAL, LLC, GREG SOUFLERIS, and DAVE HAWLEY, | ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**NUVASIVE'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO ABSOLUTE MEDICAL, LLC'S MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS PENDING ARBITRATION**

Through its counsel of record, and for its Response in Opposition to Absolute Medical, LLC's[1] ("Absolute") Motion to Compel Arbitration and Stay Proceedings Pending Arbitration ("Motion") (Doc. 42), NuVasive, Inc. ("NuVasive") states that:

## I. INTRODUCTION

Absolute and NuVasive agree: (a) to arbitrate NuVasive's claims for damages against Absolute (Count II of the Complaint) and Absolute's counterclaim against NuVasive; and (b) that this Court should rule on NuVasive's request for injunctive relief (Count I of the Complaint). But they disagree on whether the Court should stay Counts III through VII—which no party claims are subject to arbitration—during the pendency of the agreed-upon arbitration. Respectfully, staying these claims is inappropriate as they predominant the

---

[1] NuVasive notes that Absolute failed to join Greg Soufleris ("Soufleris") and Dave Hawley ("Hawley") in the Motion.

litigation and are not substantially dependent upon the arbitrator's decision. Therefore, NuVasive respectfully requests that this Court:

(a) refer Count II of the Complaint and Absolute's counterclaim to arbitration;

(b) rule on NuVasive's request to enforce the Agreement; and

(c) allow Counts III, IV, V, VI, and VII of the Complaint to go forward.

## II.    STATEMENT OF FACTS

This lawsuit arises from Absolute's refusal to comply with its contractual obligation to exclusively distribute NuVasive's products until January 1, 2022, and its contemporaneous decision to sell competitive products to the same customers to whom it sold (and remains contractually obligated to sell) NuVasive's products. As a result, NuVasive filed suit against Absolute, Soufleris, and Hawley ("Defendants") and alleged the following causes of action:

a. Count I—Breach of Contract—Injunctive Relief against Absolute;

b. Count II—Breach of Contract—Damages/Arbitration against Absolute;

c. Count III—Conversion against Hawley for shipping custom surgical instruments, which NuVasive created, to Alphatec;

d. Count IV—Statutory Individual Liability against Soufleris;

e. Count V—Piercing the Corporate Veil against Soufleris for fraudulent use of the corporate form;

f. Count VI—Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against all Defendants—alleging that Absolute and Soufleris violated the FDUTPA, in part, by soliciting NuVasive's clients and alleging Hawley violated the FDUTPA, in part, by shipping surgical instruments to Alphatec; and

g. Count VII—Tortious Interference with Business Relationships against Soufleris for soliciting NuVasive's clients.

(Complaint, Doc. 1 at ¶¶ 41–82).

The January 1, 2017 Exclusive Sales Representative Agreement between NuVasive and Absolute (the "Agreement"), which is governed by Delaware law, contains an arbitration provision that specifically allows either party to obtain injunctive relief through a court of proper jurisdiction (rather than through an arbitrator). (Agreement, Doc. 26-1 at §§ 12.01–12.02). The Agreement provides:

> Section 12.02. <u>Dispute Resolution</u>. Any controversy, dispute, or question arising out of or in connection with this Agreement, or related to the interpretation, performance, or non-performance of this Agreement or any breach hereof, shall be fully and finally resolved by binding arbitration conducted before a single neutral arbitrator from AAA in San Diego, California pursuant to the then current commercial dispute rules of the AAA…Nothing contained in this Agreement shall in any way deprive either Party of its right to obtain injunctions or other equitable relief from a court of competent jurisdiction, including preliminary relief, pending arbitration.

(*Id.* at § 12.02).

The parties agree that the Court should compel Count II and Absolute's counterclaim to arbitration and should rule on NuVasive's Motion for a Preliminary Injunction. (See Doc. 42). No party seeks to compel Counts III, IV, V, VI, and VII to arbitration; but Absolute seeks to stay those non-arbitrable claims. (*Id.*).

### III. ARGUMENT

Absolute properly posits that the Court should compel both NuVasive's claim that Absolute owes it money damages for breach of contract and Absolute's counterclaim to arbitration. However, it incorrectly claims that—with the exception of NuVasive's request for a preliminary injunction—the Court should stay the remaining claims in NuVasive's complaint. Contrary to Absolute's request, the Court should apply federal law to this motion

3

and allow this lawsuit—other than NuVasive's claim for damages and Absolute's counterclaim—to go forward.

**A. The Court Should Analyze the Motion under the Federal Arbitration Act ("FAA").**

Even though Delaware law governs the substantive law of the Agreement, the FAA governs the issue of whether the Court should compel arbitration, as the Agreement: (a) involves interstate commerce;[2] and (b) contains no evidence that the parties specifically intended to opt out of the default standard under the FAA.[3] *Brown v. T-Ink, LLC*, Civil Action No. 3190-VCP, 2007 WL 4302594, at *7 (Del. Ch. Dec. 4, 2007) ("[A] generic choice-of-law provision, standing alone . . . is insufficient to support a finding that the parties intended to opt out of the FAA's default standards."). Therefore, the Court must "rigorously enforce [the] arbitration agreement[ ] according to [its] terms, including terms that specify with whom [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013) (internal quotation marks omitted); *see also* 9 U.S.C. § 4 (2018); *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014).

---

[2] In analyzing whether or not an arbitration agreement involves interstate commerce, the Supreme Court interprets the requirement to mean that courts should decide, on a case-by-case basis, whether "the transaction turns out, in fact, to have involved interstate commerce, 'even if the parties did not contemplate an interstate commerce connection.'" *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874, n.6 (11th Cir. 2005) (quoting *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277–81 (1995)). Absolute does not dispute that the transaction involves interstate commerce. Indeed, Absolute is organized under Florida Law and NuVasive is a citizen of the state of Delaware and California. (Doc. 1, ¶¶ 6–7). Additionally, NuVasive conducts business across the country, and the products that Absolute was distributing, which are heavily regulated by the Food and Drug Administration, were not manufactured in Florida.

[3] There is no evidence to suggest that the parties intended to opt out of the FAA and Absolute fails to identify any reason why the FAA would not apply. The Agreement includes a generic choice of law provision, but does not specify that the choice of law provision to the Agreement applies to the arbitration. (See Agreement, Doc. 26-1, §§ 12.01–12.02).

That said, even if the Court applied Delaware law, the result would be the same as Delaware law specifically provides that the FAA provides the correct standard for determining whether to compel arbitration in situations such as the one at bar (i.e., where an arbitration agreement does not contain a specific reference to the Delaware Uniform Arbitration Act ("DUAA")). Indeed, under the DUAA, unless "the agreement at issue explicitly references the Delaware Uniform Arbitration Act . . . the terms of the Federal Arbitration Act apply." *Meyers v. Quiz-Dia LLC*, No. 9878-VCL, 2016 WL 7048783, at *2 (Del. Ch. Dec. 2, 2016) (citing Del. Code Ann. tit. 10, § 5702 (a) and (b)). Here, the arbitration provision in Section 12.02 of the Agreement does not specifically state which law governs the arbitration proceedings. (Agreement, Doc. 26-1 at § 12.02). The only provision that mentions Delaware law is the choice of law provision in Section 12.01, which provides that the Agreement "shall be governed and construed in accordance with the laws of the State of Delaware." (*Id.*).

In sum, the Court should rely upon the FAA when ruling on this Motion as there is no mention of a choice of law in the arbitration provision. However, even if the Court applies the Delaware choice of law provision to the arbitration provision, the result would be the same and the FAA would apply. Under the FAA, there are no grounds for staying the non-arbitrable claims.

**B. NuVasive's Non-Arbitrable Claims Should Not Be Stayed.**

Section 3 of the FAA (like Title 10, Section 5703 of the Delaware Code) instructs district courts to stay those issues subject to arbitration during the pendency of the arbitration, but recognizes that district courts have discretion over whether to stay the non-arbitrable claims. *Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1204 (11th Cir. 2004); *AXA*

*Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1330, 1347 (S.D. Fla. 2009). In this exercise of discretion, courts look at whether the arbitrable claims "predominate" or whether the outcome of the non-arbitrable claims depends upon the arbitrator's decision and "generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." *Klay*, 389 F.3d at 1204; *U.S. Sur. Co. v. Edgar*, No. 8:13-cv-1207-T-33TGW, 2013 WL 6332973, at *7 (M.D. Fla. Dec. 5, 2013) (determining that a claim for conversion was capable of independent resolution and not dependent upon the breach of contract and indemnity claims that were subject to arbitration).

Courts often determine whether the claims predominate or whether the outcome of the non-arbitrable claims depends upon the arbitrator's decision by examining whether the arbitrable and non-arbitrable claims are based upon the exact same factual allegations. *Variable Annuity Life Ins. Co. v. Laferrera*, 680 F. App'x 880, 884 (11th Cir. 2017). In *Laferrera*, the Eleventh Circuit considered whether to stay non-arbitrable claims, where the former employer of two employees sued its former employees for breach of contract. *Id*. at 882. The former employer also included a claim against the former employees' new employer for violation of the Alabama Trade Secrets Act. *Id.* In determining whether the court should stay the non-arbitrable proceedings pending the completion of arbitration, the court held that a stay was warranted, because: (a) the claims against the current employer and the former employees were based upon the exact same factual allegations; and (b) the claims "show that the [current employer] took no action except through, or at the direction of, the [current employees]"—meaning that they could not be held liable unless the arbitrator found the current employees liable. *Id.* at 884.

6

In contrast to *Laferrera*, the non-arbitrable claims in this case are not predicated upon the exact same factual allegations as those that are arbitrable. NuVasive's breach of contract claim asserts that Absolute breached the Agreement by attempting to terminate the Agreement, refusing to enforce agreements that were a requirement of the Agreement, and failing to update the Agreement. (Complaint, Doc. 1 at ¶ 54). And, Absolute's Counterclaim is based upon allegations that NuVasive failed to pay commissions under the Agreement. (Doc.26, Counterclaim at ¶¶ 9–15). As evident from the Complaint, and as shown below, the non-arbitrable claims exist independent of the Agreement, and the Court should decline Absolute's request to stay the claims pending arbitration. Furthermore, staying these claims pending arbitration would needlessly delay resolution with no discernable benefits in terms of judicial efficiency or conservation of litigant resources. *AXA Equitable Life Ins. Co.*, 608 F. Supp. 2d at 1332 (finding that the arbitrable claims did not predominate over the non-arbitrable claims and not only was it "entirely feasible to proceed with parallel litigation" in federal court while conducting arbitration on other claims, it would be "inefficient" to stay the non-arbitrable claims).

1. **NuVasive's claim against Hawley for conversion (Count III) is not based on the same factual scenario as the arbitrable claims.**

NuVasive's claim against Hawley for conversion is not based upon the same factual scenario as the arbitrable claims. It alleges:

> 58. Upon information and belief, Hawley shipped custom surgical instruments that NuVasive created and owned to Alphatec so that Alphatec could create substantially identical instruments.
>
> 59. Hawley did not have the right to exercise dominion over or send the custom surgical instruments to Alphatec.

> 60. Hawley's conversion of NuVasive's custom surgical instruments harmed NuVasive and caused it to suffer damages.

(Complaint, Doc. 1 at ¶¶ 58–60). These facts demonstrate that the allegations that Hawley converted surgical instruments are not based upon the exact same set of facts as the claim for breach of contract against Absolute. Additionally, the conversion claim is independent from the Agreement; the Agreement merely provided the circumstances for Hawley to take the instruments, which he was entrusted with, and give them to NuVasive's competition. *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1371 (S.D. Fla. 2008); *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1362 (M.D. Fla. 2007). Therefore, contrary to Absolute's assertion, absent Absolute's breach of the Agreement, Hawley would still be liable for conversion.

2. **NuVasive's allegations that Hawley, Absolute, and Soufleris violated the FDUTPA (Count VI) are not based upon the exact same factual scenario as the arbitrable claims.**

NuVasive's claims against Hawley, Absolute, and Soufleris for violation of the FDUTPA are independent of the breach of contract claim, as they are not based upon the same factual scenario as the arbitrable claims. NuVasive's FDUTPA claims against Hawley, Absolute and Soufleris allege:

> 75. Absolute Medical and Soufleris have violated the FDUTPA by, without limitation: (i) unfairly competing with NuVasive by soliciting business on Alphatec's behalf, and (ii) engaging in unfair and/or deceptive acts and practices by:
>
>> a. attempting to unilaterally terminate the Agreement;
>>
>> b. not enforcing Hawley's and Miller's non-compete and non-solicit obligations or, alternatively, releasing Hawley and Miller from their non-compete and non-solicit obligations without NuVasive's permission; and

> c. soliciting business on Alphatec's behalf without updating Exhibit G to the Agreement.
>
> 76. Upon information and belief, Hawley has violated the FDUTPA by unfairly competing with NuVasive and engaging in unfair and/or deceptive acts and practices by shipping custom surgical instruments that NuVasive created and owned to Alphatec so that Alphatec could create substantially identical instruments.

(Complaint, Doc. 1 at ¶¶ 75–76). Despite these facts, Absolute argues that absent the breach of contract claim, there would "likely be no claim" for violation of the FDUTPA and that in the event the Agreement is deemed unenforceable, Soufleris and Hawley would not be liable to NuVasive. (Doc 42 at 6). This argument is without merit. NuVasive's FUDTPA claims against Hawley, Absolute, and Soufleris are not dependent upon the Agreement between Absolute and NuVasive because, as Florida law recognizes, damages arising out of alleged violations of the FDUTPA are not limited to issues arising from contractual terms. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 871 (Fla. 2d DCA 2006). Similarly, the FDUTPA does not require a contract to impose liability, as the "express legislative purpose of FDUTPA is to protect individual consumers and certain defined business activities from deceptive, unfair, or unconscionable methods of business competition and trade practice." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013). Furthermore, the claims for violation of the FDUTPA do not incorporate any facts alleging a breach of contract claim against Absolute. (Complaint, Doc. 1 at ¶ 75).

3. **NuVasive's claims against Soufleris for statutory individual liability (Count IV) and for piercing the corporate veil (Count V) are not based upon the same set of facts as the arbitrable claims.**

On the face of the Complaint, neither the allegations for statutory individual liability nor the allegations for piercing the corporate veil arise from the same set of facts as Count II's

breach of contract claim. NuVasive's statutory individual liability claim, which arises from Soufleris' breach of his fiduciary duty of loyalty, alleges that:

> 62. Absolute Medical is a Limited Liability Company formed and existing under the Florida Revised Limited Liability Company Act. Fla. Stat. §§ 605.0101 *et seq.*
>
> 63. Soufleris—as its sole managing member—owes Absolute Medical certain duties, including without limitation, fiduciary duties of loyalty and care.
>
> 64. Soufleris' actions and failures to act on behalf of Absolute Medical constitute breaches and/or failures to perform the duties he owes to Absolute Medical.
>
> 65. Soufleris' breaches and/or failures to perform were, without limitation, reckless, committed in bad faith and with malicious purposes, and constitute transactions from which Soufleris derived improper personal benefits, directly and indirectly.

(Complaint, Doc. 1 at ¶¶ 62–65). And the claim for piercing the corporate veil, which derives from Soufleris' improper use of the corporate form, alleges that:

> 68. Soufleris dominates and exercises complete control over Absolute Medical to the extent that Absolute Medical's independence is non-existent and Soufleris is, in fact, an alter ego of Absolute Medical.
>
> 69. Soufleris—by his unfair and inequitable conduct—fraudulently and/or improperly organized and used Absolute Medical to mislead and/or defraud NuVasive in an attempt to, without limitation, evade its existing personal liability to NuVasive.
>
> 70. Soufleris' fraudulent and improper use of the corporate form is the proximate cause of the damages NuVasive has incurred and continues to incur as a result of Absolute Medical's breach of its obligations under the Agreement.

(*Id.* at ¶¶ 68–70).

Contrary to Absolute's argument, neither the statutory individual liability claim nor the piercing the corporate veil claim hinge on the existence of a contract and/or the enforceability of the Agreement. (Doc. 42 at 6). During the pendency of the arbitration, this Court still has

the ability to determine whether or not Soufleris is individually liable for any damages arising out of the arbitrable claims or the non-arbitrable claims against Absolute. The claim does not depend upon the existence of a contract and/or the enforceability of the Agreement, as Absolute claims. (Doc. 42 at 6).

4. **NuVasive's claim against Soufleris for tortious interference with a business relationship (Count VII) is not based upon the exact same facts as the arbitrable claims.**

Finally, the claim against Soufleris for tortious interference with a business relationship is not predicated upon the same factual scenario as the arbitrable claims. The claim for tortious interference with a business relationship alleges:

> 79. Business relationships exist between NuVasive and its surgeon-customers who purchase and utilize its products via its exclusive distributor Absolute Medical.
>
> 80. Soufleris possessed actual knowledge of these business relationships at the time he began soliciting business from NuVasive's surgeon-customers.
>
> 81. Soufleris' solicitation of NuVasive's surgeon customers was, and is, an intentional and unjustified interference with NuVasive's business relationship with its surgeon-customers.

(Complaint, Doc. 1 at ¶¶ 79–81). On the face of the Complaint, the allegations for tortious interference with a business relationship do not arise from the same set of facts as the claim for breach of contract under Count II. Additionally, to state a claim for tortious interference with a business relationship, there does not have to be an enforceable contract, merely the existence of a business relationship. *See*, *e.g.*, *Franklin v. Brown*, 159 So. 2d 893, 896 (Fla. Dist. Ct. App. 1964). Neither Soufleris, nor Hawley, nor Absolute dispute the existence of a business relationship. (Doc. 42). Therefore, NuVasive's tortious interference claim is viable regardless of whether the arbitrator determines if the Agreement is enforceable or not.

11

## IV. CONCLUSION

For the aforementioned reasons, NuVasive respectfully requests that this Court

1. Compel the arbitration of Count II of the Complaint and Absolute's Counterclaim;

2. Decide whether NuVasive is entitled to a preliminary injunction under Count I; and

3. Decide the non-arbitrable issues under Counts III, IV, V, VI, VII.

Dated: March 27, 2018

                                    Respectfully submitted,

*s/Diana Evans*
Diana Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
R. Craig Mayfield (Fla. Bar No. 0429643)
cmayfield@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

and

Christopher W. Cardwell, Esq.
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com

*Attorneys for Plaintiff NuVasive, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to all parties, including the following counsel of record:

Bryan Busch
Adams and Reese LLP
3424 Peachtree Road, NE, Suite 1600
Atlanta, GA 30326
Phone: (470) 427-3702
Fax: (470) 427-3676
Bryan.busch@arlaw.com

Laura H. Mirmelli
Adams and Reese LLP
3424 Peachtree Road, NE, Suite 1600
Atlanta, GA 30326
Phone: (470) 427-3716
Fax: (404) 500-5975
Laura.mirmelli@arlaw.com

Chantal M. Pillay
Adams and Reese LLP
350 W. Las Olas Boulevard, Suite 1110
Ft. Lauderdale, FL 33301
Phone: (954) 541-5390
Chantal.pillay@arlaw.com


Louis M. Ursini
Adams and Reese LLP
101 E. Kennedy Boulevard, Suite 4000
Tampa, FL 33602
Phone: (813) 227-5536
Fax: (813) 227-56-36
Louis.ursini@arlaw.com

*Attorneys for Defendants*

                s/*Diana N. Evans*
                Diana N. Evans
                Attorney for NuVasive, Inc.