# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| NUVASIVE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 6:17-cv-2206-Orl-41GJK |
| ) | |
| ABSOLUTE MEDICAL, LLC, GREG ) | INJUNCTIVE RELIEF SOUGHT |
| SOUFLERIS, and DAVE HAWLEY, ) | |
| ) | |
| Defendants, ) | |
| _____) | |

## NUVASIVE, INC.'S PRE-HEARING MEMORANDUM

Plaintiff NuVasive, Inc. ("NuVasive"), submits this memorandum in advance of the May 29, 2018 evidentiary hearing[1] on its request that the Court preliminarily enjoin Defendant Absolute Medical, LLC ("Absolute Medical"), from violating the restrictive covenants contained in the January 1, 2017 Exclusive Sales Representative Agreement, as amended by the July 1, 2017 Territory Transition Agreement (the "Agreement") which the parties agree governs their relationship. (Compl., Doc. 1, at ¶ 8; Ans., Doc. 26, at ¶ 8; Singer Dec., Doc. 19-1, at Ex. A; Singer Sec. Dec., Doc. 48-1, at Ex. A).

---

[1] When ruling on a preliminary injunction, "the evidentiary rules are relaxed. A court may rely on affidavits and hearsay materials that would not [be] admissible evidence for a permanent injunction, so long as the evidence is appropriate given the character and purpose of the injunction proceedings." *E.g.*, *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1360 (S.D. Fla. 2012) (internal citations omitted).

# INTRODUCTION

This Court's May 15, 2018 Order (Doc. 58) set this evidentiary hearing to determine the enforceability of the Agreement's restrictive covenants.[2]  As noted on page 6 of the Order, this involves a determination of whether NuVasive first materially breached the Agreement so as to excuse Absolute Medical's adherence to those covenants.  If—as Absolute Medical now concedes—no such breach exists, they are enforceable so long as: (a) their duration is reasonably limited temporally; (b) their scope is reasonably limited geographically; (c) their purpose is to protect NuVasive's legitimate interests; and (d) they operate to protect NuVasive's legitimate interests.

As the undisputable facts establish that the Agreement's restrictive covenants are, in fact, enforceable, a preliminary injunction should issue.  Further, as shown in Section C of this Memorandum, NuVasive recently obtained facts which prove the Court should extend the injunction to Absolute Medical's successor entity, Absolute Medical Systems, LLC ("AMS"), its former sales representatives—Defendant Dave Hawley ("Hawley") and Ryan Miller ("Miller")—and its sole member, Defendant Greg Soufleris ("Soufleris").  These facts prove, without limitation, that:

(a) contrary to Soufleris' and Hawley's untruthful statements, the former Absolute Medical sales representatives are subject to contracts that contain non-competition and non-solicitation agreements;

(b) Soufleris dissolved Absolute Medical only three months after NuVasive paid it nearly $640,000 for a territory reduction;

---

[2] The restrictive covenants at issue are found in Section 5.09 of the Agreement. (Singer Dec., Doc. 19-1, at Ex. A § 5.09).  They include obligations not to compete, not to solicit customers or employees, and to ensure that Absolute Medical requires all of its sales representatives to sign agreements which contain non-compete and non-solicitation provisions. (Id. at § 5.09(c), (e)).

    (c) according to Soufleris, the former Absolute Medical sales representatives who joined him at AMS—Hawley and Miller—sold approximately $633,000 worth of NuVasive products and earned nearly $125,000 in commissions in November 2017—the month Soufleris "resigned" from the Agreement and dissolved Absolute Medical; and

    (d) Soufleris' new entity, AMS, sells the same type of products sold by Absolute Medical, to the same customers, through the same sales representatives (who continue to use their Absolute Medical email addresses).

Accordingly, the Court should extend the preliminary injunction to AMS, the sales representatives who moved from Absolute Medical to AMS, and Soufleris.

## SUMMARY OF RELEVANT FACTS AND LAW

NuVasive intends to present evidence at the hearing which establishes that:

    (a) it did not materially breach the Agreement before Absolute Medical, through its sole member, Soufleris, improperly "resigned" from the Agreement;

    (b) the Agreement's restrictive covenants are valid and enforceable; and

    (c) Soufleris is unlawfully attempting to avoid Absolute Medical's and its former sales representatives' non-competition obligations by: (i) dissolving Absolute Medical and forming a new company which utilizes the same sales representatives to sell competitive products to the same customers; and (ii) making false statements to NuVasive and the Court about the existence of those sales representative's restrictive covenants.

Respectfully, this showing warrants the issuance of a preliminary injunction which prohibits Absolute Medical, its former sales representatives, and Soufleris from competing with NuVasive within Absolute Medical's former sales territory.

    **A. NuVasive did not materially breach the Agreement so as to excuse Absolute Medical's performance.**

First, Absolute Medical concedes that NuVasive did not materially breach the Agreement prior to November 27, 2017—the date it "resigned" from the Agreement.[3] Therefore, the Court can move to the issue of whether the Agreement's restrictive covenants are reasonable.

    **B. The Agreement's restrictive covenants are reasonable and enforceable.**

In fact, the restrictive covenants are valid and enforceable under Delaware law as they:

(a)  contain reasonable, one year temporal restrictions;

---

[3] Absolute Medical's counsel conceded this point to NuVasive's counsel in a May 21, 2018 telephone call. This concession is consistent with Absolute Medical's responses to interrogatories 9 and 10, which provide:

> Interrogatory 9 – Please refer to Exhibit A to NuVasive's Complaint for Injunctive Relief and Damages and the Agreement, and identify every provision in the Agreement that allows you to "resign" from the Agreement.
>
> **RESPONSE: Section 9.02 of the Sales Agreement allows Defendant to terminate the agreement due to a material breach.**
>
> Interrogatory 10 – If you contend NuVasive breached one or more of the allegations imposed on it by the Agreement, please state:
>
>     (a)    the date of the breach;
>     (b)    the contractual provision that NuVasive breached; and
>     (c)    a detailed summary of the breach.
>
> **RESPONSE: Plaintiff breached Article II of the Sales Agreement by failing to pay commissions due and owing to Defendant for November 2017 and any subsequent sales. Defendant suffered damages in the amount of $124,970.02 for Plaintiff's failure to pay earned commissions. Pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to view the Commissions Chart attached hereto as Exhibit "A."**

(Ab. Med. Interrog. Resp. at ¶¶ 9–10, Ex. A, attached as **Exhibit 1**). These interrogatory responses establish that Absolute Medical's claimed breach of the Agreement—the non-payment of commissions—occurred after Absolute Medical "resigned" from the Agreement. Further, as noted in NuVasive's reply brief, the Agreement specifically gives NuVasive the right to withhold commissions.

    (b)  contain reasonable geographic scopes as they are limited to Absolute Medical's sales territory;

    (c)  protect NuVasive's legitimate interests as NuVasive provided Absolute Medical with specialized training and trade secrets, and allowed it to serve as the face of NuVasive to NuVasive's customers; and

    (d)  operate to protect those interests as the one year restriction provides NuVasive with an appropriate period of time to protect its goodwill by introducing new sales representatives to its customers while allowing Absolute Medical to sell competing products outside of its NuVasive sales territory.

*See, e.g.*, *Kan Di Ki, LLC v. Suer*, No. 7937-VCP, 2015 WL 4503210, at *19 (Del. Ch. July 22, 2015). Indeed, Section 5.09(f) contains Absolute Medical's agreement that the restrictive covenants are reasonable and necessary to protect NuVasive's legitimate interests, and neither Absolute Medical's response (Doc. 38) nor its surreply (Doc. 53) in opposition to the motion for preliminary injunction claim that the restrictive covenants are not valid and enforceable.

    Further, in accord with Delaware law, Section 12.07 of the Agreement (Singer Dec., Doc. 19-1, at Ex. A) provides, in relevant part, that:

> [I]f a court holds that the duration, scope, geographic range, or any other restriction stated in any provision of this Agreement is unreasonable under circumstances then existing, the Parties agree that the maximum duration, scope, geographic range, or other restriction that the court deems reasonable under such circumstances will be substituted and that the court will have the power to revise any of those restrictions to cover the maximum period, scope, geographic range, and/or other restriction permitted by law.

*Knowles-Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 175 (Del. Ch. 1969) (stating that Delaware follows the "modern view" that a restrictive covenant should be enforced to the extent that it is reasonable to do so). Accordingly, if a restriction is overly broad, the Court should revise it so as to make it enforceable.

C. **Recently discovered evidence shows that the Court should extend the non-compete to Absolute Medical's successor in interest, AMS, as well as to the former Absolute Medical sales representatives who are subject to non-compete agreements, and to Soufleris.**

Finally, NuVasive received a significant amount of information in the last two weeks which demonstrates that the Court should extend the preliminary injunction to Absolute Medical's successor entity, AMS, as well as its former Absolute Medical sales representatives (Hawley and Miller), and Soufleris. Discovery and subpoena responses provided by Absolute Medical on May 11, 2018, Hawley on May 14 and 22, 2018, and AMS on April 26, 2018, as well as NuVasive's recent discovery that Soufleris and Hawley made false statements about the existence of certain sales representatives' (including Hawley's and Miller's) restrictive covenants, demonstrate that Soufleris is unlawfully attempting to avoid Absolute Medical's non-competition obligations by dissolving that entity and forming a new one which utilizes Absolute Medical's former sales representatives to sell competitive products to the same customers to whom Absolute Medical previously sold NuVasive products. As part of this scheme, Soufleris and Hawley consistently and falsely claimed— under oath and penalty of perjury—that some of Absolute Medical's sales representatives, including Hawley and Miller, refused to sign non-compete agreements and that such agreements do not exist.

1. **NuVasive's requested preliminary injunction should extend to AMS as Absolute Medical's successor in interest.**

Florida courts recognize that a successor entity can be liable for the obligations of its predecessor if "(1) the successor expressly or impliedly assumes obligations of the

predecessor, (2) the transaction is a de facto merger,[4] (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." *Etkin & Co. v. SBD, LLC*, No. 11-21321-CIV-LENARD/GOODMAN, 2015 WL 11714357, at *6 (S.D. Fla. Sep. 1, 2015) (quoting *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047 (Fla. 1982)). Under the mere continuation theory,[5] courts impose liability when the successor entity is "merely a continuation or reincarnation of the predecessor under a different name." *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 154 (Fla. 4th DCA 1994); *TTT Foods Holding Co. Ltd. Liab. Co. v. Namm*, No. 16-cv-81798, 2017 WL 2901329, at *5–7 (S.D. Fla. May 19, 2017) (holding the successor entity of an LLC, which became insolvent after plaintiff obtained a judgment, was a mere continuation of the predecessor entity, because the LLC and the predecessor entity shared the same office location, customers, manufacturers, freight companies, products, and member-manager). Stated another way, liability attaches when the successor entity "is merely a 'new hat' for the seller, with the same or similar management and ownership." *Id.* at 154 (citations omitted); *see also Matrix Essentials v. Quality King Distribs., Inc.*, 346 F. Supp. 2d 384, 391 (E.D.N.Y. 2004) ("Where mere 'superficial' changes in corporate name or form have been made, the court may enforce an injunction against a successor to the bound corporation.").

---

[4] As noted in *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d at 153–54:

> [A] de facto merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger. To find a de facto merger there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location; a continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities. All of the events, such as dissolution, need not occur at the same time.

[5] At this time, NuVasive believes that the mere continuation theory is most appropriate but acknowledges that there are a host of veil piercing arguments that could be relevant to this scenario.

7

The main inquiry is "whether there has been a change in form, but not in substance." *Lab. Corp. of Am. v. Prof'l Recovery Network*, 813 So. 2d 266, 270 (Fla. 5th DCA 2002); *Oman Int'l Fin. Ltd. v. Hoiyong Gems Corp.*, 616 F. Supp. 351, 361 (D.C.R.I. 1985) ("The bottom-line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other."). Continuity of the successor entity is evidenced by "'such things as the same management, personnel, assets, location and stockholders.'" *TTT Foods Holding Co.*, 2017 WL 2901329, at *5 (quoting *Munim,* 648 So. 2d at 154).

In *Munim*, a company with a single shareholder signed a doctor to a three-year contract, which included a non-compete provision. *Munim*, 648 So. 2d at 148. After the company terminated him, the doctor started a competing medical practice. *Id*. The company sued the doctor and the medical practice for breach of the covenant not to compete. *Id.* Twelve days after the court entered a judgment for the company, the doctor started a second medical practice, which "looked curiously like the old [medical practice]." *Id*. at 150. The Fourth District Court of Appeal affirmed the lower court's imposition of liability against the second medical practice because the doctor's first medical practice ceased business shortly after the judgment and the second medical practice began rendering services the next day; the doctor was the sole shareholder of both the first and second medical practices; both medical practices rendered the same type of medical services; and both medical practices used the same files, nurses, clerical help, and office manager. *Id*. at 154.

The situation at bar is strikingly similar to the one in *Munim*. Soufleris is the president and registered agent of Absolute Medical and AMS; as well as Absolute Medical's

sole member and, upon information and belief, AMS' sole member. (Soufleris Dec., Doc. 38-1, at ¶ 2; Ab. Med. Art. Org., attached as **Exhibit 2**; AMS Art. Org. and 2018 Fla. LLC Ann. Rep., attached as collective **Exhibit 3**). He formed AMS on November 30, 2017—three days after Absolute Medical "resigned" from the Agreement—and then dissolved Absolute Medical on February 27, 2018.[6] (Soufleris Dec., Doc. 38-1, at ¶¶ 13–15; **Exhibit 3** at Art. IV).

Further, Absolute Medical's interrogatory responses state that its last NuVasive sale took place on December 3, 2017, and that it has made no Alphatec sales. (**Exhibit 1** at ¶¶ 13–14). However, AMS' response to a subpoena issued by NuVasive acknowledges that it has contracts with Alphatec, Soufleris, Hawley, and Miller—but refuses to produce them. (**Exhibit 4** at ¶¶ 2, 5–8). Consistent with these responses, Hawley's interrogatory responses state that he made his last NuVasive sale (presumably on behalf of Absolute Medical) on December 1, 2017, and that his first Alphatec sale (presumably on behalf of AMS) took place on December 5, 2017. (Hawley Interrog. Resp., attached as **Exhibit 6**, at ¶¶ 6–7).

Similarly, Absolute Medical's responses to NuVasive's request for production claim that it possesses no communications that were sent to or received from Dr. Paul Sawin since June 1, 2017. (**Exhibit 5** at ¶ 4). But AMS' subpoena response acknowledges communications with Dr. Sawin and other surgeons to whom Absolute Medical made sales

---

[6] Absolute Medical's dissolution date is reflected on an electronic report available on Sunbiz.org. Despite these indicators that Soufleris dissolved Absolute Medical solely to avoid its contractual obligations to NuVasive, AMS—after Absolute Medical's lawyers accepted a subpoena directed to it—refused to produce documents related to, among others: (a) transactions between it and Absolute Medical; (b) its initial capitalization; or (c) contracts that were assigned to it. (Subpoena Resp., attached as **Exhibit 4**, at ¶¶ 9, 11, 18). Similarly, Absolute Medical refuses to produce any documents relevant to its financial condition. (Ab. Med. Req. Prod. Resp., attached as **Exhibit 5**, at ¶¶ 5–12). NuVasive filed a motion to compel AMS' responses to the subpoena after an unsuccessful meet and confer session (Mot. Comp., Doc. 57) and anticipates filing a motion to compel Absolute Medical's responses.

in November 2017—Drs. Rafael Allende, Paul Rodas, and Matthew Burry—yet it refuses to produce them. (**Exhibit 4** at ¶¶ 13–17; **Exhibit 1** at Ex. A). These communications are particularly relevant as the former Absolute Medical sales representatives use the same email addresses while working for AMS that they used while working for Absolute Medical.[7]

    **2. The Court should extend the requested preliminary injunction to those sales representatives who Soufleris and Hawley falsely claimed are not subject to non-compete agreements.**

An additional reason for extending the injunction to Hawley and Miller is that, in contrast to Soufleris' and Hawley's consistent misrepresentations, NuVasive recently discovered several 2013 Contractor Agreements which are governed by Florida law and contain reasonable non-competition and non-solicitation obligations between Absolute Medical and its sales representatives including, without limitation, Hawley and Miller. (Tyree Dec., attached as **Exhibit 7**, at ¶¶ 4–5, Exs. A–D). As NuVasive is a third-party beneficiary of these agreements, it can enforce them in the event Absolute Medical refuses to do so. *Found Health v. Westside EKG Assoscs.*, 944 So. 2d 188, 194–95 (Fla. 2006) (stating that a third-party beneficiary of a contract establishes a cause of action by proving: (a) the existence of a contract; (b) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party;[8] (c) breach of the contract by the contracting party; and (d) damages to the third party resulting from the breach).

---

[7] The Agreement's Key Terms Summary reveals that the email Soufleris utilized for Absolute Medical—which ends in "absolute-med.com"—is the same he used to send Absolute Medical's November 27, 2017 "resignation" email. (Singer Dec., Doc. 19-1, at Ex. A, Ex. B). Likewise, on December 12, 2017—eleven days after his last NuVasive sale and seven days after his first Alphatec sale—Hawley used an email address ending with "absolute-med.com" in a December 12, 2017 email to Alphatec. (*Id.* at Ex. C).

[8] This element is met when the "pre-contract dealings of the parties, the contract itself, and the subsequent dealings between the parties showed that the clear intent and purpose of the contract was to directly and

A timeline of these deceptive acts reveals that:

**November 28, 2017**: NuVasive put Absolute Medical on notice of potential litigation and instructed it to preserve relevant evidence. (Cardwell Dec., Doc. 19-2, at Ex. A).

**December 5, 2017**: In an email exchange, NuVasive's attorney asks Absolute Medical's attorney to identify the sales representatives who remain affiliated with Absolute Medical—Thad Bragulla ("Bragulla") and Brennan Burkhart ("Burkhart")—and to provide the non-compete agreements of those who allegedly separated from Absolute Medical—Hawley, Miller, and Gottstein. (*Id.* at Ex. B).

**December 13, 2017**: NuVasive's attorney sends Alphatec's attorney a letter which informs him that NuVasive believes Hawley and Miller are violating their non-compete obligations by working for Alphatec in their former NuVasive sales territories. (*Id.* at Ex. C).

**February 6, 2018**: Bragulla submits an unchallenged declaration which establishes that Hawley and Miller are working for Alphatec in their former NuVasive sales territories. (Bragulla Dec., Doc. 19-3, at ¶¶ 4–12).

**February 26, 2018**: Soufleris submits a declaration which claims, among other things, that "Absolute Medical was not able to secure employment contracts or non-compete agreements for all its sales representatives." (Soufleris Dec., Doc. 38-1, at ¶ 5).

**May 10, 2018:** Absolute Medical's response to interrogatory 15 (verified by Soufleris) states that it "is not a party to any other contracts or agreements, and its response to request for production 1 states that it possesses no contracts or other agreements with Hawley, Miller, or Gottstein. (**Exhibit 1** at ¶ 15; **Exhibit 5** at ¶ 1).

**May 14, 2018**: Hawley's response to interrogatory 10 and his response to request for production 1 state, in relevant part, that he "did not sign a non-compete agreement with Plaintiff or with Absolute Medical, LLC" and that he "is not subject to a non-compete agreement with Absolute Medical, LLC or NuVasive, respectively." Similarly, his response to request for production 2 provides that he possesses no

---

substantially benefit the plaintiff." *Steadfast Ins. Co. v. Corp. Prot. Sec. Grp., Inc.*, 554 F. Supp. 2d 1335, 1338 (S.D. Fla. 2008). Respectfully, a plain meaning of the 2013 Independent Contractor Agreements demonstrates that NuVasive is a third-party beneficiary as, without limitation, it defines "Manufacturers" as an entity that supplies products to Absolute Medical, and states that the sales representatives cannot, during their employment and for one year after that employment ends, compete with those Manufacturers, solicit the employees, independent contractors, or other agents of the Manufacturers, and retain the confidentiality of the Manufacturer's trade secrets. (**Exhibit 7** at § 12).

contracts or other agreements between himself, and AMI,[9] AMS, "and/or any other entity owned or controlled by Soufleris."  (**Exhibit 6** at ¶ 10; Hawley Req. Prod. Resp., attached as **Exhibit 8**, at ¶ 1)

It appears that Soufleris and Hawley made these untruthful statements about the existence of the former Absolute Medical's sales representatives' contractual obligations solely to aid in their scheme to unlawfully convert Absolute Medical's business to AMS. Nevertheless, the fact that Absolute Medical required Hawley and Miller to sign these agreements is consistent with: (a) contractual obligations Absolute Medical owed to NuVasive; and (b) the fact that Soufleris—albeit through AMI[10]—required the two sales representatives whom its attorney claimed to be still affiliated with Absolute Medical in the December 5, 2017 email exchange to sign contracts containing restrictive covenants.[11] (Bragulla Dec., attached as **Exhibit 10**, Ex. A § 5; Burkhart Dec., attached as **Exhibit 11**, Ex. A § 5).

---

[9] AMI stands for Absolute Medical, Inc.  It is an unformed entity which Soufleris utilizes in conducting business on behalf of Absolute Medical.  More specifically, as shown below, Soufleris required several Absolute Medical sales representatives to sign non-compete agreements with AMI.

[10] AMI failed to respond to a subpoena NuVasive issued to it.  Soufleris' wife, Lindsey Soufleris, accepted service of this subpoena at 10525 Cromwell Grove Terrace, Orlando, Florida (which NuVasive reasonably believes to be his residence), on April 13, 2018, at 7:50 p m. (Aff. of Serv., attached as **Exhibit 9**). This is the same address identified as AMI's address on its Independent Contractor and Termination of Contract General Release Agreements.  However, NuVasive's review of Florida's Secretary of State's records failed to identify a company named "Absolute Medical, Inc." affiliated with that address or with Soufleris. That said, Florida Statutes Annotated Sections 607.1904 and 607.024 prohibit Soufleris from relying on his failure to actually form this corporation as grounds for not responding to the subpoena.

[11] Despite the fact that NuVasive's contract is with Absolute Medical and not AMI, these Independent Contractor Agreements:

-identify AMI as the "Distributor;"
-state that "Distributor is engaged in the business of representing NuVasive, Inc.;"
-engage the sales representatives to sell NuVasive's products;
-fully comply with Section 5.09(e) of the Agreement's requirement that Absolute Medical require all of its sales representatives to execute contracts which contain the same restrictive covenants that the Agreement imposes on it; and
-reflect that Soufleris is AMI's president.

The Court should not allow the former Absolute Medical sales representatives to benefit from Soufleris' and Hawley's misstatements about the existence of their restrictive covenants or Soufleris' scheme to dissolve Absolute Medical and form a new company that sells the same types of products to the same customers through the same sales representatives. In fact, the Court should enjoin Absolute Medical's sales representatives (Hawley and Miller) from competing with NuVasive because: (a) contrary to the untruthful testimony in the record, they are subject to agreements which contain non-competition and non-solicitation obligations; and (b) even if they had no such agreements, their current employer and Absolute Medical's successor, AMS, cannot do what Absolute Medical is contractually prohibited from doing.

**3. The Court should extend the requested preliminary injunction to Soufleris.**

Finally, the Court should also extend the requested preliminary injunction to Soufleris under either Florida Statute Sections 605.0101 *et seq.* or a common law piercing the corporate veil theory. Under the Florida Revised Limited Liability Company Act, members may be liable for: (a) breaching or failing to perform the duties as a member; and (b) if the member's breach of (or failure to follow) those duties constitute "recklessness or an act or omission that was committed in bad faith or with malicious purpose." Fla. Stat. § 605.04093. Similarly, under Florida law, liability may be extended to the member of an LLC by piercing the corporate veil if:

> (a) the member dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;

13

    (b) the corporate form must have been used fraudulently or for an improper purpose;[12] and

    (c) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998). Under the common law theory, "[w]hen the conception of corporate entity is employed to defraud creditors, to evade an existing obligation . . . the courts will draw aside the web of entity, will regard the corporate company as an association of live, up-and-doing, men and women shareholders, and will do justice between real persons." *Dania Jai-Alai Palace, Inc.*, 450 So. 2d at 1117 (citations omitted).

There is no doubt that Soufleris, as Absolute Medical's sole member, dominated Absolute Medical and owed Absolute Medical fiduciary duties of loyalty and care, and that he breached those duties in bad faith and with malicious purposes by, without limitation:

    (a) dissolving Absolute Medical three months after receiving $636,403 from NuVasive to offset a reduction in his territory (Singer Sec. Dec., Doc. 48-1, at ¶¶ 2–3);

    (b) after selling $633,088.10 of NuVasive products in November 2017 (and earning $124,970.02 of commissions), dissolving Absolute Medical and forming AMS to sell the same types of products sold by Absolute Medical to Absolute Medical's customers, through Absolute Medical's sales representatives (who continued to use their same email addresses) (**Exhibit 1** at ¶ 3, Ex. A); and

    (c) providing knowingly false information to NuVasive and the Court about the existence of Absolute Medical's sales representatives' non-competition obligations in an attempt to consummate his scheme of moving Absolute Medical's business to AMS.

---

[12] For example, Florida courts found an improper purpose where the corporate entity is "a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984) (citations omitted).

Further, Soufleris' requirement that former Absolute Medical sales representatives Bragulla and Burkhart sign contracts which contain restrictive covenants with AMI (even though they worked for Absolute Medical) shows his complete disregard for the corporate form. **Exhibit 10** at Ex. A § 5; **Exhibit 11** at Ex. A § 5).

In sum, Soufleris is perpetrating a fraud on NuVasive and the Court. Pursuant to the Agreement's terms and conditions, NuVasive paid Absolute Medical nearly $640,000 in August 2017. After that point, his sales representatives continued to sell a massive amount of NuVasive products. Indeed, Exhibit A to Absolute Medical's interrogatory responses demonstrate that, in the month Soufleris illegally "resigned" from NuVasive, the two sales representatives he took to AMS earned nearly $125,000 in commissions[13] on sales made to the exact same surgeons they now service for AMS. Respectfully, Absolute Medical's dissolution was a sham and Soufleris should not be allowed to profit from it. Accordingly, NuVasive requests that the Court extend the preliminary injunction to him.

## CONCLUSION

In conclusion, if the restrictive covenants found in the Agreement and the newly-discovered 2013 Independent Contractor Agreements were not enforceable, Soufleris would not have dissolved Absolute Medical and formed AMS; nor would he and Hawley have consistently made false statements about the existence of the 2013 Independent Contractor Agreements. As Absolute Medical and AMS sell the same types of products to the same customers through the same sales representatives, it is clear that Soufleris committed these acts solely to escape Absolute Medical's, the former Absolute Medical sales representatives',

---

[13] This annualizes to $1,500,000 per year, which is a significant sum for a small company with little to no overhead.

and his contractual obligations. Respectfully, the Court should see through his charade and issue an injunction which precludes Soufleris, Absolute Medical, AMS, and all of their sales representatives from competing with business within the sales territory that NuVasive assigned to Absolute Medical.

Dated: May 23, 2018

                                      Respectfully submitted,

                                      /s/Diana N. Evans
Diana N. Evans (Fla Bar No. 98945)
Dnevans@bradley.com
R. Craig Mayfield (Fla Bar No. 0429643)
CMayfield@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
2200 North Tampa Street, Suite 2200
Tampa, FL 33602
Phone: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq. (Pro Hac Vice)
M. Thomas McFarland, Esq. (Pro Hac Vice)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
tmcfarland@gsrm.com

**Attorneys for NuVasive, Inc.**

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 23, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system. The party or parties served are as follows:

Bryan Busch
Adams and Reese LLP
3424 Peachtree Road, NE, Suite 1600
Atlanta, GA 30326
Phone: (470) 427-3702
Fax: (470) 427-3676
bryan.busch@arlaw.com

Laura H. Mirmelli
Adams and Reese LLP
3424 Peachtree Road, NE, Suite 1600
Atlanta, GA 30326
Phone: (470) 427-3716
Fax: (404) 500-5975
laura.mirmelli@arlaw.com

Chantal M. Pillay
Adams and Reese LLP
350 E. Las Olas Boulevard, Suite 1110
Ft. Lauderdale, FL 33301
Phone: (954) 541-5390
Chantal.pillay@arlaw.com

Louis M. Ursini
Adams and Reese LLP
101 E. Kennedy Boulevard, Suite 4000
Tampa, FL 33602
Phone: (813) 227-5536
Fax: (813) 227-56-36
Louis.ursini@arlaw.com

*Attorneys for Defendants*

                                              s/*Diana Evans*
                                              Diana Evans
                                              Attorney for NuVasive, Inc.