**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

NUVASIVE, INC.           )
           )
           )
    Plaintiff,      )
           )
VS            )     Case No.: 6:17-cv-2206-Orl-41GJK
           )
ABSOLUTE MEDICAL , LLC, GREG  )
SOUFLERIS, DAVE HAWLEY, RYAN  )
MILLER, and ABSOLUTE MEDICAL  )
SYSTEMS, LLC.      )
           )
    Defendant.     )
_____ )

## DEFENDANTS'  HEARING MEMORANDUM

Defendant, ABSOLUTE MEDICAL, LLC ("Absolute Medical"), Absolute Medical Systems, LLC ("AMS"), Greg Soufleris ("Soufleris"), Dave Hawley ("Hawley"), and Ryan Miller ("Miller") (collectively referred to as "Defendants"), by and through their undersigned counsel, hereby files this Hearing Memorandum for the evidentiary hearing on June 28, 2018, on Plaintiff's, NUVASIVE, INC. ("Plaintiff" or "NuVasive"), request for a preliminary injunction to enforce non-competes against Defendants.

**I.**    **NuVasive Has Failed to Meet its Burden in Establishing All of the Elements for a Preliminary Injunction to Enforce the Non-Competes.**

The relevant portion of section 5.09(c) of the Sales Agreement states as follows:

During the Term and for a period of twelve (12) months thereafter, Representative and Representative Affiliates shall not (i) represent, promote, sell, solicit, or otherwise commercialize (directly or indirectly) any products or services that are, in NuVasive's reasonable judgment, competitive with any of NuVasive's products or services (including the Products) without the prior written consent of NuVasive . . .

NuVasive is asking this Court to enforce a non-compete against Absolute Medial that is unreasonable in time and geography and does not protect a legitimate business interest, and is further requesting this Court impermissibly extend such an unreasonable restraint to Defendants. Yet, NuVasive has failed to demonstrate each of the elements necessary for issuance of a preliminary injunction against any of the Defendants.   A preliminary injunction 'is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites[:]" (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury to plaintiff outweighs whatever the damage the proposed injunction may cause defendant; and (4) the injunction is not adverse to the public interest. *Llovera v. Florida*, 576 F. App'x 894m 896 (11th Cir. 2014); *Lucky Cousins Trucking, Inc. vs. QC Energy Res. Tex., LLC*, 223 F. Supp. 3d 1221, 1224, (M.D. Fla. 2016); *AM Gen. Holdings,* 2012 LEXIS 289 at *12.

Under Delaware law, for substantial likelihood of success on the merits, the moving party must establish, by clear and convincing evidence, that a non-compete is 1) reasonably limited temporally, (2) reasonably limited geographically, (3) protects the legitimate interests of the employer, and (4) its operation reasonably protects those interests. *McCann Surveyors, Inc.,* 611 A.2d at 3.   Further, it "must survive a balancing of the equities in order to be enforceable." *Hough Assocs. v. Hill*, 2007 LEXIS 5, at *48 (Del. Ch. 2007). "If a court determines that the anticompetitive effects of the restrictive practices outweigh the pro-competitive justifications it offers, the contract employing it will be struck down." *Hammermill Paper Co. v. Palese,* 1983 LEXIS 400, *13 (Del. Ch. 1983).

**A. The Non-Compete Provision Contains an Unreasonable Restraint on Time and Geography.**

Under Delaware law, "[r]easonableness of duration in a non-competition agreement must be determined based upon the nature of the employee's position and the context of a particular industry." *Del. Express Shuttle v. Older,* 2002 Del. Ch. LEXIS 124, *1*. Covenants not to compete "covering limited areas for two or fewer years generally have been found reasonable." *Elite,* at 28-29.   Further, the lack of a geographical restriction may prove fatal to the enforceability of a non-compete provision. *Del. Express Shuttle, Inc.,* 2002 Del. Ch. LEXIS 124, at *47-48 citing *Caras v. American Original Corp.*, 1987 Del. Ch. LEXIS 467 (Del. Ch. July 31, 1987) (finding that "[a] restrictive covenant not to compete which is not reasonably limited geographically, therefore, is unreasonable and unenforceable.").

Here, the covenant not to compete in section 5.09(c)(i) of the Sales Agreement contains an unreasonable time restraint of almost five years.  Section 5.09(c)(i) restricts Absolute Medical for the "Term" plus 12 months. "Term" is defined as five years from the "Effective Date [January 1, 2017]."   As of December 29, 2017, the date this action was filed, there were approximately four years remaining in the Term. Additionally, section 5.09(c)(i) fails to include a geographical restraint at all. [1]   As such, five years is an unreasonable amount of time to restrict Absolute Medical from competing with NuVasive.

**B. NuVasive Does Not Have a Protectable Legitimate Business Interests.**

Delaware courts will not enforce a non-compete "that is more restrictive than an employer's legitimate interests justify or that is oppressive to an employee." *Elite Cleaning Co.,* 2006 LEXIS at *28 (finding that "[a] court may refuse to enforce the covenant by injunction if

---

[1] Although subsections 5.09(c)(ii) and (iii) contain a geographical restraint of the "Territory" as defined by the Sales Agreement, subsection (5.09(c)(i) is the specific non-compete provision and it contains no geographical restraint.

the employer's interests are 'slight or ephemeral' but the consequences to the employee would be 'grave.'"). Although Delaware courts recognize protection of employer's goodwill and confidential information from misuse as legitimate, courts will also consider whether the restriction on competition would be an undue hardship on the employee. *Id.* at *12-13. In determining whether to enforce non-compete, "a central aspect of the analysis is a balancing of the harms that are threatened to plaintiff and the consequences of specific enforcement to the defendant," such as its effect on his life subsequently. *McCann Surveyors, Inc.*, 1987 LEXIS at * 4. Further, "[a] covenant not to compete found in an agreement with an independent contractor may not be as restrictive as a covenant found in an agreement with an employee." *EDIX Media Grp., Inc. v. Mahani*, 2006 Del. Ch. LEXIS 207, *1. The relationship between an employer and employee is more intimate than an independent contractor relationship as independent contractors "maintain a greater degree of control over how they accomplish tasks; remain engaged to a much greater extent in a distinct occupation or business (as opposed to an employee, who may be asked to perform other reasonable tasks as required); and traditionally work with a lesser degree of supervision." *Id.* Thus "[t]he legitimate economic interests of an employer in restricting the substantially similar activities of an independent contractor will be more limited than they would be with respect to an employee." *EDIX Media Group, Inc.,* 2006 LEXIS, at *8.

In this case, NuVasive failed to demonstrate that it had a protectable business interest, that it provided Absolute Medical with confidential information outside the public domain or that it entrusted Absolute Medical with protectable trade secrets. Furthermore, NuVasive's attempt to stop Absolute Medical from selling medical products prevents physician customers from

exercising their professional judgment in determining which brand of medical device is best for their patients. As such, the non-compete is unenforceable as an unreasonable restraint on trade.

### C. The Non-Competes are Unenforceable as Overly Broad and Vague

The non-compete in the Sales Agreement is also unenforceable as vague and overly broad as it unreasonably restricts Absolute Medical beyond NuVasive's legitimate business interests. "Regardless of the presence of reasonably limited geographical and temporal restrictions, the spectrum of activities prohibited by an agreement not to compete may be vague or overly broad and, therefore, not enforceable." *Del. Express Shuttle, Inc.,* 2002 LEXIS at *44; *Norton Petroleum Corp*. v. Cameron*, 1998 Del. Ch. LEXIS 32 (Del. Ch. Mar. 5, 1998).

Here, section 5.09(c)(i) of the Sales Agreement unreasonably restricts the services that Absolute Medical can provide or engage in during the non-compete period as the term "Products" is not defined or listed in the Sales Agreement and the inclusion of the wholly discretionary provision "in NuVasive's reasonable judgment" is vague and overly broad such that is it entirely unclear what activities Absolute Medical is prohibited from engaging in.  The non-compete also unreasonably includes future products and services of NuVasive making the entire provision invalid.

### II.  **Absolute Medical, AMS, and Soufleris Have Not Violated the Non-Compete.**

Even assuming *arguendo* that the non-compete is valid, Absolute Medical is complying with the non-compete as it is no longer operating, which necessarily means that it is not competing with NuVasive. (Soufleris Dec. at ¶ 14).   Further, AMS intends to prove that it is not operating in the "territory" set forth in the Sales Agreement and, thus, is in complete compliance with the non-complete[2].  Notably, NuVasive admits that "allowing Absolute Medical [and AMS]

---

[2] AMS maintains that the non-compete does not bind it as AMS is a separate, independent entity (see section II of Def's Hearing Memo).

to sell competing products outside of its NuVasive sales territory" would not be a violation of the non-compete. (NuVasive Pre-Hearing Memo at 5). Thus, Absolute Medical, AMS, and Soufleris are not competing with NuVasive. Accordingly, NuVasive cannot show irreparable harm as required for issuance of a preliminary injunction and its request must be denied.

### III. NuVasive Cannot Extend the Preliminary Injunction to AMS Because AMS is Not a Successor to Absolute Medical.

NuVasive seeks to enjoin AMS from allegedly competing with NuVasive by impermissibly attempting to extend the non-compete under a successor liability theory. Traditional corporate law does not impose liabilities on a predecessor corporation; however, Florida does allow successor entity liability where the new entity is merely a continuation of its predecessor.[3] *Amjad Munim. P.A. v. Azar*, 648 So. 2d 145 (Fla. 4th DCA 1994). To determine a continuation, courts conduct a fact-intensive inquiry, including whether the new company has the same location, personnel, clients, day-to-day operations, bank accounts, furniture, office supplies, signage, and whether it assumed the debt of the prior entity.[4] AMS, however, is a wholly independent entity that has its own email address, fax number, company logo, business card, credit cards, bank account, office furniture and supplies – which are all different from Absolute Medical. In fact, AMS's office is located more than thirty miles from Absolute Medical's old office. Most importantly, it does not have the same clients as Absolute Medical since AMS operates outside of Absolute Medical's Sales Agreement territory.

Even if this Court finds that AMS is a successor to Absolute Medical, NuVasive has cited no legal authority to support an extension of the non-compete to AMS under the "mere

---

[3] There are other possible ways to pierce the veil; however, NuVasive has only raised arguments under the "mere continuation" theory.

[4] *Centimark Corp. v. A to Z Coatings*, 288 Fed. Appx. 610 (11th Cir. 2008); *Munim*, 648 So.2d at 154; TTT *Food Holding Co. LLC v. Namm*, 2017 LEXIS 77402 (S.D. Fla. 2017); *Calabrales v. Las Brisas*, 2012 US Dist. LEXIS 197932 (S.D. Fla. 2012); *Lab Corp v. Professional Recovery Network*, 813 So. 2d 271 (Fla. 5th DCA 2002).

continuation" theory. [5]   In its Pre-Hearing Memo, NuVasive relies on the case of *Munim* to support its position that a non-compete can be extended to a successor entity.  648 So. 2d 145 (Fla. 4th DCA 1994).  However, NuVasive mischaracterizes the importance of the non-compete in *Munim*. The only mention of the non-compete was to establish the procedural history of the case. The court did not analyze the enforceability of the restrictive covenant or extend it to a successor entity. Accordingly, NuVasive's request to extend the preliminary injunction to AMS should be denied.

## IV. NuVasive Cannot Pierce the Corporate Veil and Extend the Preliminary Injunction to Greg Soufleris.

NuVasive claims that the preliminary injunction[6], if issued, should extend to Soufleris under Fla. Stat. §§ 605.0101 and 605.04093, Florida Revised Limited Liability Act (the "Act"), and under a common law "piercing the corporate veil" theory. (*See* NuVasive's Pre-Hearing Memo at 13). Prior to analyzing the elements of injunctive relief, NuVasive must make a preliminary showing that Absolute Medical's corporate veil should be pierced[7].  First, Fla. Stat. § 605.04093 states that a manager/member is not personally liable for *monetary damages* unless he breaches certain duties; thus, nothing in the Act authorizes the issuance of an injunction. Second, under Florida Supreme Court's strict standard, the corporate veil will not be pierced absent a showing of improper conduct. *Dania Jai-Alai, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984). NuVasive has the burden to prove by preponderance of the evidence that:

---

[5] Rather, this theory of successor entity liability has been widely limited to post-judgment situations where a creditor seeks to collect against a successor corporation as the alter ego of its processor.  *See Amjad Munim. P.A. v. Azar*, 648 So. 2d 145 (Fla. 4th DCA 1994); *Laboratory Corp. of America v. Professional Recovery Network*, 813 So. 2d 271 (Fla. 5th DCA 2002); *Longo v. Associated Limousine Servs.,* 236 So. 3d 1115 (Fla. 4th DCA 2018).
[6] Since NuVasive failed to file a motion setting forth its legal basis for seeking injunctive relief against Soufleris, Soufleris is left to respond to the allegations against him in NuVasive's Pre-Hearing Memorandum. Notably, NuVasive also failed to include a count for injunctive relief against Soufleris in its Amended Complaint.
[7] Notably, NuVasive failed to cite any legal support for extending a non-compete to a Soufleris, as a principal, under a "piercing the corporate veil" theory. Therefore, NuVasive's request for a preliminary injunction against Soufleris should be denied.

(1) a shareholder  dominated and controlled the corporate to such an extent that the corporation's independent existence was in fact nonexistent and the shareholder was in fact the alter ego of the corporation;

(2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporation form caused injury to the claimant

*Beach Cmty. Bank v. Cannon (In re Cannon),* 2017 Bankr. LEXIS 4456, *8 (M.D. Fla. 2017). The fact that one individual is the owner or principal of a corporate entity "does not lead inevitably to the conclusion that the corporate entity is a fraud or that [he] is necessarily the alter ego . . ." *Sykes*, 450 So. 2d at 1120. "If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system." *Sykes*, 450 So. 2d at 1120.  Further, even assuming *arguendo* Soufleris is the alter ego, NuVasive must show his "improper conduct" damaged it. "Improper conduct is present only in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.'" *N. Am. Clearing, Inc.*, 666 F. Supp. 2d at 1306 (citing *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998)).  A sole principal's receipt of all corporate income does not, alone, support piercing the corporate veil. *N. Am. Clearing, Inc.*, 666 F. Supp. 2d at 1308[8] (citing *Ally v. Naim*, 581 So. 2d 961, 963 (Fla. 3d DCA 1991). "If this requirement were not made then every judgment against a corporation could be exploited as a vehicle for harassing the stockholders and entering upon fishing expeditions in to their personal business asserts." *Sykes*, 450 So. 2d at 1120.

---

[8] In *N. Am. Clearing, Inc.*, a company sued a corporate officer of a stock brokerage firm alleging breach of contract. 666 F. Supp. 2d 1299 (M.D. Fla. 2009).  The company asserted that the officer intentionally caused his brokerage to breach the agreement and steal the company's software.  *Id.* at 1303-1304.  However, "[c]ausing a corporation to intentionally breach a contract or commit conversion, without more, does not mislead or defraud creditors such that the corporate veil should be pierced." *Id.* at 1308. Even if the facts show that the business affairs have been poorly handled, without more, this does not justify piercing the corporate veil. *Id.* (citing *Ally,* 581 So. 2d at 962-63).  The court found that even if the officer's actions caused the brokerage to breach the contract or convert the company's software, he could not be held personally liable because his conduct did not involve any improper use of the brokerage's corporate form. *Id.*

Here, Soufleris followed all of the corporate formalities in forming and maintaining Absolute Medical, including registering it and filing annual returns with the Florida Secretary of State, filing initial Articles of Organization, preparing an Operating Agreement, obtaining a federal tax identification number, filing federal income taxes with the Internal Revenue Service, and obtaining general liability insurance. Further, NuVasive cannot show that Absolute Medical was used for an improper purpose as it was actually NuVasive that insisted Soufleris create Absolute Medical for their business relationship. Additionally, Soufleris has never commingled his personal funds with Absolute Medical funds or used Absolute Medical funds for his own or his family's personal benefit. Absolute Medical had its own bank account, business credit cards, and separate accounting books. As such, it is clear that Absolute Medical is an independent and distinct entity from its principal, Soufleris, and NuVasive cannot pierce the corporate veil.

## V. NuVasive Cannot Enforce A Non-Compete Agreement Against Hawley and Miller As No Such Written Agreement Exists.

NuVasive's request for preliminary injunction against Hawley and Miller should be denied as there are no valid, written agreements in operation. The 2013 Independent Contractor Agreements between Absolute Medical and Hawley and Miller, separately, ("2013 ICAs") are expired[9] and did not include NuVasive as a party or third party beneficiary[10]. There are no other written agreements to be enforced by NuVasive under any theory of law.

---

[9] Even if the 2013 ICAs automatically renewed for successive one-year terms, there are subsequent, superseding independent contractor agreements between Absolute Medical and Hawley and Miller, separately, for the years of 2014, 2015, and 2016. Under Florida law, a novation is the mutual agreement between parties to an existing contract for its discharge by substitution of a new, valid obligation. *See generally Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319 (S.D. Fla. 2004). There are four elements necessary to establish a novation: "(1) the existence of a previously valid contract; (2) the agreement to make a new contract; (3) the intent to extinguish the original contractual obligation; and (4) the validity of the new contract." *Id.* at 1331. "Existence of a novation must be implied as a matter of law in those instances where the parties enter into an entirely new and unambiguous agreement of equal or greater dignity to the agreement first made with respect to the same subject matter." *S.N.W. Corp. v. Hauser,* 461 So. 2d 188, 189 (Fla. 4th DCA 1984) (finding that a novation occurred when plaintiffs executed new contracts for the same subject matter). Further, the 2014, 2015, and 2016 ICAs contain "entire agreement" clauses, which specifically state that those agreements supersede all prior agreements.

**VI. <u>NuVasive's Request for Preliminary Injunction Against AMS, Soufleris, Hawley, and Miller Should Be Denied as Procedurally Defective.</u>**

NuVasive failed to file a motion requesting injunctive relief against AMS, Soufleris, Hawley, and Miller as required by the Federal Rules of Civil Procedure and, therefore, this request for preliminary injunction should be denied as it is procedurally defective.  Rule 7(b) states that "[a] request for a court order must be made by a motion."  Fed. R. Civ. P. 7(b).  It is not appropriate to seek an order for affirmative relief in a pre-hearing memorandum.  *Armington v. Dolgencorp, Inc.*, 2009 U.S. Dist. LEXIS 9694, at *2 (M.D. Fla. 2009); *News Am. Mktg. FSI LLC v. Four Corners Direct, Inc.*, 2016 U.S. Dist. LEXIS 82712, *3 (M.D. Fla. 2016).  Pursuant to the rule, the motion must be in writing, state with particularity the grounds for seeking the order, and state the relief sought. *Armington,* 2009 U.S. Dist. LEXIS 9694, at *2 (M.D. Fla. 2009).

Further, even if this request was proper, the request should otherwise be denied for failure to comply with Local Rule 3.01(g). *See*  Local Rule 3.01(g), United States District Court, Middle District of Florida; *Brito v. City of Jacksonville,* 2018 U.S. Dist. LEXIS 2386, *2 (M.D. Fla. 2018). Local Rule 3.01(g) requires the moving party to certify that it has conferred with opposing counsel in good faith to resolve the issue raised by the motion and advising the Court whether opposing counsel agrees to the relief requested. *See* Local Rule 3.01(g); *Brito,* 2018

---

[10]NuVasive is not a party to the 2013 ICAs and, thus, has no standing to enforce the non-competes.  Although Florida law allows for a third party beneficiary to enforce a non-compete, the third party beneficiary must be expressly named in the contract containing the non-compete and such contract must contain express language notifying the employee of the right of a third party to enforce such covenant. Section 524.335( f) states as follows:

> The court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract or is an assignee or successor to a party to such contract, provided:
>> 1.   In the case of a third-party beneficiary, *the restrictive covenant expressly identified the person as a third-party beneficiary of the contract and expressly stated that the restrictive covenant was intended for the benefit of such person* (emphasis added).

U.S. LEXIS 2386, *2 (court refused to entertain plaintiff's request for relief included in a response rather than a motion and advised that "if [plaintiff] wishes to pursue such relief, he is required to file an appropriate motion, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.")

**VII.   NuVasive is Required to Post a Bond if the Preliminary Injunction is Issued.**

In the event this Court issues a preliminary injunction against Defendants, NuVasive is required to post a bond pursuant to Fed. R. Civ. P. 65(c) and Fla. Stat. § 542.335(1)(i).  Pursuant to Fla. R. Civ. P. 65(c) and Fla. Stat. § 542.335(1)(j),  "no preliminary injunction should issue without the giving of security by the applicant sufficient for payment of costs and damages as may be incurred or suffered by any party to have been wrongfully enjoined." *Landscape Concepts of CT, LLC*, 2016 LEXIS at *32; *see also* Fla. Stat. § 542.335(1)(j) .

## CONCLUSION

In sum, NuVasive fails to meet its burden for the issuance of a preliminary injunction as it cannot show a substantial likelihood of success on the merits or establish irreparable harm. Accordingly, NuVasive's request for preliminary injunction against Defendants should be denied.

Dated:  June 27, 2018

Respectfully submitted,

*/s/ Chantal M. Pillay*
Chantal M. Pillay
Fla. Bar No. 108369
ADAMS AND REESE, LLP
350 E. Las Olas Boulevard 1110
Ft. Lauderdale, FL 33301
Phone: 954.541.5390
Chantal.pillay@arlaw.com
Teesha.kittilson@arlaw.com

Bryan E. Busch, Esq. (*Pro Hac Vice*)
bryan.busch@arlaw.com
ADAMS AND REESE L.L.P.
3424 Peachtree Road N.E., Suite 1600
Atlanta, Georgia 30326
(470) 427-3700 (Telephone)
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27, day of June, 2018, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record and CM/ECF participants.

Diana N. Evans, Esquire
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
dnevans@Bradley.Com
Attorney for NuVasive

Christopher W. Cardwell, Esquire
Pro Hac Vice
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
ccardwell@gsrm.Com
Attorney for NuVasive

Thomas McFarland, Esquire
Pro Hac Vice
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
tmcfarland@gsrm.com
Attorney for Nuvasive

*/s/ Chantal M. Pillay*
Chantal M. Pillay
Fla. Bar No. 108369