## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("**Agreement**") dated as of Janu ("**Effective Date**"), by and between ABSOLUTE MEDICAL INC., a Florida ("**Distributor**") and **HAWLEY MED, LLC**. ("**Salesperson**") and, if applicable, owner _____, an individual ("**Principal**") on the other hand.

### RECITALS

A.      Distributor is engaged in the business of representing NuVasive, Inc., a Delaware corporation ("**NuVasive**"), a manufacturer of cervical, thoracic and lumbar implants, devices, supplies and similar items ("**Medical Products**") in the sale of the Medical Products to Distributor customers.

B.      Salesperson is familiar with Distributor's business and the lines of Medical Products represented by Distributor.

C.      Salesperson desires to sell certain lines of the Medical Products represented by Distributor, and Distributor desires to obtain the services of Salesperson, as an independent contractor, to sell certain lines of the Medical Products represented by Distributor and to provide related services.

NOW THEREFORE, in consideration of the foregoing recitals (each and all of which constitute substantial and material provisions of this Agreement), the mutual covenants, promises, and obligations herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Distributor and Salesperson hereby agree as follows:

## 1.      BASIC OBLIGATIONS OF PARTIES

1.1      <u>Services.</u>      Upon the terms, and subject to the conditions, contained in this Agreement, Salesperson hereby agrees to represent Distributor in the solicitation of orders ("**Services**") from hospitals, clinics and other healthcare facilities, physicians, physician groups and other healthcare providers ("**Customers**") in the Assigned Territory (as defined in Section 1.2 hereof) with respect to the sale of certain Medical Products that are from time to time assigned by Distributor to Salesperson ("**Assigned Products**") for sale within the Assigned Territory to those Customers and prospective Customers who and which are assigned to Salesperson by Distributor (collectively, the "**Assigned Customers**").      Distributor hereby reserves the right to change the Assigned Products, the Assigned Territory and/or the Assigned Customers at any time for any reason or no reason.      Salesperson shall not, directly or indirectly, (i) advertise or promote any Assigned Products outside the Assigned Territory; (ii) solicit or procure any orders for Assigned Products from outside the Assigned Territory; or (iii) otherwise act as Distributor's representative with respect to the Assigned Products outside the Assigned Territory, without the prior written consent of Distributor.      Salesperson's authority is expressly

1556825.1

1

limited to the solicitation of orders from Customers and prospective Customers and shall not have any authority to bind Distributor or NuVasive.

1.2     Assigned Territory.    For purposes of this Agreement, the term "**Assigned Territory**" shall initially mean the territory described on Schedule A hereto. Salesperson shall not solicit or procure any orders for any Medical Products any person, who or which is located outside of the Assigned Territory or for use outside of the Assigned Territory, regardless of whether or not such person or user is a Customer or prospective Customer of Distributor. The Assigned Territory may be increased, decreased or realigned by Distributor from time to time without prior notice to Salesperson and in Distributor's sole and absolute discretion. Upon any changes to the Assigned Territory, Distributor may amend Schedule A to this Agreement to reflect the same without the consent of Salesperson.

1.3     Independent Contractor.

(a)     The services of Salesperson established by this Agreement are to be rendered as an independent contractors, and nothing contained in this Agreement shall be construed to (i) give either Distributor the power to direct and control the day-to-day activities of Salesperson, (ii) constitute the party as partners, joint venturers, co-owners or otherwise as participants in a joint undertaking, or (iii) allow Salesperson to create or assume any obligation on behalf of Distributor for any purpose whatsoever, and both Distributor and Salesperson hereby stipulate and agree that Salesperson shall, for all purposes, be considered an independent contractor. Salesperson shall not, directly or indirectly, serve or himself/herself/itself out to be a servant or employee of Distributor or make any commitments or incur any liabilities on behalf of Distributor, without first obtaining Distributor's prior written consent which may be arbitrarily given or withheld by Distributor in Distributor's sole, absolute and unrestricted discretion.

(b)     Salesperson shall not be deemed to be employed by Distributor for purposes of the Federal Social Security Act or any federal or state law concerning employment, compensation for employment services rendered or insurance for injuries sustained in the performance of his services, and Salesperson shall be required to file all tax forms required of an independent contractor and shall be solely responsible for the payment and reporting of any taxes due on whatever remuneration is paid by Distributor to Salesperson hereunder.

(c)     Salesperson shall procure and maintain all State, County and City (if applicable) business licenses, at Salesperson's sole cost.

(d)     Salesperson shall fully comply with all laws, statutes, codes, ordinances, regulations, rulings, requirements, orders, judgments and decrees of all federal, state, county, municipal, and local governments, governmental agencies, quasi-governmental agencies, courts, and other governmental authorities having jurisdiction and authority with respect to Salesperson's business.

(e)     Salesperson shall conduct Salesperson's affairs with the utmost integrity in such manner as will maintain Distributor's goodwill and reputation as a first-class provider of

services incident to the representation and sale of Medical Products.

   (f) Salesperson shall not perform or administer any Services under the influence of any illegal drug or alcohol and shall submit to a lab administered drug test immediately upon the request of the Distributor.

   (g) Salesperson is not entitled to, or eligible to receive, any employee benefits provided by Distributor to its employees (if any) such as life and/or health insurance, sick leave, paid vacation, retirement benefits or other fringe benefits.

   (h) Salesperson shall have unilateral control over the manner in which the Services herein contracted for are to be provided, and Distributor shall have no direct or implied authority over the Salesperson's work nor supervisory power over the procedures used by the Salesperson other than to assure itself with regard to the Salesperson's adherence to reasonable standards for the conduct of the Services contracted for hereunder.

   (i) Salesperson shall be under no obligation to devote any specific amount of time or to perform services during any particular hours; it being understood that Salesperson may devote as much or as little time as may be necessary to satisfy Salesperson's obligations and may perform services during such hours as may be reasonable appropriate under the circumstances.

   (j) Salesperson represents and warrants that Salesperson possesses the skills necessary to provide the services required pursuant to this Agreement and Distributor shall not be required to provide any training whatsoever.

  1.4 No Debarment. Salesperson represents and warrants that Salesperson has not been debarred, suspended, excluded or otherwise declared ineligible under Section 306 of the Federal Food, Drug and Cosmetic Act (as amended by the Generic Drug Enforcement Act of 1992), 21 U.S.C. § 336, and has not been listed on any applicable federal exclusion list including the then-current: (a) HHS/OIG List of Excluded Individuals/Entities (available through the Internet at http://www.oig.hhs.gov); (b) General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.epls.gov); and (c) FDA Debarment List (available through the internet at http://www.fda.gov/ora/compliance_ref/debar/).

  1.5 Other Providers of Services. Nothing contained in this Agreement shall be construed to restrict Distributor from entering into any agreement with any other person (whether an employee, independent salesperson or otherwise) with respect to the sale of any of the Medical Products, including, without limitation, agreements for the provision of services the same as or similar to the Services, in the same geographic location in which Salesperson is to provide Services.

  1.6 Volume. Salesperson hereby acknowledges and agrees that Distributor makes no representation or warranty whatsoever with respect to the volume of sales that Salesperson may expect to realize from selling any of the Assigned Products.

1.7     <u>Best Efforts.</u>   Salesperson agrees to devote Salesperson's best efforts to the provision of the Services.

1.8     <u>Resolution of Conflicts Between Parties.</u>   Distributor shall have the exclusive authority to resolve all disputes between Salesperson and any other salespersons or employees or agents of Distributor.   Salesperson hereby acknowledges and agrees that Distributor's determinations with respect to such disputes shall be final and binding on Salesperson.

## 2.     COMPENSATION AND EXPENSES

2.1     <u>Quota and Commission Plan.</u>   Distributor shall pay Salesperson compensation in accordance with the quota and commission plan for Salesperson set forth on <u>Schedule B</u> hereto, as may be amended or modified by Distributor from time to time.   Distributor reserves the unrestricted right to modify the quota and commission plan without prior notice to Salesperson and in Distributor's sole and absolute discretion.   Distributor may amend <u>Schedule B</u> to this Agreement to reflect any changes to the same without the consent of Salesperson.

2.2     <u>Reimbursement of Expenses.</u>   Distributor will reimburse Salesperson for expenses reasonably and necessarily incurred by Salesperson in providing the Services in accordance with Distributor's travel and expense reimbursement policy in effect at the time the expenses are incurred, and subject to such substantiation as Distributor may require as a condition of such reimbursement.   Distributor reserves the unrestricted right to amend and modify its expense reimbursement plan without notice to or the consent of Salesperson (see Schedule C).

## 3.     TERM OF AGREEMENT

3.1     <u>Term.</u>   This Agreement shall be effective beginning on and as of the Effective Date and shall continue in effect through December 31, 2015 (the "**Term**"), unless sooner terminated under the provisions of Section 7 hereof.   Upon thirty (30) days written notice to Salesperson prior to the expiration of the then current Term, Distributor shall have the option to renew the Agreement for successive one (1) year terms with each such renewal constituting an additional year in the Term.

3.2     <u>Survival of Certain Obligations.</u>   Salesperson hereby agrees that, notwithstanding the termination of this Agreement as provided herein, the restrictive covenants set forth in Article 5 of this Agreement shall survive any such termination and remain in full force and effect.

## 4.     PERFORMANCE OF SERVICES

4.1     <u>Conduct.</u>   If Salesperson is not an individual but is an entity such as a corporation or limited-liability company, Salesperson shall cause its principal in the introductory paragraph of this Agreement to provide all services on behalf of Salesperson; and all duties, responsibilities and obligations of Salesperson shall apply with equal force to such person designated the same

as if such person were, in fact, the Salesperson and the Salesperson and such principal shall be jointly and severally liable therefor. Whenever the term **"Salesperson"** is used in this Agreement, it shall mean both the Salesperson and the Principal collectively, jointly and severally. Salesperson hereby agrees to provide all Services in strict conformity with the highest of moral and ethical standards to maintain and enhance Distributor's reputation and goodwill and to advance the business interests of Distributor generally. Specifically, without limiting the generality of the preceding sentence, Salesperson shall not use or employ any improper means which would constitute a tortuous interference with any contractual right or business expectancy of any former employer of Salesperson.

4.2     No Restrictions.  Salesperson hereby represents and warrants to Distributor that Salesperson is not a party to, or otherwise bound by, any employment, sales agency or other independent contractor agreement or relationship, or by any non-disclosure, non-circumvention, non-competition non-solicitation, confidentiality or similar agreement or relationship with any other person that could affect Salesperson's performance under this Agreement or pose any actual or potential conflict of interest, and Salesperson agrees not to enter into any such agreement or relationship during the Term.

4.3     Place of Service.  Salesperson shall be under no obligation to render services at or from any particular location; it being recognized and understood that Salesperson may provide services from Salesperson's place of business or residence, the location of Distributor's offices or any other location as may be reasonably appropriate under the circumstances.

4.4     Compliance with Laws.  Salesperson shall comply with all applicable federal, state and local laws, regulations and ordinances, including, without limitation, (a) the Social Security Act, (b) the Health Insurance Portability and Accounting Act of 1996, 42 U.S.C. §300 gg *et seq* and all regulations and guidelines promulgated thereunder (HIPPA), (c) all federal and state health care anti-fraud, anti-kickback and abuse laws and (d) all rules and regulations of the Federal Food and Drug Administration (FDA) and the Center for Medicare and Medicaid Services (CMS).  Without limiting the generality of the foregoing, Salesperson shall not, under any circumstances, make any offer, payment or other inducement, whether directly or indirectly, to induce the referral of business, the purchase, lease or order of any item or service, or the recommending of the purchase, lease or order of any item or service.

4.5     Product Complaints. Salesperson shall immediately notify Distributor of any and every customer complaint and every regulatory complaint of which Salesperson becomes aware and shall perform any and all actions as may be reasonably necessary to ensure that all information relevant to any such complaint is promptly communicated to Distributor to enable Distributor to timely and fully investigate and monitor the same.

4.6     Marketing Representations.  Salesperson shall not make any false or misleading representation, warranty, guaranty, assurance or statement to any Assigned Customer or to any other person regarding the Medical Products or about NuVasive competitors or competitor products; and Salesperson shall not omit to state any material fact about the Medical Products or about NuVasive competitors or competitor products that is necessary to make all statements

1556825.1

made not misleading. Salesperson shall not make any representation, warranty, assurance, guaranty or statement with respect to the specifications, features or capabilities of any Medical Products that is not entirely consistent with the promotional materials and other documentation supplied by NuVasive with respect to such Medical Product. In this regard, Salesperson shall not make any representation, warranty, guaranty or assurance that expands upon any manufacturer limited warranty applicable to such Medical Product.

4.8     Training and Cooperation.   Salesperson shall cooperate fully with Distributor in all respects in the performance of Salesperson's obligations pursuant to this Agreement including participation in requested teleconference and meetings with NuVasive and including the provision of sales targeting and sales forecasting information. If and to the extent that NuVasive provides any special training regarding the use and operation of any of the Medical Products, Salesperson shall attend such training whenever and as often as requested and directed by Distributor.

4.9     Customer Quotes.   Salesperson shall quote to Assigned Customers only those prices, delivery schedules and other terms and conditions of sale that Distributor is authorized to quote pursuant to its relationship with Nuvasive. Salesperson does not have any authority to offer any price discount or make any delivery commitment or alter any terms or conditions of sale that are not so authorized.

4.10    Notice of Changes.   Salesperson shall promptly notify Distributor of any change in the key personnel, organization or status of any Assigned Customer in the Assigned Territory.

## 5.     RESTRICTIVE COVENANTS

5.1     Third Party Information and Agreements.   Salesperson hereby acknowledges and agrees that Distributor has received, and in the future will receive, from NuVasive, Distributor's Customers and prospective Customers and other third persons information that is confidential and/or proprietary and that is subject to a duty of Distributor to be maintained as confidential and used only for the limited purpose(s) for which the same was disclosed to Distributor ("**Third Party Information**"). During and following the Term, Salesperson shall hold all Third Party Information in the strictest confidence and, except as may be required by law, shall not disclose any Third Party Information to anyone (other than Distributor personnel who have a "need to know" such information in connection with Distributor's business) or use any Third Party Information other than in the performance of Services to Distributor. In addition Salesperson shall cooperate fully with, and provide the Services in accordance with the terms of agreements that Distributor has entered, or may in the future enter into with third persons.

5.2     Confidential Information Defined.   As used in this Agreement, "**Confidential Information**" shall mean information furnished or disclosed by Distributor and/or NuVasive to Salesperson in verbal or written form, including, without limitation, (a) all materials, trade secrets, know-how, formulas, processes, contacts, ideas, strategies, inventions, data, network configurations, computer programs, software and documentation, prototypes, methods, system architecture, specifications, models, samples, designs, flow charts, drawings and other technical

6

information; and (b) all proprietary information of Distributor such as business and marketing plans, contracts, proposals, pricing information and other financial and operational information, customer lists and logs and all other non-public information, material or data relating to the current and/or future business and/or operations of Distributor and/or NuVasive whether or not the same is labeled as being confidential. To the extent not otherwise covered by (a) or (b) above, Confidential Information shall also include all information concerning the business and affairs of the Distributor and/or NuVasive or other materials that are furnished or disclosed by Distributor and/or NuVasive to Salesperson and all notes, analyses, compilations, studies, summaries and other material prepared by the Salesperson to the extent containing or based, in whole or in part, upon any information included in the foregoing. Salesperson stipulates and agrees that all such Confidential Information derives significant value from not being generally known to, and not being readily ascertainable by, any other person; and, therefore, constitutes trade secret information belonging to Distributor or NuVasive, as the case may be. Salesperson has been informed and acknowledges that, the unauthorized taking and/or use of Confidential Information that constitutes trade secrets could result in civil and/or criminal penalties.

5.3     Non-disclosure Obligation.     Salesperson shall forever keep all Confidential Information secret and strictly confidential and Salesperson shall not use, directly or indirectly (through one or more affiliates or otherwise), any such Confidential Information except for the limited purpose of providing the Services to Distributor. Unless and except to the limited extent otherwise consented by Distributor (with respect to Distributor Confidential Information) or NuVasive (with respect to NuVasive Confidential Information), which consent may be arbitrarily given or withheld by Distributor or NuVasive, the case may be, for any reason or no reason, Salesperson shall not disclose the Confidential Information to anyone other than personnel of Distributor or NuVasive, as applicable, who have a "need to know" such information and shall not remove from Distributor's or NuVasive's premises any records, documents or other data containing Confidential Information. Salesperson agrees that upon the expiration of the Term or earlier if requested by Distributor (which respect to Distributor Confidential Information) or NuVasive (with respect to NuVasive Confidential Information), Salesperson shall promptly deliver to Distributor and NuVasive, as applicable, all records, documents and other tangible manifestations and electronic recordings of data containing Confidential Information, without retention of any copies, and will promptly destroy all notes, extracts and analyses based upon or containing any Confidential Information and shall certify, under penalties of perjury, such destruction to Distributor and NuVasive, as applicable. Notwithstanding the return of such Confidential Information and destruction of all copies thereof, all knowledge of Confidential Information shall nevertheless continue to be kept secret confidential forever.

5.4     Non-Circumvention.     During the Term and for twelve (12) months following the Term, Salesperson shall not, in any manner, directly or indirectly (through one or more affiliates or otherwise), circumvent, avoid, by-pass, obviate, limit, restrict, or otherwise interfere with, Distributor's interest or relationship with any of Distributor's vendors, manufacturers, distributors or other suppliers (including NuVasive), Distributor's employees or independent salespersons, Distributor's Customers or prospective Customers, Distributor's brokers, dealers, shippers, financial institutions, technology owners or other persons who or which have a business relationship with Distributor, or assist any other person in any such circumvention,

1556825.1

avoidance, by-pass, obviation, limitation, restriction or interference, or attempt to any of the foregoing. Without limiting the generality of the preceding sentence, during the Term and for twelve (12) months following the Term, Salesperson shall not, directly or indirectly (through one or more affiliates or otherwise) (i) induce or attempt to induce, or assist any other person to induce or attempt to induce, any supplier (including NuVasive), any Customer or prospective Customer, or any other person in a business relationship with Distributor to discontinue or limit its relationship with Distributor, (ii) induce or attempt to induce, or assist any other person to induce or attempt to induce, any employee, agent or independent salesperson of Distributor to discontinue or limit the relationship between Distributor and such person or, in any way, otherwise interfere with any such relationship, or (iii) disparage Distributor, in any way or to any extent.

5.5     Non-Competition.    Salesperson acknowledges and agrees that the sale and distribution of medical products such as, or similar to, the Medical Products handled by Distributor is a highly competitive field and is largely dependent on the goodwill that a business such as Distributor has created with its customers.  Salesperson further stipulates and agrees that it is reasonable to restrict Salesperson's ability to compete with Distributor in this field not only during the Term but also for a reasonable period following the Term.  Therefore, during the Term and for a twelve (12) month period following the Term, Salesperson shall not, in any manner, directly or indirectly (through one or more affiliates or otherwise), alone or in conjunction with any other person or entity, sell Competitive Products or own, manage, operate or control or participate in the ownership, management, operation or control of, or become associated, as an employee, director, officer, advisor, agent, consultant, principal, partner, member or independent contractor with or lender to any business that is in competition with the business of Distributor in (a) the Assigned Territory, (b) in any other locale in which Salesperson conducted business activities on behalf of Distributor at any time during the twelve (12) month period preceding the termination of Salesperson's employment with Distributor, or (c) in any other locale where Distributor or an agent or salesperson of Distributor has conducted business activities at any time during the twelve (12) month period preceding the termination of Salesperson's employment with Distributor.  For purposes of this Section, "**Competitive Products**" means any goods, products or product lines that are directly or indirectly competitive with the Medical Products sold by Distributor, including without limitation NuVasive Products. For purposes of this Section, "**NuVasive Products**" means any goods, products, product lines or services marketed, promoted or sold by NuVasive, whether directly or indirectly, (i) that Distributor marketed, promoted, sold, or solicited sales of on behalf of NuVasive during the Term, or (ii) with respect to which Salesperson at any time received or otherwise obtained or learned NuVasive Confidential Information.

5.6     Non-Solicitation.  During the Term and for a twelve (12) month period following the Term, Salesperson shall not, directly or indirectly (through one or more affiliates or otherwise), alone or in conjunction with any other person or entity, canvas, solicit, or accept any business or patronage from any Customer or prospective Customer of Distributor or any person who or which is an affiliate of any Customer or prospective Customer of Distributor, such as an affiliated hospital, clinic or healthcare facility, a member of a physician group, an affiliate of a healthcare provider or otherwise.

5.7     Divisibility of Covenant Period.  If any covenant contained in this Agreement is held to be unreasonable, arbitrary or against public policy, such covenant shall be considered divisible both as to time, geography and customers, such that each month within the specified period shall be deemed a separate period of time, each customer a separate customer, and each geographical area a separate geographical area resulting in an intended requirement that the longest lesser time and largest lesser customer base and geographical area determined not to be unreasonable, arbitrary or against public policy shall remain effective and be specifically enforceable against the Salesperson.

5.8     Injunctive Relief and Specific Performance.   Salesperson acknowledges and agrees that (i) the Salesperson will have an important role in the development of the goodwill of the Distributor and has and will establish and develop relationships and contacts with the principal business relationships of the Distributor, (ii) the restrictions contained in this Agreement are reasonable in scope and are necessary to protect the Distributor's legitimate interests in protecting its business, and (iii) any violation of the restrictions contained in this Agreement will cause significant and irreparable harm to the Distributor for which the Distributor has no adequate remedy at law.  Salesperson hereby acknowledges and agrees that, if Salesperson repudiates breaches or violates any of the restrictive covenants set forth in this Article 5 or threatens or attempts to do so, Distributor will suffer immediate and irreparable harm that will not be compensable by damages alone.  In addition to, and not in limitation of, any other right or remedy available at law or in equity (each and all of which are expressly reserved by Distributor),  Distributor shall be entitled to obtain temporary, preliminary and permanent injunctive relief (mandatory and prohibitory) as well as specific performance and an equitable accounting of, and constructive trust for, all profits or other benefits arising out of or related to any such violation in a court of competent jurisdiction to prevent or restrain any actual or threatened breach of, or to specifically enforce, any and all of the restrictive covenants contained in this Article 5 by Salesperson or any person acting in concert therewith. For purposes of the preceding sentence Salesperson hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction and venue of the federal and/or state courts located in Hillsborough County, Florida.  Salesperson stipulates and agrees that no bond in excess of $150.00 shall be required to be posted as a condition for the granting of any such relief. In connection with any application for injunctive relief, Salesperson hereby waives the claim or defense that an adequate remedy exists at law.

## 6.     REPORTS TO DISTRIBUTOR

6.1     Business Plan.  Prior to the beginning of any Term or successive Term hereunder, Salesperson shall submit a business plan for the Services to be supplied to Distributor detailing Salesperson's sales goals and execution strategies for the coming year in a form acceptable to Distributor in its sole discretion.

6.2     Weekly Reporting.  Salesperson shall maintain a daily record of all Services rendered hereunder. Salesperson shall keep all such records throughout the Term.  Salesperson shall prepare and submit to Distributor detailed written reports of Salesperson's Services to

1556825.1

Distributor as often as Distributor may request, but not less than frequently than weekly on or before each Thursday with each such report containing (i) a detailed listing of all accounts serviced by Salesperson, (ii) the status of work in each account, (iii) reporting and summary of purchase order volume and case coverage sheets, as well as open bids generated and their status. Such reports shall further include weekly tracking forms outlining the case schedule for Salesperson and the top five (5) sales focus items.

6.3     Physician Payments Sunshine Act.   No later than the fifth (5th) day of each calendar month during the Term, Salesperson shall provide a report with all information of Salesperson necessary to comply with the Physician Payments Sunshine Act, in form and substance satisfactory to Distributor in its sole discretion.

6.4     Confidential.   All of the records of Services and reports to Distributor shall be considered Confidential Information and their handling and use are subject to, and shall be governed by, Article 5 of this Agreement.

7.     **TERMINATION**

7.1     Termination in General.   Either Salesperson or Distributor may arbitrarily terminate the Term for any reason or no reason at any time by giving the other party fourteen (14) days prior written notice of termination.  No termination pursuant to this Section shall affect the liability (by way of indemnification or otherwise) of any party on account of any breach of representation or violation of any covenant set forth in this Agreement such as liability attributable to a breach of Section 1.4 or liability resulting from a violation of Sections 4.1, 4.2, 4.4 or Article 5 of this Agreement.

7.2     Immediate Termination.   Distributor may immediately terminate the Term, without prior notice, upon a breach or violation of any of the provisions contained in Sections 1.3(f), 4.1, 4.2, 4.4 or Article 5 of this Agreement or upon the death or disability of Salesperson. For purposes of this Section, disability shall mean the inability of Salesperson to perform the essential duties of his/her position, due to illness, injury or other physical or mental capacity.

7.3     Surviving Obligations.   Notwithstanding any termination of the Term, whether pursuant to Section 7.1 or Section 7.2, no such termination shall affect any of the obligations that survive the Term such as those set forth in Article 5 of this Agreement.

8.     **GENERAL PROVISIONS**

8.1     Licenses.   Distributor hereby grants Salesperson a non-exclusive, limited license for the Term to use Distributor's trademark, mission statement, and/or other materials ("**Distributor Marks**") in connection with the Services. Salesperson hereby stipulates and agrees that the Distributor Marks are the exclusive property of Distributor and that Salesperson, by reason of Agreement or otherwise, has not acquired, does not acquire, and will not acquire, any right, title, interest, or estate in or to any of the Distributor Marks, whether relating to the Medical Products or otherwise.

8.2    Waivers.   The failure of any party to insist, in any one or more instances, upon observance or performance of any provision of this Agreement shall not be construed as a waiver of such provision, shall not constitute a relinquishment of such party's right to thereafter require observance and performance of such provision and shall not constitute a waiver of any other right or remedy belonging to such party.   The waiver of any breach of any provision of this Agreement shall not be deemed to be, and shall not be construed as, a waiver of such provision on account of, or with respect to, any other breach of the same or any other provision of this Agreement.   No provision of this Agreement shall be deemed to have been waived, unless such waiver is in writing and signed by the party sought to be charged with a waiver of such provision.

8.3    Entire Agreement.  This Agreement, including information incorporated herein by reference or attached hereto, sets forth all, and is intended by the parties to be an integration of all, of the representations, promises, agreements and understandings among the parties. This Agreement supersedes all prior and contemporaneous representations, promises, agreements and understandings between the parties; and there are no representations, promises, agreements or understandings, oral or written, express or implied, between the parties other than those which are set forth or incorporated herein.   In entering into this Agreement, neither party has relied upon any statement of any person, any assumption, fact or any understanding of law (i) with respect to the duration, extension, renewal or termination of this Agreement; (ii) with respect to the relationship between the parties; or (iii) which, might change or modify any of the provisions of this Agreement or prevent this Agreement from being effective.

8.4    Successors and Assigns.   This Agreement is personal in its nature and Salesperson shall not, without the express written consent of Distributor, assign or transfer this Agreement, or any rights or obligations hereunder, and any attempted transfer or assignment by Salesperson in violation of this section shall be null, void, and of no effect; *provided,* however, that the provisions hereof shall inure to the benefit of, and be binding upon, each successor of Distributor, whether by merger, consolidation, transfer of all or substantially all of Distributor's assets, or otherwise. Except as required by applicable law, no right to receive payments under this Agreement shall be subject to anticipation, commutation, alienation, sale, assignment, encumbrance, charge, pledge, or hypothecation or to exclusion, attachment, levy, or similar process or assignment by operation of law and any voluntary or involuntary attempt to effect any such action shall be null, void, and of no effect.

8.5    Severability; Enforceability.   To the extent that it may effectively do so under applicable law, each party hereto hereby waives any provision of law that would render any provision of this Agreement invalid, void or unenforceable in any respect. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and obligations set forth herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

8.6    Counterparts.   This Agreement may be executed in any number of counterparts

1556825.1

and by the different parties on separate counterparts. Each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same agreement. This Agreement shall be deemed to have been executed and delivered on the Effective Date. This Agreement may be transmitted and signed by facsimile or by portable document format (PDF). The effectiveness of any such documents and signatures shall, subject to applicable law, have the same force and effect as manually-signed originals and shall be binding on all parties hereto.

8.7     Notices.

(a) Manner of Delivery. Any notice or demand required or desired to be given to any party pursuant to this Agreement shall be in writing and shall be validly served, given, delivered or made if and only if (i) personally delivered (including delivery by a commercially-recognized courier which provides service between the point-of-origin and the point-of-destination); (ii) deposited in the United States mail, certified or registered, postage prepaid, return receipt requested; or (iii) made by telecopied or electronic transmission. Service by certified or registered mail shall be deemed made on the date actually received or the date on which delivery is first attempted, whichever is sooner. Service by telecopier or electronic transmission shall be deemed made upon the date of transmission; provided that transmission is confirmed prior to 5:00 o'clock p.m. local time at the place of delivery on a business day or, otherwise, on the first business day after transmission and provided further that a copy of such notice or demand is also deposited in the United States mail, regular service, postage prepaid.

(b)     Notices to Distributor. Any notice or demand to Distributor shall be delivered to **Absolute Medical, Inc., 382 Devon Place ,Heathrow, FL 32746**.

(c)     Notices to Salesperson. Any notice or demand to Salesperson shall be delivered to **322 East Central Blvd. #1006, Orlando, FL 32801**.

(d)     Changes of Addresses. Any party may change its address for the purpose of receiving notices or demands by a written notice given to the other party in the manner provided in this Section.

8.8     Governing Law; Jurisdiction. The laws of the State of Florida, as such laws have been interpreted and applied by the courts of the State of Florida, shall govern the validity, performance and enforcement of each and all of the provisions of this Agreement. Any proceedings with respect to the performance or enforcement of this Agreement must be brought in the state District Court for Hillsborough County, Florida, which is and shall be, vested with exclusive jurisdiction.

8.9     Attorney Fees.     In the event any action or proceeding is initiated by party to enforce any provision of this Agreement by reason of any alleged breach or default, for a declaration of rights or obligations or for any other remedy, the prevailing party shall be entitled to recover such amounts as such party may have reasonably expended (including attorney fees) in the prosecution or defense, as applicable, of such action or proceeding; and such amount shall

be included in any judgment or award rendered in such action or proceeding.

8.10    Construction.  For purposes of interpreting this Agreement, the captions, numbers and letters of the various articles, sections, subsections, paragraphs, subparagraphs and clauses appearing in this Agreement are inserted only as a matter of convenience and do not, in any way, define, limit, construe, or describe the scope or intent of such sections, subsections, paragraphs, subparagraphs or clauses of this Agreement and shall not, in any way, be interpreted to affect any of the provisions of this Agreement. The necessary grammatical changes required to make the provisions of this Agreement apply in a plural or singular sense, where required, or to a particular gender shall, in all instances, be assumed as though in each case fully expressed. In the event there exists any obviously manifested clerical error in any provision of this Agreement (such as the inclusion or omission of a word or words or an inaccurate section cross-reference resulting from renumbering during the drafting process) the correction of such error shall be assumed to the same extent as if, in each such instance, this Agreement were formally amended to correct such error. Words such as "**herein**", "**hereof**", "**hereby**", "**herefrom**" and "**hereunder**", when used in this Agreement shall refer to this Agreement as a whole unless a specific provision of this Agreement is expressly identified. The word "**person**" shall mean any individual, corporation, partnership, limited partnership, limited-liability company, trust, estate, association or other entity, however denominated.  Whenever the context so requires, the word "**party**" shall mean and refer to only each of those persons identified in the introductory paragraph of this Agreement. The word "**affiliate**" of a specified person shall mean any person (i) that, directly or indirectly (through one or more intermediaries or otherwise), controls, is controlled by, or under common control with such specified person; (ii) that is a shareholder, director, officer, partner, member, manager, trustee, beneficiary or employee of either such specified person or another person that constitutes an affiliate of such specified person; (iii) of which either such specified person or another person that constitutes an affiliate of such specified person is or serves as a shareholder, director, officer, partner, member, manager, trustee, beneficiary or employee;  (iv) in which such specified person has a financial interest, directly or indirectly (as a lender or otherwise); or (v) who is a spouse, father, mother, son, daughter, brother, sister, uncle, aunt, nephew or niece of such specified person or of any person described in the preceding clauses (i), (ii), (iii) and/or (iv). The phrase "**and/or**" shall be construed both (i) conjunctively to bring within the scope of the list of identified words connected with such connective all identified words as if only the word "and", by itself was used, and (ii) disjunctively to refer only to each identified word as if only the word "or", by itself, was used. The word "**including**" when following any general statement, provision or language, shall not be construed to limit such statement, provision or language to the specific items or matters set forth immediately following such word or to similar items or matters, regardless whether or not non-limiting language (such as words "without limitation", or "but not limited to", or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such general statement, provision or language. A "**business day**" shall mean any day which is not a Saturday, Sunday or any day which is a legally-recognized holiday in the State of Florida.

8.11    Negotiation at Arms-Length.  This Agreement has been negotiated fully between the parties as an arms-length transaction.  Both parties have had the opportunity to have this

1556825.1

Agreement reviewed by counsel.  In the case of a dispute concerning the interpretation of any provision of this Agreement, all parties are deemed to have drafted, chosen and selected the language, and the doubtful language will not be interpreted or construed against any party.

8.11    Third Party Beneficiary.  Section 4.4 and Article V of this Agreement are for the benefit of not only Distributor but also NuVasive and, without limiting Distributor's right, in any way, NuVasive shall have the right, power and authority to enforce such provisions as though it were a party hereto. As such, NuVasive is an express third party beneficiary to this Agreement.

[Signature page follows]

Irrespective of the date on which any person actually signs this Agreement, this Agreement is being signed to take effect on and as of the Effective Date set forth in the introductory paragraph.

ABSOLUTE MEDICAL, INC.

By: _____
    Greg Soufleris, President


_____


By: _____

Print Name: _____

Title: _____

1556825.1

## SCHEDULE A

## ASSIGNED TERRITORY

ORANGE COUNTY

## SCHEDULE B

## QUOTA & COMMISSION PLAN

| POINTS | Flat | 3/5 MIX | 4/5 MIX | 5/5 MIX |
|---|---|---|---|---|
| Hawley | 8% | 0.5% | 1% | 1.5% |
| Sawin | 2% | | | |
| Osteocel Plus | 2% | | | |
| Opro | 8% | | | |
| Disposables | 8% | | | |
| Dr. Rosen | 8% | | | |
| Dr. Johnson | 8% | | | |
| Dr. Berhmann | 8% | | | |

***Mix bonus**- Percentages are paid from $1 on dollars in each product category over quota *less current quarter's biologics and medical device tax totals*.
*Overall monthly PTQ must be at 100% or greater to qualify.

**IMI Growth**
*Y/Y hospital fee revenue will be paid at 8% commission in  accounts where the SR is actively involved in facilitating growth.

* **Osteocel**- If Osteocel is brought in on a case by case basis or not purchased by the hospital prior to case, there will be a 20% commission deduction or  receive 6% commission points.

**2015 Quota - $8,171,910.00**

1556825.1

17

## SCHEDULE C

## EXPENSES

(Expense Burden)

- MVP/VSP: 50% expenses on hotel, flight and HCP meal
- Industry Meetings: 50% one time; on hotel and HCP meal
- SR responsible for 100% of HCP breakfast, lunch & dinner meetings
- SR responsible for 50% surgeon education/PSP events
- SR responsible for 100% of vendor credentialing fees
- SR responsible for 50% of DP funded HCP events.
- SR responsible for $1,750 of FSR salary ( Sean Olenek)
- SR responsible for 100% of all asset management fines if rep falls below 90% on asset measure or late loaner

*Additional exceptions may be granted with prior approval as well as additional responsibilities may be added
*Expenses will be paid once Absolute Medical Expense Report is properly filled out and submitted.

Irrespective of the date on which any person actually signs this Agreement, this Agreement is being signed to take effect on and as of the Effective Date set forth in the introductory paragraph.

ABSOLUTE MEDICAL, INC.

By: _____
    Greg Soufleris, President


_____

By: _____
Print Name: DAVID HAWLEY

Title: S.R.

1556825.1

15

## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("**Agreement**") dated as of January 1, 2015 ("**Effective Date**"), by and between ABSOLUTE MEDICAL INC., a Florida corporation ("**Distributor**") and **MILLER TIME MEDICAL, INC**. ("**Salesperson**") and, if applicable, its principal owner _____, an individual ("**Principal**") on the other hand.

## RECITALS

A.      Distributor is engaged in the business of representing NuVasive, Inc., a Delaware corporation ("**NuVasive**"), a manufacturer of cervical, thoracic and lumbar implants, devices, supplies and similar items ("**Medical Products**") in the sale of the Medical Products to Distributor customers.

B.      Salesperson is familiar with Distributor's business and the lines of Medical Products represented by Distributor.

C.      Salesperson desires to sell certain lines of the Medical Products represented by Distributor, and Distributor desires to obtain the services of Salesperson, as an independent contractor, to sell certain lines of the Medical Products represented by Distributor and to provide related services.

NOW THEREFORE, in consideration of the foregoing recitals (each and all of which constitute substantial and material provisions of this Agreement), the mutual covenants, promises, and obligations herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Distributor and Salesperson hereby agree as follows:

## 1.      BASIC OBLIGATIONS OF PARTIES

1.1      Services.      Upon the terms, and subject to the conditions, contained in this Agreement, Salesperson hereby agrees to represent Distributor in the solicitation of orders ("**Services**") from hospitals, clinics and other healthcare facilities, physicians, physician groups and other healthcare providers ("**Customers**") in the Assigned Territory (as defined in Section 1.2 hereof) with respect to the sale of certain Medical Products that are from time to time assigned by Distributor to Salesperson ("**Assigned Products**") for sale within the Assigned Territory to those Customers and prospective Customers who and which are assigned to Salesperson by Distributor (collectively, the "**Assigned Customers**").    Distributor hereby reserves the right to change the Assigned Products, the Assigned Territory and/or the Assigned Customers at any time for any reason or no reason.   Salesperson shall not, directly or indirectly, (i) advertise or promote any Assigned Products outside the Assigned Territory; (ii) solicit or procure any orders for Assigned Products from outside the Assigned Territory; or (iii) otherwise act as Distributor's representative with respect to the Assigned Products outside the Assigned Territory, without the prior written consent of Distributor.   Salesperson's authority is expressly

1556825.1

limited to the solicitation of orders from Customers and prospective Customers and shall not have any authority to bind Distributor or NuVasive.

1.2     Assigned Territory.     For purposes of this Agreement, the term "**Assigned Territory**" shall initially mean the territory described on Schedule A hereto. Salesperson shall not solicit or procure any orders for any Medical Products any person, who or which is located outside of the Assigned Territory or for use outside of the Assigned Territory, regardless of whether or not such person or user is a Customer or prospective Customer of Distributor. The Assigned Territory may be increased, decreased or realigned by Distributor from time to time without prior notice to Salesperson and in Distributor's sole and absolute discretion. Upon any changes to the Assigned Territory, Distributor may amend Schedule A to this Agreement to reflect the same without the consent of Salesperson.

1.3     Independent Contractor.

(a)     The services of Salesperson established by this Agreement are to be rendered as an independent contractors, and nothing contained in this Agreement shall be construed to (i) give either Distributor the power to direct and control the day-to-day activities of Salesperson, (ii) constitute the party as partners, joint venturers, co-owners or otherwise as participants in a joint undertaking, or (iii) allow Salesperson to create or assume any obligation on behalf of Distributor for any purpose whatsoever, and both Distributor and Salesperson hereby stipulate and agree that Salesperson shall, for all purposes, be considered an independent contractor. Salesperson shall not, directly or indirectly, serve or himself/herself/itself out to be a servant or employee of Distributor or make any commitments or incur any liabilities on behalf of Distributor, without first obtaining Distributor's prior written consent which may be arbitrarily given or withheld by Distributor in Distributor's sole, absolute and unrestricted discretion.

(b)     Salesperson shall not be deemed to be employed by Distributor for purposes of the Federal Social Security Act or any federal or state law concerning employment, compensation for employment services rendered or insurance for injuries sustained in the performance of his services, and Salesperson shall be required to file all tax forms required of an independent contractor and shall be solely responsible for the payment and reporting of any taxes due on whatever remuneration is paid by Distributor to Salesperson hereunder.

(c)     Salesperson shall procure and maintain all State, County and City (if applicable) business licenses, at Salesperson's sole cost.

(d)     Salesperson shall fully comply with all laws, statutes, codes, ordinances, regulations, rulings, requirements, orders, judgments and decrees of all federal, state, county, municipal, and local governments, governmental agencies, quasi-governmental agencies, courts, and other governmental authorities having jurisdiction and authority with respect to Salesperson's business.

(e)     Salesperson shall conduct Salesperson's affairs with the utmost integrity in such manner as will maintain Distributor's goodwill and reputation as a first-class provider of

services incident to the representation and sale of Medical Products.

      (f)    Salesperson shall not perform or administer any Services under the influence of any illegal drug or alcohol and shall submit to a lab administered drug test immediately upon the request of the Distributor.

      (g)    Salesperson is not entitled to, or eligible to receive, any employee benefits provided by Distributor to its employees (if any) such as life and/or health insurance, sick leave, paid vacation, retirement benefits or other fringe benefits.

      (h)    Salesperson shall have unilateral control over the manner in which the Services herein contracted for are to be provided, and Distributor shall have no direct or implied authority over the Salesperson's work nor supervisory power over the procedures used by the Salesperson other than to assure itself with regard to the Salesperson's adherence to reasonable standards for the conduct of the Services contracted for hereunder.

      (i)    Salesperson shall be under no obligation to devote any specific amount of time or to perform services during any particular hours; it being understood that Salesperson may devote as much or as little time as may be necessary to satisfy Salesperson's obligations and may perform services during such hours as may be reasonable appropriate under the circumstances.

      (j)    Salesperson represents and warrants that Salesperson possesses the skills necessary to provide the services required pursuant to this Agreement and Distributor shall not be required to provide any training whatsoever.

    1.4    No Debarment.  Salesperson represents and warrants that Salesperson has not been debarred, suspended, excluded or otherwise declared ineligible under Section 306 of the Federal Food, Drug and Cosmetic Act (as amended by the Generic Drug Enforcement Act of 1992), 21 U.S.C. § 336, and has not been listed on any applicable federal exclusion list including the then-current: (a) HHS/OIG List of Excluded Individuals/Entities (available through the Internet at http://www.oig.hhs.gov); (b) General Services Administration's List of Parties Excluded from Federal Programs (available through the Internet at http://www.epls.gov); and (c) FDA Debarment List (available through the internet at http://www.fda.gov/ora/compliance_ref/debar/).

    1.5    Other Providers of Services.  Nothing contained in this Agreement shall be construed to restrict Distributor from entering into any agreement with any other person (whether an employee, independent salesperson or otherwise) with respect to the sale of any of the Medical Products, including, without limitation, agreements for the provision of services the same as or similar to the Services, in the same geographic location in which Salesperson is to provide Services.

    1.6    Volume.  Salesperson hereby acknowledges and agrees that Distributor makes no representation or warranty whatsoever with respect to the volume of sales that Salesperson may expect to realize from selling any of the Assigned Products.

1556825.1

1.7    <u>Best Efforts.</u>    Salesperson agrees to devote Salesperson's best efforts to the provision of the Services.

1.8    <u>Resolution of Conflicts Between Parties.</u>    Distributor shall have the exclusive authority to resolve all disputes between Salesperson and any other salespersons or employees or agents of Distributor.    Salesperson hereby acknowledges and agrees that Distributor's determinations with respect to such disputes shall be final and binding on Salesperson.

## 2.    COMPENSATION AND EXPENSES

2.1    <u>Quota and Commission Plan.</u>    Distributor shall pay Salesperson compensation in accordance with the quota and commission plan for Salesperson set forth on <u>Schedule B</u> hereto, as may be amended or modified by Distributor from time to time.    Distributor reserves the unrestricted right to modify the quota and commission plan without prior notice to Salesperson and in Distributor's sole and absolute discretion.    Distributor may amend <u>Schedule B</u> to this Agreement to reflect any changes to the same without the consent of Salesperson.

2.2    <u>Reimbursement of Expenses.</u>    Distributor will reimburse Salesperson for expenses reasonably and necessarily incurred by Salesperson in providing the Services in accordance with Distributor's travel and expense reimbursement policy in effect at the time the expenses are incurred, and subject to such substantiation as Distributor may require as a condition of such reimbursement.    Distributor reserves the unrestricted right to amend and modify its expense reimbursement plan without notice to or the consent of Salesperson (see Schedule C).

## 3.    TERM OF AGREEMENT

3.1    <u>Term.</u>    This Agreement shall be effective beginning on and as of the Effective Date and shall continue in effect through December 31, 2015 (the "**Term**"), unless sooner terminated under the provisions of Section 7 hereof.    Upon thirty (30) days written notice to Salesperson prior to the expiration of the then current Term, Distributor shall have the option to renew the Agreement for successive one (1) year terms with each such renewal constituting an additional year in the Term.

3.2    <u>Survival of Certain Obligations.</u>    Salesperson hereby agrees that, notwithstanding the termination of this Agreement as provided herein, the restrictive covenants set forth in Article 5 of this Agreement shall survive any such termination and remain in full force and effect.

## 4.    PERFORMANCE OF SERVICES

4.1    <u>Conduct.</u>    If Salesperson is not an individual but is an entity such as a corporation or limited-liability company, Salesperson shall cause its principal in the introductory paragraph of this Agreement to provide all services on behalf of Salesperson; and all duties, responsibilities and obligations of Salesperson shall apply with equal force to such person designated the same

as if such person were, in fact, the Salesperson and the Salesperson and such principal shall be jointly and severally liable therefor.   Whenever the term "**Salesperson**" is used in this Agreement, it shall mean both the Salesperson and the Principal collectively, jointly and severally. Salesperson hereby agrees to provide all Services in strict conformity with the highest of moral and ethical standards to maintain and enhance Distributor's reputation and goodwill and to advance the business interests of Distributor generally. Specifically, without limiting the generality of the preceding sentence, Salesperson shall not use or employ any improper means which would constitute a tortuous interference with any contractual right or business expectancy of any former employer of Salesperson.

4.2     No Restrictions.   Salesperson hereby represents and warrants to Distributor that Salesperson is not a party to, or otherwise bound by, any employment, sales agency or other independent contractor agreement or relationship, or by any non-disclosure, non-circumvention, non-competition non-solicitation, confidentiality or similar agreement or relationship with any other person that could affect Salesperson's performance under this Agreement or pose any actual or potential conflict of interest, and Salesperson agrees not to enter into any such agreement or relationship during the Term.

4.3     Place of Service.   Salesperson shall be under no obligation to render services at or from any particular location; it being recognized and understood that Salesperson may provide services from Salesperson's place of business or residence, the location of Distributor's offices or any other location as may be reasonably appropriate under the circumstances.

4.4     Compliance with Laws.   Salesperson shall comply with all applicable federal, state and local laws, regulations and ordinances, including, without limitation, (a) the Social Security Act, (b) the Health Insurance Portability and Accounting Act of 1996, 42 U.S.C. §300 gg *et seq* and all regulations and guidelines promulgated thereunder (HIPPA), (c) all federal and state health care anti-fraud, anti-kickback and abuse laws and (d) all rules and regulations of the Federal Food and Drug Administration (FDA) and the Center for Medicare and Medicaid Services (CMS).   Without limiting the generality of the foregoing, Salesperson shall not, under any circumstances, make any offer, payment or other inducement, whether directly or indirectly, to induce the referral of business, the purchase, lease or order of any item or service, or the recommending of the purchase, lease or order of any item or service.

4.5     Product Complaints. Salesperson shall immediately notify Distributor of any and every customer complaint and every regulatory complaint of which Salesperson becomes aware and shall perform any and all actions as may be reasonably necessary to ensure that all information relevant to any such complaint is promptly communicated to Distributor to enable Distributor to timely and fully investigate and monitor the same.

4.6     Marketing Representations.   Salesperson shall not make any false or misleading representation, warranty, guaranty, assurance or statement to any Assigned Customer or to any other person regarding the Medical Products or about NuVasive competitors or competitor products; and Salesperson shall not omit to state any material fact about the Medical Products or about NuVasive competitors or competitor products that is necessary to make all statements

1556825.1

made not misleading. Salesperson shall not make any representation, warranty, assurance, guaranty or statement with respect to the specifications, features or capabilities of any Medical Products that is not entirely consistent with the promotional materials and other documentation supplied by NuVasive with respect to such Medical Product. In this regard, Salesperson shall not make any representation, warranty, guaranty or assurance that expands upon any manufacturer limited warranty applicable to such Medical Product.

4.8     Training and Cooperation.  Salesperson shall cooperate fully with Distributor in all respects in the performance of Salesperson's obligations pursuant to this Agreement including participation in requested teleconference and meetings with NuVasive and including the provision of sales targeting and sales forecasting information. If and to the extent that NuVasive provides any special training regarding the use and operation of any of the Medical Products, Salesperson shall attend such training whenever and as often as requested and directed by Distributor.

4.9     Customer Quotes.  Salesperson shall quote to Assigned Customers only those prices, delivery schedules and other terms and conditions of sale that Distributor is authorized to quote pursuant to its relationship with Nuvasive. Salesperson does not have any authority to offer any price discount or make any delivery commitment or alter any terms or conditions of sale that are not so authorized.

4.10     Notice of Changes.  Salesperson shall promptly notify Distributor of any change in the key personnel, organization or status of any Assigned Customer in the Assigned Territory.

## 5.     RESTRICTIVE COVENANTS

5.1     Third Party Information and Agreements.  Salesperson hereby acknowledges and agrees that Distributor has received, and in the future will receive, from NuVasive, Distributor's Customers and prospective Customers and other third persons information that is confidential and/or proprietary and that is subject to a duty of Distributor to be maintained as confidential and used only for the limited purpose(s) for which the same was disclosed to Distributor ("**Third Party Information**"). During and following the Term, Salesperson shall hold all Third Party Information in the strictest confidence and, except as may be required by law, shall not disclose any Third Party Information to anyone (other than Distributor personnel who have a "need to know" such information in connection with Distributor's business) or use any Third Party Information other than in the performance of Services to Distributor. In addition Salesperson shall cooperate fully with, and provide the Services in accordance with the terms of agreements that Distributor has entered, or may in the future enter into with third persons.

5.2     Confidential Information Defined.  As used in this Agreement, "**Confidential Information**" shall mean information furnished or disclosed by Distributor and/or NuVasive to Salesperson in verbal or written form, including, without limitation, (a) all materials, trade secrets, know-how, formulas, processes, contacts, ideas, strategies, inventions, data, network configurations, computer programs, software and documentation, prototypes, methods, system architecture, specifications, models, samples, designs, flow charts, drawings and other technical

6

information; and (b) all proprietary information of Distributor such as business and marketing plans, contracts, proposals, pricing information and other financial and operational information, customer lists and logs and all other non-public information, material or data relating to the current and/or future business and/or operations of Distributor and/or NuVasive whether or not the same is labeled as being confidential.  To the extent not otherwise covered by (a) or (b) above, Confidential Information shall also include all information concerning the business and affairs of the Distributor and/or NuVasive or other materials that are furnished or disclosed by Distributor and/or NuVasive to Salesperson and all notes, analyses, compilations, studies, summaries and other material prepared by the Salesperson to the extent containing or based, in whole or in part, upon any information included in the foregoing.  Salesperson stipulates and agrees that all such Confidential Information derives significant value from not being generally known to, and not being readily ascertainable by, any other person; and, therefore, constitutes trade secret information belonging to Distributor or NuVasive, as the case may be. Salesperson has been informed and acknowledges that, the unauthorized taking and/or use of Confidential Information that constitutes trade secrets could result in civil and/or criminal penalties.

5.3     Non-disclosure Obligation.     Salesperson shall forever keep all Confidential Information secret and strictly confidential and Salesperson shall not use, directly or indirectly (through one or more affiliates or otherwise), any such Confidential Information except for the limited purpose of providing the Services to Distributor.  Unless and except to the limited extent otherwise consented by Distributor (with respect to Distributor Confidential Information) or NuVasive (with respect to NuVasive Confidential Information), which consent may be arbitrarily given or withheld by Distributor or NuVasive, the case may be, for any reason or no reason, Salesperson shall not disclose the Confidential Information to anyone other than personnel of Distributor or NuVasive, as applicable, who have a "need to know" such information and shall not remove from Distributor's or NuVasive's premises any records, documents or other data containing Confidential Information.  Salesperson agrees that upon the expiration of the Term or earlier if requested by Distributor (which respect to Distributor Confidential Information) or NuVasive (with respect to NuVasive Confidential Information), Salesperson shall promptly deliver to Distributor and NuVasive, as applicable, all records, documents and other tangible manifestations and electronic recordings of data containing Confidential Information, without retention of any copies, and will promptly destroy all notes, extracts and analyses based upon or containing any Confidential Information and shall certify, under penalties of perjury, such destruction to Distributor and NuVasive, as applicable.  Notwithstanding the return of such Confidential Information and destruction of all copies thereof, all knowledge of Confidential Information shall nevertheless continue to be kept secret confidential forever.

5.4     Non-Circumvention.  During the Term and for twelve (12) months following the Term, Salesperson shall not, in any manner, directly or indirectly (through one or more affiliates or otherwise), circumvent, avoid, by-pass, obviate, limit, restrict, or otherwise interfere with, Distributor's interest or relationship with any of Distributor's vendors, manufacturers, distributors or other suppliers (including NuVasive), Distributor's employees or independent salespersons, Distributor's Customers or prospective Customers, Distributor's brokers, dealers, shippers, financial institutions, technology owners or other persons who or which have a business relationship with Distributor, or assist any other person in any such circumvention,

7

1556825.1

avoidance, by-pass, obviation, limitation, restriction or interference, or attempt to any of the foregoing.  Without limiting the generality of the preceding sentence, during the Term and for twelve (12) months following the Term, Salesperson shall not, directly or indirectly (through one or more affiliates or otherwise) (i) induce or attempt to induce, or assist any other person to induce or attempt to induce, any supplier (including NuVasive), any Customer or prospective Customer, or any other person in a business relationship with Distributor to discontinue or limit its relationship with Distributor, (ii) induce or attempt to induce, or assist any other person to induce or attempt to induce, any employee, agent or independent salesperson of Distributor to discontinue or limit the relationship between Distributor and such person or, in any way, otherwise interfere with any such relationship, or (iii) disparage Distributor, in any way or to any extent.

5.5     <u>Non-Competition.</u>   Salesperson acknowledges and agrees that the sale and distribution of medical products such as, or similar to, the Medical Products handled by Distributor is a highly competitive field and is largely dependent on the goodwill that a business such as Distributor has created with its customers.  Salesperson further stipulates and agrees that it is reasonable to restrict Salesperson's ability to compete with Distributor in this field not only during the Term but also for a reasonable period following the Term.  Therefore, during the Term and for a twelve (12) month period following the Term, Salesperson shall not, in any manner, directly or indirectly (through one or more affiliates or otherwise), alone or in conjunction with any other person or entity, sell Competitive Products or own, manage, operate or control or participate in the ownership, management, operation or control of, or become associated, as an employee, director, officer, advisor, agent, consultant, principal, partner, member or independent contractor with or lender to any business that is in competition with the business of Distributor in (a) the Assigned Territory, (b) in any other locale in which Salesperson conducted business activities on behalf of Distributor at any time during the twelve (12) month period preceding the termination of Salesperson's employment with Distributor, or (c) in any other locale where Distributor or an agent or salesperson of Distributor has conducted business activities at any time during the twelve (12) month period preceding the termination of Salesperson's employment with Distributor.  For purposes of this Section, "**Competitive Products**" means any goods, products or product lines that are directly or indirectly competitive with the Medical Products sold by Distributor, including without limitation NuVasive Products.  For purposes of this Section, "**NuVasive Products**" means any goods, products, product lines or services marketed, promoted or sold by NuVasive, whether directly or indirectly, (i) that Distributor marketed, promoted, sold, or solicited sales of on behalf of NuVasive during the Term, or (ii) with respect to which Salesperson at any time received or otherwise obtained or learned NuVasive Confidential Information.

5.6     <u>Non-Solicitation.</u>  During the Term and for a twelve (12) month period following the Term, Salesperson shall not, directly or indirectly (through one or more affiliates or otherwise), alone or in conjunction with any other person or entity, canvas, solicit, or accept any business or patronage from any Customer or prospective Customer of Distributor or any person who or which is an affiliate of any Customer or prospective Customer of Distributor, such as an affiliated hospital, clinic or healthcare facility, a member of a physician group, an affiliate of a healthcare provider or otherwise.

5.7     Divisibility of Covenant Period.  If any covenant contained in this Agreement is held to be unreasonable, arbitrary or against public policy, such covenant shall be considered divisible both as to time, geography and customers, such that each month within the specified period shall be deemed a separate period of time, each customer a separate customer, and each geographical area a separate geographical area resulting in an intended requirement that the longest lesser time and largest lesser customer base and geographical area determined not to be unreasonable, arbitrary or against public policy shall remain effective and be specifically enforceable against the Salesperson.

5.8     Injunctive Relief and Specific Performance.   Salesperson acknowledges and agrees that (i) the Salesperson will have an important role in the development of the goodwill of the Distributor and has and will establish and develop relationships and contacts with the principal business relationships of the Distributor, (ii) the restrictions contained in this Agreement are reasonable in scope and are necessary to protect the Distributor's legitimate interests in protecting its business, and (iii) any violation of the restrictions contained in this Agreement will cause significant and irreparable harm to the Distributor for which the Distributor has no adequate remedy at law.  Salesperson hereby acknowledges and agrees that, if Salesperson repudiates breaches or violates any of the restrictive covenants set forth in this Article 5 or threatens or attempts to do so, Distributor will suffer immediate and irreparable harm that will not be compensable by damages alone.  In addition to, and not in limitation of, any other right or remedy available at law or in equity (each and all of which are expressly reserved by Distributor),  Distributor shall be entitled to obtain temporary, preliminary and permanent injunctive relief (mandatory and prohibitory) as well as specific performance and an equitable accounting of, and constructive trust for, all profits or other benefits arising out of or related to any such violation in a court of competent jurisdiction to prevent or restrain any actual or threatened breach of, or to specifically enforce, any and all of the restrictive covenants contained in this Article 5 by Salesperson or any person acting in concert therewith. For purposes of the preceding sentence Salesperson hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction and venue of the federal and/or state courts located in Hillsborough County, Florida.  Salesperson stipulates and agrees that no bond in excess of $150.00 shall be required to be posted as a condition for the granting of any such relief. In connection with any application for injunctive relief, Salesperson hereby waives the claim or defense that an adequate remedy exists at law.

## 6.     REPORTS TO DISTRIBUTOR

6.1     Business Plan.  Prior to the beginning of any Term or successive Term hereunder, Salesperson shall submit a business plan for the Services to be supplied to Distributor detailing Salesperson's sales goals and execution strategies for the coming year in a form acceptable to Distributor in its sole discretion.

6.2     Weekly Reporting.  Salesperson shall maintain a daily record of all Services rendered hereunder. Salesperson shall keep all such records throughout the Term.  Salesperson shall prepare and submit to Distributor detailed written reports of Salesperson's Services to

1556825.1

Distributor as often as Distributor may request, but not less than frequently than weekly on or before each Thursday with each such report containing (i) a detailed listing of all accounts serviced by Salesperson, (ii) the status of work in each account, (iii) reporting and summary of purchase order volume and case coverage sheets, as well as open bids generated and their status. Such reports shall further include weekly tracking forms outlining the case schedule for Salesperson and the top five (5) sales focus items.

6.3     Physician Payments Sunshine Act.   No later than the fifth (5th) day of each calendar month during the Term, Salesperson shall provide a report with all information of Salesperson necessary to comply with the Physician Payments Sunshine Act, in form and substance satisfactory to Distributor in its sole discretion.

6.4     Confidential.   All of the records of Services and reports to Distributor shall be considered Confidential Information and their handling and use are subject to, and shall be governed by, Article 5 of this Agreement.

## 7.     TERMINATION

7.1     Termination in General.   Either Salesperson or Distributor may arbitrarily terminate the Term for any reason or no reason at any time by giving the other party fourteen (14) days prior written notice of termination.  No termination pursuant to this Section shall affect the liability (by way of indemnification or otherwise) of any party on account of any breach of representation or violation of any covenant set forth in this Agreement such as liability attributable to a breach of Section 1.4 or liability resulting from a violation of Sections 4.1, 4.2, 4.4 or Article 5 of this Agreement.

7.2     Immediate Termination.   Distributor may immediately terminate the Term, without prior notice, upon a breach or violation of any of the provisions contained in Sections 1.3(f), 4.1, 4.2, 4.4 or Article 5 of this Agreement or upon the death or disability of Salesperson. For purposes of this Section, disability shall mean the inability of Salesperson to perform the essential duties of his/her position, due to illness, injury or other physical or mental capacity.

7.3     Surviving Obligations.   Notwithstanding any termination of the Term, whether pursuant to Section 7.1 or Section 7.2, no such termination shall affect any of the obligations that survive the Term such as those set forth in Article 5 of this Agreement.

## 8.     GENERAL PROVISIONS

8.1     Licenses.   Distributor hereby grants Salesperson a non-exclusive, limited license for the Term to use Distributor's trademark, mission statement, and/or other materials ("**Distributor Marks**") in connection with the Services. Salesperson hereby stipulates and agrees that the Distributor Marks are the exclusive property of Distributor and that Salesperson, by reason of Agreement or otherwise, has not acquired, does not acquire, and will not acquire, any right, title, interest, or estate in or to any of the Distributor Marks, whether relating to the Medical Products or otherwise.

8.2     Waivers.   The failure of any party to insist, in any one or more instances, upon observance or performance of any provision of this Agreement shall not be construed as a waiver of such provision, shall not constitute a relinquishment of such party's right to thereafter require observance and performance of such provision and shall not constitute a waiver of any other right or remedy belonging to such party.   The waiver of any breach of any provision of this Agreement shall not be deemed to be, and shall not be construed as, a waiver of such provision on account of, or with respect to, any other breach of the same or any other provision of this Agreement.   No provision of this Agreement shall be deemed to have been waived, unless such waiver is in writing and signed by the party sought to be charged with a waiver of such provision.

8.3     Entire Agreement.  This Agreement, including information incorporated herein by reference or attached hereto, sets forth all, and is intended by the parties to be an integration of all, of the representations, promises, agreements and understandings among the parties. This Agreement supersedes all prior and contemporaneous representations, promises, agreements and understandings between the parties; and there are no representations, promises, agreements or understandings, oral or written, express or implied, between the parties other than those which are set forth or incorporated herein.   In entering into this Agreement, neither party has relied upon any statement of any person, any assumption, fact or any understanding of law (i) with respect to the duration, extension, renewal or termination of this Agreement; (ii) with respect to the relationship between the parties; or (iii) which, might change or modify any of the provisions of this Agreement or prevent this Agreement from being effective.

8.4     Successors and Assigns.  This Agreement is personal in its nature and Salesperson shall not, without the express written consent of Distributor, assign or transfer this Agreement, or any rights or obligations hereunder, and any attempted transfer or assignment by Salesperson in violation of this section shall be null, void, and of no effect; *provided,* however, that the provisions hereof shall inure to the benefit of, and be binding upon, each successor of Distributor, whether by merger, consolidation, transfer of all or substantially all of Distributor's assets, or otherwise. Except as required by applicable law, no right to receive payments under this Agreement shall be subject to anticipation, commutation, alienation, sale, assignment, encumbrance, charge, pledge, or hypothecation or to exclusion, attachment, levy, or similar process or assignment by operation of law and any voluntary or involuntary attempt to effect any such action shall be null, void, and of no effect.

8.5     Severability; Enforceability.   To the extent that it may effectively do so under applicable law, each party hereto hereby waives any provision of law that would render any provision of this Agreement invalid, void or unenforceable in any respect. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and obligations set forth herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

8.6     Counterparts.  This Agreement may be executed in any number of counterparts

1556825.1

and by the different parties on separate counterparts. Each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same agreement. This Agreement shall be deemed to have been executed and delivered on the Effective Date. This Agreement may be transmitted and signed by facsimile or by portable document format (PDF). The effectiveness of any such documents and signatures shall, subject to applicable law, have the same force and effect as manually-signed originals and shall be binding on all parties hereto.

    8.7    <u>Notices.</u>

        (a) Manner of Delivery. Any notice or demand required or desired to be given to any party pursuant to this Agreement shall be in writing and shall be validly served, given, delivered or made if and only if (i) personally delivered (including delivery by a commercially-recognized courier which provides service between the point-of-origin and the point-of-destination); (ii) deposited in the United States mail, certified or registered, postage prepaid, return receipt requested; or (iii) made by telecopied or electronic transmission. Service by certified or registered mail shall be deemed made on the date actually received or the date on which delivery is first attempted, whichever is sooner. Service by telecopier or electronic transmission shall be deemed made upon the date of transmission; provided that transmission is confirmed prior to 5:00 o'clock p.m. local time at the place of delivery on a business day or, otherwise, on the first business day after transmission and provided further that a copy of such notice or demand is also deposited in the United States mail, regular service, postage prepaid.

        (b)    Notices to Distributor. Any notice or demand to Distributor shall be delivered to **Absolute Medical, Inc., 382 Devon Place ,Heathrow, FL 32746**.

        (c)    Notices to Salesperson. Any notice or demand to Salesperson shall be delivered to **100 Maplewood Dr., Sanford, FL 32771**.

        (d)    Changes of Addresses. Any party may change its address for the purpose of receiving notices or demands by a written notice given to the other party in the manner provided in this Section.

    8.8    <u>Governing Law; Jurisdiction.</u> The laws of the State of Florida, as such laws have been interpreted and applied by the courts of the State of Florida, shall govern the validity, performance and enforcement of each and all of the provisions of this Agreement. Any proceedings with respect to the performance or enforcement of this Agreement must be brought in the state District Court for Hillsborough County, Florida, which is and shall be, vested with exclusive jurisdiction.

    8.9    <u>Attorney Fees.</u>    In the event any action or proceeding is initiated by party to enforce any provision of this Agreement by reason of any alleged breach or default, for a declaration of rights or obligations or for any other remedy, the prevailing party shall be entitled to recover such amounts as such party may have reasonably expended (including attorney fees) in the prosecution or defense, as applicable, of such action or proceeding; and such amount shall

be included in any judgment or award rendered in such action or proceeding.

8.10    Construction.  For purposes of interpreting this Agreement, the captions, numbers and letters of the various articles, sections, subsections, paragraphs, subparagraphs and clauses appearing in this Agreement are inserted only as a matter of convenience and do not, in any way, define, limit, construe, or describe the scope or intent of such sections, subsections, paragraphs, subparagraphs or clauses of this Agreement and shall not, in any way, be interpreted to affect any of the provisions of this Agreement. The necessary grammatical changes required to make the provisions of this Agreement apply in a plural or singular sense, where required, or to a particular gender shall, in all instances, be assumed as though in each case fully expressed. In the event there exists any obviously manifested clerical error in any provision of this Agreement (such as the inclusion or omission of a word or words or an inaccurate section cross-reference resulting from renumbering during the drafting process) the correction of such error shall be assumed to the same extent as if, in each such instance, this Agreement were formally amended to correct such error. Words such as "**herein**", "**hereof**", "**hereby**", "**herefrom**" and "**hereunder**", when used in this Agreement shall refer to this Agreement as a whole unless a specific provision of this Agreement is expressly identified. The word "**person**" shall mean any individual, corporation, partnership, limited partnership, limited-liability company, trust, estate, association or other entity, however denominated.  Whenever the context so requires, the word "**party**" shall mean and refer to only each of those persons identified in the introductory paragraph of this Agreement. The word "**affiliate**" of a specified person shall mean any person (i) that, directly or indirectly (through one or more intermediaries or otherwise), controls, is controlled by, or under common control with such specified person; (ii) that is a shareholder, director, officer, partner, member, manager, trustee, beneficiary or employee of either such specified person or another person that constitutes an affiliate of such specified person; (iii) of which either such specified person or another person that constitutes an affiliate of such specified person is or serves as a shareholder, director, officer, partner, member, manager, trustee, beneficiary or employee;  (iv) in which such specified person has a financial interest, directly or indirectly (as a lender or otherwise); or (v) who is a spouse, father, mother, son, daughter, brother, sister, uncle, aunt, nephew or niece of such specified person or of any person described in the preceding clauses (i), (ii), (iii) and/or (iv). The phrase "**and/or**" shall be construed both (i) conjunctively to bring within the scope of the list of identified words connected with such connective all identified words as if only the word "and", by itself was used, and (ii) disjunctively to refer only to each identified word as if only the word "or", by itself, was used. The word "**including**" when following any general statement, provision or language, shall not be construed to limit such statement, provision or language to the specific items or matters set forth immediately following such word or to similar items or matters, regardless whether or not non-limiting language (such as words "without limitation", or "but not limited to", or words of similar import) is used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such general statement, provision or language. A "**business day**" shall mean any day which is not a Saturday, Sunday or any day which is a legally-recognized holiday in the State of Florida.

8.11    Negotiation at Arms-Length.  This Agreement has been negotiated fully between the parties as an arms-length transaction.  Both parties have had the opportunity to have this

1556825.1

Agreement reviewed by counsel.  In the case of a dispute concerning the interpretation of any provision of this Agreement, all parties are deemed to have drafted, chosen and selected the language, and the doubtful language will not be interpreted or construed against any party.

8.11    Third Party Beneficiary.  Section 4.4 and Article V of this Agreement are for the benefit of not only Distributor but also NuVasive and, without limiting Distributor's right, in any way, NuVasive shall have the right, power and authority to enforce such provisions as though it were a party hereto. As such, NuVasive is an express third party beneficiary to this Agreement.

[Signature page follows]

Irrespective of the date on which any person actually signs this Agreement, this Agreement is being signed to take effect on and as of the Effective Date set forth in the introductory paragraph.

ABSOLUTE MEDICAL, INC.

By: _____
    Greg Soufleris, President

_____

By: _____

Print Name: _____

Title: _____

1556825.1

## SCHEDULE A

### ASSIGNED TERRITORY

Lake County
Seminole County
Orange County
Volusia
Osceola County
Brevard County

## SCHEDULE B

## QUOTA & COMMISSION PLAN

|  | Flat | 3/5 MIX | 4/5 MIX | 5/5 MIX |
|---|---|---|---|---|
| Miller | 8% | 0.5% | 1% | 1.5% |

*__Mix bonus-__Percentages are paid from $1 on dollars in each product category over quota *less current quarter's biologics and medical device tax totals.*
*Overall monthly PTQ must be at 100% or greater to qualify.

* __Osteocel__- If Osteocel is brought in on a case by case basis or not purchased by the hospital prior to case, there will be a 20% commission deduction or receive 6% commission points.

### 2015 Quota - $1,117,312.00

1556825.1

## SCHEDULE C

### EXPENSES

(Expense Burden)

- MVP/VSP: 50% expenses on hotel, flight and HCP meal
- Industry Meetings: 50% one time; on hotel and HCP meal
- SR responsible for 100% of HCP breakfast, lunch & dinner meetings
- SR responsible for 50% surgeon education/PSP events
- SR responsible for 100% of vendor credentialing fees
- SR responsible for 50% of DP funded HCP events.
- SR responsible for 100% of all asset management fines if rep falls below 90% on asset measure or late loaner

*Additional exceptions may be granted with prior approval as well as additional responsibilities may be added. Individual circumstances may be overridden by Distributor Principal approval. *Expenses will be paid once Absolute Medical Expense Report is properly filled out and submitted.

Irrespective of the date on which any person actually signs this Agreement, this Agreement is being signed to take effect on and as of the Effective Date set forth in the introductory paragraph.

ABSOLUTE MEDICAL, INC.

By: _____
    Greg Soufleris, President


By: _____
Print Name: RYAN MILLER
Title: SALES REPRESENTATIVE

15