**OPERATING AGREEMENT**
**OF**
**ABSOLUTE MEDICAL SYSTEMS, LLC**
**A Florida limited liability company**

**This Operating Agreement** (this "Agreement"), is effective as of November 30, 2017 (the "Effective Date") in accordance with the Florida Revised Limited Liability Company Act (the "Florida Act") and subject to the Articles of Organization filed with the Florida Department of State, by and among the individuals listed on Exhibit A attached hereto and incorporated by this reference (the "Members"), who make the following Agreement regarding the conduct of the business and affairs of **Absolute Medical Systems, LLC**, a Florida limited liability company (the "Company"):

## ARTICLE 1
## DEFINITIONS

Unless otherwise defined herein, capitalized terms used in this Agreement shall have the meanings assigned to them in Exhibit B attached hereto and incorporated by this reference.

## ARTICLE 2
## FORMATION, TERM, AND PURPOSE OF COMPANY

**2.1    Formation and Term.** The Company was formed as a Florida limited liability company on December 1, 2017.  The term of the Company shall continue until the Company is dissolved and its affairs wound up in accordance with the provisions of this Agreement.  The Company and the Members hereby forever discharge the organizer, and the organizer shall be indemnified by the Company and the Members from and against, any expense or liability incurred by the organizer by reason of having been the organizer of the Company.

**2.2    Name.** The name of the Company is Absolute Medical Systems.

**2.3    Principal Place of Business.** The initial principal place of business of the Company is 8901 Lee Vista Boulevard, Suite 3003, Orlando, Florida 32829.  The Company may locate its place of business at any other place or places as the Manager may deem advisable.

**2.4    Registered Office and Registered Agent.** The Company's initial registered office shall be at 8901 Lee Vista Boulevard, Suite 3003, Orlando Florida 32829.  Gregory Soufleris shall serve as the registered agent of the Company.  The registered office and registered agent may be changed from time to time pursuant to the terms of the Florida Act as Manager may deem advisable.

**2.5    Business of Company.** The Company shall engage in any lawful business or activity permitted by the Florida Act.  Subject to the terms of this Agreement, the Company shall have all powers of a limited liability company under the Florida Act.

## ARTICLE 3
## MANAGEMENT AND CONTROL OF BUSINESS

## ARTICLE 3
## MANAGEMENT AND CONTROL OF BUSINESS

**3.1    Management Rights.** The right to exercise the powers of the Company and to manage the business and affairs of the Company is vested entirely in Manager. Except for situations in which the approval of the Members is expressly required pursuant to a resolution or agreement by the Members, this Operating Agreement or by non-waivable provisions of applicable law, Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and property of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business.  The Manager shall have the authority to delegate powers and duties to officers of the Company pursuant to Section 3.12.  The Members hereby delegate to Manager the power, on behalf of the Company, to do all things necessary or convenient to carry out the business and affairs of the Company, including, but not limited to, the following matters:

(a)     To acquire property from any Person.  A Member's direct or indirect affiliation or connection with any such Person shall not prohibit the Company from dealing with that Person.

(b)     To act and make all decisions with respect to the acquisition, development, management, leasing, financing, sale, exchange, or disposition of any real or personal property owned by the Company.

(c)     To hold and own any Company property in the name of the Company.

(d)     To sell, convey, assign, mortgage, or lease, any real estate and any personal property owned by the Company's business.

(e)     To purchase liability and other insurance to protect the Company's property and business.

(f)     To borrow money for and on behalf of the Company and to pledge property of the Company as collateral for such loans.

(g)     To dispose of property of the Company in the ordinary course of the Company's business.

(h)     To invest any Company funds temporarily (by way of example but not limitation) FDIC insured deposits, money market funds, or short-term (not greater than one year) governmental securities or obligations.

(i)     To execute, or to authorize another Member, officer or agent to execute, on behalf of the Company all instruments and documents, including, without limitation, checks, drafts, notes and other negotiable instruments, mortgages or deeds of trust, security agreements, financing statements, documents providing for the acquisition, mortgage or disposition of the Company's property, assignments, bills of sale, leases, partnership agreements, operating agreements (or limited liability company agreements) of other limited liability companies and any other instruments or documents necessary or incident to the business of the Company.

(j)     To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds.

(k)     To hire, contract with, supervise and terminate on reasonable notice any and all contractors, employees, agents, and representatives, including, but not limited to, any subsidiaries or affiliates of Manager, retained to perform development and management activities with respect to real property owned by the Company.

(l)     To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business in the ordinary course.

**3.2**    **Election of Managers.** The initial Manager of the Company shall be Gregory Soufleris. The number of Manager(s) shall be fixed from time to time by the Members.  Each Manager shall hold office until such Manager's successor or successors are appointed by the Members or until such Manager's earlier death, dissolution, resignation, Disability or removal pursuant to this Agreement. The initial number of Manager(s) shall be one (1). Managers may be designated by a majority vote of the Members.

**3.3**    **Removal and Resignation of Manager.** At any meeting of Members called expressly for the purpose, a Manager may be removed for any reason, with or without cause, on a resolution adopted by a majority vote of the Members. Any Manager may resign at any time upon written notice to the Company.

**3.4**    **Action By Managers.** If there is more than one (1) Manager, an act of the Managers is effective if a majority of Managers vote to approve the act at a meeting at which a quorum of Managers is present.

**3.5**    **Quorum of Managers.** If there is more than one (1) Manager, at all meetings of the Managers, a majority of Managers serving at the time of the meeting must be present to constitute a quorum for the transaction of business.

**3.6**    **Meetings of Managers.** If there is more than one (1) Manager, meetings of the Managers may be called by or at the request of: (i) the Chairman of Managers (ii) at least one-half of the total number of Managers or (iii) the Members holding a Majority Interest.  The persons authorized to call meetings of the Managers may fix any place, either within or without the State of Florida, as the place for holding any special meeting of Managers called by them.

Notice of Meetings. Notice of any meeting of Managers shall be given at least five (5) days prior thereto by written notice to each Manager at his or her address.  All notices hereunder must be in writing and shall be given in a manner permitted by Section 15.11. Notice of any meetings of Managers must specify the purpose of the meeting or the business to be transacted at the meeting, in addition to the place, date, and time of the meeting.

Participation by Video or Telephone Conference. Managers, or any committee designated by Managers, may participate in a meeting of the Managers, or committee thereof, by means of conference telephone or similar communications equipment as long as all persons participating in the meeting can speak with and hear each other.  Participation by a Manager pursuant to this Paragraph shall constitute presence in person at such meeting.

Waiver of Notice. Attendance of any meeting in person or pursuant to the preceding paragraph shall constitute waiver of the notice requirements set forth in this Section 3.6.

**3.7**    **Action Without Meeting.** Any action required or permitted by law or by this Agreement to be taken by Manager may be taken by written consent, without a meeting, if such consent is executed by not less than the number of Managers required to approve such action.  Notice of such action without a meeting by less than unanimous written consent shall be given promptly to those Managers of record on the date when the written consent is first executed who did not participate in taking the action.

**3.8**    **Compensation of Managers.** Members have authority to establish reasonable compensation of all Managers for services to the Company.

**3.9    Duties of Managers.** Except as expressly set forth herein or otherwise required by the Florida Act, any Manager, acting solely in his or her capacity as a Manager, shall not have any duties or liabilities relating thereto, to the Company or Members.  Manager owes no duties to future or present creditors for any decisions when exercising its reasonable business judgment.

**3.10    Execution of Documents.** Manager and any Member or officer authorized by Manager, shall have the authority to execute documents and instruments for the acquisition, mortgage, or disposal of property on behalf of the Company and to conduct the day-to-day activities of the Company.

**3.11    Committees.** Manager may, by the unanimous resolution of Manager, designate an executive committee or other committees, any such committee to consist of one or more Managers of the Company or their representatives, and, to the extent provided in said resolution or resolutions, shall have and may exercise all of the authority of Managers in the management of the business and affairs of the Company. Each such committee shall keep regular minutes of its proceedings and the same shall be recorded in the minute book of the Company.

**3.12    Officers.** Manager may appoint officers of the Company, if deemed necessary by Manager, including but not limited to a chairperson, president, vice president, secretary, and chief financial officer. The officers shall serve at the pleasure of Manager, subject to all rights, if any, of an officer under any contract of employment. The officers shall exercise such powers and perform such duties as determined from time to time by Manager; provided, that Manager cannot delegate any powers or authority to officers that are not given to Manager in this Agreement or the Act.  Any two offices may be held by the same person.  The salary and duties and responsibilities of each officer, if any, shall be set by Manager.  Each officer shall serve for the term of office for which he or she is appointed and until his or her successor has been appointed and has qualified, or his or her earlier death, resignation, or removal by Manager. Each officer, to the extent of the power and authority delegated to such officer by Manager or as otherwise set forth herein, is an agent of the Company for the purpose of its business and affairs.  The act of any officer, including, but not limited to, the execution in the name of the Company of any instrument for apparently carrying on in the usual way the business and affairs of the Company, shall bind the Company, unless the officer so acting has, in fact, no authority to act for the Company in the particular matter. If any officer takes any action or binds the Company in violation of this Section 3.12, or any other provision of this Agreement, such officer shall be solely responsible for any loss and expense incurred by the Company as a result of the unauthorized action and shall indemnify and hold the Company, Managers and Members harmless with respect to the loss or expense.

**ARTICLE 4**
**MEMBERSHIP**

**4.1    Members.** The names and addresses of the Members are set forth on <u>Exhibit A</u>.

**4.2    Approvals of Members.** Except as otherwise expressly provided in this Agreement, the Members shall have no voting or approval rights, and all other actions may be taken by Manager without any further consent or approval of Members.

**4.3    Actions Requiring the Consent of the Voting Members.** Without the approval of Members holding a Majority Interest, neither Manager nor any officer shall have authority to do or cause or commit the Company to do any of the following:

**4.4**

    (a)    Any act in contravention of this Agreement;

    (b)    Merge or consolidate the Company with or into any other entity or change or reorganize the Company into any other legal form;

    (c)    Sell substantially all of the Company's assets in one transaction or a series of transactions;

    (d)    Make any distribution to a Member except as otherwise provided in this Agreement;

    (e)    File a voluntary petition in bankruptcy or for reorganization or for adoption of an arrangement under any state or federal bankruptcy laws;

    (f)    Execute or deliver any general assignment for the benefit of creditors of the Company or permit the entry of an order of relief against the Company under any state or federal bankruptcy laws;

    (g)    Call for additional Capital Contributions; or

    (h)    Dissolve the Company under Article 12.

**4.5    Manner of Acting.** Except as otherwise specified herein, the affirmative vote of Members holding a Majority Interest shall be the act of Members. The voting rights of Members are to be distributed in proportion to each Member's contribution to capital in the following manner: one vote per Unit.

**4.6    Removal and Resignation of Members.** Members may be removed upon the occurrence of Cessation Event as defined in Section 12.3 of this Agreement. Removal of a Member with or without Cause, may be made on a resolution adopted by a Majority Interest. Any Member may resign at any time upon written notice to the Company, in which case such Member shall be treated as a Member being removed without Cause.

**4.7    Quorum of Members** At all meetings of the Members, a majority of Members serving at the time of the meeting must be present to constitute a quorum to transact business.

**4.8    Meetings of Members.** Meetings of the Members may be called by or at the request of Manager or Members holding a Majority Interest. The Person authorized to call meetings of the Members may fix any place, either within or without the State of Florida, as the place for holding any special meeting of the Members.

    Notice of Meetings. Notice of any meeting of the Members shall be given by the Person calling the meeting at least five (5) days previous thereto by written notice to each Member at his or her address set forth in this Agreement. All notices hereunder must be in writing and shall be given in a manner permitted by Section 15.11. Notice of any meetings of the Members must specify the purpose of the meeting or the business to be transacted at the meeting, in addition to the place, date, and time of the meeting. Only persons whose names are listed as Members in the official records of the Company five (5) days before any meeting of the Members are entitled to notice of or to vote at that meeting.

<u>Participation by Video or Telephone Conference</u>. Members may participate in a meeting of the Members by means of conference telephone or similar communications equipment as long as all persons participating in the meeting can speak with and hear each other. Participation by a Member pursuant to this paragraph shall constitute presence in person at such meeting.

<u>Waiver of Notice</u>. Attendance of any meeting in person or pursuant to the preceding paragraph shall constitute waiver of the notice requirements set forth in this Section 4.7.

**4.9    Action Without Meeting.** Any action required or permitted to be taken by Members at a meeting may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by Members entitled to vote with respect to such action and having the requisite Ownership Percentage required to approve such action. Any action taken under this Section shall be effective when the Members required to approve such action have signed the consent, unless the consent specifies a different effective date. Notice of such action without a meeting by less than unanimous written consent shall be given promptly to those Members of record on the date when the written consent is first executed who did not participate in taking the action.

**4.10    Vote By Proxy.** Members may vote either in person or by proxy. Proxies must be executed in writing by Members so voting. A telegram, telex, cablegram, or similar transmission by the Member, or a photographic, photostatic, facsimile, or similar reproduction of a writing executed by a Member is deemed an execution in writing for purposes of this Section.

**4.11    Duties of Members.** Except as expressly set forth herein or otherwise required by the Florida Act, no Member shall have any duties or obligations to the Company or any other Member solely by reason of acting in his capacity as a Member.

**4.12    No Liability for the Company Obligations.** Except as otherwise provided under the Florida Act, no Member will have any personal liability for any debts or losses of the Company solely by reason of being a Member of the Company.

**4.13    Limitation of Authority.** Each Member, acting solely in his or her capacity as a Member, is not an agent of the Company and does not have any authority to act on behalf of the Company, execute any instrument in connection with the carrying on of the Company's business and affairs, or otherwise bind the Company in any matter, unless expressly authorized to do so by Manager. If any Member takes any action or binds the Company in violation of this Section, or any other provision of this Agreement, such Member shall be solely responsible for any loss and expense incurred by the Company as a result of the unauthorized action and shall indemnify and hold the Company, Managers and the other Members harmless with respect to the loss or expense.

## ARTICLE 5
## INDEMNIFICATION OF MEMBERS AND MANAGERS

To the fullest extent permitted by the Florida Act, the Company shall indemnify each Manager, Member and officer and make advances for expenses to each Manager, Member and officer arising from any loss, cost, expense, damage, claim, or demand, in connection with the Company, Manager's, Member's or officer's status as a Manager, Member or officer of the Company, Manager's, Member's or officer's participation in the management, business and affairs of the Company or such Manager's, Member's or officer's activities on behalf of the Company, provided that such Manager's, Member's or officer's actions were taken in good faith, in a manner Manager,

Member or officer reasonably believed to be in or not opposed to the best interests of the Company, did not involve a breach of fiduciary duty and were not otherwise in violation of any provision of this Agreement. The standard of the fiduciary duty each Member and Manager owes to the Company and to its Members are those of a partner to a partnership and to the partners of the partnership. A Member's or Manager's standard of conduct owed to the Company and other Members and Managers is to act in the highest good faith to the Members and Managers, and a Member or Manager may not seek to obtain an advantage in the Company affairs by the slightest misconduct, misrepresentation, concealment, threat, or adverse pressure of any kind.

## ARTICLE 6
## CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

6.1    **Members' Capital Contributions and Issuance of Units.** Each Member shall contribute the amount set forth next to such Member's name on Exhibit A hereto as the Member's initial Capital Contribution (the "Initial Capital Contributions") with any preferred Capital Contribution as reflected on Exhibit A ("Preferred Capital Contribution"), which amount shall be reduced by Distributions in accordance with Article 7 and shall be increased by additional Preferred Capital Contribution as authorized by Manager; however, such additional Preferred Capital Contribution shall not change the number of Units held by each Members or dilute the Member's Ownership Percentage without the written consent of the Majority in Interest. Each Member's Capital Contributions and the number of Units owned by each Member shall be reflected on the books and records of the Company.  The initial issuance of Units and initial Capital Contributions will be reflected and set forth in Exhibit A.

6.2    **Loans to Company.** To the extent approved by Manager, any Member may make one or more loans to the Company on such reasonable terms and conditions as may be approved by Manager. Loans by a Member to the Company shall not be considered Capital Contributions and the outstanding principal of which, as well as any accrued interest thereon, at ten percent (10%) per annum, shall be paid prior to a Distributions to the Members by the Company pursuant to Article 7.

6.3    **Capital Reserves.** Manager shall cause the Company to initially maintain cash reserves in such amounts and for such purposes as Manager deems appropriate and in the best interests of the Company and its Members.

6.4    **Capital Accounts.** A separate Capital Account shall be maintained for each Member in accordance with Section 1.704-1(b)(2)(iv) of the Treasury Regulations.

6.5    **Capital Account Treatment of Dispositions.** If a Member acquires all or part of the Membership Interest of another Member by Assignment, the Capital Account of the acquiring Member shall be credited and the Capital Account of the disposing Member shall be debited in an amount equal to that amount of the total Capital Account of the disposing Member which is proportionate to the Membership Interest involved in the Assignment.

6.6    **No Obligation to Restore Capital Account Deficit Balance.** Except as required by law, a Member shall not be required to restore a deficit balance in such Member's Capital Account.

6.7    **Interest On and Return of Capital Contributions.** No Member shall be entitled to interest on such Member's Capital Contributions or to a return of the Member's Capital Contributions, except as otherwise specifically provided for in this Agreement.

**6.8    Additional Members.** From time to time, the Company may admit additional Members and issue Units to such Members, on such terms and conditions as approved by a Majority Interest. Each additional Member admitted to the Company must agree to be bound by the terms and conditions of this Agreement. Unless otherwise expressly agreed to by the Members in writing, in the event that additional Members are admitted to the Company, the Members' Interests shall be diluted proportionately.

## ARTICLE 7
## DISTRIBUTIONS TO MEMBERS

**7.1    Distributions.** The Company may distribute Available Cash to Members at such times and in such amounts as Manager, in its sole and absolute discretion, determines to be appropriate. However, any such distributions shall be paid in the following order:

(a)    First, to Members in proportion to and to the extent of the principal and interest owed to any Member and made pursuant to Section 6.2 (to be applied to first to interest and then to principal) and to the extent not prohibited by any loan covenants included in loan agreements in which the Company is a party;

(b)    Second, to the holders of Preferred Capital Contribution, until all Preferred Capital Contributions have been returned to the contributor, with interest on the outstanding Preferred Capital Contribution Balance at ten percent (10%) per annum; and

(c)    Third, the balance, if any, to the Members in accordance with each Members' respective Ownership Percentage or put into reserve at Manager's sole discretion.

**7.2    Limitation Upon Distributions.** No distribution shall be made to Members if, in the sole discretion of Manager: (a) the Company would not be able to pay its debts as they become due in the usual course of business, (b) the Company's total assets would be less than the sum of its total liabilities or (c) such distribution would otherwise constitute a violation of the Florida Act.

## ARTICLE 8
## ALLOCATIONS OF NET PROFITS AND NET LOSSES

**8.1    Net Profits and Net Losses.** After giving effect to any special allocations required by Treasury Regulations, Net Profits and Net Losses shall be allocated to the Members for each Fiscal Year or allocation period in such amounts and proportions as Manager reasonably determines to be consistent with the economic terms of this Agreement, subject to the priority set forth in Article 7. Notwithstanding the above, Net Profits and Losses shall be allocated: (a) first, to the Members with outstanding Preferred Capital Contributions, made in proportion to each such Members percentage of the total outstanding Preferred Capital Contributions, and then, (b) any remaining Net Profits and Losses shall be allocated to all Members in proportion to their Ownership Percentage.

**8.2    Determination by Manager.** All matters concerning the computation of Capital Accounts, the allocation of items of the Company income, gain, loss, deduction, and expense for all purposes of this Agreement and the adoption of any accounting procedures not expressly provided for by the terms of this Agreement shall be determined by Manager.

## ARTICLE 9
## TAXES

**9.1    Tax Elections.** Manager shall have the right to determine the Company's tax election for United States federal income tax purposes (and state, local and foreign tax purposes when applicable) at all times.

**9.2    Tax Matters Partner.** If required by the Code or regulations, one of the Members shall be designated by Manager as the "Tax Matters Partner" of the Company.

**9.3    Tax Returns.** Manager shall cause the preparation and timely filing and notice of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business.

## ARTICLE 10
## CONFLICTS OF INTEREST

**10.1    Other Business Ventures.** Subject to the provisions of Article 5, each Member and Manager of the Company may engage in or possess an interest in any other business venture regardless of whether such other business venture is competitive with the business of the Company. Neither the Company, Manager, nor the other Members shall have any right by virtue of this Agreement in and to such permitted ventures or to the income or profits derived therefrom.

**10.2    Transactions between the Company and Manager.** Notwithstanding that it may constitute a conflict of interest, Manager may, and may cause their Affiliates to, engage in any transaction (including, without limitation, the purchase, sale, lease, or exchange of any property or the rendering of any service, or the establishment of any salary, other compensation, or other terms of employment) with the Company so long as such transaction is not expressly prohibited by this Agreement, and so long as the terms and conditions of such transaction, on an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from persons capable of similarly performing them and in similar transactions between parties operating at arm's length.

## ARTICLE 11
## TRANSFERABILITY

**11.1    General Prohibition.** Except as otherwise provided in this Agreement, no Member or Economic Interest Owner may assign, sell, transfer, pledge, encumber, or in any way alienate (collectively a "Transfer"), all or any part of his, her or its Interest. A Member may only Transfer all or any part of his, her or its Interest pursuant to the provisions of Article 12 (a "Permitted Transfer").

**11.2    Limitations.** Notwithstanding any other provisions of this Agreement, no proposed Transfer of a Membership Interest, or any part thereof, will be permitted or effective:

(a)    if such sale, assignment or transfer would cause a change to any tax election made by the Company for United States federal income tax purposes (and state, local and foreign tax purposes when applicable), unless waived in the sole and absolute discretion of Manager; or

(b)    if such transfer or assignment would violate any Federal or any state securities or "blue sky" laws applicable to the Company or to the Interest to be transferred or assigned.

**11.3    Successors as to Economic Rights.** Any Person receiving an Interest in the Company upon a Transfer by a Member that is not a Permitted Transfer or that was not approved by the written consent of a Majority Interest, shall be, at most, an Economic Interest Owner only and shall be entitled only to the transferor's Economic Interest to the extent assigned. Such Economic Interest Owner shall not be entitled to vote on any question regarding the Company, and the Ownership Percentage associated with the transferred Economic Interest shall not be considered to be outstanding for voting purposes. A transferee shall succeed to the transferor's Capital Contributions and Capital Account to the extent related to the Economic Interest transferred, regardless of whether such transferee becomes a Member.

## ARTICLE 12
## DISSOLUTION, CESSATION AND TERMINATION

**12.1    Dissolution.** The Company shall be dissolved only upon the occurrence of any of the following events:

(a)    by the affirmative vote of the Members holding a Majority Interest to dissolve;

(b)    by judicial dissolution as contemplated under the Florida Act; or

(c)    the sale of all of the Company's assets and the collection of all proceeds therefrom.

**12.2    Effect of Dissolution.** Upon dissolution, the Company shall cease to carry on its business, except as permitted by the Florida Act.

**12.3    Cessation Event.** A Member shall cease to be a Member solely upon the occurrence of any one of the following events ("Cessation Event"):

(a)    the Company's purchase or redemption of a Member's Membership Interest;

(b)    removal of the Member with or without Cause by a Majority Interest;

(c)    the Member voluntarily withdraws from the Company; or

(d)    the death or Disability of a Member.

Unless otherwise provided in this Agreement or approved by the non-withdrawing Members, a Member who suffers or incurs a Cessation Event or whose status as a Member is otherwise terminated (a "Withdrawing Member"): (a) must either surrender his, her or its Units to the Company or transfer such Units to the Member or Members purchasing the Units, and (b) shall be entitled to a return of all outstanding Preferred Capital Contribution, with any interest due pursuant to Section 7.1. Any loans made to the Company by a Withdrawing Member shall be repaid in accordance with the terms of the written agreement made with respect to the loan.

Any return of Preferred Capital Contributions and payment to a Withdrawing Member with respect to a Cessation Event, if any are required pursuant to this Agreement, shall be made: (a) by the Company if the a Majority Interest elects to have the Units surrendered to the Company, or (b) by the Member holding a Majority Interest if the Majority Interest elects to purchase the Units. At the sole discretion of the Member holding the Majority Interest, such Member may agree with the other non-withdrawing Members to allocate the purchase of Units and payment therefore, in such proportions as the purchasing Members agree upon. If the Member holding a Majority Interest is the Withdrawing Member, the Member holding the next

largest Ownership Percentage shall be treated as the Member holding the Majority Interest for this Section 12.3. Notwithstanding the foregoing, nothing in this Section permits a removal under Section 12.3(b) of the Member holding a Majority Interest by other Members.

If a Member is removed by a Majority Interest for Cause, the Withdrawing Member shall not be entitled to receive the fair value of his, her or its Membership Interest, but shall receive the return of any outstanding Preferred Capital Contribution as specified above. If a Member is removed by a Majority Interest without Cause, the Withdrawing Member shall be entitled to receive from the Company: (a) the fair value of his, her or its Membership Interest, determined as the Company's book value multiplied by the Withdrawing Member's Ownership Percentage and (b) the return of any outstanding Preferred Capital Contribution as specified above.

If a Member's Interest is purchased or redeemed, a Member withdraws, or upon death or Disability of a Member, such Member, or its estate as applicable, shall be entitled to: (a) the fair value of his, her or its Membership Interest, determined as the Company's book value multiplied by the Withdrawing Member's Ownership Percentage and (b) the return of any outstanding Preferred Capital Contribution as specified above.

## ARTICLE 13
## BOOKS AND RECORDS

**13.1   Accounting Period.** The Company's accounting period shall be the Fiscal Year.

**13.2   Records and Reports.** At the expense of the Company, Manager shall cause the Company to maintain records and accounts of all operations and expenditures of the Company. The books and records shall at all times be maintained at the principal office of the Company and shall be open to the reasonable inspection and examination of the Members, or their duly authorized representatives during reasonable business hours. The Company shall keep at its principal place of business the following records:

(a)   A current list of the full name and last known address of each Member and Manager;

(b)   Copies of records to enable a Member to determine the relative voting rights, if any, of the Members;

(c)   A copy of the Articles of Organization of the Company and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which the Articles of Organization and any amendments thereto have been executed;

(d)   Copies of the Company's federal, state, and local income tax returns and reports, if any, for each year; and

(e)   Copies of this Agreement, together with any amendments thereto and executed copies of any written powers of attorney pursuant to which this Agreement and any amendments thereto have been executed;

(f)   Copies of the meeting minutes, resolutions and written consents of the Manager, Members and any committees established.

**13.3   Separateness/Operations Matters.** The Company shall:

(a)   maintain books and records and bank accounts separate from those of any other person;

(b)     maintain its assets in such a manner that it is not costly or difficult to segregate, identify or ascertain such assets;

(c)     hold itself out to creditors and the public as a legal entity separate and distinct from any other entity;

(d)     prepare separate tax returns, if necessary, and separate financial statements; and

(e)     not commingle its assets or funds with those of any other person.

## ARTICLE 14
## WINDING UP, LIQUIDATION, DISTRIBUTION OF ASSETS

**14.1    Accounting in Connection with Dissolution.**

(a)     Upon dissolution, an accounting shall be made by the Company's accountants of the accounts of the Company and of the Company's assets, liabilities and operations. Manager, or the Persons selected by the Members (the "Liquidators"), shall immediately proceed to wind up the affairs of the Company.

(b)     If the Company is dissolved and its affairs are to be wound up, the Liquidators shall:

(i)     Sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Liquidators may determine to distribute any assets to the Members in kind);

(ii)    Allocate any profit or loss resulting from such sales to the Members in accordance with Article 8 hereof;

(iii)   Discharge all liabilities of the Company, including liabilities to Members who are creditors, to the extent otherwise permitted by law, other than liabilities to Members for distributions, and establish such Reserves as may be reasonably necessary to provide for contingencies or liabilities of the Company;

(iv)    Distribute the remaining assets to the Members, either in cash or in kind, in accordance with the positive balance (if any) in each Member's Capital Account (as determined after taking into account all Capital Account adjustments for the Company's Fiscal Year during which the liquidation occurs); and

(v)     If any assets of the Company are to be distributed in kind, the net fair market value of such assets shall be determined by independent appraisal. Such assets shall be deemed to have been sold as of the date of dissolution for their fair market value, and the Capital Accounts of the Members shall be adjusted pursuant to the provisions of this Agreement to reflect such deemed sale.

(c)     Notwithstanding anything to the contrary in this Agreement, upon a liquidation within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g), if any Member has a deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution to reduce or eliminate the negative balance of such Member's Capital Account.

(d)     Upon completion of the winding-up, liquidation and distribution of the assets, the Company shall be deemed terminated.

**14.2    Articles of Dissolution.** When all debts, liabilities and obligations have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets have been distributed to the Members, the Liquidators shall file Articles of Dissolution with the Florida Department of State in accordance with the Florida Act.

**14.3    Return of Contribution Nonrecourse to Other Members.** Upon dissolution, each Member shall look solely to the assets of the Company for the return of the Member's Capital Account. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the Capital Account of one or more Members, including, without limitation, all or any part of that Capital Account attributable to Capital Contributions, then such Member or Members shall have no recourse against any other Member.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

**15.1    Application of Florida Law.** This Agreement, and the application or interpretation hereof, shall be governed exclusively by its terms and by the Florida Act. EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY: (1) AGREES THAT ANY SUIT, ACTION, OR OTHER LEGAL PROCEEDING ARISING OUT OF THIS AGREEMENT OR OUT OF ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, SHALL EXCLUSIVELY BE BROUGHT IN ANY STATE OR FEDERAL COURT LOCATED IN PALM BEAC COUNTY, FLORIDA, (2) CONSENTS TO THE JURISDICTION OF EACH SUCH COURT IN ANY SUCH SUIT, ACTION, OR LEGAL PROCEEDING, (3) WAIVES ANY OBJECTION WHICH HE, SHE OR IT MAY HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION, OR LEGAL PROCEEDING IN ANY OF SUCH COURTS, (4) AGREES THAT FLORIDA IS THE MOST CONVENIENT FORUM FOR LITIGATION OF ANY SUCH SUIT, ACTION, OR LEGAL PROCEEDING, AND (5) AGREES THAT A SUMMONS AND COMPLAINT COMMENCING AN ACTION OR PROCEEDING IN ANY SUCH COURTS SHALL BE PROPERLY SERVED AND SHALL CONFER PERSONAL JURISDICTION IF SERVED PERSONALLY OR BY CERTIFIED MAIL TO SUCH PARTY OR AS OTHERWISE PROVIDED UNDER THE LAWS OF THE STATE OF FLORIDA.

**15.2    No Action for Partition.** No Member has any right to maintain any action for partition with respect to the property of the Company.

**15.3    Execution of Additional Instruments.** Each Member hereby agrees to execute such other and further statements of interest and holdings, designations, powers of attorney and other instruments necessary to comply with any laws, rules or regulations.

**15.4    Headings, Exhibits and Interpretation.** The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof. All exhibits and schedules referred to in this Agreement and attached hereto are incorporated herein by this reference. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole, including the Exhibits and Schedules hereto, as the same may from time to time be amended, modified or supplemented, and not to any particular section, subsection or clause contained in this Agreement. Wherever from the context it appears appropriate, each term stated in either the singular or plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

**15.5   Waivers.** The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

**15.6   Rights and Remedies Cumulative.** The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies. Such rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise. The parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Agreement and that any party may in its sole discretion apply to any court of law or equity of competent jurisdiction for (and receive) specific performance and/or injunctive relief in order to enforce or prevent any violations of the provisions of this Agreement.

**15.7   Title to Property.** Assets of the Company shall be owned by the Company as an Entity, and no Member shall have any ownership interest in the Company's assets in that Member's individual name or right. Each Member's Interest shall be personal property for all purposes. The Company shall hold the Company's assets in the name of the Company and not in the name of any Member.

**15.8   Heirs, Successors and Assigns.** The terms of this Agreement shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Agreement, their respective heirs, legal representatives, successors and assigns.

**15.9   Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company or by any Person not a party hereto.

**15.10   Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

**15.11   Notices.** All notices, requests, demands, claims and other communications hereunder shall be in writing and shall be deemed to have been delivered and received (a) when personally delivered, or (b) on the third (3rd) business day after which sent by registered or certified mail, postage prepaid, return receipt requested, (c) on the next business day after the business day on which deposited with a regulated public carrier (e.g., Federal Express) for overnight delivery, freight prepaid, addressed as follows, or at such other address, notice of which is given in a manner permitted by this Section 15.11: (a) if to the Company, at the principal office of the Company; (b) if to any Member, at the address set forth on <u>Exhibit A</u>, or such other address as provided to the Company in writing.

**15.12   Mediation.** In the event of any dispute or claim arising out of or relating to the interpretation of this Agreement, or breach hereof (a "Claim"), each Member shall in good faith first negotiate a written resolution of such Claim within a period not to exceed fifteen (15) days from the date of delivery of a request by a Member to Manager for such negotiation. Such negotiations shall be conducted by representatives of the parties who have authorization to resolve any such Claim. In the event that the Members cannot negotiate a written resolution to such Claim during this 15-day negotiation period, and still prior to filing any claims in a court of law or to seeking binding arbitration, Manager shall then submit such Claim to non-binding mediation. The mediation may be initiated by the written request of any Member to Manager, shall commence within fifteen (15) days of the receipt of such notice and shall be conducted in Fort Lauderdale, Florida, in accordance with such mediation procedures established by the mediator, unless otherwise agreed to by each Member. The Members will attempt to each agree upon the selection of a mediator. The mediation shall not

exceed a period of thirty (30) days.  Each Member shall bear his, her or its own expenses in connection with such mediation, except as otherwise agreed to by the Members or as awarded by a court after mediation in accordance with Section 15.19.  In the event that the Members do not resolve such Claim as a result of such mediation or in the event that such Claim is not resolved within ninety (90) days of the commencement of the mediation, any Member may seek to resolve the Claim in a court of competent jurisdiction or seek other legal or equitable resolution.  The judgment or decree of a court of competent jurisdiction shall be deemed final when the time for appeal, if any, shall have expired and no appeal shall have been taken or when all appeals taken shall have been finally determined.  Notwithstanding the foregoing, any Member may at any time apply to any court of competent jurisdiction for injunctive relief in the event of an alleged breach of this Agreement or otherwise to prevent irreparable harm.

**15.13  Amendments.** Except as expressly provided herein, any amendment to this Agreement must be made in writing and approved by Members holding a Majority Interest.

**15.14  Conflicts with the Florida Act.** If any particular provision herein is construed to be in conflict with the provisions of the Florida Act, the provisions of this Agreement shall control to the fullest extent permitted by applicable law.  Any provision found to be invalid or unenforceable shall not affect or invalidate the other provisions hereof, and this Agreement shall be construed in all respects as if such conflicting provision were omitted.

**15.15  No Partnership Intended for Non-Tax Purposes.** The Members have formed the Company under the Florida Act, and expressly disavow any intention to form a partnership under the partnership act or laws of any state.  The Members do not intend to be partners one to another or partners as to any third party.  To the extent any Member, by word or action, represents to another person that any other Member is a partner or that the Company is a partnership, the Member making such wrongful representation shall be liable to any other Member who incurs personal liability by reason of such wrongful representation.

**15.16  Time.** Time is of the essence of this Agreement, and to any payments, allocations and distributions provided for under this Agreement.

**15.17  Entire Agreement.** This Agreement (including all Exhibits and Schedules) and the agreements, certificates and other documents delivered pursuant to this Agreement contain the entire agreement among the parties with respect to the matters described herein, and supersede all prior agreements, written or oral, with respect thereto.

**15.18  Separate Counsel.** EACH MEMBER ACKNOWLEDGES THAT HE, SHE OR IT HAS HAD AN OPPORTUNITY TO CONSULT WITH HIS OWN COUNSEL WITH REGARD TO THE MATTERS CONTAINED IN THIS AGREEMENT.  EACH MEMBER FURTHER ACKNOWLEDGES THAT COUNSEL TO THE COMPANY REPRESENTS NO OTHER MEMBER OR PERSON, WITH RESPECT TO THE DRAFTING, NEGOTIATION AND EXECUTION OF THIS AGREEMENT.

**15.19  Attorney's Fees.** In the event of any suit or action to enforce or interpret any provision of this Agreement (or that is based on this Agreement), the prevailing party is entitled to recover, in addition to other costs, reasonable attorney's fees in connection with the suit, action, arbitration, and any appeals. The determination of who is the prevailing party and the amount of reasonable attorney's

fees to be paid to the prevailing party will be decided by the court, including any appellate court, in the court in which the matter is heard, tried or decided.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

IN WITNESS WHEREOF, this Agreement is effective on the Effective Date first above written.

**MEMBERS:**

By: _____
    Gregory Soufleris

**MANAGER:**

Gregory Soufleris

By: _____
    Gregory Soufleris

## EXHIBIT A
## MEMBERS

| Member | Units | Ownership Percentage |
|---|---|---|
| Gregory Soufleris 8901 Lee Vista Boulevard, Suite 3003 Orlando, Florida 32829 | 100 | 100% |
| **Total:** | 100 | 100% |

*\* Does not include Preferred Contribution Amounts*

## MANAGERS

**Gregory Soufleris**
8901 Lee Vista Boulevard, Suite 3003
Orlando, Florida 32829

## EXHIBIT B
## DEFINITIONS

"**Agreement.**"  This Operating Agreement, together with all Exhibits and Schedules, as the same may be amended or supplemented from time to time.

"**Articles of Organization.**"  The Articles of Organization of the Company, as filed with the Florida Department of State, as the same may be amended from time to time.

"**Available Cash.**"  The Company's cash funds of any kind derived directly or indirectly from or in connection with its operations, refinancing or other sources (including, without limitation, any proceeds from business interruption insurance) plus any reduction in Reserves taken into account pursuant to this definition, minus payments directly or indirectly of costs and expenses of any kind related to or arising out of the Company's operations (including payment of property, plant and equipment lease obligations; and other debt service payments), and amounts added to Reserves for tax distributions, business expansion, capital replacement, required by loan agreements or other contractual arrangements to which the Company is party or necessary to satisfy contingencies reasonably anticipated for, or associated with, the Business of the Company, all as reasonably determined by Manager.

"**Business of the Company.**"  As defined in Article 2.

"**Capital Account.**"   A capital account maintained with respect to each Member in accordance with this Agreement.

"**Capital Contribution.**"  Any contribution to the capital of the Company in cash or property by a Member whenever made.

"**Cause.**"  With respect to grounds for removal of a Manager, shall mean the following:

(a)  committing an act of fraud, gross negligence or material misrepresentation against the Company;

(b)  the appropriation (or attempted appropriation) of a material business opportunity of the Company; or

(c)  committing any act or engaging in any conduct that materially harms the Business of the Company or reputation of the Company.

"**Code.**"  The Internal Revenue Code of 1986, as amended from time to time.

The "**Company.**"  Absolute Medical Systems, LLC, a Florida limited liability company.

"**Disability.**"  With respect to a Member or Manager, an entry by a court of competent jurisdiction adjudicating such Member incompetent to manage his or her person or his or her property.

"**Economic Interest**" means a Member's or Economic Interest Owner's share of the Company's Net Profits, Net Losses, and distributions of the Company's assets pursuant to this Agreement and the Florida Act, but shall not include any other rights of a Member, including, without limitation, the right to vote or participate in the management of Company.

**"Economic Interest Owner."** The owner of an Economic Interest who is not a Member and enjoys no voting rights.

**"Entity."** Any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative or association or any foreign trust or foreign business organization.

**"Fiscal Year."** The Company's fiscal year, which shall be the calendar year.

**"Florida Act."** The Florida Revised Limited Liability Company Act, Title XXXVI, Chapter 605, as amended from time to time.

**"Interest."** Any interest in the Company, including a Membership Interest, any right to vote or participate in the business of the Company, or any other interest in the Company.

**"Majority Interest."** Ownership Percentages (as defined below) of Members which, taken together, constitute more than fifty percent (50%) of all Ownership Percentages held by all Members entitled to vote on or consent to the issue in question.

**"Manager"** or **"Managers"** shall mean one or more Members selected by the Members to serve as the manager of the Company in accordance with this Agreement.

**"Member"** or **"Members"** shall mean those persons or entities who have an Ownership Interest (as defined below) in the Company, who executes this Agreement or a counterpart thereof as a Member, and each of the Persons who may hereafter become Members as provided in this Agreement.

**"Membership Interest"** and **"Ownership Interest."** A Member's entire interest in the Company and the right to participate in the management of the business and affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Agreement.

**"Net Profits"** and **"Net Losses."** The Company's taxable income or loss determined in accordance with Code Section 703(a) for each of its Fiscal Years.

**"Ownership Percentage."** For each Member, the percentage determined at any given time by dividing the aggregate number of Units owned by such Member as of such time by the aggregate number of Units owned by all Members as of such time. The Ownership Percentage of each Member shall be set forth on Exhibit A hereto.

**"Person."** Any individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such Person where the context so permits.

**"Reserves."** Funds set aside and amounts allocated to reserves in amounts determined by the Board for working capital and to pay taxes, insurance, debt service, capital improvements and other costs and expenses incident to the ownership or operation of the Company's business.

**"Super Majority Interest."** Ownership Percentages of Members which, taken together, constitute more than seventy-five percent (75%) of all Ownership Percentages held by all Members entitled to vote on or consent to the issue in question.

**"Treasury Regulations"** or **"Regulations."** The federal income tax regulations, including temporary regulations, promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

**"Units."** The standard measurement used to determine each Member's Membership Interest. The number of Units held by each member shall be set forth on Exhibit A hereto.