

# DEDICATED SALES REPRESENTATIVE AGREEMENT

This **DEDICATED SALES REPRESENTATIVE AGREEMENT** is entered into effective as of December 1, 2017 ("Effective Date"), by and between Alphatec Spine, Inc., a California corporation ("ATEC"), and Millertime Medical Inc., a Florida limited liability company ("Representative") (each a "Party") and consists of the below terms and conditions and all attached exhibits (collectively, the "Agreement"). In consideration of the provisions set forth below and intending to be legally bound, the Parties hereby agree as follows:

**1.    TERM.** This Agreement commences on the Effective Date and continues in effect until November 30, 2018. After this date, the Agreement will automatically renew for additional twelve (12) month periods ("Term") until either Party provides written notice of non-renewal at least 90-days prior to the start of the renewal period or earlier termination as provided in **Section 6**.

**2.    SCOPE.**

2.1    Role of Representative. Representative is an independent contractor authorized by ATEC and obligated to use best commercial efforts to promote, sell, manage loaned inventory of, and provide support in use of ATEC's Products (solely as defined in **Exhibit A**) in accordance with their instructions for use to healthcare provider customers *only* in the Territory (defined in **Exhibit A**) in accordance with this Agreement and the then-current ATEC Spine Commercial Policy for Independent Sales Representatives ("Commercial Policy"). A copy of the most-recent Commercial Policy can be found on ATEC's distributor portal or requested from customer service. To the extent there is any direct conflict between the terms of the Commercial Policy and this Agreement, the terms of this Agreement control.

2.2    Sales Quotas. Representative agrees to achieve the amount of Net Sales (defined in **Section 3.2**) set forth in **Exhibit B** ("Sales Quotas"). ATEC may set future Sales Quotas in its sole discretion, but will consult with Representative to the extent practicable. Sales Quotas may be adjusted by ATEC upon the addition of a Product or a Territory change. ATEC reserves the right to increase Sales Quotas when or within 6 months of issuing a Product Addition Notice (defined in **Exhibit A**).

2.3    Use of Sales Representatives. Representative is permitted to use employees and contractors to perform its duties under this Agreement, subject to the criteria and requirements detailed in **Exhibit G**. Representative is solely responsible and liable for all acts and omissions of its sales representatives. Sales representatives shall not be claimed to be or deemed to be third party beneficiaries of this Agreement and have no right to enforce or claim any right or benefit under this Agreement.

2.4    Sales Action Plans. No later than 30 days after the end of each calendar year, Representative will deliver to its account manager a plan detailing Representative Product sales goals, forecasts, and execution strategies for the coming year broken down by Product, sales representative and customer (a "Sales Action Plan"), together with a current insurance certificate (See **Exhibit F**) and the Certification of Compliance defined in **Exhibit G** (Compliance with Applicable Laws). Within 15 days of a request, Representative will deliver to its account manager a report detailing Representative's Sales Action Plan progress, activities and updates ("Progress Report"). Both the Sales Action Plan and the Progress report will include contact information of its employees or contractors used to act on Representative's behalf

under this Agreement (also referred to in this Agreement collectively or individually as "sales representatives") correlated to the Territory, Products, surgeons and customers.

2.5   Notice of Changes. Sales Agent shall promptly advise ATEC of: (a) any changes in Representative's organization, ownership, key personnel, sales representatives, financial status, and similar matters; (b) any changes in the contacts and status of any major customers of ATEC in the Territory; (c) changes to Representative's noncompetitive product portfolio; and (d) any political, financial, legislative, industrial or other events in the Territory that could affect the mutual business interests of Sales Agent and ATEC.

3.   COMMISSION.

3.1   Fixed Commission Compensation. For Product sold by Representative in the Territory, as evidenced by the timely submission of a correct Surgical Request Form ("SRF") and customer purchase order (if required by the customer) as prescribed in the Commercial Policy, Representative's sole compensation for its performance under this Agreement will be a fixed amount paid on a monthly basis ("Commission") . The amount of Commission is set forth in **Exhibit C**.

3.2   "Net Sales" is defined as the dollar amount actually invoiced by ATEC to a customer for the sales of the Product(s), less administrative (or similar) fees, shipping, courier, handling, delivery, freight, taxes, C.O.D. charges, insurance, tariffs and duties, cash and trade discounts, rebates, chargebacks, short-payments, amounts refunded or credited for returns, uncollected or uncollectable (until paid) amounts.

3.3   Commission Deductions and Chargebacks. ATEC may deduct from Commission amounts paid to other distributors due to Representative's violation of Territory limits, loaner fees, fees for use of ATEC instruments with third party products, and other amounts due from Representative. Other Commission deductions and chargebacks may apply as specified elsewhere in this Agreement and in the Commercial Policy.

3.4   Amounts Due from Representative. Any invoice issued and sent to Representative by ATEC is due and payable within 15 days. The issuance of an invoice does not waive ATEC's right to deduct amounts owed from Commission. Overdue amounts are subject to a late charge of one percent (1%) per month until fully paid. ATEC is entitled to recover from Representative its costs and legal fees, including without limitation attorneys' and expert witness fees, incurred in collecting amounts owed by Sales Agent or securing the return of or payment for loaned ATEC product and instruments.

4.   SALE OF THE PRODUCTS.

4.1   Prices and Terms of Sale. ATEC has the sole authority to set prices, payment terms, delivery schedules and standard terms and conditions for sale of Products. ALL REQUESTS FOR PRICING QUOTES, PRICING AGREEMENTS, CONSIGNMENT AGREEMENTS AND PURCHASING PROPOSALS WILL BE PROMPTLY SUBMITTED TO AND HANDLED BY ATEC WITH REPRESENTATIVE'S ASSISTANCE. Representative shall quote to customers only those authorized prices, delivery schedules and terms and conditions of sale and shall have no authority to quote or offer any discount to such prices or change any such terms and conditions, without the prior written consent of ATEC. ATEC may require Representative to hold ATEC harmless with respect to such deviations and unauthorized agreements.

4.2   Returns. All sales are final. Representative shall have no authority to accept any Product returns. If Representative receives a Product return, Representative shall immediately contact ATEC customer service.

4.3   Product Consignment. In its sole discretion, ATEC may entrust loaned Product inventory to Representative for the purposes of facilitating its obligations under this Agreement (for convenience, referred to as "consignment inventory"). Title for consignment inventory and samples rests solely in ATEC until sold to a customer. Risk of loss for consignment inventory and samples transfers at delivery to Representative until either sale or delivery of the consigned inventory to a shipping carrier for return to ATEC or to a third party as directed by ATEC. Consigned instruments shall only be used with ATEC Products and Representative may be charged for the loan or use of ATEC instruments with non-ATEC products. Terms and conditions for consignment are set forth in the Commercial Policy. Representative is financially responsible for all consigned inventory that is not returned to ATEC in saleable condition, whether held by Representative or its sales representatives, or at a customer site (unless the customer has expressly accepted the risk of loss). Inventory is not in saleable condition if it is missing, stolen, spoiled, expired or expiring or instruments damaged beyond reasonable wear and tear.

5.   **REPRESENTATIVE STATUS, NON-COMPETITION AND CONFLICTS.**

5.1   Representative Affiliate. For the purposes of this Agreement, a "Representative Affiliate" means Representative, its principals, officers, affiliated companies, partners, employees, sales representatives, or any entity in which Representative or one of its principals has an ownership interest.

5.2   Conflicts of Interest. Subject to **Section 5.5**, Representative represents and warrants to ATEC that it does not, nor does any Representative Affiliate, currently represent or promote any lines or products that are competitive with any Product, and that during the Term and for a cumulative period of one (1) year following the expiration or termination of this Agreement one (1) year after ("Post-Term Period") it shall not, nor shall any Representative Affiliate, directly or indirectly, represent, promote, sell or otherwise commercialize within the Territory any products that are the same or substantially similar to or competitive with the products sold by ATEC or use any ATEC Confidential Information to reduce the opportunity for sale of ATEC products. Representative shall not in any way disparage ATEC, its products, or its representatives or employees, including taking any action or making any statement the intent or reasonably foreseeable effect of which is to impugn or injure the reputation or goodwill of ATEC or any of its employees or agents. The one (1) year period during which the restrictions of this Section are applicable shall toll for any period of time in which Representative is not in compliance with this Section. If Representative fails to comply with this Section, then ATEC is not liable for any payments otherwise to be paid to Representative arising from termination.

5.3   Non-Solicitation. During the Term and the Post-Term Period, no Representative Affiliate shall directly or indirectly solicit to leave the employ of ATEC any ATEC employees, independent sales representative, distributor, independent contractor or supplier. The one (1) year period during which the restrictions of this Section are applicable shall toll for any period of time in which Representative is not in compliance with this Section. If Representative fails to comply with this Section, then ATEC is not liable for any payments otherwise to be paid to Representative arising from termination.

5.4   Reasonableness of Restriction. ATEC and Representative acknowledge and agree that the covenants in this **Section 5** are reasonable and necessary to protect the legitimate interests of ATEC,

including, the protection of Confidential Information. Representative further acknowledges and agrees that such covenants are an essential part of and consideration for ATEC's promises contained in this Agreement.

5.5     Transition to Exclusivity. In the event that Representative currently represents or, in the case of newly released ATEC products, subsequently acquires the right to represent or promote any lines or products that are competitive with any Product, Representative shall have 60 days to cease such activity and comply with the requirements of **Section 5.2** ("Transition Period"). In the event Representative fails to comply with the requirements of **Section 5.2** within the Transition Period, ATEC, in its sole and absolute discretion, may without liability or compensation due to Representative for such action terminate this Agreement or modify Representative's Territory and/or Products Representative is authorized sell, lower the Commission rate for the Product Representative is competing with, sell into the Territory, directly or indirectly. At the time of execution of this Agreement, Representative shall list on Exhibit A all medical products, devices, therapies and drugs that are *not* competitive with Products that Representative promotes, advertises, distributes, or sells as of the Effective Date and will keep such list updated, subject to ATEC's agreement that the product is non-competitive.

6.      **TERM AND TERMINATION.**

6.1     Termination for Default With Opportunity to Cure. If either Party defaults in the performance of any material provision of this Agreement and the non-defaulting Party delivers written notice to the defaulting Party detailing the default and such default is not cured within the earlier of 15-days of the delivery of the notice of default or an earlier date on which the defaulting Party indicates that it does not intend to cure the default then the Agreement will be automatically terminated as of such date.

6.2     Termination for Default Without Opportunity to Cure. A non-defaulting Party may provide notice of immediate termination without opportunity to cure for the following: (a) for multiple instances of the same default of a material provision of this Agreement or failure to comply with the Commercial Policy; (b) due to insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of the other Party; (c) upon either Party making an assignment for the benefit of creditors; (d) the other Party ceases to do relevant business; (e) by ATEC for Poor Standing as provided in Exhibit B; or (f) breaches of **Sections 5** or **Exhibits E**, **F** or **G**.

6.3     ATEC Termination-At-Will. ATEC may provide notice of termination without cause, in which case Representative will be eligible to earn *one* of the payments specified in **Exhibit D** (At-Will Termination Payment) or **Exhibit I** (Change in Control Payment). Representative is not eligible for payment under Exhibit D commencing on the date of a Change in Control (as defined in Exhibit I) and ending 12-months later, accordingly, Representative will only be eligible for the payment under Exhibit I in the case of ATEC's termination of this Agreement without cause.

6.4     No Termination Compensation. Except as expressly provided in Exhibit D or Exhibit I, Representative is not be entitled to compensation due to the termination, non-renewal or expiration of this Agreement.

6.5     Withholding Right. Commissions and other payments payable during the month of termination or following may be withheld, in whole or in part, until such time as all consigned inventory under Representative's account is returned or paid for, and any outstanding surgical request forms and purchase

DocuSign Envelope ID: 73609132-E490-4845-B5BE-A679E0E7E3DC

orders are received or customer payment is received. ATEC payment and commission deduction rights shall still apply to withheld payments.

6.6    Survival. The provisions of **Sections 3, 4, 5.2, 5.3, 6, 7**, Exhibit D (except for any grant of rights, licenses and materials by ATEC), Exhibit E, Exhibit F and Exhibit G shall survive the expiration or termination of this Agreement for any reason. All other rights and obligations of the Parties shall cease upon termination of this Agreement.

7.    **LIMITATION OF LIABILITY**

7.1    ATEC SHALL NOT BE LIABLE TO REPRESENTATIVE FOR SPECIAL, PUNITIVE, INDIRECT, LOST PROFITS, LOST INCOME, LOSS OF BUSINESS OPPORTUNITY OR FOR UNFORESEEABLE LOSSES OR DAMAGES. NEITHER PARTY SHALL BE LIABLE FOR BREACH OF CONTRACT OR TORT DAMAGES THAT ARE REMOTE OR SPECULATIVE, OR THAT THE NON-BREACHING PARTY COULD NOT HAVE REASONABLY FORESEEN ON ENTRY INTO THIS AGREEMENT.

7.2    EXCEPT WITH RESPECT TO A PARTY'S PROVISION OF INDEMNIFICATION UNDER THIS EXHIBIT, EACH PARTY'S TOTAL LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL NOT EXCEED TWO TIMES THE AMOUNTS PAID TO REPRESENTATIVE BY ATEC IN THE 24 MONTHS PRECEDING THE INITIAL EVENT WHICH GAVE RISE TO THE CLAIM.

7.3    NOTHING IN THIS AGREEMENT IS INTENDED TO EXCLUDE OR LIMIT EITHER PARTY'S LIABILITY FOR: (A) DEATH OR PERSONAL INJURY; (B) GROSS NEGLIGENCE, MALICE, RECKLESSNESS, FRAUD AND INTENTIONAL MISREPRESENTATION; (C) INFRINGEMENT BY REPRESENTATIVE OR A THIRD PARTY FACILITATED BY REPRESENTATIVE OF ATEC'S OWNED OR LICENSED INTELLECTUAL PROPERTY RIGHTS (INCLUDING "TRADEMARKS"); (D) WRONGFUL USE OR DISCLOSURE OF THE NON-BREACHING PARTY'S CONFIDENTIAL INFORMATION; (E) INDEMNIFICATION OBLIGATION; (F) VIOLATIONS OF APPLICABLE LAW; (G) ANY IMPLIED TERMS WHICH CANNOT BE EXCLUDED BY LAW; (H) ANY LIABILITY THAT CANNOT BE EXCLUDED OR LIMITED BY LAW; OR (I) WHERE THE PROVIDED REMEDY FAILS ITS ESSENTIAL PURPOSE.

8.    **EXECUTION.**

8.1    Counterparts. This Agreement may be signed in any number of counterparts, each of which is deemed original, but all of which together constitute one and the same Agreement.

8.2    Execution. The Parties agree that execution and delivery of this Agreement and any amendments by the Parties shall be legally valid and effective through: (a) executing and delivering a paper copy of the document; (b) transmitting the executed paper copy of the document by facsimile or electronically scanned format and emailed; or (c) creating, generating, sending, receiving and executing through an electronic signature system such as DocuSign®.

8.3    Entire Agreement. This Agreement (including all Exhibits and the Commercial Policy) constitutes the entire, final, complete and exclusive agreement between the Parties and supersedes all previous or contemporaneous agreements, intentions or representations, oral or written, relating to Representative's rights and obligations as an independent sales representative of ATEC as provided in this Agreement. This Agreement (except for the Commercial Policy which may be modified by ATEC), unless expressly allowed under this Agreement, may not be modified or amended except in a writing signed by a duly authorized representative of each Party. Unless expressly permitted under this Agreement, no other act, document, purchase order, invoice, surgical request form,, email, text message, Notice, voice mail, usage, or custom will be deemed to amend or modify any part of this Agreement.

The Parties by their duly authorized representatives do hereby agree to be bound by the terms and conditions of this Dedicated Sales Representative Agreement effective on December 1, 2017, and all Exhibits.

**MILLERTIME MEDICAL INC.**                              **ALPHATEC SPINE, INC.**

DocuSigned by:                                            DocuSigned by:
*Ryan Miller*                                             *Jonathan Allen*
B8F80D804A38471                                           9261C9AEA799435
Ryan A. Miller                                            Jonathan Allen
President                                                 EVP, Commercial Operations

Address for Notice Purposes:                              Address for Notice Purposes:
100 Maplewood Drive                                       5818 El Camino Real
Sanford, Florida 32771                                    Carlsbad, California 92008
Telephone: (407) 314-8784                                 Attn: Legal (Sales Agent)
Email: ryanamiller23@gmail.com                            Telephone: 800-922-1356
                                                          Fax: 760-930-2513
                                                          Email: legal@ATECspine.com

*Attached: Exhibits A through I*

# EXHIBIT A
# TERRITORY AND PRODUCTS

## I. TERRITORY.

ATEC grants Representative the following Territory: The following county(ies) in the State of Florida, excluding the below-listed surgeons (if any):

| Included Counties |
|---|
| Orange |
| Osceola |
| Seminole |
| Volusia |

A. <u>Corporate Accounts</u>. ATEC reserves the right to market and sell Products in the Territory, directly or through a third party, to customers designated by ATEC in writing as Corporate Accounts. A "<u>Corporate Account</u>" is a customer or segment of customers to which ATEC determines that special terms of service, pricing, service or other requirements apply, for example purposes only this could be an integrated delivery network, a group purchasing organization, a health system, a facility with a "repless" model or a direct purchase facility.

B. <u>Territory and Product Restrictions</u>. Representative shall not, directly or indirectly apart from ATEC approved industry trade shows, events or publications: (a) advertise or promote any Products outside the Territory and Corporate Accounts; (b) solicit or procure any orders for Products from outside the Territory; or (c) otherwise act as ATEC's representative with respect to ATEC products other than as provided in this Agreement.

C. ATEC has final decision-making authority as to whether a customer is within the Territory or is designated as a Corporate Account.

## II. PRODUCTS.

A. <u>Products</u>. ATEC appoints Representative to represent the below-named Products on an as-available basis in the Territory: <u>All products that are fully-released and sold by the Company as of the Effective Date, including Squadron® Lateral.</u> Xycor™ is not yet released and would be added via a Product Addition Notice (defined below).

B. <u>Product Addition Notice</u>. Nothing under this Agreement grants Representative the right to act as a representative for ATEC products not specifically listed above or for products developed or acquired by ATEC after the Effective Date unless and until added to this Exhibit. After the Effective Date, ATEC will provide written notice if and when additional products are added to the definition of Product ("**Product Addition Notice**"). Unless Representative expressly rejects the addition of the new Product, if Representative sells any product competitive to the new Product, shall have a Transition Period commencing on delivery of the Product Addition Notice to come into compliance with **Section 5** of the Agreement.

DocuSign Envelope ID: 73609132-E490-4845-B5BE-A679E0E7E3DC

C.  <u>Discontinuance</u>. ATEC may discontinue the sale of any Product at any time and will use reasonable efforts to provide advance written notice. If ATEC discontinues the sale of a Product, such Product shall be removed from this Exhibit.

D.  <u>Non-Competitive Products</u>. As of the Effective Date, Representative sells the non-competitive products listed below. This list will be kept updated as provided in **Section 5.5**. [insert here]