**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| NUVASIVE, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 6:17-cv-2206-Orl-41GJK |
| ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE ) | |
| MEDICAL SYSTEMS, LLC, GREG ) | |
| SOUFLERIS, DAVE HAWLEY, and ) | |
| RYAN MILLER ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## NUVASIVE, INC.'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS PENDING ARBITRATION

Through its counsel of record, Plaintiff, NuVasive, Inc. ("NuVasive") responds to Defendants' Motion to Compel Arbitration and Stay Court Proceedings Pending Arbitration (the "Motion")[1] (Doc. 175), by stating:

**I.     INTRODUCTION**

Absolute Medical, a dissolved limited liability company which its sole member rendered insolvent by distributing over a million dollars to himself over the final months of its existence, asks the Court to stay this entire lawsuit, which includes claims against Absolute Medical's successor in interest, sole member, and former sales representatives, while it and NuVasive arbitrate NuVasive's claim for damages it incurred as a result of

---

[1] NuVasive notes that the Motion, on its face, is made by Absolute Medical, LLC ("Absolute Medical") only. However, the Motion seeks relief – in the form of an indefinite stay – as to all of NuVasive's remaining claims asserted against Greg Soufleris ("Soufleris"), Absolute Medical Systems, LLC ("Absolute Medical Systems"), Dave Hawley ("Hawley"), and Ryan Miller ("Miller").  Since Absolute Medical is only a party to Counts I, II, and VIII of NuVasive's nine-count First Amended Complaint (the "Amended Complaint"), it cannot be said the Motion is not made on all Defendants' behalf. NuVasive states its Response accordingly.

1

Absolute Medical violating its contractual obligations and its potentially-moot claim that NuVasive should not have exercised its contractual right to retain commissions Absolute Medical earned as a set-off against the damages Absolute Medical's contractual violations caused it to incur.[2]  Respectfully, the Court should either find that Absolute Medical's self-induced insolvency renders arbitration futile because it has no assets to pay a judgment, or require Absolute Medical and NuVasive to arbitrate their respective contract claims for monetary damages while allowing the remaining claims to go forward.

## II.    STATEMENT OF RELEVANT FACTS AND PROCEDURE

On November 27, 2017, Absolute Medical breached the Exclusive Sales Representative Agreement (the "Agreement")[3] between it and NuVasive when its sole member, Soufleris, unilaterally (and illegally) terminated the Agreement. (Am. Compl., Doc. 68, ¶¶ 48-51).  After Absolute Medical failed to cure this breach, NuVasive sued Absolute Medical, Soufleris, and former Absolute Medical sales representative Hawley for damages and injunctive relief.  Count II of NuVasive's Complaint sought damages it incurred as a result of Absolute Medical's contractual breaches and noted that this Count (unlike the remaining six Counts) was subject to arbitration.  (Compl., Doc. 1, ¶¶ 41-82).

Absolute Medical answered NuVasive's Complaint and filed its Counterclaim on February 15, 2018.  The Counterclaim alleges that NuVasive breached the Agreement by failing to pay Absolute Medical commissions.  (Def.'s Ans. Countercl., Doc. 26, ¶¶ 13-17).  But neither the Answer nor the Counterclaim informed NuVasive that Soufleris transferred

---

[2] NuVasive's filing of the Amended Complaint arguably mooted Absolute Medical's Counterclaim. (Order, Doc. 155, pp. 2-3 (citing decisions holding an amended complaint renders moot counterclaims made in response to initial complaint)).

[3] The Agreement governs NuVasive's and Absolute Medical's relationship. (Am. Compl., Doc. 68, ¶ 8).

2

all of Absolute Medical's assets to himself prior to November 27, 2017, and began the process of dissolving Absolute Medical. (Hr'g Tr. Prelim. Inj., Doc. 79, 33:15-19). Nor do they mention that Soufleris formed Absolute Medical's successor in interest, Absolute Medical Systems, on November 30, 2017. (*See generally* Def.'s Ans. Countercl., Doc. 26; McFarland Dec., attached as **Exhibit 1**, ¶ 3).

Despite NuVasive compensating Absolute Medical $1,197,084.37 in the four months preceding Absolute Medical's breach,[4] Soufleris, on June 28, 2018, testified that Absolute Medical was "forced into closing the doors because business was not sustainable" and that it had no assets, barring sparse office furniture, with no cash on hand on November 27, 2017. (Hr'g Tr. Prelim. Inj., Doc. 79, 32:13-17; Def. Soufleris, Resp. Interrog. No. 2, attached as **Exhibit 2**). Discovery obtained after this testimony establishes that Soufleris emptied Absolute Medical's coffers by making ten transfers between August 14 and November 21, 2017 – which totaled $1,085,000 – from Absolute Medical's Business Advantage Checking account with Bank of America into accounts held by: (i) Soufleris and his wife; (ii) The Gregory and Lindsey Soufleris Living Trust (of which Soufleris and his wife are trustees); and (iii) The Absolute Group, Inc. (another entity owned and controlled by Soufleris). (**Exhibit 1**, ¶¶ 8, 10-13).[5] After rendering Absolute Medical insolvent and unable to pay its

---

[4] NuVasive paid Absolute Medical $519,889.37 in commissions and a $677,195.00 territory transition payment between August 1 and November 30, 2017. (**Exhibit 1**, ¶ 9)

[5] Soufleris describes nine of these transfers (as well as other payments) as "Members Draw" in Absolute Medical's general ledger. (**Exhibit 1**, ¶ 14). These transfers do not reflect any of the myriad expenditures Absolute Medical incurred solely for Soufleris' personal benefit.

3

debt to NuVasive, in violation of Florida Statutes §§ 605.0405 and 605.04091,[6] Soufleris filed Absolute Medical's Articles of Dissolution on February 27, 2018. (Hr's Tr. Prelim. Inj., Doc. 79, 33:23-34:1, Defs.' Ex. 17).

NuVasive filed its Amended Complaint (Doc. 68) on June 8, 2018. The nine-count Amended Complaint alleges:

- **Count I** – an injunction against Absolute Medical which requires it to comply with its contractual obligations;

- **Count II** – damages against Absolute Medical (which should be determined by an arbitration panel);

- **Count III** – an injunction against Absolute Medical Systems as Absolute Medical's successor in interest;

- **Count IV** – damages and injunctive relief against Hawley and Miller for their breaches of their non-competition and non-solicitation obligations (to which NuVasive is a third-party beneficiary);

- **Count V** – conversion against Hawley and Absolute Medical Systems for illegally exercising dominion over an instrument that NuVasive created for a surgeon in Hawley's sales territory;

- **Count VI** – individual liability against Soufleris under the Florida Revised Limited Liability Company Act;

- **Count VII** – piercing the corporate veil against Soufleris;

- **Count VIII** – violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against all Defendants; and

- **Count IX** – tortious interference with business relationships against Soufleris.

(*See generally* Am. Compl., Doc. 68). Like its initial Complaint, only one Count (Count II) of the Amended Complaint could be subject to arbitration. Also like its first Complaint,

---

[6] Pursuant to Florida Statutes § 605.0406, Soufleris is responsible to Absolute Medical for the amounts of the distributions he made to himself which rendered Absolute Medical insolvent.

4

NuVasive would not have agreed that this Count is subject to arbitration if it knew that Soufleris transferred all of Absolute Medical's assets to himself and rendered it insolvent.

In sum, NuVasive did not know that it would be futile to arbitrate its damages claim against Absolute Medical until Soufleris testified that it had no assets at the June 28, 2018, Preliminary Injunction hearing and it obtained Absolute Medical's bank records which reflect the transfers Soufleris made to himself. Had NuVasive known of Soufleris' actions, it would not have consented to arbitrating any of its claims.

### III. THE STANDARD FOR COMPELLING ARBITRATION AND STAYING LITIGATION UNDER THE FEDERAL ARBITRATION ACT

Ruling on a motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA") involves a two-step determination. *Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1200 (11th Cir. 2004).[7] The first step asks whether the parties agreed to arbitrate the dispute which is determined "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA.'" *Id.* (quoting quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). This determination is made "against the background of a 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). Pursuant to this policy it is the district court's role to

---

[7] NuVasive notes the initial disagreement amongst the parties as to the application of federal versus Delaware arbitration law. (*Compare* Def.'s Am. Mot., Doc. 43, pp. 4-5 *with* Pl.'s Resp., Doc. 49, pp. 4-5). It appears that Defendants abandoned any argument as to Delaware law as the instant Motion relies solely upon case law applying the FAA. (*See* Defs.' Mot., Doc. 175, p. 4 (citing *Variable Annuity Life Ins. Co. v. Laferrera*, 680 Fed. Appx. 880, 884 (11th Cir. 2017)). Regardless, under Delaware law, the arbitration provision at issue does not displace the federal standard. *Brown v. T-Ink, LLC*, Civil Action No. 3190-VCP, 2007 WL 4302594, 2007 Del. Ch. LEXIS 174, at *7 (Del. Ch. Dec. 4, 2007) ("Parties may contract [] for their arbitration to proceed under rules other than the FAA. To do so, the parties must demonstrate unequivocally an intent to displace the default federal standard. . . [T]he courts have held that a generic choice-of-law provision, standing alone . . . is insufficient to support a finding that the parties intended to opt out of the FAA's default standards.")

5

"rigorously enforce agreements to arbitrate," but "the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Id.* (internal citations omitted). The second step asks whether any "legal constraints external to the parties' agreement foreclose[] arbitration." *Id.* (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626). Under this second prong, generally applicable contract defenses (such as commercial impracticability and/or frustration of performance) may be applied to avoid otherwise arbitrable issues. *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996).

When confronted with litigants advancing arbitrable and nonarbitrable claims, district courts retain discretion to stay the nonarbitrable claims, but they "generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." *Klay*, 389 F.3d at 1203-04 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (White, J., concurring) (noting that the "heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course")). Accordingly, proper enforcement of the FAA often results in "piecemeal litigation." *Dean Witter*, 470 U.S. at 221. "Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Klay*, 389 F.3d at 1204 (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987)). The determination of whether to stay nonarbitrable claims is subject to an abuse of discretion review standard. *Id.* at 1203 (citing *Moses H. Cone*, 460 U.S. at 21 n.23).

6

## IV. **COMPELLING NUVASIVE'S CLAIM FOR DAMAGES TO ARBITRATION WOULD BE FUTILE BECAUSE SOUFLERIS RENDERED ABSOLUTE MEDICAL COMPLETELY INSOLVENT**

This standard and this case's facts establish that, absent Defendants' acknowledgement that Soufleris and/or Absolute Medical Systems are liable for Absolute Medical's liabilities, it would be futile to compel any claims against Absolute Medical to arbitration. While Soufleris acknowledges that Absolute Medical violated the Agreement, his testimony also establishes that Absolute Medical is completely insolvent and that a judgment against it (but not its successor) serves no real purpose.

### A. **Soufleris admits that Absolute Medical violated its contractual obligations to NuVasive.**

First, Soufleris admits that, before it was insolvent, Absolute Medical, breached at least two provisions in the Sales Agreement by unilaterally terminating the Agreement and not requiring Defendants Hawley and Miller to sign compliance agreements. Accordingly, any arbitration would solely be to determine the amount of damages an insolvent company owes a creditor.

First, Article IX of the Agreement contains the scenarios under which Absolute Medical may terminate the Agreement, and limits such scenarios to:

- NuVasive's material breaches of the Agreement which go uncured; and
- NuVasive's insolvency.

(Amend. Compl. Ex. 1, Doc. 68-1, §§ 9.01-04). None of these conditions occurred. Nevertheless, Soufleris testified that he dissolved Absolute Medical (which caused it to stop complying with the Agreement) and accepted a new role with NuVasive's competitor,

7

Alphatec Spine, Inc. ("Alphatec"). (Hr'g Tr. Prelim. Inj., Doc. 79, 32:9-22, 33:13-19, 34:2-15). By doing so, Absolute Medical breached the Agreement.

Second, Section 5.09 of the Agreement requires Absolute Medical to obtain non-compete agreements from its sales representatives and provide those agreements to NuVasive. (Am. Compl. Ex. 1, Doc. 68-1, § 5.09). Soufleris, in sworn testimony, acknowledged Absolute Medical's obligations to obtain non-compete agreements from its sales representatives (namely Hawley and Miller) and that it breached Section 5.09 by not doing so. (Hr'g Tr. Prelim. Inj., Doc. 79, 28:4-17; 51:3-18).

In sum, Absolute Medical acknowledges that it breached the contractual obligations it seeks to arbitrate. Thus, the only issue before an arbitration panel would be the amount of damages those breaches caused NuVasive to incur.

**B. NuVasive's claim for damages against Absolute Medical should no longer be arbitrated as it is now futile to do so.**

The futility of arbitrating the amount of damages Absolute Medical's breaches of the Agreement caused NuVasive to incur should foreclose arbitration.[8] Soufleris concedes that Absolute Medical is dissolved and has no assets. (Section II, *supra*). Indeed, he testified that Absolute Medical was forced to borrow money to pay off its creditors at its dissolution.

---

[8] NuVasive refers to the "futility" of arbitrating its damages claim for ease of reference. In effect, Absolute Medical has frustrated the purpose of and made it commercially impracticable to enforce the Agreement's arbitration provision. Commercial impracticability applies, under Delaware law, when: (1) an event occurs that the parties assumed would not happen; (2) continued performance is not commercially practicable; and (3) the party asserting impracticability did not expressly or impliedly agree to performance in spite of it. *CRS Proppants LLC v. Preferred Resin Holding Co., LLC*, C.A. No. N15C-08-111 MMJ CCLD, 2016 Del. Super. LEXIS 520, at *17 (Super. Ct. Sep. 27, 2016). Similarly, frustration of purpose exists when: (1) there is a substantial frustration of the principal purpose of the contract; (2) that the parties assumed would not occur; and (3) the asserting party is not at fault. *Id.* at *18. "Performance may remain possible, but is excused because it 'would make little sense' to continue' where the object frustrated was the basis of the contract." *Id.* (quoting Restat. (2d) Contracts, § 265, cmt. a (1981)).

(Hr'g Tr. Prelim. Inj., Doc. 79, 33:20-22). In the simplest of terms, by Absolute Medical's own admissions, it would "make little sense" to compel Count II to arbitration since it is dissolved and possesses no assets.[9] *CRS Proppants*, 2016 Del. Super. LEXIS 520, at *18.

## V. IF THE COURT ORDERS ARBITRATION ON NUVASIVE'S DAMAGES CLAIM, IT SHOULD ALLOW THE REMAINDER OF ITS CLAIMS TO GO FORWARD WITHOUT A STAY

If, assuming *arguendo*, the Court requires NuVasive to arbitrate its damages claim against Absolute Medical, none of its other claims should be submitted to arbitration or stayed. Indeed, the Agreement specifically allows NuVasive to seek injunctive relief for its violations in courts of competent jurisdiction, and the remainder of NuVasive's claims are not predominated by its damages claim and are not dependent on the arbitrator's findings.

### A. The Agreement gives NuVasive the express right to pursue injunctive relief for Absolute Medical's violations of it in this Court.

The Agreement provides NuVasive with the express right to seek injunctive relief (which it is doing) in this Court. Indeed, Defendants' Motion fails to cite the ultimate sentence in the arbitration clause upon which they base their argument and which provides:

> [N]othing contained in this Agreement shall in any way deprive either Party of its right to obtain injunctions or other equitable relief from a court of competent jurisdiction, including preliminary relief, pending arbitration.

(Am. Compl. Ex. 1, Doc. 68-1, § 12.02).

When read in conjunction with this clause, the lone case Defendants cite and rely upon – *Variable Annuity Life Ins. Co. v. Laferrera* – actually supports NuVasive's position

---

[9] Of course, Soufleris and Absolute Medical Systems could compel Count II to arbitration as Absolute Medical's alter ego and/or successor in interest, but this would require those parties to concede these facts or this Court to find as such. *See Liberty Communs, Inc. v. MCI Telecomms. Corp.*, 733 So. 2d 571, 573-74 (Fla. Dist. Ct. App. 1999) (citing *Regency Island Dunes, Inc. v. Foley and Assocs. Constr. Co., Inc.*, 697 So. 2d 217 (Fla. Dist. Ct. App. 1997) (even assuming that alter ego of signing party could be compelled to arbitrate, there was no evidence that parent corporation was alter ego of subsidiary)).

9

that a stay is not appropriate. 680 Fed. Appx. 880 (11th Cir. 2017).[10] In *Laferrera*, the defendants, requesting a stay, argued that they were "forced to continue to litigate issues of injunctive relief in federal district court, notwithstanding the [arbitration] panel's hearing on injunctive relief and subsequent denial of permanent injunctive relief." 680 Fed. Appx. 880, 885 (11th Cir. 2017). Unlike the arbitration clause in this case, the arbitration clause in *Laferrera* provided that permanent injunctive relief was arbitrable but preliminary injunctive relief was not. *Id.* at 885-86. Since the plaintiffs sought no permanent injunctive relief – which was the only arbitrable issue – the defendants' request to stay was denied as moot. *Id.* Here, the language of the arbitration clause, which expressly excludes injunctive relief, is broader than in *Laferrera*, as it expressly permits the parties to purse all injunctive or other equitable relief pending arbitration. (Am. Compl. Ex. 1, Doc. 68-1, § 12.02). And NuVasive is, in fact, pursuing that injunctive relief in the form of a permanent injunction. (Am. Compl., Doc. 68, p. 23, ¶ A). Therefore, since the arbitration clause expressly permits NuVasive to pursue this relief pending arbitration, there is no basis to stay this Count.

    **B. The remaining claims in NuVasive's Amended Complaint are neither predominated by nor dependent on an arbitration decision on NuVasive's damages.**

Further, none of NuVasive's remaining claims should be stayed because they are unrelated to NuVasive's damages resulting from Absolute Medical's breach of the Agreement. The remaining claims:

---

[10] Defendants rely on a separate portion of this decision in their Motion. (Defs.' Mot., Doc. 175, p. 4 (citing *Laferrera*, 680 Fed. Appx. at 884)). Their reliance is misplaced. There, the separate corporate entity defendant that the Laferreras owned and operated "could not be held liable unless the Laferreras are also liable." 680 Fed. Appx. at 884. As set forth in Section V(B), *infra*, NuVasive's damages resulting from Absolute Medical's breach of the Agreement are entirely unrelated to, for example, Hawley's and Absolute Medical Systems' conversion of NuVasive's surgical instruments or Hawley's and Miller's breaches of contractual obligations they owe to NuVasive.

- Count III (Breach of Contract) – seeking damages and injunctive relief against Absolute Medical Systems as Absolute Medical's successor in interest;

- Count IV (Breach of Contract) – seeking damages and injunctive relief against Hawley and Miller for violations of non-compete agreements to which NuVasive is a third-party beneficiary;

- Count V (Conversion) – against Hawley and Absolute Medical Systems for their improper conversion of NuVasive's custom surgical instruments;

- Counts VI (Statutory Individual Liability) and VII (Piercing the Corporate Veil) – against Soufleris for his attempted avoidance of Absolute Medical's liabilities;

- Count VIII (Florida Deceptive and Unfair Trade Practices Act) – against all Defendants for their unfair competition and deceptive trade practices; and

- Count IX (Tortious Interference With Business Relationships) – against Soufleris for his interference with NuVasive's relationships with its surgeon-customers.

(Am. Compl., Doc. 68, ¶¶ 81-131).

As set forth *supra*, the only issue to be arbitrated is the extent and amount of NuVasive's damages resulting from Absolute Medical's breach of the Agreement. Defendants have not – and cannot – show how that issue predominates or is determinative of these nonarbitrable claims. Even assuming that an arbitrator finds no liability as to Absolute Medical for its established breaches of the Agreement, Defendants' conclusory assertion that NuVasive's remaining claims will simply "go away," is just that.

1. **NuVasive's damages claim against Absolute Medical does not predominate or determine NuVasive's claim for successor-in-interest liability against Absolute Medical Systems (Count III).**

NuVasive's Count III seeks to extend all of its legal and equitable remedies against Absolute Medical to Absolute Medical Systems as its successor in interest. (Am. Compl., Doc. 68, ¶ 97). This claim is not limited (in any way) to the monetary damages owed to

11

NuVasive from Absolute Medical's breach of the Agreement. Indeed, this claim is predicated on sixteen paragraphs of allegations that have no connection whatsoever to NuVasive's breach of contract claim against Absolute Medical. (Id. at ¶¶ 82-97). Furthermore, because Absolute Medical expressly agreed that requests for permanent injunctive relief be permitted to proceed pending arbitration, as set forth in Section II *supra*, NuVasive's request to extend that injunctive relief to Absolute Medical's successor in interest should proceed as well. (Id. at p. 24, ¶ B).

2. **NuVasive's cause of action against Hawley and Miller for breaching their noncompetition obligations (Count IV) is entirely unrelated to its claim for damages against Absolute Medical.**

Likewise, whether Hawley and Miller owe non-competition obligations to NuVasive, whether they breached those obligations, and whether NuVasive was damaged by those breaches is not predominated or determined by NuVasive's breach of contract claim against Absolute Medical. In support of their position, Defendants make one, unsupported, statement that this claim "arises" out of the Agreement. (Defs.' Mot., Doc. 175, p. 5). However, there is no merit to the suggestion that since Absolute Medical was obligated to secure non-competition agreements from its sales representatives – a fact its sole member admitted – NuVasive's claims against those sales representative for breaching those obligations should be stayed. In fact, this Court previously held that a presumption arose that Hawley's and Miller's continued employment by Absolute Medical renewed the terms of their 2016 independent contractor agreements. (Order, Doc. 150, p. 10). While the Court held – at the preliminary injunction stage – that the presumption was rebutted, NuVasive should be permitted to pursue this claim in an attempt to sustain the presumption (or,

12

alternatively, establish that Hawley and Miller did, in fact, execute 2017 independent contractor agreements[11]). Finally, even if Hawley's and Miller's "2016 Independent Contractor Agreements expired at the end of 2016, and the non-competition provisions expired one year later" (id. at pp. 10-11) NuVasive should be permitted to pursue its breach of contract claims against Hawley and Miller as they admit to competing against NuVasive in their former Absolute Medical sales territory immediately upon resigning their employment in November of 2017 – which is of course within one year of December 31, 2016. (Hr'g Tr. Prelim. Inj., Doc. 79, 76:25-77:1, 80:25-81:24, 96:4-5, 101:3-16 (Hawley and Miller testifying their Absolute Medical and Alphatec sales territories overlap and that they are selling to their former Absolute Medical surgeon-customers).

**3. Defendants concede that NuVasive's claim for conversion (Count V) should not be stayed.**

Next, Defendants' Motion concedes that Count V "is independent from the Sales Agreement," and, therefore, it should not be stayed. NuVasive's claim for conversion against Hawley and Absolute Medical Systems is predicated on the allegations that they exercised dominion and control over NuVasive's custom instruments without the right to do so which caused NuVasive to suffer monetary damages. (Am. Compl., Doc. 68, ¶¶ 106-108). Defendants fail to state any reason why an arbitration panel's determination of Absolute Medical's breaches (and resultant damages) of the Agreement between NuVasive and

---

[11] This is of particular import due to the fact that Defendants' document production in this litigation to this point – although woefully deficient – establishes that they intentionally destroyed all communications relevant to the time period they contend they refused to execute new agreements.

Absolute Medical predominate or will affect NuVasive's cause of action for conversion.[12] Defendants' concession in footnote 1 of their Motion appears to admit that they cannot make such an argument, and Count V should not be stayed.

**4. NuVasive's claims against Soufleris for statutory individual liability (Count VI) and piercing the corporate veil (Count VII) are not predominated or determined by its breach of contract claim against Absolute Medical.**

Counts VI and VII of the Amended Complaint – which seek to impose personal liability on Soufleris – do not, contrary to Defendants' erroneous assertions, "stem[] from Absolute Medical's alleged breach of the [Agreement]."  (Defs.' Mot., Doc. 175, p. 6). Rather, these claims arise from Soufleris' breaches of his fiduciary duties and his abuse of the corporate form under Florida law.  More specifically, NuVasive's statutory individual liability claim alleges:

> 110. Absolute Medical is a limited liability company formed and existing under the Florida Revised Limited Liability Company Act, Fla. Stat. §§ 605.0101, *et seq.*
>
> 111. As Absolute Medical's sole member, Soufleris owes Absolute Medical certain duties, including without limitation, fiduciary duties of loyalty and care.
>
> 112. Soufleris breached his fiduciary duties of loyalty to Absolute Medical by, without limitation:
>
>> a. dissolving Absolute Medical;
>>
>> b. transferring Absolute Medical's assets to AMS or other companies he owns and/or controls;

---

[12] Unlike in *Ben-Yishay v. Mastercraft Dev., LLC*, where the Southern District of Florida stayed the nonarbitrable cause of action for conversion, there is nothing to suggest that arbitration between NuVasive and Absolute Medical will be "likely to give rise to a factual inquiry and findings germane to the conversion claim against [Hawley and Absolute Medical Systems]." 553 F. Supp. 2d 1360, 1372 (S.D. Fla. 2008). In *Ben-Yishay* the non-signatory allegedly converted funds paid to the signatories pursuant to the agreement containing the arbitration provision.  *Id.*  That is not the case *sub judice* as Defendants concede that Count V is "independent" from the Agreement.

14

> c. forming AMS to avoid Absolute Medical's obligations to NuVasive and, in effect, compete with Absolute Medical;
>
> d. precluding Absolute Medical from complying with its contractual obligations to NuVasive; and
>
> e. intentionally subjecting Absolute Medical to liability.
>
> 113. Soufleris' actions and failures to act on behalf of Absolute Medical constitute breaches and/or failures to perform the duties he owes to Absolute Medical.
>
> 114. Soufleris' breaches and/or failures to perform constitute, without limitation, transactions from which Soufleris derived improper personal benefits, directly and indirectly.
>
> 115. Pursuant to the Florida Revised Limited Liability Company Act, § 605.04093, Soufleris is personally liable for the monetary damages Absolute Medical owes NuVasive, and should be subjected to any injunctive relief the Court issues against Absolute Medical.

(Am. Compl., Doc. 68, ¶¶ 110-115). Accordingly, Count VI arises out of the breaches of the fiduciary duties Soufleris owed to Absolute Medical, rather than the contractual obligations Absolute Medical owed to NuVasive. Similarly, NuVasive's claim for piercing the corporate veil – which does not even tangentially reference the Agreement – alleges:

> 117. Soufleris dominates and exercises complete control over Absolute Medical and AMS to the extent that their independence is non-existent and Soufleris is, in fact, their alter ego.
>
> 118. Soufleris fraudulently and/or improperly organized and used Absolute Medical and AMS to mislead and/or defraud NuVasive in an attempt to, without limitation, evade Absolute Medical's existing personal liability to NuVasive.
>
> 119. Soufleris' fraudulent and improper use of the corporate form is the proximate cause of the damages NuVasive incurred and continues to incur as a result of Absolute Medical's breach of its obligations under the Agreement and AMS' unfair competition with it.

15

> 120. This Court should disregard the corporate form and hold Soufleris personally liable for any judgment rendered against Absolute Medical and/or AMS in this matter, and extend any injunctions it issues against them to Soufleris.

(Id. at ¶¶ 117-120).[13]

It is evident that these causes of action are derived from Soufleris' improper use of the corporate form, not Absolute Medical's breach of the agreement. Defendants' conclusory statement that these causes of action are "predicated . . . on the assumption that Absolute Medical breached the [Agreement]" is simply wrong. These causes of action seek only to impose liability on Soufleris for the damages Absolute Medical and Absolute Medical Systems owe to it (including those resulting from nonarbitrable claims) and extend any injunction entered against them to him individually.

5. **NuVasive's cause of action for violations of the FDUTPA against all Defendants (Count VIII) are not based on the same factual scenario as Absolute Medical's breach of the Agreement.**

Defendants note that NuVasive's claim of unfair competition arises from their "unfair competition against NuVasive and the alleged failure to enforce an alleged employment agreement under the [Agreement]." (Defs.' Mot., Doc. 175, p. 6). However, this does nothing to establish that Count VIII should be stayed because, as Florida law recognizes, damages arising out of alleged violations of the FDUTPA are not limited to issues arising from contractual terms. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 871 (Fla. Dist. Ct. App. 2006). Similarly, the FDUTPA does not require a contract to impose liability, as the "express legislative purpose of the FDUTPA is to protect individual consumers and certain

---

[13] This cause of action also incorporates those specific paragraphs detailing how Soufleris exercises complete domination and control over Absolute Medical and Absolute Medical Systems. (Am. Compl., Doc. 68, ¶ 116).

769163.3/020171439

defined business activities from deceptive, unfair, or unconscionable methods of business competition and trade practice." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013).

Additionally, Defendants erroneously state that NuVasive's FDUTPA claim "reasserts all factual assertions related to Absolute Medical's Sales Agreement and alleged conduct." (Defs.' Mot., Doc. 175, p. 6). Rather, NuVasive's cause of action for FDUTPA violations incorporates all preceding allegations in the Amended Complaint precisely because it is the totality of the Defendants' actions underlying this lawsuit – as opposed to Absolute Medical's solitary breach of the Agreement – that give rise to Count VIII. This supports, rather than belies, the fact that the Agreement is not predominant or determinative of Count VIII, and it should not be stayed if this Court decides to compel Count II to arbitration.

6. **NuVasive's claim for tortious interference with business relationships (Count IX) is entirely unrelated to the Agreement and should not be stayed.**

Finally, Soufleris' tortious interference with NuVasive's business relationships is not predicated on the same factual scenario as Absolute Medical's breach of the Agreement. Indeed, on its face, this claim does not arise from the Agreement as it alleges:

> 128. Business relationships exist between NuVasive and its surgeon-customers who purchase and utilize its products via its exclusive distributor Absolute Medical.
>
> 129. Soufleris possessed actual knowledge of these business relationships at the time he began soliciting business from NuVasive's surgeon-customers.
>
> 130. Soufleris' solicitation of NuVasive's surgeon-customers was, and is, an intentional and unjustified interference with NuVasive's business relationship with its surgeon-customers.

> 131. NuVasive has incurred, and continues to incur, damages due to Soufleris' tortious interference with NuVasive's business relationship with its surgeon-customers.

(Am. Compl., Doc. 68, ¶¶ 128-131). Whether Soufleris – who is not a party to the Agreement – illegally interfered with NuVasive's business relationships with its surgeon-customers is entirely unrelated to Absolute Medical's various breaches of the Agreement, and Count IX should not be stayed.

## VI. REGARDLESS OF ITS RULING, THE COURT SHOULD ORDER DEFENDANTS TO FULLY COMPLY WITH THE MAGISTRATE JUDGE'S MARCH 14, 2019, ORDER

Finally, regardless of its ruling, the Court should require Defendants to immediately and fully comply with the terms of Magistrate Judge Kelly's Order entered on March 14, 2019. (Doc. 162). Judge Kelly ordered Defendants to produce various pieces of discovery – most notably ESI in its native format – on or before March 28, 2019. (Id. at p. 2). The Court entered the temporary stay pending the instant briefing on March 26, 2019. (Order, Doc. 170). On March 27, 2019, now-former counsel for Defendants emailed counsel for NuVasive stating that he "read the order to stay all matters before the court including the order requiring production of documents scheduled for tomorrow." (Email exchange attached as **Exhibit 3**). There is no reason why Defendants should not comply as the materials detailed in Magistrate Kelly's Order are clearly discoverable and any objection to their production was waived. (Order, Doc. 170, pp. 1-2). Additionally, the arbitration provision itself provides for adequate discovery. (Am. Compl., Ex. 1, Doc. 68-1, § 12.02). As such, even if the Court ordered arbitration and maintained the stay in this matter, Defendants would be required to produce the ordered discovery as soon as practicable.

## VII. **CONCLUSION**

In conclusion, NuVasive respectfully requests that this Court deny Defendants' Motion to Compel Arbitration and Stay Court Proceedings Pending Arbitration (Doc. 175) in its entirety. Alternatively, if the Court orders NuVasive's Count II of the First Amended Complaint and/or Absolute Medical's counterclaim to arbitration in San Diego, California, NuVasive's remaining causes of action should not be stayed and should proceed in this Court in due course. Finally, regardless of the Court's determination regarding arbitration or a stay, Defendants should be ordered to fully comply with Magistrate Judge Kelly's March 14, 2019, Order on discovery (Doc. 162) as soon as practicable.

Respectfully submitted,

s/*M. Thomas McFarland*
R. Craig Mayfield (Fla. Bar No. 0429643)
cmayfield@bradley.com
Diana Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq. (*Pro Hac Vice*)
M. Thomas McFarland (*Pro Hac Vice*)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff NuVasive, Inc.*

769163.3/020171439

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2019, I electronically field the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to all parties, including the following counsel of record:

Bryan Busch
Chris Mills
Busch, Slipakoff, Mills & Slomka, LLC
2859 Paces Ferry Road SE, Suite 1700
Atlanta, GA 30339
bb@bsms.law
cm@bsms.law

*Attorneys for Defendants*

                                        s/*M. Thomas McFarland*
                                        M. Thomas McFarland

                                        *Attorney for NuVasive, Inc.*

769163.3/020171439