**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 6:17-cv-2206-Orl-41GJK |
| | ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE | ) | |
| MEDICAL SYSTEMS, LLC, GREG | ) | INJUNCTIVE RELIEF SOUGHT |
| SOUFLERIS, DAVE HAWLEY, and RYAN | ) | |
| MILLER | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

## SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Through its attorneys of record, and for its Second Amended Complaint for Injunctive Relief and Damages against Absolute Medical, LLC ("Absolute Medical"), Absolute Medical Systems, LLC ("AMS"), Greg Soufleris ("Soufleris"), Dave Hawley ("Hawley") and Ryan Miller ("Miller"), Plaintiff, NuVasive, Inc. ("NuVasive"), states that:[1]

## NATURE OF ACTION

1.     Defendants—an exclusive distributor of NuVasive's products (Absolute Medical), that exclusive distributor's successor in interest (AMS), the owner of those distributors (Soufleris), and two of the distributors' sales representatives (Hawley and Miller)—are unfairly competing with NuVasive.

---

[1] NuVasive files this Second Amended Complaint pursuant to the Court's July 22, 2019, Order granting NuVasive leave to correct a scrivener's error regarding Count V. (Doc. 185). Consistent with that July 22, 2019, the only change to this Second Amended Complaint is the correction of that error.

2.      The exclusive distributor (Absolute Medical) breached numerous contractual obligations imposed on it by, without limitation:

a.      attempting to terminate the contract between it and NuVasive without cause;

b.      failing to maintain sufficient personnel to service its sales territory;

c.      failing to inform NuVasive that it is distributing competitive products;

d.      failing to comply with its reasonable non-compete and non-solicit obligations; and

e.      failing to ensure that its former sales representatives comply with their reasonable non-compete and non-solicit obligations.

3.      In an attempt to avoid the exclusive distributor's contractual obligations, its owner (Soufleris) – who is actively seeking to convert NuVasive's business to one of its direct competitors and is personally liable for the exclusive distributor's contractual breaches and his own wrongful acts – formed the exclusive distributor's successor in interest (AMS), transferred the exclusive distributor's assets to the successor in interest and/or other entities he controls, and dissolved the exclusive distributor.

4.      The exclusive distributor's sales representatives (Hawley and Miller) are now affiliated with the exclusive distributor's successor in interest.  They are selling products manufactured by one of NuVasive's competitors to the same surgeons they serviced on behalf of the exclusive distributor.

5.      NuVasive asks this Court to: (a) issue temporary, preliminary, and permanent injunctions which require the exclusive distributor and its successor in interest to comply with the contractual obligations imposed on them by the exclusive distributor's contract with NuVasive; (b) issue temporary, preliminary, and permanent injunctions which require

the sales representatives to comply with their contractual obligations; (c) award it damages against the exclusive distributor's successor in interest, the distributors' owner and sales representatives; and (d) transfer its claims for damages against the exclusive distributor to binding arbitration in San Diego, California.

## THE PARTIES

6.      NuVasive is an innovative medical company that focuses on products and processes that treat spinal disease. It is a citizen of Delaware and California.  It is incorporated under the laws of Delaware, and maintains its principal place of business in San Diego, California.

7.      Absolute Medical is a single-member Florida limited liability company. Soufleris, a citizen of Florida, is Absolute Medical's sole member.  Thus, Absolute Medical is a citizen of Florida that maintains its principal place of business in Heathrow, Florida. Absolute Medical's latest filings with the Florida Secretary of State identify the address of its principal office as 382 Devon Place, Heathrow, Florida, which was Soufleris' residence until spring of 2017.

8.      The relationship between NuVasive and Absolute Medical is governed by the January 1, 2017, Exclusive Sales Representative Agreement as amended by the July 1, 2017, Territory Transition Agreement (collectively, the "Agreement").  NuVasive attaches a copy of the Agreement as **Exhibit 1**.

9.      Absolute Medical is contractually prohibited from, among other things, distributing products used to treat spinal disease that are not designed, manufactured, and marketed by NuVasive without obtaining NuVasive's written consent to do so.

10. Soufleris utilized his former residence at 382 Devon Place in Heathrow, Florida as the principal address for the companies he owns and/or controls until he sold that property on or about March 31, 2017. He then purchased the one bedroom condominium located at 8901 Lee Vista Blvd. #3003 in Orlando, Florida, on or about September 16, 2017, and now utilizes that location as the principal address of his companies including, without limitation, AMS, The Absolute Group, Inc., Absolute Ortho Inc., and Blackfin Funds, Inc.

11. Upon information and belief, Absolute Medical conducted business out of 8901 Lee Vista Boulevard from the time Soufleris vacated 382 Devon Place until he dissolved it in February of 2018.

12. On November 30, 2017, Soufleris formed AMS, which is a distributor of products used to treat spinal disease that are designed, manufactured, and marketed by, without limitation, NuVasive's competitor, Alphatec Spine, Inc. ("Alphatec").

13. AMS is a single-member Florida limited liability company. Soufleris, a citizen of Florida, is Absolute Medical's sole member, making AMS a citizen of Florida. Its filings with the Florida Secretary of State identify its principal place of business as 8901 Lee Vista Blvd. #3003, in Orlando, Florida.

14. Soufleris formed AMS to avoid certain non-competition and non-solicitation obligations that Absolute Medical owes to NuVasive.

15. Absolute Medical was solvent when it stopped conducting business. Upon information and belief, as part of the process of dissolving Absolute Medical, Soufleris transferred significant amounts of money from Absolute Medical's accounts into other businesses, including, without limitation, AMS.

## AMS IS ABSOLUTE MEDICAL'S SUCCESSOR IN INTEREST

16.     Soufleris is a citizen of the State of Florida who resides at 10525 Cromwell Grove Terrace, Orlando, Florida 32827.  He is the sole member, president, and registered agent of Absolute Medical and AMS.

17.     Soufleris exercises complete control and dominion over Absolute Medical, AMS, and other companies. In fact, he is the alter ego of those entities.

18.     Soufleris utilizes the same email address (gsoufleris@absolute-med.com) and telephone number (954-868-4492) in his work for AMS that he used for Absolute Medical.

19.     Hawley was a sales representative for Absolute Medical who is now a sales representative for AMS.  He is a citizen of the State of Florida who resides at 3004 Sherwood Road in Orlando, Florida.

20.     Hawley utilizes the same email address (dhawley@absolute-med.com) and telephone number (941-650-8629) in his work for AMS that he used while affiliated with Absolute Medical.

21.     Miller was a sales representative for Absolute Medical who is now a sales representative for AMS.  He is a citizen of the State of Florida who, upon information and belief, resides at 507 South Hyer Avenue in Orlando, Florida.

22.     Miller utilizes the same email address (rmiller@absolute-med.com) and telephone number in his work for AMS that he used while affiliated with Absolute Medical.

23.     Soufleris, Hawley, and Miller now sell products on AMS' behalf that compete with NuVasive's products to the same customers they sold NuVasive's products on Absolute Medical's behalf.

24.     Absolute Medical's executive administrator, Daneri Edelson, now performs a similar role for AMS.

## JURISDICTION, VENUE, AND GOVERNING LAW

25.     This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

26.     Venue for NuVasive's request for equitable relief is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 as: (a) all Defendants reside in this judicial district; and (b) a substantial part of the events or omissions giving rise to the claim occurred in this district.

27.     Paragraph 12.01 of the Agreement and paragraph 13 of the Transition Agreement provide that they "shall be governed by and construed in accordance with the laws of the State of Delaware, without giving any effect to the choice of law principles thereunder."

28.     Paragraph 12.02 of the Agreement and paragraph 13 of the Transition Agreement require NuVasive and Absolute Medical to submit all disputes to binding arbitration in San Diego, California, other than requests for injunctive or other equitable relief which may proceed pending arbitration.

29.     Neither the Agreement nor the Transition Agreement requires NuVasive to submit its claims against AMS, Soufleris, Hawley, or Miller to arbitration.

## ALLEGATIONS RELATING TO ALL COUNTS

**A.      NuVasive's Business.**

30.      NuVasive markets its products through its exclusive sales force which consists of directly-employed personnel and exclusive sales agents.  NuVasive invests substantial funds into providing this sales force with extraordinary, specialized, comprehensive, and industry-leading training. This training supplies NuVasive's sales force with a deep understanding of NuVasive's products, methodology, trade secrets, and other valuable confidential or proprietary information.

31.      NuVasive's investments in its sales force allows it to favorably represent the company and create goodwill with potential and existing NuVasive customers.   This goodwill, arising from the substantial customer relationships developed between NuVasive's sales force and its customers, belongs to NuVasive.

**B.      Absolute Medical's Contractual Obligations to NuVasive.**

32.      Absolute Medical became an exclusive distributor of NuVasive's products on January 1, 2013.  At that time, its relationship with NuVasive was governed by the February 14, 2013, Exclusive Sales Representative Agreement (the "2013 Agreement").  NuVasive attaches a copy of the 2013 Agreement as **Exhibit 2**.

33.      Absolute Medical's principal place of business was 213 Villa Di Este Terrace #105, Lake Mary, Florida, when it entered into the 2013 Agreement. This address was also Soufleris' residence at that time.

34.      Section 6.13 of the 2013 Agreement, required Absolute Medical's sales representatives including, without limitation, Hawley and Miller, to sign "Compliance

Agreements" which contain confidentiality, non-solicitation, and non-competition obligations.  Absolute Medical complied with this obligation by requiring Hawley and Miller (and others) to sign 2013 Independent Contractor Agreements (the "2013 ICAs")   NuVasive attaches an exemplar copy of the 2013 ICA and copies of Hawley's and Miller's signature pages to their 2013 ICAs as collective **Exhibit 3**.

35.     Section 12 of the 2013 ICAs contains Hawley's and Miller's non-solicitation and non-competition obligations. These obligations are reasonable and enforceable as their temporal restriction is only one year and their geographic restriction is limited to the counties in which they provided services to Absolute Medical.

36.     Neither Absolute Medical nor Hawley or Miller terminated the 2013 ICAs in accordance with their terms and conditions.  Accordingly, Hawley's and Miller's 2013 ICAs remain in full force and effect.

37.     On January 1, 2017, Absolute Medical and NuVasive entered into the Agreement, which, among other things, required Absolute Medical to continue exclusively distributing NuVasive's products for five years.

38.     Section 5.03 of the Agreement requires Absolute Medical to retain a staff of sales representatives ("Representative Affiliates") to promote NuVasive's products in its sales territory.

39.     Section 5.04 of the Agreement requires Absolute Medical to "promptly advise NuVasive of . . . any changes in [Absolute Medical's] status, organization, personnel, and similar matters . . ."

40.     Like all NuVasive exclusive distributors, Absolute Medical (and Absolute Medical's Representative Affiliates) receives NuVasive's extraordinary, industry-leading training, has access to and knowledge of NuVasive's trade secrets and other proprietary information, and is the face of NuVasive to customers within its sales territory.  Accordingly, to protect its legitimate business interests, NuVasive required that Absolute Medical agree to certain reasonable confidentiality, non-competition, and non-solicitation obligations as a condition of NuVasive allowing Absolute Medical to sell its products.

41.     Section 5.09(a) of the Agreement requires Absolute Medical to: (a) identify all products and services that it and its Representative Affiliates promote; and (b) update that list of products and services as needed. It provides:

> Representative has identified in **Exhibit G** all products and services for which Representative or Representative Affiliates (directly or indirectly) act as a sales representative, agent, employee, or similar position.   Representative shall update **Exhibit G** so that it is complete and accurate at all times and Representative agrees that failure to update **Exhibit G** shall constitute a material breach of the Agreement and may result in NuVasive exercising its rights under Section 9.03.

42.     Section 5.09(c) of the Agreement imposes reasonable non-competition and non-solicitation obligations on Absolute Medical.  It provides:

> During the Term and for a period of twelve (12) months thereafter, Representative and Representative Affiliates shall not (i) represent, promote, sell, solicit, or otherwise commercialize (directly or indirectly) any products or services that are, in NuVasive's reasonable judgment, competitive with any of NuVasive's products or services (including the Products) without the prior written consent of NuVasive, (ii) solicit, encourage, or induce, or cause to be solicited, encouraged or induced (directly or indirectly) any Restricted Persons within the Territory, to terminate or adversely modify any business relationship with NuVasive, or not to proceed with, or enter into, any business relationship with NuVasive, nor otherwise interfere with any business relationship between NuVasive, and any Restricted Persons within the Territory, or (iii) solicit or offer to work (directly or indirectly) or hire any of

NuVasive's employees, agents or representatives.  The twelve (12) month period during which the restrictions of this Section are applicable after the Term shall toll for any period of time in which Representative is not in compliance herewith.

43.     Section 5.09(e) of the Agreement requires Absolute Medical to ensure that its Representative Affiliates enter into non-competition and non-solicitation agreements.  It provides:

Representative (i) represents, warrants and covenants that each Representative Affiliate engaged by it as of the Effective Date or any time thereafter during the Term, will have executed an agreement in form and substance sufficient to contractually obligate such person or entity to comply with the restrictions contained in this Section 5.09 prior to performing any services for the benefit of NuVasive, or Promoting the Products or receiving any information regarding the Products (a "**Compliance Agreement**"), (ii) shall cause each Compliance Agreement to name NuVasive as an intended third party beneficiary with full right to directly enforce provisions necessary to comply with this Section 5.09, and (iii) will vigorously enforce the restrictions contained in this Section 5.09 and each Compliance Agreement at its own cost (and in the event Representative fails to adequately enforce such restrictions, NuVasive may do so at Representative's cost).  Representative shall provide NuVasive a copy of each Compliance Agreement with respect to each Representative Affiliate immediately upon such person or entity becoming a Representative Affiliate.  Each Compliance Agreement shall require all sales representatives to comply with the terms of Section 5.08 and Section 5.09 hereof.  Representative shall be liable to NuVasive for any breaches by the Representative Affiliate of the Compliance Agreement.

44.     The restrictive covenants described in the preceding two paragraphs are reasonable because:  (a) their temporal restrictions are limited to the term of the Agreement plus the following twelve months after that term concludes; and (b) their geographic restrictions are limited to Absolute Medical's NuVasive sales territory.

45.     Section 8.01 of the Agreement imposes confidentiality obligations on Absolute Medical.  It provides:

<u>Non-Disclosure</u>.  Each Party shall not, except as otherwise expressly provided herein, use, disclose, disseminate or otherwise allow access to the Confidential Information of the other Party to anyone other than to employees that have a need to know such Confidential Information to implement this Agreement and who are bound by written confidentiality obligations with provisions no less stringent than those contained in this Article VIII.  Each Party shall prevent unauthorized disclosure or use of the Confidential Information of the other Party.  Each Party shall execute all documents and otherwise shall take all necessary steps to ensure that each be able to enforce rights hereunder pertaining to Confidential Information.  Each Party shall be responsible for any breach of this Section 8.01 by employees, contractors or agents.

46.      Section 10.01 of the Agreement provides, in relevant part:

<u>Indemnification by Representative</u>.  Representative shall indemnify, defend and hold harmless NuVasive and its present and former, direct and indirect, subsidiaries, affiliates, employees, officers, directors, stockholders, members, agents, representatives, and permitted successors and permitted assigns (each a "**NuVasive Indemnitee**") from and against…subject to Section 10.03, any Litigation Costs incurred by a NuVasive Indemnitee while investigating or conducting the defense of any Claim, in any such case, solely to the extent such Claim is directly based on or directly arises out of or from any breach by Representative of any of its representations, warranties and covenants under this Agreement…the gross negligence and willful misconduct of Representative or any Representative Affiliates…

47.      Section 12.04 of the Agreement provides:

<u>Further Assurances</u>.  On NuVasive's request, Representative shall, at its sole cost and expense, execute and deliver all such further documents and instruments, and take all such further acts, necessary to give full effect to this Agreement.

**C.     Absolute Medical's Breaches of its Contractual Obligations.**

48.      In a November 27, 2017, email, Soufleris notified NuVasive of Absolute Medical's intent to resign from its "partnership" with NuVasive.  NuVasive attaches a copy of this email as **Exhibit 4**.

11

49.     The Agreement's terms do not allow Absolute Medical to terminate it without cause.

50.     Article IX of the Agreement contains the only grounds for Absolute Medical to terminate it.  None of those grounds are relevant.

51.     NuVasive has not terminated the Agreement.

52.     In a December 5, 2017, email, Absolute Medical's counsel stated that three Representative Affiliates – Hawley, Miller, and Brandon Gottstein ("Gottstein") – resigned from Absolute Medical.  NuVasive attaches a copy of this email as **Exhibit 5**.

53.     Gottstein worked for Absolute Medical from April of 2016 through December of 2017 as a field support representative.  He now works for Alphatec as a sales representative.  Upon information and belief, Absolute Medical required Gottstein to sign an agreement which contains reasonable non-compete and non-competition obligations.

54.     Hawley, Miller, and Gottstein are soliciting business from, and performing services for, the same customers they solicited business and performed services on NuVasive's behalf.  The only difference is that they now sell products marketed by Alphatec on behalf of AMS.

55.     Like Soufleris, Hawley, and Miller, Gottstein utilizes the same telephone number and email address in his work for AMS that he utilized in his work for Absolute Medical.

56.     Contrary to the obligations imposed on it by Section 5.09(e) of the Agreement, Absolute Medical has taken no steps to stop Hawley and Miller from violating their contractual obligations not to solicit or service the customers they solicited or serviced

on Absolute Medical's behalf.  Indeed, Absolute Medical refused to even provide NuVasive with copies of their 2013 ICAs and consistently (and erroneously) denied, both informally and in discovery responses, the existence of those agreements.

57.     Absolute Medical has taken no steps to stop Gottstein from violating his non-competition and non-solicitation obligations, and denies that such an agreement exists.

58.     Since forming AMS, Soufleris has solicited business from at least two of Absolute Medical's customers on behalf of AMS and Alphatec.

59.     On AMS' behalf, Miller and Soufleris attended a December 6, 2017, dinner with one of Absolute Medical's surgeon-customers and asked that surgeon-customer to try Alphatec's products.

60.     On December 12, 2017, Hawley utilized his Absolute Medical email address to send a message to Alphatec regarding custom instruments needed by a surgeon to whom he (through Absolute Medical) regularly sold NuVasive products.  This email:

   a.  provided Alphatec with precise descriptions of the instruments; and

   b.  upon information and belief, promised to send the custom instruments NuVasive previously made for the surgeon to Alphatec so that Alphatec could copy them.

NuVasive attaches a copy of this email as **Exhibit 6**.

61.     Soufleris had dinner with the surgeon-customer referenced in the preceding paragraph as recently as the first or second week in May of 2018.

62.     On May 24, 2018, NuVasive discovered custom instruments it created for the surgeon-customer referenced in the preceding two paragraphs at Florida Hospital Orlando. The custom instruments were sterilized and prepared to be used in a surgery.  No NuVasive

representative requested that the custom instruments be sterilized and prepped for surgery. Upon information and belief, Hawley or another AMS sales representative: (a) arranged for the custom instruments to be sterilized and prepared for surgery, and (b) intended to use the custom instruments in a surgery where the surgeon-customer would utilize non-NuVasive implants.

63.     To date, Absolute Medical has not updated Exhibit G to the Agreement or otherwise informed NuVasive that it is working with competitive companies.

64.     As a result of Defendants' violations of their contractual obligations, AMS (through Soufleris, Hawley, and Miller) converted nearly all of NuVasive's business within Absolute Medical's sales territory to Alphatec.

### COUNT I (Breach of Contract – Injunctive Relief against Absolute Medical)

65.     NuVasive incorporate the allegations contained in paragraphs 1 through 64.

66.     The Agreement, including, without limitation, Sections 5.09 and 8.01, is a valid and enforceable contract.

67.     The geographic and temporal restrictions contained in Section 5.09 are reasonable.

68.     Even if Section 5.09 were overbroad, the Agreement and Delaware law allow the Courts to make reasonable alterations so that it protects NuVasive's interests.

69.     NuVasive fully performed all of the obligations imposed on it by the Agreement.

70.     Absolute Medical breached or intends to breach many of the obligations the Agreement imposes on it by the Agreement by, without limitation:

    a.  attempting to unilaterally terminate the Agreement;

    b.  not enforcing Hawley's and Miller's non-compete and non-solicit obligations or, alternatively, releasing Hawley and Miller from their non-compete and non-solicit obligations without NuVasive's permission;

    c.  soliciting business on Alphatec's behalf; and

    d.  not updating Exhibit G to the Agreement.

71.    There is a reasonable probability that NuVasive will prevail on the merits of this action as Absolute Medical is breaching and/or threatening to breach valid and enforceable contractual obligations.

72.    NuVasive will be irreparably harmed if the Court does not require Absolute Medical to specifically perform the obligations imposed on it by the Agreement (or at least comply with its non-competition and non-solicitation obligations) as it will, without limitation, likely: (a) lose its goodwill with the customers in Absolute Medical's sales territory; and (b) lose sales to those customers. Additionally, Absolute Medical's failure to fully perform its contractual obligations left NuVasive with insufficient sales personnel to fully service its business in Absolute Medical's sales territory, and further assisted AMS' illegal conversion of that business.

73.    No legal remedy can fully compensate NuVasive for the harm Absolute Medical's actions are causing. NuVasive bargained for a five-year relationship with Absolute Medical, and now Absolute Medical works for one of NuVasive's competitors in the same territory it is contractually obligated to work for NuVasive.

74. The balance of equities tips in favor of issuing the requested injunction because it will not harm Absolute Medical, as Absolute Medical is contractually obligated to perform all of the tasks identified in the Agreement.

75. Issuing the requested injunction will benefit the public's interest as the public has an interest in seeing contracts enforced as written.

**COUNT II (Breach of Contract – Damages/Arbitration against Absolute Medical)**

76. NuVasive incorporate the allegations contained in paragraphs 1 through 75.

77. The Agreement is a valid and enforceable contract.

78. Absolute Medical breached or intends to breach the obligations imposed on it by the Agreement by, without limitation:

    a. attempting to unilaterally terminate the Agreement;

    b. not enforcing its sales representatives' non-competition and non-solicitation obligations;

    c. falsely representing to NuVasive that its sales representatives are not subject to non-competition and non-solicitation obligations;

    d. soliciting business on Alphatec's behalf without updating Exhibit G to the Agreement; and

    e. converting NuVasive's business to Alphatec.

79. Absolute Medical's breaches of the Agreement caused NuVasive to incur significant damages.

80. Pursuant to 9 U.S.C. § 4, this Court should order NuVasive's breach of contract claim for damages against Absolute Medical to arbitration in the manner provided for in the Agreement.

**COUNT III (Breach of Contract – Injunctive Relief and Damages against AMS)**

81.     NuVasive incorporate the allegations contained in paragraphs 1 through 80.

82.     AMS is Absolute Medical's successor in interest. Soufleris formed AMS— which is a continuation and/or a reincarnation of Absolute Medical—to fraudulently avoid the contractual obligations Absolute Medical owes NuVasive.

83.     Like Absolute Medical, AMS sells products utilized in spine surgeries to surgeons and medical facilities.

84.     Soufleris formed AMS on November 30, 2017—three days after the November 27, 2017, email to NuVasive which purported to "resign" Absolute Medical from the Agreement.

85.     Absolute Medical was solvent when Soufleris formed AMS and began the process of dissolving Absolute Medical.  Upon information and belief, Soufleris transferred several hundreds of thousands of dollars from Absolute Medical to AMS or other entities before dissolving Absolute Medical.

86.     Absolute Medical and AMS use the same attorneys.

87.     Absolute Medical and AMS use the same accounting system.

88.     Absolute Medical and AMS utilize the same computers, telephones, and other office equipment.

89.     Absolute Medical and AMS have a substantially common identity of owners, employees, and independent contractors.

90.     Soufleris is the sole member, registered agent, and "president" of AMS and Absolute Medical.

91.     Soufleris, at least three of AMS' sales representatives – Hawley, Miller, and Gottstein – and AMS' executive administrator worked for Absolute Medical immediately before joining AMS.

92.     AMS' owner, employees, and independent contractors who were affiliated with Absolute Medical utilize the same telephone numbers and email addresses that they used to conduct business on Absolute Medical's behalf.

93.     Absolute Medical last sold a NuVasive product on or about December 3, 2017, and claims it sold no Alphatec products.

94.     AMS never sold NuVasive products, and first sold an Alphatec product on or about December 5, 2017.

95.     Absolute Medical stopped doing business in December of 2017, when Soufleris began the process of dissolving it.

96.     AMS sells Aphatec's products to the same customers Absolute Medical sold NuVasive's products and possesses communications with the every surgeon to whom Absolute Medical sold NuVasive products in November of 2017.

97.     As Absolute Medical's successor in interest, NuVasive is entitled to the same equitable and legal remedies against AMS that it is entitled to against Absolute Medical.

**COUNT IV (Breach of Contract – Injunctive Relief and Damages against Hawley and Miller)**

98.     NuVasive incorporate the allegations contained in paragraphs 1 through 64.

99.     The non-competition and non-solicitation obligations in Hawley's and Miller's 2013 ICAs are reasonable and enforceable as:  (a) their temporal restriction is for

only one year; and (b) their geographic restriction is limited to the territories they serviced for Absolute Medical.

100.    Neither Hawley nor Miller are complying with the non-competition and non-solicitation obligations in their 2013 ICAs.

101.    Hawley's and Miller's breaches of their 2013 ICAs harmed NuVasive in that they allowed AMS to convert the vast majority of the business in Absolute Medical's sales territory to Alphatec.  Further, these breaches continue to irreparably harm NuVasive as their established relationships with their customers make it more difficult for NuVasive to win back the business of those customers.

102.    No legal remedy can fully compensate NuVasive for the harm Hawley's and Millers' actions are causing.  They are rapidly converting NuVasive's business in their sales territories and will continue to do so if not enjoined.

103.    The balance of equities tips in favor of enjoining Hawley and Miller from violating the non-competition and non-solicitation obligations.  Doing so will not harm them because Absolute Medical remains able to sell NuVasive's products for the remainder of the Agreement's five year term.  Accordingly, if the injunction issues, Hawley and Miller could continue selling products used in spinal surgery (albeit NuVasive's products through Absolute Medical) to the same surgeons and medical facilities they now service in violation of their non-competition and non-solicitation obligations.  On the other hand, not issuing the requested injunction will cause NuVasive irreparable harm as Hawley and Miller will continue to unfairly compete with it.

104.     Issuing the requested injunction will benefit the public's interest as the public has interests in: (a) seeing contracts enforced as written; and (b) fostering fair competition.

105.     NuVasive is entitled to recover monetary damages against Hawley and Miller, and is also entitled to temporary, preliminary, and permanent injunctions which prohibit them from violating their 2013 ICAs.

## COUNT V (Conversion against Hawley and AMS)

106.     Upon information and belief, after leaving Absolute Medical and joining AMS, Hawley (or other AMS sales representatives) exercised dominion over the custom instruments referenced in paragraphs 60 and 62.

107.     Hawley (or other AMS sales representatives) did not have the right to exercise dominion over the custom instruments.

108.     Hawley's (or other AMS sales representatives') conversion of NuVasive's custom surgical instruments harmed NuVasive and caused it to suffer monetary damages.

## COUNT VI (Statutory Individual Liability against Soufleris)

109.     NuVasive incorporate the allegations contained in paragraphs 1 through 24 and 82 through 97.

110.     Absolute Medical is a limited liability company formed and existing under the Florida Revised Limited Liability Company Act.  Fla. Stat. §§ 605.0101, *et seq.*

111.     As Absolute Medical's sole member, Soufleris owes Absolute Medical certain duties, including without limitation, fiduciary duties of loyalty and care.

112.     Soufleris breached his fiduciary duties of loyalty to Absolute Medical by, without limitation:

    a.   dissolving Absolute Medical;

    b.   transferring Absolute Medical's assets to AMS or other companies he owns and/or controls;

    c.   forming AMS to avoid Absolute Medical's obligations to NuVasive and, in effect, compete with Absolute Medical;

    d.   precluding Absolute Medical from complying with its contractual obligations to NuVasive; and

    e.   intentionally subjecting Absolute Medical to liability.

113.    Soufleris' actions and failures to act on behalf of Absolute Medical constitute breaches and/or failures to perform the duties he owes to Absolute Medical.

114.    Soufleris' breaches and/or failures to perform constitute, without limitation, transactions from which Soufleris derived improper personal benefits, directly and indirectly.

115.    Pursuant to the Florida Revised Limited Liability Company Act § 605.04093, Soufleris is personally liable for the monetary damages Absolute Medical owes NuVasive, and should be subjected to any injunctive relief the Court issues against Absolute Medical.

### COUNT VII (Piercing the Corporate Veil against Soufleris)

116.    NuVasive incorporate the allegations contained in paragraphs 1 through 24, 82 through 97, and 110 through 115.

117.    Soufleris dominates and exercises complete control over Absolute Medical and AMS to the extent that their independence is non-existent and Soufleris is, in fact, their alter ego.

118.    Soufleris fraudulently and/or improperly organized and used Absolute Medical and AMS to mislead and/or defraud NuVasive in an attempt to, without limitation, evade Absolute Medical's existing personal liability to NuVasive.

119.    Soufleris' fraudulent and improper use of the corporate form is the proximate cause of the damages NuVasive incurred and continues to incur as a result of Absolute Medical's breach of its obligations under the Agreement and AMS' unfair competition with it.

120.    This Court should disregard the corporate form and hold Soufleris personally liable for any judgment rendered against Absolute Medical and/or AMS in this matter, and extend any injunctions it issues against them to Soufleris.

### COUNT VIII (Florida Deceptive and Unfair Trade Practices Act against all Defendants)

121.    NuVasive incorporate the allegations contained in paragraphs 1 through 120.

122.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Annotated Statues §§ 501.201, *et seq.*, makes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce unlawful.

123.    Any person aggrieved by a violation of the FDUTPA may bring a private action to obtain declaratory and injunctive relief and any person who has suffered a loss by a violation of the FDUTPA may recover damages, as well as attorney's fees and costs, on account of that loss.

124.    Absolute Medical and Soufleris have violated the FDUTPA by, without limitation: (i) unfairly competing with NuVasive by soliciting business on Alphatec's behalf, and (ii) engaging in unfair and/or deceptive acts and practices by, without limitation:

a.    attempting to unilaterally terminate the Agreement;

b.  not enforcing Hawley's and Miller's non-compete and non-solicit obligations or, alternatively, releasing Hawley and Miller from their non-compete and non-solicit obligations without NuVasive's permission; and

c.  soliciting business on Alphatec's behalf without updating Exhibit G to the Agreement.

125.    Upon information and belief, Hawley has violated the FDUTPA by unfairly competing with NuVasive and engaging in unfair and/or deceptive acts and practices by shipping custom surgical instruments that NuVasive created and owned to Alphatec so that Alphatec could create substantially identical instruments.

126.    Defendants' violations of the FDUTPA have aggrieved NuVasive and caused it to suffer damages.

<u>**COUNT IX (Tortious Interference With Business Relationships against Soufleris)**</u>

127.    NuVasive incorporate the allegations contained in paragraphs 1 through 126.

128.    Business relationships exist between NuVasive and its surgeon-customers who purchase and utilize its products via its exclusive distributor Absolute Medical.

129.    Soufleris possessed actual knowledge of these business relationships at the time he began soliciting business from NuVasive's surgeon-customers.

130.    Soufleris' solicitation of NuVasive's surgeon-customers was, and is, an intentional and unjustified interference with NuVasive's business relationship with its surgeon-customers.

131.    NuVasive has incurred, and continues to incur, damages due to Soufleris' tortious interference with NuVasive's business relationship with its surgeon-customers.

## PRAYER FOR RELIEF

WHEREFORE, NuVasive respectfully requests that this Court:

A.      Issue a preliminary and final injunction which requires Absolute Medical to comply with all of the contractual obligations it owes to NuVasive including, without limitation:

1. fulfilling its contractual obligations for the entire term of the Agreement;

2. providing NuVasive with copies of the current and former Representative Affiliates' Compliance Agreements;

3. enforcing the former Representative Affiliates' Compliance Agreements or pay to NuVasive the reasonable costs (including reasonable attorneys' fees) it incurs in prosecuting those actions; and

4. not competing with NuVasive within its sales territory.

B.      Extend any injunction issued to Absolute Medical to cover AMS, Soufleris, Miller, and Hawley or, alternatively, temporarily, preliminarily, and permanently enjoin AMS, Soufleris, Miller, and Hawley from competing with NuVasive in Absolute Medical's NuVasive sales territory;

C.      Award NuVasive the reasonable costs, including attorneys' fees, it incurs in obtaining the requested equitable relief;

D.      Award NuVasive monetary damages against AMS, Miller, and Hawley in the amount of at least $8,000,000.00 for their Absolute Medical's, Miller's, and Hawley's violations of their contractual obligations;

E.      Compel NuVasive's claim for monetary damages against Absolute Medical to binding arbitration;

F.      Award any and all relief, including without limitation declaratory relief, injunctive relief and monetary damages, attorney's fees and costs, available to NuVasive under the FDUTPA;

G.      Disregard the corporate form and hold Soufleris personally liable for NuVasive's damages pursuant to the Florida Revised Limited Liability Company Act and/or the doctrine of piercing the veil; and

H.      Grant any other further and general relief it deems just and proper.

Respectfully submitted,


*s/M. Thomas McFarland*
R. Craig Mayfield (Fla. Bar No. 0429643)
cmayfield@bradley.com
Diana Evans (Fla. Bar No. 98945)
dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq. (*pro hac vice*)
Mary Taylor Gallagher, Esq. (*pro hac vice*)
M. Thomas McFarland, Esq. (*pro hac vice*)
GULLETT, SANFORD, ROBINSON &
MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff, NuVasive, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on July 30, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.  The party or parties served are as follows:

Busch, Slipakoff, Mills & Slomka, LLC

Bryan Busch
Laura H. Mirmelli
2859 Paces Ferry Road SE, Suite 1700
Atlanta, GA 30339
Phone: (404) 800-4062
Fax: (404) 800-4062
bb@bsms.law
lm@bsms.law

Christopher Y. Mills
319 Clematis Street, Suite 109
West Palm Beach, FL 33401
Phone: (561) 701-5386
cm@bsms.law

*Attorneys for Defendants*

             s/*M. Thomas McFarland*    
             M. Thomas McFarland

             *Attorney for NuVasive, Inc.*