**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| NUVASIVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 6:17-cv-2206-Orl-41GJK |
| | ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE | ) | |
| MEDICAL SYSTEMS, LLC, GREG | ) | INJUNCTIVE RELIEF SOUGHT |
| SOUFLERIS, DAVE HAWLEY, and RYAN | ) | |
| MILLER, | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

## <u>NUVASIVE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DAVE HAWLEY AND RYAN MILLER AND SUPPORTING MEMORANDUM OF LAW</u>

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ................................................................................. i

**INDEX OF EXHIBITS** ................................................................................. ii

**TABLE OF AUTHORITIES** ........................................................................ iii

**INTRODUCTION** ......................................................................................... 1

**STATEMENT OF MATERIAL FACTS** ....................................................... 2

    A.   Hawley and Miller signed contracts which precluded them from competing with NuVasive until (at the earliest) January 1, 2018. ........................................ 5

    B.   Hawley and Miller began competing with NuVasive prior to January 1, 2018, and have not stopped doing so. ....................................................................... 8

**STANDARD FOR GRANTING SUMMARY JUDGMENT** .......................... 12

**IT IS UNDISPUTED THAT HAWLEY AND MILLER VIOLATED THE RESTRICTIVE COVENANTS IN THEIR 2016 AGREEMENTS** ................. 13

    A.   The restrictive covenants comply with Florida law and are enforceable. ................... 13

        1.   The 2016 Compliance Agreements are writings signed by Hawley and Miller... 14

        2.   The 2016 Compliance Agreements' restrictive covenants are justified by multiple legitimate business interests. ................................................................... 14

        3.   The 2016 Compliance Agreements' restrictive covenants are reasonably necessary to protect NuVasive's legitimate business interests justifying their existence. .............................................................................................. 17

        4.   The 2016 Compliance Agreements' temporal restrictions are appropriate. ......... 18

    B.   Hawley and Miller violated the restrictive covenants in the 2016 Compliance Agreements. ................................................................................ 19

    C.   Hawley and Miller impermissibly benefited from their breaches of the 2016 Compliance Agreements' restrictive covenants, which harmed NuVasive. ............... 19

    D.   The Court should toll the temporal terms of the 2016 Agreements' restrictive covenants. .................................................................................... 20

**CONCLUSION** .......................................................................................... 21

i

## INDEX OF EXHIBITS

**Exhibit 1: Deposition of Gregory Soufleris** ......................................1, 3, 4, 9, 10, 11, 12, 17

**Exhibit 2: Deposition of John English**.................................................................................2, 3

**Exhibit 3: Absolute Medical, LLC's Responses to Request for Production**......................3

**Exhibit 4: Absolute Medical, LLC's Responses to Interrogatories**...................................3

**Exhibit 5: Dave Hawley's Responses to Interrogatories** ....................................................3

**Exhibit 6: Dave Hawley's Responses to Request for Production** ........................................3

**Exhibit 7: Email from Emmanuel** ........................................................................................4

**Exhibit 8: Absolute Medical, LLC's Amended Responses to Interrogatories** ..................4

**Exhibit 9: 2013 Compliance Agreements**..............................................................................5

**Exhibit 10: 2014 Compliance Agreements**........................................................................5, 6

**Exhibit 11: 2015 Compliance Agreements**........................................................................5, 6

**Exhibit 12: 2016 Compliance Agreements** .............................................5, 6, 7, 8, 15, 18, 20

**Exhibit 13: Deposition of Ryan Miller** ................5, 7, 8, 9, 11, 12, 13, 14, 15, 17, 19, 20, 21

**Exhibit 14: Deposition of Dave Hawley** ..................7, 8, 9, 10, 11, 14, 15, 16, 17, 19, 20, 21

**Exhibit 15: Deposition of Absolute Medical System, LLC's Corp. Rep.**................9, 11, 12

**Exhibit 16: Deposition of Absolute Medical, LLC's Corp. Rep.** ............................9, 15, 16

**Exhibit 17: Charge Sheets** ..................................................................................................11

**Exhibit 18: Declaration of P. Marzano** ........................................................…….16

## TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, (1986) ....................................................12, 13

*Capelouto v. Orkin Exterminating Co.*, 183 So. 2d 532, (Fla. 1966) .............................20, 21

*Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265 (11th Cir. 2007) ...13

*Electrostim Med. Servs. v. Dawn Lindsey & Zynex Med., Inc.*, No. 8:11-cv-2467-T-33TBM, 2012 WL 1405707 (M.D. Fla. Mar. 13, 2012) .......................................................................18

*FTC v. Life Mgmt. Servs.*, 350 F. Supp. 3d 1246 (M.D. Fla. 2018) .........................................13

*Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995 (11th Cir. 1997) ...................................................12

*Intermex Wire Transfer v. V.*, No. 14-013853-CA-05, 2014 Fla. Cir. LEXIS 29206 (Fla. Cir. October 1, 2014) .......................................................................................................................20

*Kverne v. Rollins Protective Servs. Co.*, 515 So. 2d 1320 (Fla. 3d DCA 1987) ...............20, 21

*Laroche v. Denny's Inc.*, 62 F. Supp. 2d 1366 (S.D. Fla. 1999) ..............................................13

*Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So. 2d 268 (Fla. 4th DCA 2006) ....................................................................................................................................................18

*Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209 (S.D. Fla. 2005) .........................18

*Osbourne Assocs. v. Cangemi*, No. 3:17-cv-1135-J-34MCR, 2017 WL 5443146 (M.D. Fla. Nov. 14, 2017) .........................................................................................................................18

*Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223 (11th Cir. 2009)...................................18

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)..........................................13


**Rules and Statutes:**

Federal Rule of Civil Procedure 56 ..........................................................................................12

Florida Statutes § 542.335 ...........................................................................................14, 17, 19

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff NuVasive, Inc. ("NuVasive"), submits that the undisputed facts establish that Defendants Dave Hawley ("Hawley") and Ryan Miller ("Miller") violated the reasonable restrictive covenants they owed to NuVasive by, without limitation, selling competitive products to the same surgeons and hospitals to whom they previously sold NuVasive's products, and that:

- their violations harmed NuVasive; and

- they unjustly benefited from those violations.

Accordingly, NuVasive respectfully requests that the Court grant this motion for partial summary judgment, toll the expiration of Hawley's and Miller's restrictive covenants, and hold a hearing to determine the damages NuVasive is entitled to recover from Hawley and Miller.[1]

## **INTRODUCTION**

Defendants claim that Hawley and Miller are not subject to non-competition and/or non-solicitation obligations because Defendant Absolute Medical, LLC ("Absolute Medical") failed to comply with its contractual obligation (to NuVasive) to require them to sign Compliance Agreements in calendar year 2017.  While NuVasive believes that Hawley and Miller did sign Compliance Agreements in 2017, it recognizes that this fact is in dispute.[2]  What is not in dispute, however, is that Hawley and Miller signed Compliance

---

[1] This motion only addresses Hawley's and Miller's undisputed violations of the restrictive covenants within the contracts they signed in calendar year 2016. NuVasive still seeks relief against Hawley and Miller related to violations of their calendar year 2017 contracts, but those issues are not ripe for summary judgment.

[2] NuVasive anticipates addressing this issue in a motion which addresses Defendants' spoliation of relevant evidence as Defendant Greg Soufleris acknowledges that he willfully failed to maintain the email platform that contained messages relevant to the 2017 Compliance Agreements.  (Dep. G. Soufleris, attached as **Exhibit 1**, 41:17–24, 211:4–18).

Agreements in 2016 (the "2016 Compliance Agreements") which contain restrictive covenants that prohibited them from converting the business of their NuVasive surgeon-customers in December 2017, and that they failed to comply with those restrictions. (Order, Doc. 150, p. 9–11). Indeed, Hawley and Miller admit that:

- they signed Compliance Agreements in 2013, 2014, 2015, and 2016 which contain one year non-circumvention, non-competition, and non-solicitation obligations;

- the 2016 Compliance Agreements name NuVasive as a third-party beneficiary and contain restrictive covenants that place reasonable limitations on their competitive activities until December 31, 2017;

- they first violated the 2016 Compliance Agreements' restrictive covenants by competing with NuVasive in their sales territories in December 2017; and

- since these first violations, they have consistently competed with NuVasive for their NuVasive surgeon-customers' business.

These admissions prove that Hawley and Miller violated the 2016 Compliance Agreements' restrictive covenants, that the Court should toll the expiration of the 2016 Compliance Agreements until they provide NuVasive with what it is contractually entitled to receive (a full year of not competing with them for their NuVasive surgeon-customers), and award NuVasive the damages it incurred as result of their contractual violations.

## STATEMENT OF MATERIAL FACTS

NuVasive and Absolute Medical entered into a Sales Representative Agreement on January 1, 2017 ("2017 Sales Agreement"). (Dep. J. English, attached as **Exhibit 2**, 14:21–15:5, 44:18–45:25, Ex. 2 at Ex. 1). Like the previous Sales Representative Agreements between the parties, dated February 14, 2013, and January 1, 2014, respectively, Section 5 of the 2017 Sales Agreement required Absolute Medical to represent and warrant that it

subjected its sales force to Compliance Agreements which contain reasonable non-competition provisions.  (**Id.** at 46:7–48:25, Ex. 2 at Ex. 1 § 5.09(e)).

In a November 30, 2017 email, Absolute Medical's sole member, Defendant Gregory Soufleris ("Soufleris"), informed NuVasive that Absolute Medical would no longer perform the obligations imposed on it by the 2017 Sales Agreement.  (**Exhibit 1**, 82:23–83:12, Ex. 18).   Then, the Defendants claimed that Soufleris, Hawley, and Miller never signed Compliance Agreements and were not subject to any restrictive covenants.   More specifically, on May 11, 2018, Absolute Medical responded to NuVasive's first requests for production by stating that it possessed "no contracts or other agreements with" Hawley, Miller, and others, and, under penalty of perjury, failed to confirm that Hawley and Miller were ever subject to non-competition restrictions in its response to Interrogatory 1.  (Absol. Med. Resp. Req. Produc., attached as **Exhibit 3**, ¶ 1; Absol. Med. Resp. Interr., attached as **Exhibit 4**, ¶ 1).   Similarly, on May 22, 2018, Hawley falsely responded to NuVasive's Interrogatory 10, which asked him to identify "every contract [he] signed that contained non-competition or non-solicitation provisions" by stating that he "did not sign a non-compete agreement with [NuVasive] or with Absolute Medical, LLC;" and then reinforced this misstatement in his responses to NuVasive's Request for Production 1 ("Defendant is not subject to a non-compete agreement with Absolute Medical, LLC or NuVasive"), Request for Production 2 (claiming to possess no agreements between himself and Absolute Medical), and Request for Production 10 ("Defendant is not subject to a non-compete agreement with either NuVasive or Absolute Medical, LLC."").  (Hawley Resp. Interr., attached as **Exhibit 5**, ¶ 10; Hawley Resp. Req. Produc., attached as **Exhibit 6**, ¶¶ 1–2, 10).

Kirk Tyree's May 23, 2018 declaration debunked Defendants' claim that Hawley and Miller never signed Compliance Agreements by attaching signed 2013 Compliance Agreements he discovered on May 21, 2018.  (Decl. K. Tyree, Doc. 60-7, ¶¶ 4–5, Exs. B–D). Then, on June 27, 2018—one day before the Court conducted a hearing on NuVasive's request for a preliminary injunction—Absolute Medical and Hawley amended their discovery responses and produced their 2013, 2014, 2015, and 2016 Compliance Agreements[3] and changed their claim that Hawley and Miller never signed Compliance Agreements to Hawley and Miller (as well as the other Absolute Medical sales representatives) signed Compliance Agreements every year they worked for Absolute Medical except for 2017. (Email from Emmanuel, attached as **Exhibit 7**).  Indeed, Absolute Medical amended its response to Interrogatory 1 by stating that "no employees and/or independent contractors since January 1, 2017, were subject to a non-compete agreement with Absolute Medical."  (Absol. Med. Amend. Resp. Interr., attached as **Exhibit 8**, ¶ 1).[4]  However, (like the original response) this amended response is demonstrably false as Absolute Medical entered into 2017 Compliance Agreements with Thad Bragulla and Brennan Burkhart, two Absolute Medical sales representative whom Soufleris did not want to join him at Alphatec Spine, Inc. ("Alphatec"), as well as with Christopher Shultz, a former sales representative who now works for Integrity Implants.  (Decl. T. Bragulla, Doc. 19-3, ¶ 3; 2d Decl. T. Bragulla, Doc. 60-10, ¶ 5, Ex. A; **Exhibit 1**, 8:16–14:17, 34:16–21, 35:12–18; 37:10–13).

---

[3] Hawley produced his Compliance Agreements and Absolute Medical produced Miller's.

[4] It is curious, at best, that Defendants only amended their sworn discovery responses after NuVasive conclusively demonstrated their falsity.

**A. Hawley and Miller signed contracts which precluded them from competing with NuVasive until (at the earliest) January 1, 2018.**

Hawley's and Miller's 2013 Compliance Agreements (the "2013 Compliance Agreements") became effective on February 13, 2013. (2013 Compliance Agreements, attached as collective **Exhibit 9**).[5] Among other things, they precluded Hawley and Miller from competing with Absolute Medical and/or NuVasive[6] in their assigned sales territories or in other locations where they provided services to those entities during the term of the Compliance Agreements and for one year after they terminate.[7] (**Id.** at § 12). Both Hawley and Miller signed their 2013 Compliance Agreements "Individually and on behalf of Independent Contractor" and, in Section 25 of their 2013 Compliance Agreements, agreed that they, along with their single-member LLCs were bound by the 2013 Compliance Agreements. (**Id.** at § 25, signature page).

The form of the Compliance Agreements signed by Hawley and Miller changed with the 2014 Compliance Agreements (the "2014 Compliance Agreements"), then remained substantially identical in 2015 (the "2015 Compliance Agreements"), and 2016. (2014 Compliance Agreements, attached as collective **Exhibit 10**; 2015 Compliance Agreements, attached as collective **Exhibit 11**; 2016 Compliance Agreements, attached as collective

---

[5] The 2013 Compliance Agreements are an exemplar copy with Hawley's and Miller's signature pages. Hawley and Miller both testified they signed these 2013 Compliance Agreements. (June 28, 2018, Tr. Hr'g Prelim. Inj., Doc. 79, 78:2-4, 98:8-17)

[6] NuVasive is a "Manufacturer" or "Agent Manufacturer" as defined by the 2013 Compliance Agreements. Indeed, the first "Witnesseth Paragraph" defines "Manufacturer" as "one or more manufacturers who supply the Products to Agent." (**Exhibit 9**, p. 1).

[7] The 2013 Compliance Agreements did not include fixed terms. They could be terminated by either party with fifteen days written notice or pursuant to the events described in Section 9. (**Exhibit 9**, § 9). There is no evidence in the record that any of these events took place.

**Exhibit 12**; Dep. R. Miller, attached as **Exhibit 13**, 52:12–55:14).[8]   Similar to the 2013

Compliance Agreements, the 2014, 2015, and 2016 Compliance Agreements bind Hawley

and Miller individually, as well as their single-member limited liability companies by stating:

> 4.1   Conduct.   If Salesperson is not an individual but is an entity such as a
> corporation or limited-liability company, Salesperson shall cause its principal
> in the introductory paragraph of this Agreement to provide all services on
> behalf of Salesperson; and all duties, responsibilities and obligations of
> Salesperson shall apply with equal force to such person designated the same
> as if such person were, in fact, the Salesperson and the Salesperson and such
> principal shall be jointly and severally liable therefor.   Whenever the term
> "Salesperson" is used in this Agreement, it shall mean both the Salesperson
> and the Principal collectively, jointly and severally . . .

(**Exhibit 10**, § 4.1; **Exhibit 11**, § 4.1; **Exhibit 12**, § 4.1).

 Hawley's and Miller's 2016 Compliance Agreements became effective on January 1,

2016.  (**Exhibit 12**).  Like the 2014 and 2015 Compliance Agreements, the 2016 Compliance

Agreements are governed by Florida law (Section 8.8) and are for one-year terms which,

"[U]pon thirty (30) days written notice to [Miller and/or Hawley] prior to the expiration of

the then current Term, [Absolute Medical] shall have the option to renew the Agreement for

successive one (1) year terms with each such renewal constituting an additional year in the

Term."  (**Exhibit 10**, § 3.1; **Exhibit 11**, § 3.1; **Exhibit 12**, § 3.1).

The 2016 Compliance Agreements did not terminate prior to December 31, 2016.

(Order, Doc. 150, p. 10).  While Hawley, Miller, and Absolute Medical deny that Absolute

Medical exercised its option to renew the Compliance Agreements for calendar year 2017,

they admit that Hawley and Miller continued in their roles as Absolute Medical's sales

---

[8] The copy of Hawley's 2014 Compliance Agreement he produced is not executed, but he testified that he
signed Compliance Agreements in 2014, 2015, and 2016. (June 28, 2018, Tr. Hr'g Prelim. Inj., Doc. 79, 78:2-
7).

representatives until quitting without notice in late November 2017.  (Dep. D. Hawley, attached as **Exhibit 14**, 50:3–24; **Exhibit 13**, 39:24–40:4; 43:23–44:3; 56:24–57:1).[9]

Section 4.8 of the 2016 Compliance Agreements obligates Hawley and Miller to attend any special training provided by NuVasive.  (**Exhibit 12**, § 4.8).  Section 5.1 contains their acknowledgements that Absolute Medical received (and will continue to receive) NuVasive's and its customers' confidential information (as defined by Section 5.2 of the 2016 Compliance Agreements) and that they will maintain the confidentiality of that information.  (**Id.** at § 5.1).  To, in part, protect this confidential information and the goodwill that Absolute Medical and NuVasive developed with their customers, Sections 5.4 through 5.6 of the 2016 Compliance Agreements impose certain restrictive covenants on Hawley and Miller that last through their 2016 Compliance Agreements' terms and for one year after the terms expire (i.e., through December 31, 2017).  (**Id.** at §§ 5.4–5.6).  The first restrictive covenant, titled "Non-Circumvention," prohibits them from, without limitation, interfering with Absolute Medical's relationships with NuVasive, its employees, independent salespersons, and customers.  (**Id.** at § 5.4).  The second, titled "Non-Competition," precludes them from selling "Competitive Products"[10] within their assigned sales territories or to other accounts they serviced on behalf of Absolute Medical.  (**Id.** at § 5.5).  And the final

---

[9] Though they claim they did not sign the 2017 Compliance Agreements, Hawley and Miller agree that they and Absolute Medical complied with all of the 2017 Compliance Agreements' terms and conditions, such as territory, commission structure and quota.  (**Exhibit 14**, 49:7–50:2; **Exhibit 13**, 58:11–62:22).

[10]   Section 5.5 of the Compliance Agreements defines "Competitive Products" as "any goods, products or product lines that are directly or indirectly competitive with the Medical Products sold by [Absolute Medical], including without limitation NuVasive Products. For purposes of this Section, "NuVasive Products" means any goods, products, product lines or services marketed, promoted or sold by NuVasive, whether directly or indirectly, (i) that [Absolute Medical] marketed, promoted, sold, or solicited sales of on behalf of NuVasive during the Term, or (ii) with respect to which [Hawley/Miller] at any time received or otherwise obtained or learned NuVasive Confidential Information."  (**Exhibit 12**, § 5.5).

restrictive covenant, titled "Non-Solicitation," bars them from, directly or indirectly, soliciting or accepting business from any of Absolute Medical's customers or prospective customers.  (**Id.** at § 5.6).

Section 5.8 of the 2016 Compliance Agreements contain Hawley's and Miller's acknowledgements that the restrictions contained in Section 5 are reasonable and necessary to protect Absolute Medical's business, confidential information, and the goodwill they would develop on its behalf.  (**Id.** at § 5.8).  Accordingly, they agreed that, in the event they breached any of the restrictive covenants, Absolute Medical could obtain injunctive relief, "specific performance, and an equitable accounting of, and constructive trust for, all profits or other benefits arising out of or related to any such violation."  (**Id.**)

Section 8.9 of the 2016 Compliance Agreements provides that the prevailing party in an action to enforce one or more of the 2016 Compliance Agreements' provisions is entitled to recover the attorneys' fees and costs in incurred in the action.  (**Id.** at § 8.9).  And Section 8.11 names NuVasive as a third-party beneficiary of the 2016 Compliance Agreements.  (**Id.** at § 8.11).[11]

## B. Hawley and Miller began competing with NuVasive prior to January 1, 2018, and have not stopped doing so.

Hawley and Miller testified that they intended to honor the obligations imposed on them by the 2016 Compliance Agreements.  (**Exhibit 14**, 37:3–38:1, 139:2–9; **Exhibit 13**, 46:22–47:7; 55:12–24).  Nevertheless, despite being contractually precluded from doing so, they began competing directly with NuVasive in their established sales territories in early

---

[11] NuVasive notes that the 2016 Compliance Agreements contain scrivener's errors identifying two sections as "Section 8.11."  NuVasive is referencing the second Section 8.11, which is titled "Third Party Beneficiary."

December 2017, and have not stopped doing so.  (**Exhibit 14**, 9:13–21, 36:1–8, 54:18–56:8, 139:25–141:18, 142:15–17, Ex. 6; **Exhibit 13**, 43:2–4, 85:7–17, 87:11–89:1, 94:1–96:21, 236:3–13).  More specifically, Hawley and Miller resigned from Absolute Medical (without giving notice) on November 30, 2017, signed contracts with Alphatec that became effective on December 1, 2017, and immediately began converting NuVasive's customers to Alphatec and other competitive companies.  (**Exhibit 14**, 10:12–11:15 50:1–24, 52:20–53:2 Ex. 4, Ex. 5; **Exhibit 13**, 15:7–11; 65:7–66:23, 73:2–74:9, 87:11–22, Ex. 5).[12]  Their impact on Alphatec's (and NuVasive's) business was dramatic as both Hawley and Miller won Alphatec competitions rewarding the sales representatives with the most sales to new customers.  (**Exhibit 1**, 17:15–18:24).  Indeed, Absolute Medical Systems reported that Hawley's and Miller's former NuVasive surgeon-customers, whom they immediately converted to Alphatec, were "new surgeon users" in its 2018 Q1 Quarterly Business Review that it presented to Alphatec.  (**Id.** at 212:7-12, 213:14-20, Ex. 75 at p. 3).

Dr. Paul Sawin – Absolute Medical's (and Hawley's) largest surgeon-customer – utilized NuVasive's products almost exclusively for several years prior to December 5, 2017. (**Exhibit 14**, 9:11–21; Dep. Absol. Med., attached as **Exhibit 16**, 62:14–18, 63:23–64:1). Though he had not utilized Alphatec's products prior to that date, Hawley immediately converted Dr. Sawin's business to Alphatec, and they celebrated over drinks with Soufleris

---

[12] In addition to Alphatec, Hawley and Miller sold competitive products designed, manufactured, and distributed by NovaBone, Ulrich Spine, Spine Wave, Orthofix, Osseous, Pan Medical, Life Spine, and K2M. (**Exhibit 1**, 102:13–107:19; **Exhibit 14**, 54:9–15, 85:21–86:7, 98:2–11, 98:17–99:12, 101:1–107:6; **Exhibit 13**, 160:16–191:15).  They did so through contacts between those companies and companies owned and controlled by Soufleris (including Defendant Absolute Medical Systems, LLC ("Absolute Medical Systems") for Orthofix), though they claim to have received no compensation for their efforts until January 1, 2019.  (**Exhibit 1**, 109:4–110:5, 129:11–130:8; **Exhibit 14**, 86:2–7, 99:16–100:4, 107:7–109:2, 112:20–24, 114:3–115:18, 121:17–123:1, 147:22–148:18; **Exhibit 13**, 177:22–178:13, 191:5–15; Dep. Absol. Med. Sys., attached as **Exhibit 15**, 61:4–13).

that evening.  (**Exhibit 1**, 145:3-24).  Alphatec flew to Orlando to celebrate converting Dr. Sawin's business a business dinner two days later attended by its Chief Executive Officer (Pat Miles), its General Counsel (Craig Hunsaker), Hawley, Soufleris, and Dr. Sawin.  (**Id.** at 68:6–9, 113:7–14, 143:7–9; 167:12–20, 228:14–21; **Exhibit 14**, 90:20–24; 162:9–24).[13]

Following the conversion of Dr. Sawin's business, Hawley consistently worked, without any interruption, on Alphatec's behalf.  (**Exhibit 14**, 55:2–8).  In total, Hawley sold at least $106,807.50 of Alphatec's products to Dr. Sawin and Dr. Rosen (another of his former NuVasive customers) in December 2017 alone, which consisted of the following surgeries:

- December 5, 2017, to Dr. Sawin in the amount of $12,900;

- December 5, 2017, to Dr. Sawin in the amount of $8,228;

- December 5, 2017, to Dr. Sawin in the amount of $7,134;

- December 6, 2017, to Dr. Sawin in the amount of $5,656;

- December 12, 2017, to Dr. Sawin in the amount of $4,518;

- December 12, 2017, to Dr. Sawin in the amount of $5,656;

- December 12, 2017, to Dr. Sawin in the amount of $8,000;

- December 13, 2017, to Dr. Sawin in the amount of $4,518;

- December 13, 2017, to Dr. Sawin in the amount of $14,217.50;

- December 18, 2017, to Dr. Rosen in the amount of $2,700;

---

[13] Eliminating any doubt that this meal was a business dinner, publically available records indicate that Alphatec picked up the tab, reporting it as a payment to Dr. Sawin.  Open Payments Data, CENTERS FOR MEDICARE & MEDICAID SERVICES,  https://openpaymentsdata.cms.gov/physician/138647/general-payments  (last visited October 13, 2019). This Open Payments Data shows a payment by Alphatec Spine, Inc. on December 7, 2017— the date of the dinner—for "Food and Beverage" in the amount of $312.52, Dr. Sawin's portion of the meal. *Id.*

- December 19, 2017, to Dr. Sawin in the amount of $8,228;

- December 19, 2017, to Dr. Sawin in the amount of $4,262;

- December 20, 2017, to Dr. Sawin in an undisclosed amount;

- December 20, 2017, to Dr. Sawin in the amount of $10,250;

- December 22, 2017, to Dr. Sawin in the amount of $2,940; and

- December 22, 2017, to Dr. Sawin in the amount of $7,600.

(**Id.** at 54:18–55:23; Charge Sheets, attached as collective **Exhibit 17**).   He then sold $405,414 and $16,650 of Alphatec's competitive products to Drs. Sawin and Rosen, respectively, in the first quarter of 2018.  (**Exhibit 1**, 214:15–17, Ex. 75 at p. 3).  Absolute Medical Systems now values Dr. Sawin's business at between $1.9 and $2 million per year and Dr. Rosen's business at $400,000 per year.  (**Exhibit 15**, 81:9–17, 82:3–4).[14]

It does not appear that Miller made any December 2017 sales of Alphatec's products because of issues getting those products and pricing approved at his accounts.  That said, in December 2017, he assisted with obtaining pricing approval at his accounts and promoted Alphatec's products to his surgeon-customers, ultimately leading to Drs. Burry, Rodas, and Allende moving the bulk of their business from NuVasive to Alphatec.[15]  (**Exhibit 13**, 20:7–22, 88:18–89:1, 91:4–93:21, 96:4–20, 103:21–104:16, 142:17–143:8, 199:2–200:24, 218:14–220:22, 221:18–223:10).  Indeed, when asked if Drs. Burry, Rodas, and Allende moved their business from NuVasive because he is a good sales person, Miller responded "I hope so" and

---

[14] Absolute Medical Systems values the business of Dr. Gandhi (another one of Hawley's former NuVasive customers) at $200,000 per year.  (**Exhibit 15**, 82:1–2; **Exhibit 14**, 20:20–22, 40:5:10 (Hawley testifying that Dr. Gandhi is within his Alphatec sales territory and that he previously solicited his business for NuVasive by traveling with him to NuVasive's headquarters in San Diego for training)).

[15] Soufleris helped Miller solicit Dr. Burry by hosting a business dinner.  (**Exhibit 15**, 65:19–66:14).

admitted that they would use whichever products he requested.  (**Id.** at 92:16–93:3).  After

working on Alphatec's behalf to get pricing approved at his accounts in December 2017,

Miller then sold $24,155, $22,665, and $11,370 of Alphatec's competitive products to Drs.

Burry, Rodas, and Allende, respectively, in the first quarter of 2018.  (**Exhibit 1**, Ex. 75 at p.

3).  Absolute Medical Systems now values the total business of these three surgeons between

$550,000 and $650,000 annually.  (**Exhibit 15**, 82:5–10).[16]

## STANDARD FOR GRANTING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 directs a court to "grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Additionally, a fact is only

material if it may "affect the outcome of the suit under the governing law."  *Id.*

Once a movant puts forward a "properly supported motion for summary judgment,

[the nonmoving party] must come forward with specific factual evidence, presenting more

than mere allegations."  *Gargiulo v. G.M. Sales, Inc*., 131 F.3d 995, 999 (11th Cir. 1997).

Stated another way, summary judgment may be granted if the non-moving party's evidence

is "merely colorable" or "is not significantly probative."   *Anderson*, 477 U.S. at 249–50.  A

nonmoving party cannot defeat a motion for summary judgment based upon a nonmoving

party's "suspicion, perception, opinion, and belief."  *Laroche v. Denny's Inc*., 62 F. Supp. 2d

1366, 1371 (S.D. Fla. 1999).

---

[16] NuVasive notes this transcript excerpt incorrectly identifies Drs. Allende and Rodas as "Hyundai" and "Rose."

The inquiry at the center of a summary judgment motion "'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1273 (11th Cir. 2007) (quoting *Anderson*, 477 U.S. at 251–52). In doing so, a court "construes the facts and all reasonable inferences . . . in the light most favorable to the nonmoving party." *FTC v. Life Mgmt. Servs.*, 350 F. Supp. 3d 1246, 1256 (M.D. Fla. 2018) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "A judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IT IS UNDISPUTED THAT HAWLEY AND MILLER VIOLATED THE RESTRICTIVE COVENANTS IN THEIR 2016 AGREEMENTS

It is undisputed that Hawley and Miller violated the restrictive covenants in their 2016 Compliance Agreements. Frankly, NuVasive does not believe Defendants' claims that Hawley and Miller failed to sign the 2017 Compliance Agreements. That said, even if, assuming *arguendo*, they did not sign their 2017 Compliance Agreements, there is no dispute that the 2016 Compliance Agreements are enforceable and that they failed to comply with Sections 5.4 through 5.6 by selling competitive products (without interruption) from December 2017 to the present. Indeed, they testified that they acted as though they were not subject to any restrictive covenants as soon as they left NuVasive and joined Alphatec on December 1, 2017. (*E.g.*, **Exhibit 13**, 42:16–23).

### A. The restrictive covenants comply with Florida law and are enforceable.

First, the applicable restrictive covenants in the 2016 Compliance Agreements comply with Section 542.335, Florida Statutes, and are enforceable.   Indeed, the 2016 Compliance Agreements are writings signed by Hawley and Miller, the restrictive covenants are justified by several legitimate business interests as defined by Section 542.335(1)(b), the restraints are reasonably necessary to protect those business interests, and the temporal restrictions are appropriate.

### 1.   The 2016 Compliance Agreements are writings signed by Hawley and Miller.

The 2016 Compliance Agreements comply with Section 542.335(1)(a)'s requirement that they be in writing and signed by the person against whom enforcement is sought. Indeed, Hawley and Miller acknowledge signing the 2016 Compliance Agreements which binds both their single-member limited liability companies and themselves to non-solicitation and non-employment restrictions.  (**Exhibit 14**, 37:3–12; **Exhibit 13**, 45:14–18, 46:21–47:7).

### 2.   The 2016 Compliance Agreements' restrictive covenants are justified by multiple legitimate business interests.

The 2016 Compliance Agreements' restrictive covenants comply with Section 542.335(b)'s requirement that there is a legitimate business interest which supports their existence.   Specifically included in Section 542.335(b)'s non-exclusive list of legitimate business interests are trade secrets, valuable confidential business or professional information that does not qualify as trade secrets, substantial relationships with specific or existing customers, and extraordinary or specialized training.   Here, the record contains significant proof about the trade secrets and other confidential information NuVasive entrusted to Hawley and Miller, as well as the specialized training it provided to them.   Further, even

14

Hawley and Miller cannot dispute that their substantial relationships with their existing customers justifies reasonable restrictions.[17]

Sections 5.1 and 5.3 of the 2016 Compliance Agreements contain Hawley's and Miller's promises to maintain the secrecy of NuVasive's confidential information, and included in Section 5.2's non-exhaustive list of confidential information is trade secrets, contacts, proposals, pricing information, strategies, inventions, business and marketing plans, and materials that NuVasive furnishes to them.  (**Exhibit 12** at §§ 5.1–5.3).   Hawley and Miller both testified that they take no issue with any of the 2016 Compliance Agreements' provisions.  (**Exhibit 14**, 37:20–22; **Exhibit 13**, 47:6–7).   And their actions demonstrate that they actually possessed this confidential information.   For example, Hawley testified that he worked on pipeline products—which he conceded were confidential—with NuVasive, while Miller utilized his knowledge of NuVasive's pricing at Central Florida Regional Hospital to create a chart he presented to a hospital administrator demonstrating savings the hospital would purportedly realize by allowing surgeons to utilize Alphatec's products rather than NuVasive's.  (**Exhibit 14**, 13:4–11, 36:9–20; **Exhibit 13**, 198:24–199:14, Ex. 43).

Similarly, Hawley and Miller received specialized training from NuVasive.  Both acknowledge receiving training at the outset of their NuVasive engagements and continuing training at sales meetings.  (**Exhibit 14**, 39:3–13; **Exhibit 13**, 49:1–50:8; June 28, 2018, Tr. Hr'g Prelim. Inj., Doc. 79, 106:7–23; **Exhibit 16**, 14:19–15:21).  Most notably, Hawley and

---

[17] In fact, when asked why Drs. Burry, Rodas, and Allende would use Alphatec's products at his suggestion, Miller testified, "I mean, I had spent the majority of my life, almost a decade, with those guys."  (**Exhibit 13**, 92:23–24).  The "almost a decade" Miller refers to is his NuVasive career since he had no previous experience in the spinal marketplace.  (**Exhibit 13**, 34:19–35:18, 38:6–13).  As such, Miller is conceding that he developed these relationships on NuVasive's behalf and then utilized them to immediately convert their business to Alphatec.

Miller are XLIF Certified.[18] (**Exhibit 16**, 16:3–24). The value of the XLIF Certification NuVasive provided to Hawley and Miller cannot be overstated as it provides them with a competitive edge in the marketplace related to lateral approach surgery along with a deep understanding of the complex anatomy, integrated technologies, and procedural sophistication associated with this type surgery. (**Exhibit 18**, ¶ 7). As a result of receiving XLIF Certification, Hawley and Miller possess superior knowledge and clinical skills relative to lateral approach surgery than those of NuVasive's competitors. (**Id.**) None of NuVasive's competitors, including Alphatec, provide their sales force with a training program focused on lateral approach surgery that is as comprehensive and specialized as the XLIF Certification Hawley and Miller received. (**Id.** at ¶ 8). In essence, Alphatec is now reaping the benefits of Hawley's and Miller's superior knowledge and clinical skills that NuVasive expended significant time and expense developing. (**Id.** at ¶ 9).

Finally, and perhaps most importantly, the relationships that Hawley and Miller have with their surgeon-customers and the goodwill they generate with those surgeon-customers justify the 2016 Compliance Agreements' restrictive covenants. Indeed, they place such a high value on their relationships with their surgeon-customers that they agreed to sell non-Alphatec products to them without being compensated just to keep competitive sales representatives out of their surgeon-customers' operating rooms. (**Exhibit 14**, 147:22–

---

[18] NuVasive's eXtreme Lateral Interbody Fusion ("XLIF") Certification program is an innovative, market-leading training program that was implemented in 2010 that NuVasive makes available to its sales associates and spine specialists who complete "spine school." (Decl. P. Marzano, attached as **Exhibit 18**, ¶¶ 3–5). In order to receive XLIF Certification, the sales associate or representative must travel to San Diego, California (or formerly Paramus, New Jersey), and successfully complete a rigorous operating room examination consisting of several hundred points that encompass all aspects of the XLIF procedure. (**Id.** at ¶ 6). The examination requires the individual to correctly identify and explain all technical aspects and indicators involved in the XLIF procedure. (**Id.**)

148:10; **Exhibit 13**, 117:19–118:5).   Miller even testified that keeping competitors like NuVasive out of the operating rooms is "priceless."  (**Exhibit 13**, 117:19–118:5).   These relationships paid off as, for example, Dr. Sawin went from being a nearly exclusive user of NuVasive's products to a surgeon who utilized a number of company's products with the common denominator being that Hawley represented the products.  (**Exhibit 14**, 9:11–21).  Similarly, Miller acknowledged that his skill as a sales person caused Drs. Allende, Burry, and Rosen to stop utilizing NuVasive's products and begin utilizing those products he promoted.  (**Exhibit 13**, 92:16–93:3).

### 3. The 2016 Compliance Agreements' restrictive covenants are reasonably necessary to protect NuVasive's legitimate business interests justifying their existence.

Next, neither Hawley nor Miller can dispute that the restrictions in the 2016 Compliance Agreements are not reasonably tailored to the legitimate business interests they protect as required by Section 542.335(c).  The non-circumvention clause found in Section 5.4 limits them only from interfering with Absolute Medical's relationships with its vendors, suppliers (including NuVasive), employees, and Customers; the non-competition provision found in Section 5.5 precludes Hawley and Miller only from selling products that compete with the NuVasive products they sold to their surgeon-customers in the territories Absolute Medical assigned to them and the other hospitals in which they worked on Absolute Medical's behalf during the preceding year; and the non-solicitation provision found in Section 5.6 is limited to Absolute Medical's Customers or prospective Customers.[19]

---

[19] Soufleris testified that in November 2017, Absolute Medical's only significant customers were Drs. Sawin, Burry, Rodas, Allende, and Rosen.  (**Exhibit 1**, 91:13–92:19).  As there are approximately thirty spine surgeons (whom Soufleris acknowledges Absolute Medical chose not to focus on) in Orlando, this restriction is not overly oppressive.  (***Id.*** at 93:18–24).

(**Exhibit 12** at §§ 5.5–5.6).  Also, Section 5.7 allows for any of the restrictive covenants to be blue-penciled if they are deemed to be unreasonable.  (**Id.** at § 5.7).  Respectfully, these restrictions are well in-line with those upheld by Florida's courts.  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009) (affirming the trial court's decision that the geographic area of the restrictive covenant was not overbroad, even though it encompassed all of Canada and the United States, where the evidence showed that the former employee's territory encompassed all of Canada and the United States); *Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So. 2d 268, 273 (Fla. 4th DCA 2006) (affirming the reduction of the geographic scope of the restrictive covenant to the area from which the former employer drew its patients, including those seen by the former employee); *Electrostim Med. Servs. v. Dawn Lindsey & Zynex Med., Inc.*, No. 8:11-cv-2467-T-33TBM, 2012 WL 1405707, at *12 (M.D. Fla. Mar. 13, 2012) (finding that the geographic limitation of a restrictive covenant is reasonable when it is limited to the defendant's former territory); *Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1217 (S.D. Fla. 2005) (holding that a non-competition covenant limited to the area in which the former employee conducted work for the former employer for the past two years was "reasonable in time, area, and line of business").

### 4.  The 2016 Compliance Agreements' temporal restrictions are appropriate.

Finally, the one-year temporal restrictions found in the 2016 Compliance Agreements' restrictive covenants comport with Florida law.  It is an entire year shorter than what would be presumed to be unreasonable under Section 542.335(d)(1), and Florida courts routinely uphold one-year restrictive covenants for salespersons.  *See, e.g.*, *Osbourne Assocs.*

*v. Cangemi*, No. 3:17-cv-1135-J-34MCR, 2017 WL 5443146 (M.D. Fla. Nov. 14, 2017) (granting one-year preliminary injunction against former employee charged with maintaining customer relationships).

### B. **Hawley and Miller violated the restrictive covenants in the 2016 Compliance Agreements.**

There is also no dispute that Hawley and Miller violated and continue to violate the 2016 Compliance Agreement's restrictive covenants.  They admit—in their discovery responses and deposition testimony—that they began working for Alphatec and other competitive companies in their NuVasive sales territories in early December 2017, approximately a month before those restrictive covenants expired, and that they have continued doing so ever since.  (**Exhibit 14**, 9:13–21, 36:1–8, 54:18–56:8, 139:25–141:18, 142:15–17, Ex. 6; **Exhibit 13**, 43:2–4, 85:7–17, 87:11–89:1, 94:1–96:21, 236:3–13).

### C. **Hawley and Miller impermissibly benefited from their breaches of the 2016 Compliance Agreements' restrictive covenants, which harmed NuVasive.**

There is also no dispute that Hawley's and Miller's breaches of their restrictive covenants harmed NuVasive.  Miller bragged that he converted the business of Drs. Allende, Burry, and Rosen because he is a good salesperson, and Hawley acknowledged how Dr. Sawin went from exclusively using NuVasive's products for several years to only using one product on rare occasions less than a week after he resigned from Absolute Medical. (**Exhibit 13**, 92:16–93:3; **Exhibit 14**, 9:11–21).  Further, there is no dispute that Hawley and Miller impermissibly benefited from their violations of their 2016 Compliance Agreements as Alphatec paid Hawley and Miller $500,000 and $150,000, respectively, to violate their obligations during the first twelve months of their Alphatec engagements.  (**Exhibit 14**,

144:14–21; **Exhibit 13**, Ex. 6 at Ex. C).  Accordingly, NuVasive is entitled to recover the profits it lost as a result of these breaches and disgorge any profits Hawley and Miller earned as a result of their breaches pursuant to Section 5.8 of the 2016 Compliance Agreements. (**Exhibit 12**, § 5.8).

    D.  **The Court should toll the temporal terms of the 2016 Agreements' restrictive covenants.**

As the restrictive covenants contained in Hawley's and Miller's 2016 Compliance Agreements are reasonable, and they violated their respective restrictive covenants, the Court should extend the expiration of those agreements to ensure that NuVasive receives the agreed-upon twelve complete months of non-competition.  In other words, the Court should enjoin Hawley and Miller from competing with NuVasive in their NuVasive sales territories for one month.

Under Florida law, when a party does not comply with the terms of an enforceable restrictive covenant a court may extend the duration of a restrictive covenant beyond the time specified in an agreement to ensure that the contracting party receives the entire benefit of the restrictive covenant.  *Capelouto v. Orkin Exterminating Co*., 183 So. 2d 532, 534–35 (Fla. 1966) (extending the restrictive period beyond the time specified under the contract, because the individual participated in the prohibited activities during the course of the litigation); *Kverne v. Rollins Protective Servs. Co*., 515 So. 2d 1320, 1321–22 (Fla. 3d DCA 1987) (stating that the defendant is entitled to the full duration of the time specified under the non-competition agreement, and extending the duration because the plaintiff participated in the prohibited activities during the course of the litigation); *Intermex Wire Transfer v. V*., 2014 Fla. Cir. LEXIS 29206, at *14 (Fla. Cir. October 1, 2014) (extending the term of the

restrictive covenant for 5 months from the date of the order issuing an injunction, because defendants participated in prohibited activities during the course of the litigation).

Here, there is no dispute that Hawley and Miller began working for Alphatec in December 2017 (prior to the expiration of the 2016 Compliance Agreement's restrictive covenants) and have continued to do so since that time.  (**Exhibit 14**, 9:13–21, 36:1–8, 54:18–56:8, 139:25–141:18, 142:15–17, Ex. 6; **Exhibit 13**, 43:2–4, 85:7–17, 87:11–89:1, 94:1–96:21, 236:3–13).  As such, Hawley's and Miller's restrictive covenants should be extended as in *Kverne* because to hold otherwise would "ignore" their improper actions undertaken throughout this litigation. 515 So. 2d at 1322 (quoting *Capelouto*, 183 So. 2d at 534-35).  Accordingly, the Court should extend the expiration of their restrictive covenants and enjoin them from competing with NuVasive in their former NuVasive sales territories for one month, award NuVasive the damages it incurred during their periods of noncompliance, and disgorge the profits they earned during those periods.

## CONCLUSION

In sum, it is undisputed that:

- Hawley and Miller owed Absolute Medical the reasonable non-circumvention, non-competition, and non-solicitation obligations contained in their 2016 Compliance Agreements;

- NuVasive is an express, third-party beneficiary to the 2016 Compliance Agreements; and

- Hawley and Miller immediately began breaching their restrictive covenants in December 2017, and have continued to do so, without interruption.

Accordingly, the Court should grant NuVasive's motion for partial summary judgment, toll the expiration of the 2016 Compliance Agreements during Hawley's and Miller's periods of

non-compliance and enjoin Hawley and Miller from competitive behavior during that time, award NuVasive the damages it incurred as a result of that non-compliance, including NuVasive's attorneys' fees, and, after an accounting, impose a constructive trust upon the profits Hawley and Miller reaped for their contractual violations.

Dated: October 15, 2019

Respectfully submitted,

*s/Christopher W. Cardwell*
R. Craig Mayfield (Fla. Bar No. 0429643)
Cmayfield@bradley.com
Diana N. Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq. (*pro hac vice*)
ccardwell@gsrm.com
Mary Taylor Gallagher, Esq. (*pro hac vice*)
mtgallagher@gsrm.com
M. Thomas McFarland, Esq. (*pro hac vice*)
tmcfarland@gsrm.com
GULLETT, SANFORD, ROBINSON &
MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Tel: (615) 244-4994
Fax: (615) 256-6339

*Attorneys for Plaintiff NuVasive, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2019, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.  The party or parties served are as follows:

Busch, Slipakoff, Mills & Slomka, LLC

Bryan E. Busch
Email: bb@bsms.law
Laura H. Mirmelli
Email: lm@bsms.law
2859 Paces Ferry Road SE, Suite 1700
Atlanta, GA  30339
Phone: (404) 800-4062
Fax:   (404) 800-4062

Christopher Y. Mills
Email: cm@bsms.com
319 Clematis Street, Suite 109
West Palm Beach, FL 33401
Phone: (561) 701-5386

*Attorneys for Defendants*

*s/Christopher W. Cardwell*