# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| NUVASIVE, INC.        ) | |
|       ) | |
|     Plaintiff,    ) | |
|       ) | |
| v.        ) | Civil Case No. 6:17-cv-2206-Orl-41GJK |
|       ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE  ) | |
| MEDICAL SYSTEMS, LLC, GREG    ) | INJUNCTIVE RELIEF SOUGHT |
| SOUFLERIS, DAVE HAWLEY, and RYAN  ) | |
| MILLER      ) | |
|       ) | |
|     Defendants,   ) | |
| _____ ) | |

## NUVASIVE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST ABSOLUTE MEDICAL, LLC AND ABSOLUTE MEDICAL SYSTEMS, LLC AND SUPPORTING MEMORANDUM

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ..................................................................................... i

**INDEX OF EXHIBITS** ..................................................................................... iii

**TABLE OF AUTHORITIES** ............................................................................ iv

**INTRODUCTION** .............................................................................................. 1

**STATEMENT OF RELEVANT FACTS** ........................................................... 1

    A.  Absolute Medical funded the down payment on Absolute Medical Systems' office and purchased furniture for that office .................................................. 3

    B.  On behalf of Absolute Medical, Soufleris surreptitiously pitched a business plan to convert NuVasive's business in the Territory ....................................... 4

    C.  After receiving an offer to join Alphatec, Soufleris attempts to "resign" from his relationship with NuVasive but the Sales Agreement does not terminate ............. 6

    D.  The Absolute Medical sales representatives who joined Soufleris at Alphatec resign from Absolute Medical on November 30, 2017 ........................................ 7

    E.  Soufleris forms Absolute Medical Systems solely to compete in the Territory. ..... 8

    F.  Absolute Medical Systems immediately began utilizing Absolute Medical's sales representatives and office manager ....................................................... 9

    G.  Hawley, Miller, and Soufleris continued working together through 2018. ........... 12

        1.  Absolute Medical Systems provided the sales representatives with business cards and email addresses .......................................................... 12

        2.  Absolute Medical Systems instructed Hawley and Miller to provide it with all of their Charge Sheets and to utilize its surgical information database .......... 12

        3.  Absolute Medical Systems assisted Hawley and Miller with hospital credentialing, Charge Sheet submission, and other administrative tasks. ....... 13

    H.  Absolute Medical and Absolute Medical System comingled funds and accounts 14

**STANDARD FOR GRANTING SUMMARY JUDGMENT** ............................. 15

**ABSOLUTE MEDICAL SYSTEMS IS RESPONSIBLE FOR ITS AND ABSOLUTE MEDICAL'S BREACHES OF THE SALES AGREEMENT** ........................................... 15

    A.  Absolute Medical violated several sections of the Sales Agreement. ................... 15

        1.  Absolute Medical stopped performing under the Sales Agreement. .............. 16

        2.  Absolute Medical violated Section 5.04(c) of the Sales Agreement. ............. 17

        3.  Absolute Medical violated Section 5.09 of the Sales Agreement ................... 17

B.  Absolute Medical Systems is a mere continuation of Absolute Medical. .............19

   1.  The two companies commingled funds, accounts, and other assets. ..............20

   2.  The two companies are in the same industry, have the same office location, and have common ownership.........................................................................21

   3.  The two companies have common personnel and customers. ........................22

   4.  The two companies use the same telephone numbers and email addresses. ...22

**NUVASIVE IS ENTITLED TO A PERMANENT INJUNCTION AGAINST ABSOLUTE MEDICAL AND ABSOLUTE MEDICAL SYSTEMS** ..............................22

A.  NuVasive established actual success on the merits. .............................................23

B.  NuVasive continues to suffer irreparable harm. ..................................................24

C.  The harm incurred by NuVasive outweighs any harm the requested injunction will cause Soufleris' companies...................................................................................24

D.  Issuing the requested injunction is in the public interest. .....................................25

**CONCLUSION** ...............................................................................................................25

## INDEX OF EXHIBITS

**Exhibit 1: Deposition of Gregory Soufleris** ................................................................*passim*

**Exhibit 2: Deposition of Absolute Medical LLC** ........................................................*passim*

**Exhibit 3: Email Between Soufleris and Besharatpour** ................................................**3, 20**

**Exhibit 4: Email Between Hunsaker and Soufleris** ...........................................................**6**

**Exhibit 5: Deposition of Absolute Medical Systems, LLC** ........................................*passim*

**Exhibit 6: Deposition of Daneri Edelson**.........................................................................**9, 13**

**Exhibit 7: Email Between Miller and Grinyuk** ...............................................................**10**

**Exhibit 8: Deposition of Dave Hawley** ...........................................................................**11**

**Exhibit 9: Declaration of M. Thomas McFarland** ...........................................................**11**

**Exhibit 10: Deposition of Ryan Miller** ............................................................................**11**

**Exhibit 11: Deposition of Absolute Ortho, LLC** .............................................................**21**

**Exhibit 12: Deposition of Mark Singer** ...........................................................................**24**

## <u>TABLE OF AUTHORITIES</u>

*ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348 (11th Cir. 2017) ..................23, 24

*ADT LLC v. Sec. Networks, LLC*, Case No. 12-81120-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 15677 (S.D. Fla. Jan. 30, 2019) .........................................................................24

*Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145 (Fla. 4th DCA 1994) ........................19, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................................15

*AutoNation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299 (S.D. Fla. 2004) .....................................25

*Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047 (Fla. 1982) ...........................................................19

*Etkin & Co. v. SBD, Ltd. Liab. Co.*, No. 11-21321-CIV-LENARD/GOODMAN, 2015 U.S. Dist. LEXIS 180657 (S.D. Fla. Sep. 1, 2015) .........................................................................19

*Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995 (11th Cir. 1997) .................................................15

*Interim Healthcare v. Spherion Corp.*, 884 A.2d 513 (Del. Sup. Ct. 2005) ...........................15

*Interstate Commerce Comm'n v. Rio Grande Growers Coop.*, 564 F.2d 848 (9th Cir. 1977) ....................................................................................................................................................23

*KH Outdoor, LLC v. Trussville*, 458 F.3d 1261 (11th Cir. 2006) ...........................................23

*Lab. Corp. v. Prof'l Recovery Network*, 813 So. 2d 266 (Fla. 5th DCA 2002) .....................20

*Laroche v. Denny's Inc.*, 62 F. Supp. 2d 1366 (S.D. Fla. 1999) .............................................15

*MEDai Inc. v. Quantros, Inc.*, No. 6:12-cv-840-Orl-37GJK, 2012 U.S. Dist. LEXIS 115504 (M.D. Fla. Aug. 16, 2012) .......................................................................................................25

*New York v. Operation Rescue Nat'l*, 80 F.3d 64 (2d Cir. 1996) ...........................................23

*Oman Int'l Fin. Ltd. v. Hoiyong Gems Corp.*, 616 F. Supp. 351 (D.C.R.I. 1985) ................20

*TTT Foods Holding Co. Ltd. Liab. Co. v. Namm*, No. 16-cv-81798, 2017 U.S. Dist. LEXIS 77402 (S.D. Fla. May 19, 2017) ...........................................................................................19

**Rules and Statutes:**

Fed. R. Civ. Pro. 56(a) ...........................................................................................................15

Fla. Stat. § 542.335(1)(i) ........................................................................................................25

Pursuant to Federal Rule of Civil Procedure 56, NuVasive, Inc. ("NuVasive") submits that the undisputed facts prove Defendant Absolute Medical Systems, LLC ("Absolute Medical Systems") is a mere continuation of Defendant Absolute Medical, LLC ("Absolute Medical") and both entities violated, and should be permanently enjoined from further violating, the January 1, 2017, Exclusive Sales Agreement between NuVasive and Absolute Medical (the "Sales Agreement") including, without limitation, its restrictive covenants.

## I.   INTRODUCTION

Though Absolute Medical refuses to honor the Sales Agreement, it remains in full force and effect on its successor in interest, Absolute Medical Systems.   Nevertheless, Absolute Medical Systems – which (like Absolute Medical) is owned and controlled by Defendant Greg Soufleris, commingles funds and accounts with Absolute Medical, paid some of Absolute Medical's 2017 tax debt, hired Absolute Medical's personnel, conducts business out of a property purchased with Absolute Medical's funds, utilizes Absolute Medical-purchased furniture, and sells competitive products to Absolute Medical's customers – refuses to comply with it.  This behavior requires, at a minimum, that the Court enforce the Sales Agreement's restrictive covenants against both companies.

## II.   STATEMENT OF RELEVANT FACTS

The Sales Agreement has a five-year term which cannot be terminated by Absolute Medical unless NuVasive materially breaches it or is insolvent.  (Dep. G. Soufleris, attached as **Exhibit 1**, Ex. 3 at Art. IX).  Among other things, the Sales Agreement, which the parties

1

acknowledge in Section 6.02 to be a binding contract, [1] requires Absolute Medical to, without limitation:

- exclusively distribute NuVasive's products in a defined geographic territory which included Flagler, Volusia, Lake, Seminole, Palm Beach, Brevard, Osceola, Orange, Highlands, Indian River, Martin, and St. Lucie Counties; Advanced Orthopedics, Beth Israel Surgical Center, and North Broward General Hospital in Broward County; the Gable Surgical Center in Miami-Dade County; and the Heart of Florida Regional Medical Center in Polk County (the "Territory");

- promptly advise NuVasive of any material changes in its personnel, the status of any major NuVasive customers in the Territory, or any other major events in the Territory that could affect its and NuVasive's mutual business interests;

- not compete with NuVasive during the five-year term and for one year after the term expires;

- require its Representative Affiliates (as defined by Sales Agreement)[2] to execute Compliance Agreements that contain reasonable non-solicitation and non-competition provisions and name NuVasive as a third-party beneficiary; and

- vigorously enforce the Compliance Agreements or pay for NuVasive to do so.

(**Id.** at 22:6–23:8, Ex. 3 at §§ 1.01, 1.02, 5.04, 5.09, 6.02).

Pursuant to Section 12.08 of the Sales Agreement, NuVasive and Absolute Medical executed a Territory Transition Agreement (the "TTA") on August 17, 2017, that has an effective date of July 1, 2017.[3] (**Exhibit 1**, Ex. 4; **Exhibit 2**, 91:23–25).  The TTA required

---

[1] Soufleris admits that he does not know of any reason the Sales Agreement would not "be a binding, valid contract" and that he intended to honor it when he signed it. (**Exhibit 1**, 22:16–23).

[2] The Sales Agreement defines Representative Affiliate as Absolute Medical's "partners, employees, sub-contractors, sales personnel (whether employees of Representative or independent contractors) affiliates or agents who have provided services pursuant to this [Sales] Agreement or have received information from [Absolute Medical] related to [NuVasive's] Products." (**Exhibit 1**, Ex. 3 at Ex. A).  Like Hawley, Miller, Brandon Gottstein ("Gottstein"), and others, Soufleris satisfies the Sales Agreement's definition of a Representative Affiliate as he was employed by Absolute Medical, received information from Absolute Medical related to NuVasive's products, and provides services pursuant to the Sales Agreement. (**Id.** at 23:9–25:9; Dep. Absol. Med., attached as **Exhibit 2**, 41:20-43:13; 213:18–214:20).  Nevertheless, Soufleris claims he neither required Hawley and Miller to sign Compliance Agreements in 2017 nor signed one himself. (**Exhibit 1**, 24:10–26:2, 35:19–36:9, 36:23–37:9; **Exhibit 2**, 72:11–19, 80:12–21)

[3] Delaware law governs the Sales Agreement and the TTA. (**Exhibit 1**, Ex. 3 at § 12.01, Ex. 4 at ¶ 13).

2

NuVasive to pay Absolute Medical $677,195 for transferring some of the Territory to another distributor.  (**Exhibit 1**, 91:23–25; 92:1–7; 98:10–13, Ex. 4 at ¶¶ 3–4, 8, Annex I, Annex II). It did not alter the Sales Agreement's five-year term, release Absolute Medical's obligation to be an exclusive distributor for NuVasive, or change its non-competition obligations.  (**Id.**).

A.  **Absolute Medical funded the down payment on Absolute Medical Systems' office and purchased furniture for that office.**

On August 16, 2017, Soufleris transferred $10,000 from Absolute Medical's account to another company he owns and controls, The Absolute Group, Inc. (the "Absolute Group"). (**Exhibit 1**, 123:14–124:18).  Two weeks later, the Absolute Group used those funds for the down payment on property located at 8901 Lee Vista Boulevard:[4]

- which is held by TAG Investments Land Trust, of which The Absolute Group is the sole beneficiary; and

- that Soufleris utilizes to conduct business for all of his medical device companies, including Absolute Medical Systems.

(Email exchange, attached as **Exhibit 3**; **Exhibit 1**, 165:5–9, 123:14–124:18).

On October 3, 2017, Absolute Medical ordered IKEA furniture for the "new office" at Lee Vista Boulevard.  (**Exhibit 1**, 165:10–12, Ex. 43; **Exhibit 2**, 212:11–213:17).  This furniture, which cost Absolute Medical $1,282.55, was scheduled for delivery on November 9, 2017. (**Exhibit 1**, Ex. 43).  After delivery was delayed, a December 14, 2017, email from Soufleris to his wife, confirmed the furniture was for the new office.  (**Exhibit 1**, Ex. 43). Prior to this delivery, Absolute Medical Systems (like Absolute Medical) accepted deliveries and conducted business at 10525 Cromwell Grove Terrace in Orlando.  (**Exhibit 1**, 166:14–

---

[4] It was not unusual for Absolute Medical to pay for properties purchased by the Absolute Group and held by Tag Investments Land Trust or to pay for Soufleris' automobiles and taxes.  (**Exhibit 2**, 174:12–191:8).

167:2; **Exhibit 2**, 157:1–158:2, 173:20–174:1; June 28, 2018, Tr. Hr'g Prelim. Inj., Doc. 79,

Defs.' Ex. 21).

### B. On behalf of Absolute Medical, Soufleris surreptitiously pitched a business plan to convert NuVasive's business in the Territory.

Soufleris began consulting with his, Absolute Medical's, and Absolute Medical

Systems' attorney, Chris Mills, about separating Absolute Medical from NuVasive while

negotiating the TTA.  (**Exhibit 1**, 43:4–44:10). Though over four years (plus a one-year non-

compete period) remained on the Sales Agreement, Soufleris began pitching business ideas

to NuVasive's direct competitor, Alphatec Spine, Inc. ("Alphatec") in October 2017.[5]

(**Exhibit 1**, 9:3–6). As part of his pitch, Absolute Medical paid for Soufleris to travel to

Alphatec's California headquarters on October 12, 2017, (**Exhibit 2**, 121:8–122:24, 220:16–

222:11, Ex. 16) to present a business plan to Alphatec's leadership which contemplated

Absolute Medical performing services for Alphatec.  (**Exhibit 1**, 50:16–51:10, 62:12–18;

75:20–25; 76:1–13, Ex. 10; **Exhibit 2**, 221:13–222:11, Ex. 15, Ex. 16).   In addition to

outlining Soufleris' scheme to convert NuVasive's business to Alphatec through, without

limitation, "comprehensive non-compete avoidance," this business plan:

- called for Soufleris, via Absolute Medical, to serve as Alphatec's "Chief of Staff" in a sales territory which encompassed the Territory, and report directly to its Chief Executive Officer, Pat Miles;

- promised that Absolute Medical would deliver $20 million in revenue in 2018 through "aggressive sales on-boarding to immediately gain revenue" and "comprehensive non-compete avoidance," and $30-40 million in revenue in 2019;

- stated that Absolute Medical would achieve these goals, at least in part, "by utilizing current resources;" and

---

[5] Soufleris purchased Alphatec stock prior to pitching his services to them.  (**Exhibit 1**, 42:2–15, Ex. 9).

- required Alphatec to indemnify Absolute Medical and its personnel.

(**Exhibit 1**, 52:15–25, 56:13–15, 62:6–18, Ex. 10; **Exhibit 2**, 123:10–148:19, Ex. 15).

Approximately three weeks after visiting Alphatec's headquarters, Soufleris played in a member-guest golf tournament with Absolute Medical's largest customer, Dr. Paul Sawin, but does not recall whether he told Dr. Sawin he was considering a move to Alphatec. (**Exhibit 1**, 67:8–19, 76:23–77:1).   A few weeks later, Soufleris returned to Alphatec for meetings on November 12-13, 2017.  (**Id.** at 71:9–72:13, Ex. 13).

After leaving Alphatec's headquarters on November 13, 2017, Soufleris began exchanging emails (which show his attorney's involvement in the negotiations) with various Alphatec executives, including its President and General Counsel. (**Id.** at 73:4–76:2, Ex. 14, Ex. 15, Ex. 16).  These emails articulate Alphatec's recognition that Absolute Medical's sales territory cannot (at least overtly) include the Territory and discuss a term sheet for Soufleris' eventual relationship with Alphatec.  (**Id.** at 76:14–79:11, Ex. 16).  The final version of this term sheet contained Alphatec's offer for Soufleris to serve as its Florida distributor (minus the Territory, Tampa, and Jacksonville) and:

- pay Soufleris a minimum of $500,000.00 per year;

- pay Soufleris a bonus if his sales representatives (*i.e.*, Hawley and Miller) cover their guaranteed salaries;[6]

---

[6]  Soufleris testified that he does not understand what Alphatec meant by "rep override."   But Alphatec's General Counsel's November 16, 2017, email to Soufleris provides:

> **"Override":** Once rep guarantee/salary is covered, "override" is delta between ongoing rep commission and 40%
> - So, if rep is making 20% on all sales, then remaining 20% is "override";
> - Or, if rep is flat salary (i.e. nothing beyond base pay), full 40% is "override" after salary covered.

- provide Soufleris with millions of dollars of stock options and incentives.

(**Id.** at 77:4–21, 79:8–11, Ex. 16, Ex. 17; **Exhibit 2**, 236:13–237:4).  Soufleris' November 14, 2017, email response to the term sheet states his desires to represent all of Florida, Georgia, and Alabama, and "to make sure [his] ability to transition immediate business is valued;" and voices his understanding that joining Alphatec would forfeit any right to have NuVasive buy out his distributorship.  (**Exhibit 1**, 77:4–21, 79:8–11, Ex. 16, Ex. 17)  Similarly, a November 16, 2017, email from Soufleris to Alphatec's General Counsel states "there is more 'juice to squeeze' from the revenue [he will] bring over in year one in Central FL that can't be overlooked."  (**Id.** at 81:12–82:14, Ex. 17).  That promised Central Florida revenue included revenue from Dr. Sawin, whom Soufleris hoped would follow him to Alphatec.  (**Id.** at 82:7–14).

### C. <u>After receiving an offer to join Alphatec, Soufleris attempts to "resign" from his relationship with NuVasive but the Sales Agreement does not terminate.</u>

Alphatec sent Soufleris a proposed Dedicated Sales Representative Agreement on November 27, 2017.  (Email, attached as **Exhibit 4**).  A few hours later, though NuVasive was neither in default of the Sales Agreement nor insolvent, Soufleris sent an email to it which states he is "resigning" from "our partnership" and would no longer honor the Sales Agreement.  (**Exhibit 1**, 23:2–8, 82:23–83:15, Ex. 18; **Exhibit 2**, 108:14–109:7).  The next day, Soufleris informed Hawley and Miller, whom he wanted to join Alphatec, about his

---

(**Exhibit 1**, 78:10-16, Ex. 17 at DRH008540).  This override is only applicable to the first year of the arrangement as the sales representatives will be part of Soufleris' organization after that year.  (**Id.** at Ex. 17 at DRH008541).

788427.4/020171439

decision to leave NuVasive for Alphatec.[7]  (**Exhibit 1**, 9:7–10:17).  He then shared this decision with Gottstein, whom he also wanted to join him at Alphatec.  (**Id.** at 11:8–12:4).  While Soufleris claims he did not recruit these three, he admits telling Alphatec executives that "they would be good guys to recruit and have on the team," that he "fought like hell" to have them on his team, and that he did not recommend bringing on any other Absolute Medical sales professionals.  (**Id.** at 11:19–12:4, 13:25–14:15; **Exhibit 5**, 23:4–11).

In a November 28, 2017, letter, NuVasive's counsel informed Soufleris that Absolute Medical could not resign from the Sales Agreement and that attempting to do so was a material breach of it.  (**Exhibit 2**, 237:11–238:12, Ex. 43).  Then, NuVasive's December 13, 2017, letter to Absolute Medical's counsel terminated Absolute Medical's right to be the exclusive sales distributor in the Territory (butt did not terminate the Sales Agreement) and demanded that Absolute Medical come into compliance with the Sales Agreement.  (**Id.** at Ex. 43 at ¶¶ 2, 4).  To date, neither party has terminated the Sales Agreement.

### D. The Absolute Medical sales representatives who joined Soufleris at Alphatec resign from Absolute Medical on November 30, 2017.

Shortly after Absolute Medical "resigned" from the Sales Agreement, on November 30, 2017, Hawley, Miller, and Gottstein emailed Soufleris notices of their intent to immediately resign from Absolute Medical.[8]  (**Exhibit 2**, 170:1–24, Ex. 19).  Less than a week later, after taking no steps to enforce their restrictive covenants, Soufleris used

---

[7] To be clear, NuVasive believes Soufleris, Hawley, and Miller communicated regarding their collective move to Alphatec prior to this date. However, Defendants spoliated relevant evidence from this time period. NuVasive anticipates addressing this issue in a motion since Soufleris acknowledges that he willfully failed to maintain the email platform on which Defendants communicated at this time. (**Exhibit 1**, 41:17–24, 211:4–18).
[8] Hawley's and Gottstein's emails state that they are terminating their contracts (**Exhibit 2**, Ex. 19), which is curious as they claim to not be subject to contracts with Absolute Medical.

7

Absolute Medical's funds (recorded as "office expenses") to send flowers to Hawley's, Miller's, and Gottstein's wives and inserted notes which read:

- [t]hank you for the confidence with us as we continue this wild ride into big things.  Your confidence in us is appreciated;

- [w]e are so excited for this next journey together!  Thank you for having the confidence in us.  This will be a great experience for many years to come!; and

- [t]hank you for the confidence in us while making this exciting change!  Can't wait to continue this exciting journey together for years to come!

(**Exhibit 2**, 71:23-76:8, 206:9–208:17; **Exhibit 1**, 163:19–165:4, 241:1–3, Ex. 42).

### E.  <u>Soufleris forms Absolute Medical Systems solely to compete in the Territory.</u>

Absolute Medical Systems' Dedicated Sales Representative Agreement with Alphatec (the "Alphatec Agreement") became effective on December 1, 2017.[9] (**Exhibit 1**, Ex. 32). Later than day, Daneri Edelson ("Edelson"), Absolute Medical's (and then Absolute Medical Systems') office manager, emailed Absolute Medical Systems' Employer Identification Number[10] to Soufleris, which he forwarded to Absolute Medical's and Absolute Medical System's accountants and stated "[P]lease see my new entity – which will be replacing absolute medical.  I had to dissolve it due to me leaving companies."[11] (**Exhibit 1**, 97:22–99:9, Ex. 19, Ex. 32; **Exhibit 2**, 154:17–25; 155:1–15, Ex. 18).   Soufleris then began dissolving Absolute Medical in mid-December 2017.  (**Exhibit 2**, 26:11-14, 196:20-22).

---

[9] Hawley's and Miller's Alphatec contracts also became effective on December 1, 2017.  (Pl.'s Mot. P. Summ. J., Doc, 195, p. 9)

[10] Apparently concerned about causing confusion to Absolute Medical's customers, Soufleris merely added "Systems" to Absolute Medical's name.

[11] Interestingly, Soufleris testified, on behalf of Absolute Medical Systems, that he did not know why it was necessary to form a new company to sell spinal implants when he already owned a company that did just that. (Dep. Absol. Med. Sys., attached as **Exhibit 5**, 10:14–21).

8

**F.  Absolute Medical Systems immediately began utilizing Absolute Medical's sales representatives and office manager.**

Absolute Medical's personnel joined Absolute Medical Systems and Soufleris' other medical device companies before the dissolution began.  Edelson acknowledges her roles with the two companies are "substantially similar" and that "nothing's changed" between the services she performed for Absolute Medical and Absolute Medical Systems. (**Exhibit 5**, 37:17–38:4, 38:16–19; Dep. D. Edelson, attached as **Exhibit 6**, 12:3–25, 13:24–14:8). Likewise, Gottstein began selling Alphatec products on behalf of Absolute Medical Systems between March and mid-2018[12] (**Exhibit 5**, 18:24–19:21), and former Absolute Medical representative Angel Mangual became Absolute Medical Systems' pediatric specialist sometime before March 8, 2018.  (**Exhibit 1**, 222:19–223:9; **Exhibit 5**, 22:9–23, 25:21–25).

Further, despite Alphatec's purported prohibition against them doing so,[13] Hawley and Miller covertly began working for Absolute Medical Systems and Soufleris' other medical device companies in the Territory during this time.  (**Exhibit 1**, 227:18–228:1, Ex. 32 at Ex. A; **Exhibit 5**, 19:6–23:22).  Nevertheless, Hawley and Miller sold non-Alphatec spine products which compete with NuVasive's products on behalf of Absolute Medical Systems (and other companies controlled by Soufleris)[14] in the Territory during that time.

---

[12] Soufleris was unable to testify as to when Gottstein became affiliated with Absolute Medical Systems and, despite his expressed willingness to do so, has not produced Gottstein's contract with Absolute Medical Systems, which would contain this information.  (**Exhibit 1**,170:1–171:6).

[13] Alphatec purportedly imposed one-year prohibitions on Absolute Medical Systems working in the Territory, and Hawley and Miller working for Absolute Medical Systems.

[14] Soufleris owns/controls other companies that sell products utilized in spine surgeries and for which Absolute Medical's and Absolute Medical Systems' sales professionals provide services, including Absolute Ortho, LLC and Spinal Solutions, LLC.  (**Exhibit 1**, 102:13–20).  Edelson and Hawley worked for Absolute Ortho, with Hawley selling Osseous' competitive products to Dr. Rosen beginning in February of 2018.  (**Id.** at 102:24–104:10).  Spinal Solutions, through Hawley and Miller, sold NovaBone's, Spine Wave's, and Ulrich's competitive products between 2017 and 2018.  (**Id.** at 104:24–106:23, 187:8–189:12, Ex. 61). Hawley sold Life Spine's competitive products on behalf of either Absolute Medical Systems or Spinal Solutions during and

(**Exhibit 1**, 227:18–230:5; **Exhibit 5**, 26:22–33:17).  For example, in January of 2018, Hawley, through Absolute Medical Systems' contract with Orthofix, began selling Trinity, a competitive biologic product, to Drs. Sawin and Rosen in surgeries where they implanted Alphatec's (or other competitive) products and sending his Charge Sheets to Edelson. (**Exhibit 1**, 181:21–22, 182:1–18, 183:5–11, Ex. 55 at Attach. C, Ex. 56, Ex. 57; **Exhibit 5**, 30:14–34:3).  Similarly, Miller sold Trinity to one of his surgeon customers, and began selling a biologic product known as NovaBone (which is contracted through Soufleris' company, Spinal Solutions) to his surgeon customers at Central Florida Regional Hospital in Orlando in early 2018.  (**Exhibit 1**, 104:24–105:18, 107:22–110:19; **Exhibit 5**, 43:24–44:2).

Alphatec's purported prohibitions carried so little weight that Miller claimed an affiliation with Absolute Medical or Absolute Medical Systems on the first three Charge Sheets he submitted to Alphatec, and stopped only when Alphatec instructed him to "update your distributorship to Miller Time on this REQ and going forward."  (**Exhibit 1**, 132:6–133:19, Ex. 31; Email exchange, attached as **Exhibit 7**, p. 3).  Likewise, Soufleris celebrated Dr. Sawin's first use of Alphatec's products on December 5, 2017, by using Absolute Medical Systems' funds to take Dr. Sawin and Hawley (who supported the surgeries) out for drinks to discuss, among others, how the surgeries went. (**Exhibit 1**, 145:3–146:6, 228:14–17).  Alphatec joined the celebration at a December 7, 2019, dinner at Kres Chophouse in downtown Orlando attended by Dr. Sawin, Alphatec's CEO, Alphatec's General Counsel, Hawley, and Soufleris.  (**Exhibit 1**, 113:7–14; 140:4–144:20, 167:12–168:11, 228:18–21).

---

through 2018.   (**Id.** at 233:1–234:1; **Exhibit 5**, 29:4–32:24, 35:19–25).  Finally, Soufleris acknowledges facilitating Hawley's ability to sell K2M's competitive products to Drs. Sawin and Rosen in February of 2018, and that Hawley sent Charge Sheets from those sales to Absolute Medical Systems.  (**Exhibit 1**, 171:24–172:15, 173:11–24, Ex. 47).

788427.4/020171439

The prohibition violations continued the next morning when Soufleris introduced Alphatec's CEO to Dr. Ilgenfritz, a pediatric surgeon and former Absolute Medical customer whom Soufleris described as a "huge target." (**Exhibit 1**, 168:13–169:15, 223:8–9, 234:5–236:1, Ex. 81).  Dr. Ilgenfritz became an Alphatec customer after this meeting and, even though Absolute Medical Systems did not receive commissions on Alphatec's sales to Dr. Ilgenfritz during the first year of its existence, assigned its pediatric sales specialist, Angel Mangual, to support his surgeries. (**Id.** at 169:20–170:16, 222:19–224:14, Ex. 45, Ex. 76).

The prohibition violations continued the next month when Dr. Sawin and Soufleris (but not Hawley)[15] visited Alphatec's headquarters for a Visiting Surgeon Program on January 21-22, 2018, and stayed in the same hotel. (**Id.** at 201:4–204:23, Ex. 70, Ex. 71). Then, in late March of 2018, Soufleris, Alphatec executive Mark Ojeda, and Dave Hawley took a golf trip (which Absolute Medical Systems recorded as a business expense) to Cozumel, Mexico with Dr. Sawin. (**Id.** at 86:5–88:8, 238:20–239:12; Decl. M.T. McFarland, attached as **Exhibit 9**, ¶¶ 3-6).  Finally, during an April 28 to May 2, 2018, conference in New Orleans, Soufleris dined with Dr. Sawin and various Alphatec executives at Emeril's Delmonico.  (**Id.** at 229:17–20, 237:18–238:7).

Soufleris also ignored the prohibitions with Miller's surgeon customers.  For example, on December 5, 2017, he used Absolute Medical Systems' funds to take Miller and Dr. Burry to a business dinner at P.F. Chang's.  (**Exhibit 1**, 137:6–11; **Exhibit 2**, 205:3–206:4; **Exhibit 5**, 65:19–66:4, 73:3–20; Dep. R. Miller, attached as **Exhibit 10**, 143:22–144:10).

---

[15] Hawley testified that he does not recall being at this event (Dep. D. Hawley, attached as **Exhibit 8**, 134:3–21) and no documents in the record indicate that he was present.

### G. **Hawley, Miller, and Soufleris continued working together through 2018.**

Absolute Medical Systems' affiliations with Hawley and Miller was a poorly-kept secret.  It gave them email addresses and business cards, instructed them to provide their Charge Sheets to it, and made its surgical information database available to them. It also helped them obtain hospital credentials and submit Charge Sheets to Alphatec and others.

### 1. **Absolute Medical Systems provided the sales representatives with business cards and email addresses.**

Hawley, Miller, Soufleris, Gottstein, and Edelson utilized their Absolute Medical email addresses (which end in @absolute-med.com) when communicating with Alphatec (and other companies) until at least December 28, 2017, when Soufleris gave them Absolute Medical Systems' email addresses (which end in @absolute-medical.org), instructed them to notify their contacts about the new email addresses, and stated that he would shut the old email addresses "off after the first of the year." (**Exhibit 1**, 162:16–163:15, Ex. 41). Interestingly, though the Absolute Medical/Absolute Medical Systems email address changed from @absolute-med.com to @absolute-medical.org, Soufleris' signature block continued to state "Principal | Absolute Medical" and recite his (954) 868-4492 telephone number – the same one he used while operating Absolute Medical – through at least March 22, 2018.  (**Id.** at 191:7–25; 192:1–25; 193:1–2, 225:9–13).  At about that time, Absolute Medical Systems (at its cost) provided company business cards to Hawley, Miller, and others. (**Id.** at 113:20–25, 115:7–17).

### 2. **Absolute Medical Systems instructed Hawley and Miller to provide it with their Charge Sheets and to utilize its surgical information database.**

On January 9, 2018, Edelson instructed Hawley, Miller, and Gottstein (via their Absolute Medical Systems email addresses) to provide her with copies of their Charge Sheets (which Alphatec refers to as Surgery Requisition Forms) after they send them to Alphatec because "we're keeping an internal log of our cases." (**Id.** at 122:3–23, 131:23–25, Ex. 26). She again emailed Hawley and Miller at their Absolute Medical Systems email addresses on March 12, 2018, and requested their input on software that Absolute Medical Systems was testing "in order to streamline [their] processes."[16]  (**Id.** at 124:21–25, 127:13–24, Ex. 28) Then, on March 21, 2018, Edelson emailed Alphatec about Absolute Medical Systems "setting up a software program for the reps." (**Exhibit 6**, 50:7–51:2, Ex. 19).  The next day, it conducted a training system on this program known as Surg.io, for the "reps," including Hawley and Miller.  (**Exhibit 1**, 130:11–22, Ex. 30; **Exhibit 6**, 50:7–51:2, 67:5:24).  As of April 20, 2018, Hawley, Miller, and Gottstein (often with Edelson's assistance) were using Surg.io.  (**Exhibit 5**, 78:8–79:5; **Exhibit 6**, 65:12–66:21).

### 3. Absolute Medical Systems assisted Hawley and Miller with hospital credentialing, Charge Sheet submission, and other administrative tasks.

Like Absolute Medical, Absolute Medical Systems made Edelson's services, such as assisting with credentialing and pricing issues, available to Hawley and Miller for no charge. (**Exhibit 1**, 101:13–19, 102:9–12, 107:22–25, Ex. 21; **Exhibit 2**, 169:12-23; **Exhibit 6**, 12:3–25). For example, she assisted Hawley with pricing at Florida Hospital-Adventist as early as December 20, 2017, and assisted Miller in obtaining pricing from Alphatec for his accounts on March 21, 2018.  (**Exhibit 1**, 111:6–112:6, 161:5–162:2, Ex. 22).

---

[16]  The username for the software was gsoufleris@absolute-med.org and the password contains the word "absolute."  (**Exhibit 6**, 65:12–66:21)

Similarly, on April 24, 2018, Miller exchanged emails with Edelson (from their respective Absolute Medical Systems email accounts) about the status of Hawley and another representative obtaining credentials to work at Central Florida Regional Hospital ("CFRH"). (**Id.** at 117:2–119:1).  On June 6, 2018, Edelson, in her role as the Executive Administrator of "Absolute Medical" (which she referred to as an exclusive distributor of Alphatec's products), provided a copy of Hawley's job duties to CFRH so that he could obtain credentialing at that facility.  (**Id.** at 120:4–15, Ex. 25).

**H.  Absolute Medical and Absolute Medical Systems comingled funds and accounts.**

Finally, Absolute Medical and Absolute Medical Systems comingled funds and accounts.  For example, on December 12, 2017, Soufleris opened a Bank of America checking account for Absolute Medical Systems which he immediately linked to Absolute Medical's checking account ending in 7087.  (June 28, 2018, Tr. Hr'g Prelim. Inj., Doc. 79, Defs.' Ex. 21).  Then, on December 15, 2017, Bank of America sent new debit cards for this Absolute Medical checking account to Soufleris' home at 10525 Cromwell Grove Terrace, even though the company was dissolving. (**Exhibit 1**, Ex. 44).  Similarly, after receiving a replacement card in February of 2018, Soufleris utilized Absolute Medical's Platinum American Express ending in 51003 until at least December of 2018. (**Exhibit 2**, 228:13–229:24, Ex. 38, Ex. 39).

Most notably, in a December 28, 2017, email, Soufleris instructed his accountant to pay Absolute Medical's year-end taxes out of Absolute Medical Systems' account because Absolute Medical had no funds.  (**Exhibit 1**, 99:12–101:1).  As a result, Absolute Medical Systems paid approximately $30,000.00 of Absolute Medical's tax debt.  (**Exhibit 5**, 9:6–25)

14

### III.    STANDARD FOR GRANTING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 directs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is only material if it may "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a party makes a properly supported motion for summary judgment, the other party must come forward with specific factual evidence that presents more than mere allegations.  *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).  In other words, summary judgment may be granted if the non-moving party's evidence is "merely colorable" or "is not significantly probative."   *Anderson*, 477 U.S. at 249–50.  A nonmoving party cannot defeat a motion for summary judgment based upon a nonmoving party's "suspicion, perception, opinion, and belief."  *Laroche v. Denny's Inc*., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999).

### IV.    ABSOLUTE MEDICAL SYSTEMS IS RESPONSIBLE FOR ITS AND ABSOLUTE MEDICAL'S BREACHES OF THE SALES AGREEMENT.

The undisputed facts establish that the Sales Agreement imposes valid restrictions on the parties which Absolute Medical breached, causing damage to NuVasive. *Interim Healthcare v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Sup. Ct. 2005).  They also establish that Absolute Medical Systems is Absolute Medical's successor in interest and, therefore is liable for those (and its own) breaches of the Sales Agreement.

### A.  Absolute Medical violated several sections of the Sales Agreement.

15

Absolute Medical breached the Sales Agreement when it failed to ensure that Hawley, Miller, and others were subject to Compliance Agreements in 2017; failed to inform NuVasive that Soufleris began searching for ways to separate from it in June of 2017; began scheming with Alphatec to move NuVasive's business to it in October of 2017; attempted to "resign" from NuVasive on November 27, 2017; and failed to vigorously enforce Hawley's and Miller's 2016 Compliance Agreements or pay for NuVasive to do so. These violations, individually and collectively, converted nearly all of NuVasive's business in the Territory to NuVasive's competitors, including Alphatec.

### 1.  Absolute Medical stopped performing under the Sales Agreement.

The most notable breach occurred on November 27, 2017, when Absolute Medical, without notice, stopped complying with its terms. This stripped NuVasive of the resources necessary to service the Territory and, when combined with Absolute Medical's other breaches, rendered NuVasive unable to salvage relationships with the surgeon customers it entrusted to Absolute Medical. (Decl. M. Singer, Doc. 19-1, ¶¶ 5-7).

Sections 9.02 through 9.04 of the Sales Agreement provide that Absolute Medical may terminate the Sales Agreement only if NuVasive materially breaches the Sales Agreement and such breach is not cured within 30 calendar days, or becomes insolvent; neither of which occurred before Absolute Medical sent its November 27, 2017, "resignation" email. Indeed, there is no contention that NuVasive was insolvent at that time; and Soufleris admits NuVasive did not materially breach the Sales Agreement and that he cannot identify any provision in the Sales Agreement which allows Absolute Medical to terminate the Sales Agreement in the manner he did. (**Exhibit 2**, 108:24–109:7).

16

### 2.   Absolute Medical violated Section 5.04(c) of the Sales Agreement.

That said, Absolute Medical's compliance with Section 5.04(c)'s notice provision would have mitigated the damages caused by its sudden cessation of activities on NuVasive's behalf.   Indeed, compliance with this obligation would have provided NuVasive with, at least, 75 days to secure its relationships with its surgeon customers and begin the process of replacing Absolute Medical with sales professionals dedicated to NuVasive rather than Alphatec and other competitors.

Section 5.04(c) of the Sales Agreement obligates Absolute Medical to "promptly advise NuVasive of . . . any political, financial, legislative, industrial or other events in the Territory that could affect the mutual business interests of [Absolute Medical] and NuVasive, whether harmful or beneficial."   Absolute Medical failed to comply with this obligation as it did not inform NuVasive:

- that Soufleris began planning to separate from NuVasive in June of 2017;

- that Soufleris began scheming with Alphatec in October of 2017 to convert NuVasive's business (as well as Hawley, Miller, and Gottstein) to Alphatec; or

- that NuVasive's business within the Territory was in jeopardy.

(**Exhibit 1**, 43:21–44:10; **Exhibit 2**, 112:3–23).   Further, Absolute Medical failed to even give NuVasive notice that it would immediately stop performing its contractual obligations.

Defendants cannot dispute that these events (could have and in fact) harmed NuVasive's and Absolute Medical's mutual business interests.   Indeed, NuVasive found itself with little to no business in the Territory and Soufleris dissolved Absolute Medical.

### 3.   Absolute Medical violated Section 5.09 of the Sales Agreement.

17

Absolute Medical's violation of Section 5.09 of the Sales Agreement also impaired NuVasive's ability to protect its business as it allowed Soufleris, Hawley, and Miller to immediately take off their NuVasive hats and service the surgeon customers NuVasive entrusted to them on behalf of Alphatec and other NuVasive competitors.  These violations include failing to ensure that Soufleris, Hawley, and Miller were subject to Compliance Agreements in 2017 and failing to enforce what was left of the restrictive covenants in the 2016 Compliance Agreements after they began competing with NuVasive.

Among other things, Section 5.09:

- requires Absolute Medical's Representative Affiliates to execute Compliance Agreements which contain non-competition and non-solicitation covenants and name NuVasive as a third party beneficiary to the Compliance Agreements; and

- if necessary, vigorously enforce the Compliance Agreements or pay NuVasive's expenses to do so.

Contrary to these obligations, Absolute Medical failed to require Hawley, Miller, and Soufleris (and perhaps others) to execute (or otherwise subject them to)[17] Compliance Agreements in 2017.  (**Exhibit 2**, 81:9–87:17).  It also failed to enforce what remained of the restrictive covenants in Hawley's, Miller's, and Gottstein's 2016 Compliance Agreements after they submitted their resignations.  (**Id.** at 71:23–74:21).  Like its other violations of the Sales Agreement, the failure to comply with Section 5.09 devastated NuVasive's ability to protect the business it entrusted to Absolute Medical, allowed Absolute Medical to move that business to Alphatec and other competitive companies overnight, and prohibited NuVasive from making sales calls in the area.  (Decl. M. Singer, Doc. 19-1, ¶¶ 5-7).

---

[17] Absolute Medical could have simply given Hawley and Miller (and allegedly perhaps others) notice of its intent to renew their existing 2016 Compliance Agreements for another term, yet chose not to do so.

**B.  Absolute Medical Systems is a mere continuation of Absolute Medical.**

Unconcerned about these contractual violations, the Defendants collectively and incorrectly believe they can escape liability because Soufleris dissolved Absolute Medical and formed Absolute Medical Systems.  This is not so. NuVasive can enforce the Sales Agreement and obtain injunctive relief against Absolute Medical Systems because it is a mere continuation of Absolute Medical; which, without limitation, operates in a building and utilizes furniture purchased by Absolute Medical, utilizes Absolute Medical's sales representatives to sell competitive products in the Territory, utilizes Absolute Medical's office manager and allows her to perform services for the sales representatives who pretend they are not are not affiliated with it, and services the same surgeon customers it services for NuVasive.  Further, the two companies comingle funds, and accounts.

Under Florida law, a successor entity is liable for the obligations of its predecessor if "(1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor."  *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 153-54 (Fla. 4th DCA 1994) (citing *Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982)); *Etkin & Co. v. SBD, Ltd. Liab. Co.*, No. 11-21321-CIV-LENARD/GOODMAN, 2015 U.S. Dist. LEXIS 180657, at *20-21 (S.D. Fla. Sep. 1, 2015).  A mere continuation is found when the successor has the same ownership, management, staff, assets, location, and clients as its predecessor. *See, Munim*, 648 So. 2d 145. In other words, courts impose liability if the successor entity is "merely a continuation or reincarnation of the predecessor under a different name."  *Id.* at 154; *TTT Foods Holding*

*Co. Ltd. Liab. Co. v. Namm*, No. 16-cv-81798, 2017 U.S. Dist. LEXIS 77402, at *12 (S.D. Fla. May 19, 2017) (holding the successor entity of an LLC, which became insolvent, was a mere continuation of the predecessor entity, because the LLC and the predecessor entity shared the same office location, customers, manufacturers, freight companies, products, and member-manager).  The main inquiry is "whether there has been a change in form, but not in substance." *Lab. Corp. v. Prof'l Recovery Network*, 813 So. 2d 266, 270 (Fla. 5th DCA 2002); *Oman Int'l Fin. Ltd. v. Hoiyong Gems Corp.*, 616 F. Supp. 351, 361 (D.C.R.I. 1985) (the "question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other.").  Indeed, liability must attach when the successor entity "is merely a 'new hat' for the seller, with the same or similar management and ownership." *Munim*, at 648 So. 2d at 154.

Here, in addition to comingling funds, the two companies, without limitation, share an office location, furniture, customers, products, and ownership, and  here is no indication that Soufleris formed Absolute Medical Systems for a reason other than to avoid Absolute Medical's contractual obligations. Therefore, Absolute Medical Systems is liable for Absolute Medical's (as well as its own) breaches of the Sales Agreement under the mere continuation theory of successor liability.

### 1.  The two companies commingled funds, accounts, and other assets.

Soufleris acquired the Lee Vista Boulevard property in September of 2017.  At a minimum, Absolute Medical provided funds for its down payment and for it to be furnished. (**Exhibit 3**; **Exhibit 1**, 123:14–124:18, 165:5-9).  Now, Absolute Medical Systems and Soufleris' other companies conduct business out of the Lee Vista Boulevard property (Dep.

Absol. Ortho, attached as **Exhibit 11**, 18:8–19:7, 51:12–20), and utilize the furniture Absolute Medical purchased (which, along with the Cadillac that is now licensed in Soufleris' name, constitutes all of Absolute Medical's assets other than amounts owed to it by Soufleris' other companies at the time it dissolved). (**Exhibit 1**, 165:10–166:10, Ex. 43; **Exhibit 2**, 156:1–8, 180:13–182:23, 212:11–213:17).

Further, the two companies use the same American Express account. (**Exhibit 2**, 228:13-229:24, Ex. 38, Ex. 39). Similarly, prior to Absolute Medical Systems getting a checking account on December 12, 2017, Absolute Medical paid for Soufleris to:

- fly to California in October of 2017 to pitch his business plan to Alphatec;

- take Dr. Burry and Miller to dinner in early 2017; and

- send flowers to the sales representatives wives after they joined Alphatec.

(**Exhibit 1**, 163:19–165:4, 241:1–3, Ex. 42; **Exhibit 2**, 71:23–76:8, 121:8–122:24, 206:9-208:17, 220:16-222:11, Ex. 16). Then after Soufleris opened that account, he linked it to Absolute Medical's account. (June 28, 2018, Tr. Hr'g Prelim. Inj., Doc. 79, Defs.' Ex. 21).

### 2. The two companies are in the same industry, have the same office location, and have common ownership.

Absolute Medical's sole member, Soufleris, was also Absolute Medical System's sole member until July of 2019. (**Exhibit 2**, 6:14–25; **Exhibit 5**, 7:6–9, 10:8–9).[18] He formed Absolute Medical in 2013 to make "medical sales" on behalf of NuVasive (**Exhibit 2**, 20:8–13, 21:12–14), and then formed Absolute Medical Systems, which operates out of a property

---

[18] Soufleris served/serves as the President of both Absolute Medical and Absolute Medical Systems as well. (**Exhibit 2**, 6:14–19; **Exhibit 5**, 10:22–11:2). Likewise, Soufleris was the sole-decision maker for Absolute Medical and the decision to form Absolute Medical Systems was his and his alone. (**Exhibit 2**, 19:9–14; **Exhibit 5**, 11:19–21).

purchased (at least in part) with Absolute Medical's funds and decorated with furniture Absolute Medical purchased, to products that directly compete with NuVasive's products. (**Exhibit 5**, 10:14–21; 11:19–12:2, 16:3–6).

### 3. The two companies have common personnel and customers.

The two companies also share personnel and customers.  In addition to Edelson and Mangual, Hawley, Miller, and Gottstein began selling products that compete with NuVasive's products on behalf Absolute Medical Systems immediately after Soufleris formed it.  Similarly, every Absolute Medical Systems sale in the Territory between December 1, 2017, and December 1, 2018, was to an Absolute Medical surgeon customer. (**Exhibit 1**, 212:7–217:1, Ex. 75).

### 4. The two companies use the same telephone numbers and email addresses.

Finally, Absolute Medical and Absolute Medical Systems utilize the same telephone numbers.  Soufleris, Edelson, Hawley, Miller, and Gottstein maintained the same numbers when their affiliation with NuVasive ended.  Similarly, they continued utilizing Absolute Medical's email address well after it ceased doing business.  Then, at Soufleris' instruction, began utilizing Absolute Medical Systems' substantially similar email address.  Further, regardless of which email address he utilized, Soufleris' email signature continued to refer to his business as "Absolute Medical" until at least late March of 2018. (**Exhibit 1**, 191:7–25; 192:1–25; 193:1–2, 225:9–13).

### V.   NUVASIVE IS ENTITLED TO A PERMANENT INJUNCTION AGAINST ABSOLUTE MEDICAL AND ABSOLUTE MEDICAL SYSTEMS.

At a minimum, the Court should enforce the Sales Agreement's one-year non-compete provision against Absolute Medical Systems.  Though Defendants devastated

NuVasive's business in the Orlando area by ignoring their contractual obligations, doing so would give NuVasive a chance to reconnect with its former surgeon customers and regain some of their business, without having to compete against Soufleris, Hawley, and Miller.

A district court may grant a permanent injunction if the movant shows: (1) actual success on the merits; (2) irreparable harm will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs the damage the proposed injunction may cause the opponent; and (4) the injunction would not be adverse to public interest. *KH Outdoor, LLC v. Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).  Here, the undisputed facts establish that a permanent injunction should issue which prohibits the two companies from competing within the Territory for a year, as Soufleris formed Absolute Medical Systems, which is the mere continuation of Absolute Medical, solely to avoid its contractual obligations.

### A.  <u>NuVasive established actual success on the merits.</u>

First, Absolute Medical will succeed on the merits of its claim that Absolute Medical violated the Sales Agreement because the Sales Agreement is a valid contract and Soufleris caused Absolute Medical to violate it.  (**Exhibit 1**, 23:2–8, 82:23–83:15, Ex. 18; **Exhibit 2**, 109:3–7; **Exhibit 5**, 10:14–21; 11:19–12:2, 16:3–6).  As Absolute Medical Systems is a mere continuation of Absolute Medical, the Court should enjoin it from benefiting from those violations. *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1354-55 (11th Cir. 2017) (citing *Interstate Commerce Comm'n v. Rio Grande Growers Coop.*, 564 F.2d 848, 849 (9th Cir. 1977) (binding nonparty to injunction where it was a successor to a party to the injunction and the incorporator of the successor had knowledge of the injunction); *New York*

*v. Operation Rescue Nat'l*, 80 F.3d 64, 70-71 (2d Cir. 1996) (binding nonparty to injunction where nonparty was successor of a party to, and had notice of, the injunction)).[19]

### B.  NuVasive continues to suffer irreparable harm.

Further, NuVasive will suffer further irreparable harm if Absolute Medical Systems continues selling competitive products in the Territory.  Mark Singer's September 10, 2019, deposition testimony establishes that, at least as of that date, NuVasive remained shorthanded in the Orlando area but had a new sales representative scheduled to start at the beginning of this month.  (Dep. M. Singer, attached as **Exhibit 12**, 55:11–16).  Allowing this sales representative to establish himself in this territory without having to compete against the Absolute Medical team will level the playing field by giving NuVasive a chance to reconnect with its former surgeon customers and regain their business.

### C.  The harm incurred by NuVasive outweighs any harm the requested injunction will cause Soufleris' companies.

Third, NuVasive's continuing loss of sales in the Territory outweighs any damage that Absolute Medical or Absolute Medical Systems will suffer if the Court issues the requested injunction.  Indeed, the requested injunction which will only require them to do what the Sales Agreement and the Alphatec Sales Agreement (every county and facility in the Territory is excluded from Absolute Medical's Alphatec sales territory) obligates them to do, albeit without satisfying the Sales Agreement's full term. (**Exhibit 1**, 134:5–135:138:16,

---

[19] In *ADT LLC*, the Eleventh Circuit held that a successor in interest entity to an enjoined party could not be enjoined because it did not have notice of the injunction. Following a remand, the Southern District of Florida made an evidentiary determination that the successor in interest did, in fact, have notice of the injunction and was, therefore, bound by the permanent injunction. *See ADT LLC v. Sec. Networks, LLC*, Case No. 12-81120-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 15677, at **4-5 (S.D. Fla. Jan. 30, 2019)

Ex. 32 at Ex. A). Further, the injunction will not put Absolute Medical out of business.  It will only keep it from working within the Territory for one year.

**D.  <u>Issuing the requested injunction is in the public interest.</u>**

Lastly, the public has an interest in seeing valid contracts enforced.  *MEDai Inc. v. Quantros, Inc*., No. 6:12-cv-840-Orl-37GJK, 2012 U.S. Dist. LEXIS 115504, at *27 (M.D. Fla. Aug. 16, 2012).[20] Not enforcing the Sales Agreement against Absolute Medical "actually disserves the public interest in protecting fair competition, particularly with regard to a restrictive covenant." *Id.* at *26.  And prohibiting Absolute Medical Systems from violating its predecessor's obligations is consistent with the public's interest in enforcing valid contracts and promoting fair competition.

## VI.    <u>CONCLUSION</u>

Simply put, Absolute Medical violated the Sales Agreement, Soufleris formed Absolute Medical Systems solely to avoid Absolute Medical's valid and enforceable contractual obligations, and Absolute Medical Systems is a mere continuation of Absolute Medical.  Accordingly, NuVasive requests that the Court grant its motion for partial summary judgment, enjoin both companies from competing with NuVasive in the Territory for one year, and grant any other relief it deems just and proper.

---

[20] The Florida Legislature determined that in order to refuse enforcement of an otherwise enforceable restrictive covenant based on public policy considerations, the specified public policy must substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint. *AutoNation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004) (citing Fla. Stat. § 542.335(1)(i)).

788427.4/020171439

Dated: October 18, 2019

Respectfully submitted,

/s/ *Christopher W. Cardwell*
R. Craig Mayfield (Fla. Bar No. 0429643)
Cmayfield@bradley.com
Diana N. Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq. (*pro hac vice*)
ccardwell@gsrm.com
Mary Taylor Gallagher, Esq. (*pro hac vice*)
mtgallagher@gsrm.com
M. Thomas McFarland, Esq. (*pro hac vice*)
tmcfarland@gsrm.com
GULLETT, SANFORD, ROBINSON &
MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Tel: (615) 244-4994
Fax: (615) 256-6339

*Attorneys for Plaintiff NuVasive, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2019, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.  The party or parties served are as follows:

Busch, Slipakoff, Mills & Slomka, LLC

Bryan E. Busch
Email: bb@bsms.law
Laura H. Mirmelli
Email: lm@bsms.law
Riverwood 100,
3350 Riverwood Pkwy., Suite 2100
Atlanta, GA  30339
Phone: (404) 800-4062
Fax:  (404) 800-4062

Christopher Y. Mills
Email: cm@bsms.com
319 Clematis Street, Suite 109
West Palm Beach, FL 33401
Phone: (561) 701-5386

*Attorneys for Defendants*

*/s/ Christopher W. Cardwell*