UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NUVASIVE, INC. )
)
)
     Plaintiff, )   Case No.:
)   6:17-cv-2206-Orl-41GJK
VS )
)
)
ABSOLUTE MEDICAL, LLC, ABSOLUTE )
MEDICAL SYSTEMS, LLC, GREG )
SOUFLERIS, DAVE HAWLEY, and )
RYAN MILLER )
)
     Defendant, )
_____)

## DEFENDANTS DAVE HAWLEY, RYAN MILLER, AND ABSOLUTE MEDICAL SYSTEMS, LLC'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

Table of Authorities .............................................................. i

Introduction and Statement of Facts ...................................... 1

Dave Hawley ...................................................................... 2

Ryan Miller......................................................................... 6

Absolute Medical.............................................................. 10

ARGUMENT AND CITATION TO AUTHORITY ......................................11

I.     Standard of Motion for Summary Judgment ..........................................11

II.    Hawley and Miller are entitled to summary judgment on NuVasive's claims for breach of contract arising from the 2013 Agreements............12

III.   Hawley and Miller are entitled to summary judgment on NuVasive's claims for breach of contract under the 2016 Agreements with their corporate entities.................................................................14

      a. *Hawley and Miller are entitled to summary judgment on any claims based on the 2016 ICAs as these claims were not asserted in the Complaint and are raised for the first time at the summary judgment stage ..............................................................14*

b. *Defendants are entitled to summary judgment as to the 2016 ICAs inasmuch as Hawley and Miller are individuals separate and distinct from their corporate entities* ............................................................16

c. *Hawley and Miller are entitled to judgment as a matter of law as to the 2016 ICAs as this court may not fill in the blanks to change the deficiencies in the contract as written* ...............................................18

d. *Hawley and Miller are entitled to summary judgment inasmuch as the 2016 ICAs are subject to strict construction pursuant to Fla. Stat. § 542.335* ..............................................................................................20

IV. Hawley and AMS are entitled to summary judgment on NuVasive's claim of conversion .........................................................................................  6

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................12

*Beach Resort Hotel Corporation v. Wieder*,
79 So. 2d 659 (Fla. 1955) ..............................................................19

*Bentley Motors Corp. v. McEntegart*,
976 F. Supp. 2d 1297 (M.D. Fla. 2013) .........................................15

*Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*,
364 So. 2d 15 (Fla. 4th DCA 1978)................................................19

*Board of Public Instruction v. Fred Howland, Inc.*,
243 So. 2d 221 (Fla. 3rd DCA 1963) .............................................19

*Burger King Corp. v. Austin*,
805 F. Supp. 1007 (S. D. Fla. 1992) ...............................................21

*Cedric Kushner Promotions, Ltd. V. King*,
533 U.S. 158 (2001) ........................................................................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................12

*DeCarlo v. Griffin*,
827 So. 2d 348 (Fla. 4th DCA 2002).................................................12

*Feutz v. Massachusetts Bonding & Ins. Co.*,
85 F. Supp. 418 (D. Mo. 1949) ......................................................14

*Florida School-Book Depository, Inc. v. Liddon*,
114 Fla. 149 (1934) ..................................................................19, 20

*Gasparini v. Podormingo*,
972 So. 2d 1053 (Fla. 3d DCA 2008) .............................................17

*Gilman v. Butzloff,*
155 Fla. 888 (1945) ......................................................................................14

*Gilmour v. Gates, McDonald & Co.,*
382 F. 3d 1312 (11th Cir. 2004) ...................................................................15

*Home Development Co. v. Bursani,*
178 So. 2d 113 (Fla. 1965) ..........................................................................19

*Jenkins v. Eckerd Corp.,*
913 So.2d 43 (Fla. 1st DCA 2005) ...............................................................19

*Klein v. L-3 Communs. Corp.,*
2013 U.S. Dist. LEXIS 15663 (S.D. Ala. 2013) ..........................................15

*O'Connor v. Carnahan,*
2015 U.S. Dist. LEXIS 143090 (N.D. Fla. 2015) .........................................15

*Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,*
976 F.2d 58 (1st Cir. 1992) ..........................................................................15

*Star Fruit Co. v. Eagle Lake Growers, Inc.,*
33 So. 2d 858 (Fla. 1948) .............................................................................21

*Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.,*
125 F. Supp. 2d 1093 (S.D. Fla. 2000) .........................................................21

*Taylor v. Wellington Station Condo. Ass'n, Inc.,*
633 So. 2d 43 (Fla. 5th DCA 1994) ..............................................................17

*United Bonding Ins. Co. v. Southeast Regional Builders, Inc.,*
236 So. 2d 460 (Fla. 1st DCA 1970) .............................................................14

## STATUTORY AUTHORITIES

Fla. Stat. § 542.335 ........................................................................13, 20

Fla. Stat. § 605.0304 ...........................................................................17

Fla. Stat. § 607.0831 ...........................................................................17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | 6:17-cv-2206-Orl-41GJK |
| VS | ) | |
| | ) | |
| | ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE | ) | |
| MEDICAL SYSTEMS, LLC, GREG | ) | |
| SOUFLERIS, DAVE HAWLEY, and | ) | |
| RYAN MILLER | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |

### DEFENDANTS DAVE HAWLEY, RYAN MILLER, AND ABSOLUTE MEDICAL SYSTEMS, LLC'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM IN SUPPORT

COME NOW, Defendants Dave Hawley, Ryan Miller, and Absolute Medical Systems, LLC, and pursuant to Federal Rules of Civil Procedure 56, moves this Court for Summary Judgment against Plaintiff NuVasive, Inc. ("NuVasive") and shows this Court as follows:

### INTRODUCTION AND STATEMENT OF FACTS

Defendant Absolute Medical, LLC ("Absolute Medical") was in the business of promoting, marketing and selling medical products and devices on behalf of Plaintiff NuVasive, Inc. ("NuVasive") to hospitals and doctors throughout central

1

Florida.   (Doc. 38-1, Declaration of Greg Soufleris ("Soufleris Dec.") at ¶ 2.) Absolute Medical and NuVasive entered into an initial Exclusive Sales Representative Agreement dated February 14, 2013 (hereafter "2013 Distributorship Agreement"), which, among other things, outlined the products to be sold (Doc. 38-1, at Ex. A), the exclusive territory for operations (Doc. 38-1, at Ex. B), the commission structure (Doc. 38-1, at Ex.'s C and D), the independent contractor relationship of the parties (Section 2.3), the term (Section 11), and certain restrictive covenants (Section 6.13). (Doc. 68-2.) Absolute Medical and NuVasive entered into a final Exclusive Sales Representative Agreement on January 1, 2017 (hereafter "2017 Distributorship Agreement") with similar terms as the 2013 Distributorship Agreement but with a revised commission structure and a new five (5) year term. (Doc. 19-1.) As contemplated by these Distributorship Agreements, Absolute Medical hired sales representatives to assist with fulfilling its contractual duties and meeting its sales quotas.  (Doc. 38-1 at ¶ 5.)

### Dave Hawley

In February 2013, Absolute Medical contracted with Defendant Dave Hawley under a 2013 Independent Contractor Agreement for the sale of NuVasive product in a defined territory in and around Orange County, Florida ("2013 Hawley Agreement"). (Dave Hawley Declaration ("Hawley Dec.") attached hereto as **Ex. A,** at ¶ 3 and Ex. 2.) The 2013 Hawley Agreement was executed by Dave Hawley

2

individually and all obligations therein were assumed and agreed to by Dave Hawley individually. (Hawley Dec. attached as **Ex. A** at ¶ 4.) The 2013 Hawley Agreement contains no language, express or otherwise, that it was made for the benefit of a third-party beneficiary or could be enforced by any third-party beneficiary. (*Id.* at ¶ 5.)

The 2013 Hawley Agreement was terminated in 2014 when Hawley Med, LLC[1] entered into an Independent Contractor Agreement dated January 1, 2014 ("2014 Hawley Med Agreement") for sale of NuVasive products in Orange County, Florida but with an amended commission structure from the 2013 Hawley Agreement. (*Id.* at Ex. 3.) The 2014 Hawley Med Agreement identifies Absolute Medical, Inc. as the "distributor" but was never executed by Absolute Medical, LLC or Absolute Medical, Inc. (*Id.* at ¶ 6.) The 2014 Hawley Med Agreement specifically identifies Hawley Med, LLC as the contracting party or "salesperson", was executed by Dave Hawley on behalf of Hawley Med, LLC, was solely performed by Hawley Med, LLC, all commission payments thereunder were made solely to Hawley Med,

---

[1]Dave Hawley is the managing member of Hawley Med, LLC. Hawley Med, LLC is a Florida limited liability company that was properly formed and organized with the Florida Secretary of State in 2010. Hawley Med, LLC filed annual reports as required from 2011 through 2017. Hawley Med, LLC maintains its own business office, obtained its own federal tax identification number, files its own tax returns, has its own bank accounts and has properly identified its registered agent. Hawley Med, LLC is a separate and distinct legal entity under Florida law. (Hawley Dec. attached as **Ex. A**, at ¶ 2 and Ex. 1).

LLC, all taxes from the payment of commissions were claimed and reported solely by Hawley Med, LLC, and all obligations therein were assumed and agreed to solely by Hawley Med, LLC. (*Id*. at ¶ 7). The 2014 Hawley Med Agreement terminated no later than December 31, 2014 pursuant to section 3.1 as Hawley Med, LLC did not receive a thirty (30) day written notice of renewal from the Distributor as set forth therein. (*Id.* at ¶ 9).

Hawley Med, LLC entered into an Independent Contractor Agreement dated January 1, 2015 ("2015 Hawley Med Agreement") for the sale of NuVasive products in Orange County, Florida but with an amended commission structure from the 2014 Hawley Med Agreement. (*Id.* at Ex. 4). The 2015 Hawley Med Agreement identifies Absolute Medical, Inc. as the "distributor" but was never executed by Absolute Medical, LLC or Absolute Medical, Inc. (*Id.* at ¶ 10). The 2015 Hawley Med Agreement specifically identifies Hawley Med, LLC as the contracting party or "salesperson", was executed by Dave Hawley on behalf of Hawley Med, LLC, was solely performed by Hawley Med, LLC, all commission payments thereunder were made solely to Hawley Med, LLC, all taxes from the payment of commissions were claimed and reported solely by Hawley Med, LLC, and all obligations therein were assumed and agreed to solely by Hawley Med, LLC. (*Id.* at ¶ 11). The 2015 Hawley Med Agreement terminated no later than December 31, 2015 pursuant to section 3.1

as Hawley Med, LLC did not receive a thirty (30) day written notice of renewal from the Distributor as set forth therein. (Id. at ¶ 13).

Hawley Med, LLC entered into an Independent Contractor Agreement dated January 1, 2016 ("2016 Hawley Med Agreement") for the sale of NuVasive products in Orange County, Florida but with an amended commission structure from the 2015 Hawley Med Agreement. (Id. at Ex. 5). The 2016 Hawley Med Agreement identifies Absolute Medical, Inc. as the "distributor" but was never executed by Absolute Medical, LLC or Absolute Medical, Inc. The 2016 Hawley Med Agreement specifically identifies Hawley Med, LLC as the contracting party or "salesperson", was executed by Dave Hawley on behalf of Hawley Med, LLC, was solely performed by Hawley Med, LLC, all commission payments thereunder were made solely to Hawley Med, LLC, all taxes from the payment of commissions were claimed and reported solely by Hawley Med, LLC, and all obligations therein were assumed and agreed to solely by Hawley Med, LLC. (Id. at ¶ 15). The 2016 Hawley Med Agreement terminated on December 31, 2015 pursuant to section 3.1 and was not renewed as Hawley Med, LLC did not receive a thirty (30) day written notice of renewal from the Distributor as set forth therein. (*Id.* at ¶ 17).

Absolute Medical presented Hawley Med, LLC with an Independent Contractor Agreement dated January 1, 2017 ("Proposed 2017 Hawley Med Agreement") for the sale of NuVasive products in Orange County, Florida but with

an amended commission structure from the 2016 Hawley Med Agreement. (*Id.* at Ex. 6). Neither Hawley Med, LLC nor Dave Hawley individually ever executed the Proposed 2017 Hawley Med Agreement as it objected to the restrictive covenants set forth therein and communicated its objection directly to Absolute Medical. (*Id.* at ¶ 18).

Hawley Med, LLC informed Absolute Medical that it would no longer be selling NuVasive products in Orange County, Florida in an email dated November 30, 2017. At the time of the resignation email, Hawley Med, LLC was not subject to any restrictive covenants with Absolute Medical, LLC as it had refused to sign the Proposed 2017 Hawley Med Agreement, and the 2016 Hawley Med Agreement remained unsigned by Absolute Medical, LLC, was identified as being with Absolute Medical, Inc. and according to section 3.1 terminated on December 31, 2015 with all remaining restrictive covenant requirements expired.  At the time of the November 30, 2017 resignation email, Dave Hawley individually was not subject to any restrictive covenants from Absolute Medical, LLC, NuVasive or Absolute Medical, Inc.  (*Id.* at ¶ 19).

## Ryan Miller

In February 2013, Absolute Medical contracted with Defendant Ryan Miller under a 2013 Independent Contractor Agreement for the sale of NuVasive product in a defined territory in and around central Florida ("2013 Miller Agreement").

(Declaration of Ryan Miller ("Miller Dec.") at attached hereto as **Ex. B,** at ¶ 3 and Ex. 8.) The 2013 Miller Agreement was executed by Ryan Miller individually and all obligations therein were assumed and agreed to by Ryan Miller individually.  (*Id.* at ¶ 4).  The 2013 Miller Agreement contains no language, express or otherwise, that it was made for the benefit of a third-party beneficiary or could be enforced by any third-party beneficiary. (*Id.* at ¶ 5).

The 2013 Miller Agreement was terminated in 2014 when MillerTime Medical, Inc.[2] ("MTM") entered into an Independent Contractor Agreement dated January 1, 2014 ("2014 MTM Agreement") for sale of NuVasive products in central Florida but with an amended commission structure from the 2013 Miller Agreement. (*Id.* at **Ex. 9.**) The 2014 MTM Agreement identifies Absolute Medical, Inc. as the "distributor" but was never executed by Absolute Medical, LLC or Absolute Medical, Inc. The 2014 MTM Agreement specifically identifies MillerTime Medical, Inc. as the contracting party or "salesperson", was executed by Ryan Miller on behalf of MTM, was solely performed by MTM, all commission payments

---

[2]Ryan Miller is an officer of MTM. MTM is a Florida for profit company that was properly formed and organized with the Florida Secretary of State in 2010.  MTM filed annual reports as required from 2011 through 2019.  MTM maintains its own business office, obtained its own federal tax identification number, files its own tax returns, has its own bank accounts and has properly identified its registered agent. MTM is a separate and distinct legal entity under Florida law. (Miller Dec. attached as **Ex. B** at ¶ 2 and Ex. 7.)

thereunder were made solely to MTM, all taxes from the payment of commissions were claimed and reported solely by MTM, and all obligations therein were assumed and agreed to solely by MTM. (*Id.* at ¶ 7.) The 2014 MTM Agreement terminated no later than December 31, 2014 pursuant to section 3.1 as MTM did not receive a thirty (30) day written notice of renewal from the Distributor as set forth therein. (*Id.* at ¶ 9).

MTM entered into an Independent Contractor Agreement dated January 1, 2015 ("2015 MTM Agreement") for the sale of NuVasive products in central Florida but with an amended commission structure from the 2014 MTM Agreement. (*Id*. at Ex. 10). The 2015 MTM Agreement identifies Absolute Medical, Inc. as the "distributor" but was never executed by Absolute Medical, LLC or Absolute Medical, Inc. (*Id.* at ¶ 10). The 2015 MTM Agreement specifically identifies MillerTime Medical, Inc. as the contracting party or "salesperson", was executed by Ryan Miller on behalf of MTM, was solely performed by MTM, all commission payments thereunder were made solely to MTM, all taxes from the payment of commissions were claimed and reported solely by MTM, and all obligations therein were assumed and agreed to solely by MTM. (*Id.* at ¶ 11). The 2015 MTM Agreement terminated no later than December 31, 2015 pursuant to section 3.1 as MTM did not receive a thirty (30) day written notice of renewal from the Distributor as set forth therein. (*Id*. at ¶ 13).

8

MTM entered into an Independent Contractor Agreement dated January 1, 2016 ("2016 MTM Agreement") for the sale of NuVasive products in central Florida but with an amended commission structure from the 2015 MTM Agreement. (*Id.* at Ex. 11). The 2016 MTM Agreement identifies Absolute Medical, Inc. as the "distributor" but was never executed by Absolute Medical, LLC or Absolute Medical, Inc. (*Id.* at ¶ 14.) The 2016 MTM Agreement specifically identifies MillerTime Medical, Inc. as the contracting party or "salesperson", was executed by Ryan Miller on behalf of MTM, was solely performed by MTM, all commission payments thereunder were made solely to MTM, all taxes from the payment of commissions were claimed and reported solely by MTM, and all obligations therein were assumed and agreed to solely by MTM. (*Id.* at ¶ 15.) The 2016 MTM Agreement terminated on December 31, 2015 pursuant to section 3.1 and was not renewed as MTM did not receive a thirty (30) day written notice of renewal from the Distributor as set forth therein. (*Id.* at ¶ 17.)

Absolute Medical presented MTM with an Independent Contractor Agreement dated January 1, 2017 ("Proposed 2017 MTM Agreement") for the sale of NuVasive products in central Florida but with an amended commission structure from the 2016 MTM Agreement. (*Id.* at Ex. 12.) Neither MTM nor Ryan Miller individually ever executed the Proposed 2017 MTM Agreement as they objected to

the restrictive covenants set forth therein and communicated this objection directly to Absolute Medical. (*Id.* at ¶ 18.)

MTM informed Absolute Medical, LLC that it would no longer be selling NuVasive products in Florida in an email dated November 30, 2017. At the time of the resignation email, MTM was not subject to any restrictive covenants with Absolute Medical, LLC as it had refused to sign the Proposed 2017 MTM Agreement, and the 2016 MTM Agreement remained unsigned by Absolute Medical, LLC, was identified as being with Absolute Medical, Inc. and according to section 3.1 terminated on December 31, 2015 with all remaining restrictive covenant requirements expired. At the time of the November 30, 2017 resignation email, Ryan Miller was not subject to any restrictive covenants from Absolute Medical, LLC, NuVasive or Absolute Medical, Inc.  (*Id.* at ¶ 19).

## Absolute Medical

In July 2017, NuVasive breached the terms of the 2017 Distributorship Agreement by reducing part of Absolute Medical's exclusive territory and directly hiring key sales representatives away from Absolute Medical to promote NuVasive's products within the new annexed territory. (Doc. 38-1, at ¶ 6.) Based on the loss of revenue from this annexed territory along with the loss of key sales representatives and clients, Absolute Medical determined it was no longer financially feasible to continue selling NuVasive's products. (Doc. 38-1, at ¶ 7.) Absolute Medical

10

provided NuVasive with an email in November 2017, informing NuVasive of its desire to terminate the Distributorship Agreement and offering to assist with the transition. (Doc. 38-1, at ¶ 8.) After the termination email was sent in November 2017, Absolute Medical employed a total of two (2) sales representatives. (Doc. 38-1, at ¶ 9.) NuVasive responded by email on December 1, 2017, demanding Absolute Medical officially release its sales representatives to NuVasive and stating that Absolute Medical would not be receiving any commissions through the transition process. (Doc. 38-1, at ¶ 10.)

Absolute Medical permitted NuVasive to directly hire its two remaining sales representatives, Thad Bragulla and Brennan Burkhart, and offered to assist with the transition. (Doc. 38-1, at ¶ 11.) NuVasive did not respond to the request for transition assistance and formally terminated the Distributorship Agreement on December 13, 2017. (Doc. 38-1, at ¶ 12.) Thereafter, Absolute Medical began the process of dissolving and is not conducting any business, other than to wind down its affairs. (*Id.*)

## ARGUMENT AND CITATION TO AUTHORITY

I.  Standard of Motion for Summary Judgment.

Under Fed. R. Civ. P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c) mandates the entry of summary judgment

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

II.     <u>Hawley and Miller are entitled to summary judgment on NuVasive's claims for breach of contract arising from the 2013 Agreements.</u>

Hawley and Miller are entitled to judgment as a matter of law on NuVasive's claims for breach of the 2013 Hawley Agreement and 2013 Miller Agreement (hereinafter collectively, the "2013 ICAs") as set forth in paragraphs 98 through 105 of NuVasive's Second Amended Complaint. Doc. 188, pps. 19-20. NuVasive contends that it is entitled to recover "monetary damages against Hawley and Miller" for their alleged breach of the 2013 ICAs. Doc. 188, p. 20, ¶ 105. NuVasive also contends that it is entitled to temporary, preliminary, and permanent injunctions prohibiting Hawley and Miller from violating the 2013 ICAs. *Id.*

This entire theory of recovery, however, fails as matter of law due to NuVasive's lack of standing to enforce the 2013 ICAs as NuVasive is not a party to same. In Florida, someone who is not a party to a contract may not sue for breach of contract. *DeCarlo v. Griffin,* 827 So. 2d 348, 351-352 (Fla. 4th DCA 2002). That rule applies

even where that person or entity receives incidental or consequential benefit from the contract. *Id.* A third party may only seek to enforce a contract where it is an intended third-party beneficiary, meaning that the parties to the contract, or the contract itself, clearly expresses that the primary intent is to directly benefit the third party. *Id.* Likewise, a third party seeking to enforce the terms of a restrictive covenant must be expressly identified as a third-party beneficiary of the contract and the contract must expressly state that the restrictive covenant was for the benefit of such party. Fla. Stat. § 542.335(1)(f)(1).

Here, NuVasive is not a party to the 2013 ICAs that it is now attempting to enforce. *See* Hawley Dec. attached as **Ex. A**, at ¶¶ 3-5, and Ex. 2; Miller Dec. attached as **Ex. B**, at ¶¶ 3-5, and Ex. 8. The 2013 ICAs are with Absolute Medical, LLC, and do not refer to NuVasive. *Id.* The 2013 ICAs do not contain a third-party beneficiary clause where NuVasive is expressly identified or that expressly states that the restrictive covenants of the 2013 ICAs are for the benefit of NuVasive. *Id.* NuVasive therefore lacks standing to enforce the terms of the 2013 ICAs and is not the real party in interest to pursue these claims because it is not a party or a third-party beneficiary to the contracts. Accordingly, NuVasive's breach of contract claims fail as a matter of law to the extent they are based on the 2013 ICAs.[3]

---

[3] Hawley and Miller are further entitled to judgment as a matter of law on NuVasive's claims for breach of the 2013 ICAs inasmuch as the 2013 ICAs were terminated when Hawley and Miller transitioned to new Independent Contractor

III.   <u>Hawley and Miller are entitled to summary judgment on NuVasive's</u>
<u>claims for breach of contract under the 2016 Agreements with their</u>
<u>corporate entities.</u>

a.   *Hawley and Miller are entitled to summary judgment on any claims*
*based on the 2016 ICAs as these claims were not asserted in the*
*Complaint and are raised for the first time at the summary judgment*
*stage.*

To the extent that NuVasive's breach of contract claims are based on the 2016

Hawley Med. Agreement and 2016 MTM Agreement (collectively, the "2016

ICAs"), these claims fail given NuVasive's failure to amend its Complaint to include

such a theory of recovery. Where a plaintiff seeks to recover based on two contracts,

two separate counts should be stated under the civil rules. *Feutz v. Massachusetts*

*Bonding & Ins. Co.,* 85 F. Supp. 418, 426 (D. Mo. 1949).  A claim of liability based

on a separate contract than one asserted in the complaint must be plead separately in

the Complaint if plaintiff seeks the court's consideration. *Id.* at p. 428. While a party

does not have to specify each and every possible legal theory of recovery, the

_____

Agreements in 2014 with Absolute Medical, Inc through their corporate entities.
Hawley Dec. attached as **Ex. A**, ¶¶ 6-7 and Ex. 3; Miller Dec. attached as **Ex. B** at
¶¶ 6-7 and Ex. 9. *See United Bonding Ins. Co. v. Southeast Regional Builders, Inc.,*
236 So. 2d 460, 462-463 (Fla. 1st DCA 1970); *Gilman v. Butzloff,* 155 Fla. 888, 891
(1945).

pleadings <u>must</u> at least implicate the relevant legal issues.  *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 62 (1st Cir. 1992). While a liberal pleading standard is encouraged by Fed. R. Civ. P. 8, plaintiffs are not authorized to raise new claims at the summary judgment stage. *Gilmour v. Gates, McDonald & Co.,* 382 F. 3d 1312, 1313 (11th Cir. 2004). Instead, where discovery reveals a new potential claim, the proper procedure is for the plaintiff to amend its complaint pursuant to Fed. R. Civ. P. 15(a). *Id.* at 1314-1315. *See also Klein v. L-3 Communs. Corp.,* 2013 U.S. Dist. LEXIS 15663, *40-42 (S.D. Ala. 2013) (a related claim FMLA interference claim based on a different legal theory cannot be raised for the first time in summary judgment motion); *O'Connor v. Carnahan,*2015 U.S. Dist. LEXIS 143090, *35-36 (N.D. Fla. 2015)(at summary judgment stage court could only consider the theories of liability plead in last amended complaint so that where the plaintiff relied on a similar, but new rule at summary judgment, motion was denied.); *Bentley Motors Corp. v. McEntegart,* 976 F. Supp. 2d 1297, 1310 (M.D. Fla. 2013) (where plaintiff failed to raise common law trademark infringement claim in complaint, it was precluded from summary judgment even though new claim involved similar burdens of proof).

Here, NuVasive is precluded from basing its theory of recovery for breach of contract against Hawley and Miller on the 2016 ICAs as this was raised for the first

at the summary judgment stage.[4] NuVasive failed to amend its complaint to include these new contracts and new legal theories despite the amended case management order entered by the Court on or about August 7, 2019. *See gen.* Doc. 193. As addresssed *supra,* NuVasive is clearly precluded from asserting entirely new claims and legal theories at the summary judgment stage. Accordingly, to the extent that its breach of contract claim is based on the 2016 ICAs, its claims fail as a matter of law.

      b. *Defendants are entitled to summary judgment as to the 2016 ICAs inasmuch as Hawley and Miller are individuals separate and distinct from their corporate entities.*

NuVasive is precluded from recovering on a breach of contract theory from Hawley and Miller as individuals under the 2016 ICAs entered into by Hawley Med, LLC and MillerTime, Inc. because they are not parties to the contracts.  It is a basic concept of law that corporations are separate legal entities from their owners or

---

[4] NuVasive filed a Partial Summary Judgment Motion on October 15, 2019 asserting for the first time that (1) it is entitled to recover on the 2016 ICAs and that (2) Hawley and Miller are personally liable under the 2016 ICAs. *See gen.* Doc. 195. NuVasive's original complaint filed on December 29, 2017 does not mention or attache the 2016 ICAs and the count for breach of contract against Hawley and Miller is based solely on the 2013 ICAs. Doc. 1. NuVasive had copies and was aware of the 2016 ICAs no later than June 2018 as these documents were produced in discovery to NuVasive, were identified by Hawley and Miller in written discovery responses and were used by both parties as Exhibits at the injunction hearing on June 28, 2018. Docs.79, 81, 85, and 86. Over a year after possessing the 2016 ICAs, NuVasive filed its Second Amended Complaint on July 30, 2019 and it does not mention or attach the 2016 ICAs and the breach of contract count remained solely based on the 2013 ICAs. Doc. 188.

officers. "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Cedric Kushner Promotions, Ltd. V. King,* 533 U.S. 158, 163 (2001). "A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Podormingo,* 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). For that reason, officers or owners are not liable for corporate acts simply because of their official relationship to the company. *Taylor v. Wellington Station Condo. Ass'n, Inc.,* 633 So. 2d 43, 45 (Fla. 5th DCA 1994).[5]

In the instant case, the 2016 ICAs expressly name Hawley Med, LLC or Miller Time Medical, Inc. as the "salesperson" under the contract. (Hawley Dec. attached as Ex. A at Ex. 5; Miller Dec. attached as Ex. B at Ex. 11.) Hawley and Miller individually are not identified or directly referred to anywhere in these contracts. (*Id.*) While Hawley and Miller signed the 2016 ICAs, they did so as the authorized representatives of each corporate entity and did not intend or agree to be individually

---

[5] Florida accepts this fundamental concept and Fla. Stat. § 605.0304(1) provides that a "debt, obligation or other liability of a limited liability company is solely the debt, obligation, or other liability of the company. A member or manager is not personally liable, directly or indirectly of the company solely by reason of being or acting as a member or manager." Similarly, a shareholder or director is not personally liable for damages absent a breach of duty or impropriety. *See* Fla. Stat. § 607.0831.

17

bound. (*Id.*) Thus, Defendants are entitled to judgment as a matter of law on any claims of individual liability under the 2016 ICAs.

   c.   *Hawley and Miller are entitled to judgment as a matter of law as to the 2016 ICAs as this court may not fill in the blanks to change the deficiencies in the contract as written.*

This Court is precluded from re-writing the parties' contract to give a different legal effect than that expressed within the four corners of the contracts themselves. Hawley and Miller are entitled to judgment as a matter at law inasmuch as the 2016 ICAs have a blank space where the individual "Principal" could have been identified. (Hawley Dec. attached as Ex. A at Ex. 5; Miller Dec. attached as Ex. B at Ex. 11.) NuVasive argues the 2016 ICAs bind the individual "Principal" where the "Salesperson" is an entity. Section 4.1 of the 2016 ICAs attempts to provide joint and several liability to both the named entity and the individual "Principal" identified in the introductory paragraph. (Hawley Dec. attached as Ex. A at Ex. 5; Miller Dec. attached as Ex. B at Ex. 11.) However, in both 2016 ICAs, the space wherein the individual "Principal" should have been identified were left intentionally blank. (Hawley Dec. attached as Ex. A at Ex. 5; Miller Dec. attached as Ex. B at Ex. 11.)

It is well settled in Florida, "courts may not rewrite a contract to interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident

bargain." *Home Development Co. v. Bursani,* 178 So. 2d 113, 117 (Fla. 1965) citing

to *Beach Resort Hotel Corporation v. Wieder,* 79 So. 2d 659 (Fla. 1955). Thus, when

competent parties put their agreement into writings to create a binding obligation, it

is presumed that the writing itself is the best evidence of what they meant. *Bursani,*

at p. 118. "As a basic proposition of law, clear and unambiguous language of a

contract should be given no meaning other than that expressed therein and should be

enforced in accordance with its terms. *Board of Public Instruction v. Fred Howland,*

*Inc.,* 243 So. 2d 221, 223 (Fla. 3rd DCA 1963).[6]

   In the instant case, the introductory paragraph of the 2016 ICAs include a

blank space for the parties to fill in themselves in order to identify an individual

"Principal" who is to be bound jointly with the signing entities. (Hawley Dec.

attached as Ex. A at Ex. 5; Miller Dec. attached as Ex. B at Ex. 11.) However, in

both 2016 ICAs, the blank space was left empty. (Hawley Dec. attached as Ex. A at

---

[6] Where any ambiguities are found, such ambiguity "must exist on the face of the document itself before extrinsic matters may be considered by the court." *Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.,* 364 So. 2d 15, 17 (Fla. 4th DCA 1978). Moreover, the existence of an integration or merger clause is a highly persuasive statement that the parties intended for the written agreement to be the final statement of their intent and to preclude parol evidence to vary the terms as written. *Jenkins v. Eckerd Corp.,* 913 So.2d 43, 53 (Fla. 1st DCA 2005). S*ee also Florida School-Book Depository, Inc. v. Liddon*, 114 Fla. 149, 152 (1934) (a written contract with a literal blank space for the parties to supply a name held unenforceable as it would amount to the court's reformation of a material part of the obligation that the parties had a duty to make themselves.)

Ex. 5; Miller Dec. attached as Ex. B at Ex. 11.) This is a patent ambiguity and parol evidence may not be used to explain the deficiency. *See Liddon,* at p. 152. Thus, this Court is precluded from looking at evidence outside the four corners of the 2016 ICAs to identify a party to *post hoc* bind to the contracts. Accordingly, for this additional reason, Defendants Hawley and Miller are entitled to judgment as a matter of law as to the 2016 ICAs.

     d.  *Hawley and Miller are entitled to summary judgment inasmuch as the 2016 ICAs are subject to strict construction pursuant to Fla. Stat. § 542.335.*

Fla. Stat. § 542.335(1)(a) provides that a court may not enforce a restrictive covenant "unless it is set forth in a writing signed by the person against whom enforcement is sought". While it is true that Hawley and Miller's signatures are affixed to the 2016 ICAs, it is disingenuous at best to argue that they are therefore individually bound. As discussed extensively, *supra,* individual officers, owners, or directors are separate and distinct from their corporation.  The signatures of Hawley and Miller are clearly corporate signatures as evidenced by the reference to their "title" within the companies. (Hawley Dec. attached as Ex. A at Ex. 5; Miller Dec. attached as Ex. B at Ex. 11.) As such, to the extent that NuVasive seeks to recover against Hawley and Miller individually simply because they affixed their signature as corporate representatives, the argument must fail.

IV.   <u>Hawley and AMS are entitled to summary judgment on NuVasive's claim of conversion.</u>

NuVasive's claim for conversion is based on its theory that Hawley, or some Absolute Medical Systems, LLC ("AMS") representative, took possession of a custom instrument on May 24, 2018 at Florida Hospital Orlando that was subsequently sterilized and prepared to be used in surgery." Doc. 188, p. 13, at ¶ 62. NuVasive, however, produces no evidence to support this theory and its claim must fail. A conversion lies when a party wrongfully asserts dominion over another persons' property, essentially it "deprives another of his property permanently or for an indefinite time." *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.,* 125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000) citing to *Burger King Corp. v. Austin,* 805 F. Supp. 1007, 1012 (S. D. Fla. 1992). Thus, the three necessary elements to establish conversion are (1) a wrongful act of dominion (2) over another's property that (3) is inconsistent with their ownership. *Star Fruit Co. v. Eagle Lake Growers, Inc.,* 33 So. 2d 858, 860 (Fla. 1948).

In the instant case, NuVasive contends that Dave Hawley or AMS converted and utilized custom instrumentation belonging to NuVasive in a surgery at Florida Hospital Orlando on or about May 24, 2018.  Doc. 188, at ¶¶ 62, 106-108. In support of this claim NuVasive attached the declaration of one if its sales representatives, Thad Bragulla, alleging that he discovered the custom NuVasive instrumentation in

a wrapped box outside a surgery room at Florida Hospital Orlando. (Doc. 38-1, at ¶ 11.) However, during his deposition, Mr. Bragulla admitted that he had no knowledge or evidence of Dave Hawley or anyone else affiliated with AMS possessing, setting up, converting or utilizing the custom NuVasive instruments in any surgical procedure.  *See* Thad Bragulla Deposition, attached as **Ex. D**, at pg. 46, lines 13-21; pg. 47, lines 16-18; pg. 52, lines 17-24; pg. 59, lines 8-14). Furthermore, NuVasive admitted in its 30(b)(6) deposition that it has no evidence that either Dave Hawley (or AMS) used or converted the custom NuVasive instrumentation photographed by Thad Bragulla on or about May 24, 2018 at the Florida Regional Hospital Orlando. (*See* Deposition of John A. English, NuVasive 30(b)(6) representative pg. 19, lines 6-19 attached as **Ex. C.)**  In stark contrast, Hawley confirms neither he or anyone with AMS ever "possessed, used, copied, prepared for surgery or converted any NuVasive instrument or equipment for personal or business use". Hawley Dec. attached as Ex. A, at ¶ 20. With no evidence to support its theory, NuVasive's conversion claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants Hawley and Miller request summary judgment in their favor on NuVasive's breach of contract claims. Likewise, Hawley and AMS request summary judgment in their favor on NuVasive's conversion claim.

The evidence in the record does not establish NuVasive's right to recover on either claim and summary judgment in favor of Defendants is proper.

Dated:  October 18, 2019

Respectfully

*/s/ Bryan E. Busch*
Bryan E. Busch, Esq. (*Pro Hac Vice*)
bb@bsms.law
BUSCH, SLIPAKOFF, MILLS &
SLOMKA, LLC
2859 Paces Ferry Road SE
Suite 1700
Atlanta, Georgia 30339
(404) 800-4088 (Telephone)
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 18, 2019, I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system. I further certify that I electronically transmitted a true copy to:

Diana N. Evans, Esquire
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
dnevans@Bradley.Com
*Attorney for NuVasive*

Christopher W. Cardwell, Esquire
Pro Hac Vice
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
ccardwell@gsrm.Com
*Attorney for NuVasive*

Chris Mills, Esq.
Busch, Slipakoff, Mills & Slomka, LLC
2859 Paces Ferry Road SE
Suite 1700
Atlanta, Georgia 30339
cm@bsms.law
*Attorney for Defendants*

*/s/ Bryan E. Busch*
Bryan E. Busch, Esq. (*Pro Hac Vice*)
bb@bsms.law

24

## <u>EXHIBIT INDEX</u>

Exhibit A-    Declaration of Dave Hawley and All Exhibits Thereto

Exhibit B-    Declaration of Ryan Miller and All Exhibits Thereto

Exhibit C-    Deposition Transcript of NuVasive, Inc. Corporate Rep

Exihibit D-   Deposition Transcript of Thad Bragulla