## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| NUVASIVE, INC. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Civil Case No. |
| | )  6:17-cv-2206-Orl-41GJK |
| | ) |
| ABSOLUTE MEDICAL, LLC, | ) |
| ABSOLUTE MEDICAL SYSTEMS, | ) |
| LLC, GREG SOUFLERIS, DAVE | ) |
| HAWLEY, and RYAN MILLER | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

## NUVASIVE, INC.'S RESPONSE IN OPPOSITION TO TO DEFENDANTS' MOTION TO EXCLUDE

By and through its counsel of record, NuVasive, Inc. ("NuVasive"), responds in opposition to Defendants' Motion to Exclude ("Motion") (Doc. 309) by stating:

## I.  INTRODUCTION

Defendants' Motion improperly seeks to exclude the testimony of NuVasive's damages expert because they disagree with certain assumptions she makes and the conclusions she reaches. These criticisms, valid or invalid, do not afford Defendants any relief pursuant to *Daubert* and its progeny. Even Defendant's rebuttal witness concedes Decker's methodology is reliable. And her testimony satisfies *Daubert*'s

requirement that it be helpful to the trier of fact in calculating the damages NuVasive

incurred due to the Defendants' wrongful acts.

## II.   STATEMENT OF RELEVANT FACTS

On December 16, 2019, NuVasive disclosed Misty Decker, CPA, ABV, CRE,

CGMA, CFF, CLP ("Decker") as its expert witness in this litigation pursuant to

Federal Rule of Civil Procedure 26(a)(2).   NuVasive's disclosure contained

Decker's written report and all of the information required by Federal Rule of Civil

Procedure 26(a)(2)(B) (the "Decker Report").   Decker gave her deposition in this

proceedings on September 16, 2020.   As she testified she would in her deposition,

Decker supplemented her report on August 9, 2021 (the "Decker Supplement"),

which NuVasive provided to opposing counsel that day.[1]   (Decker Supplement,

attached as **Exhibit 1**).

### A. Decker's Deposition Testimony & The Decker Supplement.

Decker opened her deposition, after initial formalities, by confirming that she

intended to update the Decker Report as the parties approached a trial in this matter.

(Dep. Decker, attached as **Exhibit 3**, 7:11–22).   Then as, to the data she utilizes in

---

[1] NuVasive's counsel informed Defendants' counsel, via email, on Friday, March 19, 2021, that the Decker Supplement was forthcoming. As the Court continued the trial of this matter from April 12, 2021, to November 29, 2021 during the March 25, 2021, telephonic status conference (Doc. 286), the Decker Supplement was tabled to coincide with the rescheduled trial date so as to include data that is as up to date as possible. The parties have agreed to complete Decker's deposition about her updated conclusions in September 2021. (McFarland email thread with Busch, attached as **Exhibit 2**).

forming her opinions, Decker testified that it is incumbent on her to use the "best record of evidence" and, in doing so, she utilized the three-year historical sales data associated with the Defendants, "which is customary . . . in our industry" when undertaking a lost profits analysis. (**Id.** at 20:10–22:15).[2]  Indeed, throughout her testimony, Decker reiterated that utilizing NuVasive's historical sales data is appropriate in calculating the lost profits that would have inured to NuVasive, "but for" the wrongful acts of Defendants. (**See id.** at 24:25–25:24).  Decker may have corroborated her analysis with Defendants' post-NuVasive sales figures had Defendants provided complete and reliable data—which they did not—but it is not necessary for Decker's analysis. (**Id.** at 24:25–26:6).

Analyzing Defendants' three-year historical trend is "normal and expected" in Decker's industry.  (**Id.** at 49:7–51:25).  This three-year historical trend reflected overall positive sales growth prior to Defendants' departure from NuVasive.  (**Id.** at 49:14–25).  Further, contrary to Defendants' contention, Decker investigated the one-year decline in Hawley's NuVasive's sales and, as noted on page 7 of the Decker Report and pages 13-14 of the Decker Supplement, reasonably concluded that

---

[2] In the context of lost profits accruing from Hawley's bad acts, Decker explained, specifically how this historical data is reliable and appropriate in her industry because he was selling "the same types of products, the same types of surgeries, the same doctors in the same hospitals he was doing before with NuVasive, he's now doing with Alphatec and other suppliers." (**Exhibit 3**, 23:14–18).

decline would not continue. (**Id.** at 52:1–53:20, Ex. 9 at p. 7; **Exhibit 1**, pp. 13-14).[3] Respectfully, the Decker Report and the Decker Supplement itemize the extensive information Decker relied upon and considered in formulating her opinions in this case, and defeat any claim that (as Defendant's allege) Decker "blindly" accepted NuVasive's opinions. (**Exhibit 3**, Ex. 9 at Ex. C; **Exhibit 1** at Ex. C). To the contrary, they establish that Decker specifically investigated and considered alternative causal factors and risks such as increased competition, introduction of new products in the market, attrition rate of surgeons, and patient demand. (**Exhibit 3**, 46:4–47:7; **Exhibit 1**, pp. 13-14). Indeed, at every opportunity, Decker supported her opinions by the "totality" of the "documentary" evidence she reviewed. (**Id.** at 19:9–15, 39:8–17, 54:24–56:8, 57:24–58:9, 62:19–64:10, 65:2–66:1, 68:2–15, 71:10–20, 83:4–14).

## B. Paul Dopp's Testimony.

While he disagrees with Decker's conclusions, Defendants' proffered rebuttal witness, Paul D. Dopp ("Dopp"), concedes that Decker's testimony is admissible. Critically, Dopp testified that Decker's methodology is acceptable, she performed it appropriately, and that lost profits are the correct measure of damages. (**Exhibit 4**,

---

[3] In fact, Defendants' proffered rebuttal expert conceded in his deposition that Decker's analysis on this issue may be appropriate if you agree with the assumptions she made in performing that analysis. (Dep. Dopp, attached as **Exhibit 4**, 80:19–81:7). He also testified that utilizing only one year when calculating trends is not appropriate. (**Id.** at 75:12–76:9).

90:24–91:13).  The issue Dopp takes with Decker's analysis is in the assumptions she makes, not her methodology itself.[4]  (**Id.**)  These criticisms arise almost exclusively out of the fact that her projected loss revenues exceed Defendants' actual sales of Alphatec's competitive products. The fatal flaw in this critique is that Dopp admits that if Defendants sold products in addition to Alphatec's (as they did but he did not consider) it would affect his entire analysis.  (**Id.** at 63:6–15).[5]  Regardless, the proper venue to test these criticisms is upon cross-examination.

## C. <u>Defendants' Failure To Produce Requested Information</u>.

Defendants also erroneously claim that Decker rejected the rudimentary Alphatec sales figures Dopp relied upon.  (See e.g., Dep. Decker, **Exhibit 3**, 31:7–32:4; Defs.' Mot., Doc. 309, p. 8 ("Decker . . . ignores the available actual sales data in its entirety. . .")).  First, this flatly misstates Decker's testimony in that she could consider Defendants' actual post-resignation sales data if that data was complete, but since it was woefully inadequate, NuVasive's historical sales data remains the best evidence on which to conduct her analysis.  (Dep. Decker, **Exhibit 3**, 82:19–83:3).  However, even ignoring Defendants' mischaracterization of Decker's testimony, their position must be rejected because NuVasive requested complete

---

[4] Indeed, Dopp disagreed with specific assumptions of Decker on multiple occasions in his deposition. (E.g., **Exhibit 4**, 70:3–21, 75:21–76:9).

[5] Dopp further testified that actual post-departure sales numbers are only relevant—contrary to Defendants' arguments—when a defendant transfers all of his or her sales from the plaintiff to a single new entity, which is not the case *sub judice*. (**Exhibit 4**, 63:6–15).

sales data (including records of all competitive sales they made) from the Defendants who refused to provide it:

- On August 6, 2018, NuVasive asked Absolute Medical Systems to identify all (i) medical device or biologic companies it represents; (ii) entities, that paid it financial compensation; (iii) its customers including the products provided to those customers; and (iv) its sales;

- On September 20, 2018, Absolute Medical Systems objected to each of these interrogatories refusing to provide any responsive information (AMS' Resp. Interrog., attached as **Exhibit 5**, ¶¶ 2, 4, 7, 10);[6]

- NuVasive requested Absolute Medical Systems produce all "Bill Sheets" or other requests for payment related to Alphatec, NovaBone, Osseus Fusion Systems, LLC, Orthofix, Inc., and K2M, Inc. on December 27, 2018; and

- Absolute Medical Systems responded on March 1, 2019, stating that it "has no documents in response to this request" (AMS' Resp. 2d Req. Prod., attached as **Exhibit 6**, ¶ 2).

Since Defendants failed to produce the requested information, NuVasive was forced to seek that information and documents via third-party subpoenas. Recently, on July 30, 2021, NuVasive via a subpoena *duces tecum* NuVasive served on Surg.io LLC ("Surg.io")[7] in March 2019, received, without limitation, 4,292 pages of Absolute Medical Systems "Bill Sheets" for all of its sales representatives, including

---

[6] This Court later compelled Absolute Medical Systems to supplement these responses, but documents later produced by non-parties reveal this supplementation was incomplete.

[7] Surg.io provides services to distributors like Absolute Medical/Absolute Medical Systems to track all of their sales in minute detail including, surgery date, surgeon, sales representative, surgical procedure, product manufacturer, and itemized revenue from each sale. This is the program that Absolute Medical Systems' administrator testified Defendants were utilizing "in order to streamline [their] processes." (Doc. 260-3, 124:21–25, 127:13–24, Ex. 28; Doc. 260, 12).

Soufleris, Hawley, and Miller.  NuVasive attaches a representative sample of these Absolute Medical Systems Bill Sheets as **Exhibit 7**.  As a result of this production, the Decker Supplement explains how the Surg.io data (that Defendants failed to produce) corroborates the historical data on which she relies.  (**Exhibit 1**, pp. 22-23).  Even Dopp conceded at his September 16, 2020, deposition that Defendants would "typically" be in possession of the data contained in the Surg.io Bill Sheets and be able to produce it upon request.  (**Exhibit 4**, 63:21–64:14).  Defendants failed to produce any of these documents, and they cannot now complain that the information available to Decker was incomplete.[8]

### III.   LAW AND ARGUMENT

Defendants' argument to exclude Decker's opinions should be rejected—and the Motion denied—because her methodology is sound, reliable, and she performed it accurately (as Dopp concedes).  Likewise, Decker's opinions will assist the fact finder in calculating any damages to which NuVasive is entitled.

#### A. *Daubert* Motions Under Federal Rule Of Evidence 702.

Federal Rule of Evidence 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other

---

[8] NuVasive notes that its counsel objected to lines of questioning related to this missing sales information at Decker's deposition because NuVasive requested it from Defendants who failed to provide it. (Dep. M. Decker, **Exhibit 3**, 31:16–23, 38:20–25).

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).  Pursuant to *Daubert*, "the determination of admissibility is 'uniquely entrusted to the district court,' which is given 'considerable leeway in the execution of its duty.'"  *Int'l Iron, LLC v. Kubota Tractor Corp.*, No. 6:18-cv-2086-Orl-41LRH, 2021 U.S. Dist. LEXIS 13618, at *3 (M.D. Fla. Jan. 11, 2021) (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  The party putting forth the expert must establish his or her admissibility by a preponderance of the evidence.  *Id.* at *3-4 (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1998)).  The Eleventh Circuit "distilled" this test for admissibility of an expert into three elements: (1) is the expert qualified; (2) is his or her methodology reliable; and (3) will his or her testimony assist the trier of fact."  *Id.* at *4 (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).  These are often

referred to as the qualification, reliability, and helpfulness requirements of a *Daubert* analysis. *See U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

That said, in the wake of *Daubert*, "the rejection of expert testimony is the exception rather than the rule." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting Fed. R. Evid. 702 Advisory Committee's Note (2000)). "[C]ourts must remain chary not to improperly use the admissibility criteria to supplant a plaintiff's right to a jury trial." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *Daubert*, 509 U.S. at 596)). As this Court recently stated, "[i]t is not the role of the district court to make determinations as to the persuasiveness of the proposed evidence; rather, the inquiry focuses on the methodology the proposed expert used in reaching his [or her] conclusions." *Ballesteros v. Wal-Mart Stores East, LP*, No. 2:19-cv-881-SPC-NPM, 2021 U.S. Dist. LEXIS 102939, at *5 (M.D. Fla. Jun. 1, 2021) (citing *Quiet Tech.*, 326 F.3d at 1341)).

## B. <u>The Court Should Deny Defendants' Motion Because Decker's Methodology Is Sound, As Confirmed By Defendants' Own Proffered Expert</u>.

The Court should deny Defendants' Motion because Decker's opinions satisfy *Daubert*'s requirement that her methodology is reliable and is readily accepted in

the Eleventh Circuit.  In this Circuit, "[t]here are two generally recognized methods of proving lost profits: (1) the before and after theory and (2) the yardstick test." *Marshall Auto Painting & Collision, Inc. v. Westco Eng'g, Inc.,* No. 6:02-cv-109-Orl-22KRS, 2003 U.S. Dist. LEXIS 27553, at \*21-22, n.46 (quoting *G.M. Brod. & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1538 (11th Cir. 1985)).  The "before and after" method—which Decker utilizes—compares the plaintiff's earnings record before and after the alleged bad acts.  *Id.*  "There can be little dispute that these methods are generally accepted in the economic community."  *B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, No. 1:09-cv-211-GRJ, 2012 U.S. Dist. LEXIS 73773, at \*9 (N.D. Fla. May 25, 2012).  Under this method, utilizing NuVasive's historical sales data is appropriate in Decker's methodology.  *Swierczynski v. Arnold Foods Co.*, 265 F. Supp. 2d 802, 811 (E.D. Mich. 2003) (when utilizing the before and after method "historical performance is a sufficiently reasonable basis for the computation of lost profits"); *see also Bluesky Greenland Envtl. Solutions,* LLC, v. 21st Century Planet Fund, LLC, No. 12-81234-CIV-HURLEY, 2015 U.S. Dist. LEXIS 180847, at \*3 (S.D. Fla. Feb. 2, 2015) (citing *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 943 F.2d 1511, 1518 (11th Cir. 1991) (lost profits may be recovered based on evidence that is indirect and based on estimates and assumptions, so long as the assumptions rest on adequate data)).

Here, it is undisputed that Decker utilized the before and after methodology in calculating NuVasive's lost profits.  Under Eleventh Circuit precedent, this is an appropriate methodology, and, indeed, Dopp concedes that Decker conducted the methodology correctly.  (**Exhibit 4**, 90:24–91:13).  Further, Decker's opinions are based upon sufficient facts and data, including NuVasive's historical sales data, which is the *sine qua non* of a before and after lost profits analysis under Eleventh Circuit precedent.  This data coupled with the other documentary evidence Decker considered—as detailed in her testimony, the Decker Report, and the Decker Supplement—confirms the reliability of her methodology.   Because Decker's before and after methodology is reliable, her opinions are admissible under *Daubert*, and the Motion should be denied.

While Defendants attempt to frame their Motion in the context of Decker's methodology—which is reliable—in actuality, they take issue with the assumptions Decker makes and the conclusions that she reaches.[9]  This is not an appropriate basis to exclude Decker's testimony, as detailed above, is supported by a reliable methodology.  *See* Fed. R. Evid. 702 Advisory Committee's Note (2000)[10]; *see also*

---

[9] Defendants' Freudian slips underscore this point since they criticize Decker's "assumptions" no less than five times in their Motion. (*See* Defs.' Mot., Doc. 309, pp. 6, 9-10).

[10] "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts.  The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the grounds that the court believes one version of the facts and not the other."

*Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1131 (M.D. Fla. 2007) ("[Movant's] arguments that [witness's] findings are speculative and lead to an unreliable estimate of worth are arguments as to the credibility of [witness's] findings rather than the general acceptance of his methods."). The facts of this matter—including those Decker considered and relied on—are hotly contested, but Defendants' "[c]hallenges to the accuracy or source of facts underlying [Decker's] opinion are challenges to its weight rather than its admissibility." *U.S. ex rel. S. Site & Underground*, No. 3:14-cv-919-J-PDB, 2017 U.S. Dist. LEXIS 230696, at *14 (M.D. Fla. Feb. 3, 2017) (denying motion to exclude) (compiling cases)[11]; *Pace v. Nat'l Union Fire Ins. Co.*, No. 1:12-cv-3096-AT, 2014 U.S. Dist. LEXIS 141908, at *20-21 (N.D. Ga. Aug. 21, 2014). Defendants are more than welcome to challenge Decker's assumptions upon cross-examination—against which NuVasive will certainly be prepared to defend—but those challenges are insufficient bases to exclude Decker's testimony at this point. *See Quiet Tech.*, 326 at 1341. Put simply,

---

[11] *See Adv. Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1363-64 (where expert calculated lost profits based on company's revenue and cost data without verifying the accuracy of underlying data, arguments went to testimony's weight rather than admissibility); *Quiet Tech.*, 326 F.3d at 1345 (where party argued not that methodology was improper but that specific numbers expert used were wrong, alleged flaws "impugn[ed] the accuracy of his results, not the general scientific validity of his methods"; identification of such flaws is the role of cross examination); *Primrose Op. Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its admissibility and should be left for the jury's consideration. . . . It is the role of the adversarial system, not the court, to highlight weak evidence.") (emphasis in original).

Decker utilized a reliable methodology.  She applied that methodology correctly, and even Defendants' proposed expert concedes this fact.  Defendants' challenges as to the facts and assumptions Decker considered in applying that methodology are properly tested in the crucible of cross-examination.  They cannot serve as a basis to exclude her testimony.  Because Decker's opinions satisfy the reliability prong of the Court's *Daubert* analysis, Defendants' Motion should be denied.

C. **Decker's Opinions Will Aid The Fact Finder In Determining The Damages NuVasive Incurred Due To The Contractual Breaches This Court Already Held Occurred.**

In the event that the trier of fact determines that NuVasive is entitled to damages due to Defendants' wrongful actions, Decker's testimony will certainly aid it in calculating those damages.  "Expert testimony is helpful 'if it offers something beyond the understanding and experience of the average citizen." *Ballesteros*, 2021 U.S. Dist. LEXIS 1029393, at *6 (quoting *U.S. v. Frazier*, 387 F.3d at 1262).  This requirement goes to the relevance of the expert's testimony, and it must "relate to an[] issue in the case." *Id.* (citing *Quiet Tech.*, 326 F.3d at 1347).  The requirement is "aptly described . . . as one of 'fit.'" *Id.* (quoting *Quiet Tech.*, 326 F.3d at 1347)).

Defendants' argument that Decker's opinions will not be helpful to the trier of fact defies reason.  To start, the complex calculations of NuVasive's lost profits, including the present discounted value thereof, is certainly outside the purview of an average citizen.  The Court previously held that: (i) Absolute Medical breached its

Sales Agreement with NuVasive; (ii) Absolute Medical Systems is a mere continuation of Absolute Medical (and therefore liable as its successor entity); and (iii) (if enforceable against them individually) Hawley and Miller breached their 2016 Agreements, which resulted in damages to NuVasive.  (Order, Doc. 290, pp. 57-58).  In light of these holdings, Decker's testimony will certainly assist the trier of fact in calculating those damages if NuVasive is entitled to them.  *See FC Online Mktg. v. Champions Fund, Inc.*, No. 8:13-cv-01713-T-27TBM, 2014 U.S. Dist. LEXIS 196282, at *6 (M.D. Fla. Nov. 14, 2014) (permitting a damages expert to testify when he was "simply providing the fact finder with the tools to calculate appropriate damages if the fact finder determines" that the plaintiff is entitled to any damages).  Decker's testimony "fits" the issues to be decided at the trial of this matter.  The trier of fact should be permitted to hear that testimony.

### IV.    CONCLUSION

In sum, Decker's opinions are admissible under Federal Rule of Evidence 702 and *Daubert* because her methodology is reliable as conceded by Defendants' proposed rebuttal witness.  Defendants are free to challenge Decker's assumptions and the facts she considered and relied upon, but the proper arena to assert those challenges—including purported lack of data Defendants willfully failed to produce—is on cross-examination.  Further, in the event the fact finder determines NuVasive is entitled to damages, Decker's testimony will assist it in calculating those

damages.  Finally, if necessary, the Court can *voir dire* Decker at the November 29, 2021, trial of this matter to resolve any remaining issues as to the admissibility of her testimony.

Dated: August 20, 2021                    Respectfully submitted,


                                          *s/ M. Thomas McFarland*
                                          R. Craig Mayfield (Fla. Bar No. 0429643)
                                          Cmayfield@bradley.com
                                          Diana N. Evans (Fla. Bar No. 98945)
                                          Dnevans@bradley.com
                                          Bradley Arant Boult Cummings LLP
                                          100 North Tampa Street, Suite 2200
                                          Tampa, Florida 33602
                                          Tel: (813) 559-5500
                                          Fax: (813) 229-5946

                                          Christopher W. Cardwell, Esq. (*pro hac vice*)
                                          ccardwell@gsrm.com
                                          Mary Taylor Gallagher, Esq. (*pro hac vice*)
                                          mtgallagher@gsrm.com
                                          M. Thomas McFarland, Esq. (*pro hac vice*)
                                          tmcfarland@gsrm.com
                                          GULLETT, SANFORD, ROBINSON &
                                          MARTIN, PLLC
                                          150 Third Avenue South, Suite 1700
                                          Nashville, TN 37201
                                          Tel: (615) 244-4994
                                          Fax: (615) 256-6339

                                          *Attorneys for Plaintiff, NuVasive, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2021, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.  The party or parties served are as follows:

Busch, Mills & Slomka, LLP

Bryan E. Busch
Email: bb@buschmills.com
Laura H. Mirmelli
Email: lm@buschmills.com
6400 Powers Ferry Road, N.E., Suite 391
Atlanta, GA 30339

Christopher Y. Mills
Email: cm@buschmills.com
319 Clematis Street, Suite 109
West Palm Beach, FL 33401

*Attorneys for Defendants*

*s/ M. Thomas McFarland*