UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**NUVASIVE, INC.,**

**Plaintiff,**

**v.**                                        **Case No. 6:17-cv-2206-CEM-GJK**

**ABSOLUTE MEDICAL, LLC,
GREG SOUFLERIS, DAVE
HAWLEY, ABSOLUTE
MEDICAL SYSTEMS, LLC,
RYAN MILLER, and BRYAN E
BUSCH,**

**Defendants.**

_____/

**ORDER**

THIS CAUSE is before the Court on the following motions: Defendants'

Motion for Partial Summary Judgment ("Defendants' MSJ," Doc. 308), to which

Plaintiff filed a Response (Doc. 323); Defendant Absolute Medical Systems, LLC's

("AMS") Motion for Summary Judgment ("AMS's MSJ," Doc. 312), to which

Plaintiff filed a Response (Doc. 322); Defendants' Motion to Bifurcate Trial

("Motion to Bifurcate," Doc. 311), to which Plaintiff filed a Response (Doc. 320);

Defendants' Motion to Exclude Expert Testimony of Misty L. Decker, CPA

("Motion to Exclude," Doc. 309), to which Plaintiff filed a Response in Opposition

(Doc. 321); and Defendants' Request for Oral Arguments (Doc. 310). For the reasons stated herein, all of the motions will be denied.

## I.   BACKGROUND

This case arises primarily from a contractual dispute between Plaintiff, a manufacturer of medical products and equipment, (Second Am. Compl., Doc. 188, at 3), and Defendant Absolute Medical, LLC ("AM"), which entered into an Exclusive Sales Representative Agreement (Doc. 60-7 at 3–27) with Plaintiff beginning in 2013. In 2017, Plaintiff and AM continued their relationship when they executed another Exclusive Sales Representative Agreement ("2017 Sales Agreement," Doc. 260-3, at 131–59). Defendant Greg Soufleris was the president and sole member of AM. (AM Dep., Doc. 260-1, at 4, 8, 10). Defendants Dave Hawley and Ryan Miller, each through their own company, were sales representatives for AM. (Soufleris Dep., Doc. 260-3, at 91–92; Hawley's 2016 Independent Contractor Agreement, Doc. 260-10, at 20; Miller's 2016 Independent Contractor Agreement, Doc. 260-11, at 20). Near the end of 2017, Soufleris "dissolve[d]" AM and created a "new entity," AMS, to "replac[e]" AM. (AMS EIN Email, Doc. 260-1, at 121; Doc. 260-1 at 66–67). Shortly after Soufleris formed the new company, Hawley and Miller began working for AMS. (Hawley Dep., Doc. 260-18, at 4, 8, 15–17, 46–49; Miller Dep., Doc. 260-20, at 11, 23–26, 28–29, 31–32).

Following termination of the parties' business relationship and formation of AMS, Plaintiff filed this lawsuit, which asserted nine counts in the Second Amended Complaint. (*See generally* Doc. 188). Counts I and II are breach of contract claims against AM; Count III is a breach of contract claim against AMS; Count IV is a breach of contract claim against Hawley and Miller; Count V is a conversion claim against Hawley and AMS; Count VI is a Florida Revised Limited Liability Company Act ("LLC Act") claim against Soufleris; Count VII pertains to piercing the corporate veil as to Soufleris for the actions of AM and AMS; Count VIII is a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim against all Defendants; and Count IX is a tortious interference claim against Soufleris. (*Id.* at 14–23).

Previously, pursuant to a "Dispute Resolution" clause in the 2017 Sales Agreement, (Doc. 260-3 at 145–46), the Court ordered Plaintiff and AM to "proceed to arbitration on Count II" and stayed "Counts III, to the extent that Plaintiff seeks monetary relief, VI, VII, VIII, and IX . . . pending arbitration." (May 31, 2019 Order, Doc. 178, at 5). During this time, Plaintiff moved for summary judgment as to Counts I, III, and IV. (*See generally* Pl.'s Mot. for Summ. J., Doc. 260). Hawley, Miller, and AMS ("Movant Defendants") moved for summary judgment as to Counts IV and V. (*See generally* Movant Defs.' Mot. for Summ. J., Doc. 257). The Court granted partial summary judgment to each side on certain undisputed material

facts and issues of law. (May 4, 2021 Order ("Summary Judgment Order"), Doc. 290, at 57–58). Arbitration has concluded, (*see generally* Final Award, Doc. 283-2), the stayed counts have been unstayed, and Defendants, with leave of the Court, filed the instant motions.

## II.   SUMMARY JUDGMENT MOTIONS

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1313–14 (11th Cir. 2007). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting

more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997) (citing *Anderson*, 477 U.S. at 248–49 (1986)); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[T]he proper inquiry on summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stitzel v. N.Y. Life Ins. Co.*, 361 F. App'x 20, 22 (11th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251–52). Put another way, a motion for summary judgment should be denied only "[i]f reasonable minds could differ on the inferences arising from undisputed [material] facts." *Pioch v. IBEX Eng'g Servs.*, 825 F.3d 1264, 1267 (11th Cir. 2016) (quoting *Allen*, 121 F.3d at 646).

## B. Analysis

### 1. *Defendants' MSJ*

Defendants move for summary judgment on Counts I, VI, VII, VIII, and IX. (Doc. 308 at 1). Before addressing the merits of Defendants' arguments, the Court will address a preliminary procedural issue as to Count I. As discussed above, the

Court previously granted in part AM's Motion to Compel Arbitration (Doc. 175), compelling arbitration of Count II and staying "Counts III, to the extent that Plaintiff seeks monetary relief, [and Counts] VI, VII, VIII, and IX." (Doc. 178 at 5). However, Count I was never stayed by the Court, and it was addressed in detail by the parties' previous summary judgment motions and the Court's Summary Judgment Order. (Doc. 290 at 25–27). The Court only granted leave to file a second round of summary judgment motions to consider the merits of the stayed counts and certainly not to reconsider arguments that could or should have been raised in the first round of summary judgment motions. (*See also* Reconsideration Order, Doc. 331, at 7–9 (discussing the merits of Defendants' same argument regarding Count I)). Therefore, the Court will deny Defendants' request for summary judgment as to Count I.

### a.    Count VI—LLC Act Claim against Soufleris

Count VI asserts an LLC Act claim against Soufleris. Specifically, Plaintiff alleges that Soufleris owed fiduciary duties to AM as its sole member, and Soufleris breached those duties when he dissolved AM and transferred all of AM's assets to AMS. (Doc. 188 at 20–21). The LLC Act provides that a manager or member of an LLC "is not personally liable for monetary damages to the [LLC], its members, or any other person for any statement, vote, decision, or failure to act regarding management or policy decisions . . . unless," "[t]he manager or member breached or

failed to perform the[ir] duties" and "[t]he manager's or member's breach of, or failure to perform, those duties constitutes" certain defined results. Fla. Stat. § 605.04093(1).

Soufleris's sole argument as to this count cites the arbitration Final Award and asserts that he is entitled to summary judgment because Plaintiff "failed to procure a judgment in its favor against Absolute Medical for its breach of contract claims." (Doc. 308 at 6). As explained in the Court's Reconsideration Order, the Final Award has no preclusive effect on the remaining claims in this case. (Doc. 331 at 7–9). Notably, the Final Award only considered AM's damages liability, while potential injunctive relief as to AM and *any* claims as to AMS were not considered by the arbitration panel. (Doc. 283-2 at 7 (stating that "[a]s a result of the pending federal action, and the orders entered in that case, the Panel in this arbitration is prohibited from making any findings concerning whether AMS is [AM]'s successor in interest or whether [AM] and AMS are the alter egos of Soufleris" and that "[t]he Panel is also, obviously, not able to make findings against any person or entity not a party to this arbitration," including AMS). Therefore, summary judgment will be denied as to Count VI.

          **b.**     <u>Count VII—Piercing the Corporate Veil against Soufleris</u>

Count VII asserts a claim for piercing the corporate veil of AM and AMS against Soufleris, arguing that the "Court should disregard the corporate form and

hold Soufleris personally liable for any judgment rendered against [AM] and/or AMS in this matter, and extend any injunctions it issues against them to Soufleris." (Doc. 188 at 22). "Under Florida law, the corporate veil will only be pierced to prevent fraud or injustice." *Eckhardt v. United States*, 463 F. App'x 852, 855 (11th Cir. 2012) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984)); *see also id.* ("Piercing the corporate veil is proper if the corporation 'is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.'" (quoting *Aztec Motel, Inc. v. Faircloth*, 251 So. 2d 849, 852 (Fla. 1971))). "To pierce the corporate veil in Florida, a claimant must establish: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Eckhardt*, 463 F. App'x at 855–56 (citing *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (per curiam)).

Once again, Soufleris's sole argument is that Plaintiff was not awarded damages by the arbitration panel, so this claim "is precluded as a matter of law."

(Doc. 308 at 8). However, Soufleris cites no legal authority explaining why the Final Award would have a preclusive effect on this claim. Therefore, for the same reasons discussed in the Reconsideration Order, (Doc. 331 at 7–9), and above, summary judgment will be denied on Count VII as well.

<u>c.</u>    <u>Count VIII—FDUTPA Claim against all Defendants</u>

Count VIII asserts a claim for violation of FDUTPA. FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. The elements comprising a claim for damages under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. GM Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Under FDUTPA, "a deceptive practice is one that is 'likely to mislead consumers.'" *Adelson v. U.S. Legal Support, Inc.*, 715 F. Supp. 2d 1265, 1281 (S.D. Fla. 2010) (quoting *Davis v. Powertel*, 776 So. 2d 971, 974 (Fla. 4th DCA 2000)). An unfair practice has been defined as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (quotation omitted).

Defendants' first contention is that Plaintiff cannot satisfy the actual damages element because of the Final Arbitration award. As explained in the Reconsideration

Order, the Final Award is not binding on the remaining claims in this case, including this one. (Doc. 331 at 7–9).

Next, Defendants contend that this "claim fails because it is based solely on the alleged breaches of the Sales Agreement, and not . . . actions that are likely to mislead consumers, offend[] public policies, [or are] immoral." (Doc. 308 at 10). However, Defendants' understanding of the allegations are far too narrow. (*See* Doc. 188 at 22–23 (alleging more than a breach of contract)); *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008) ("The plaintiff is the master of the complaint" and "[t]he plaintiff selects the claims that will be alleged in the complaint." (quoting *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997))). And, even if Plaintiff did only allege a breach of contract as the basis of the FDUTPA claim, "[t]o the extent an action giving rise to a breach of contract . . . may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA." *PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 778 n.2 (Fla. 2003). Defendants have not cited to any record evidence, (Doc. 308 at 10)—and Plaintiff has cited to plenty, (Doc. 323 at 10–14)—supporting whether the breach of contract also involved potentially unfair or deceptive acts. Thus, Defendants' request for summary judgment on Count VII will be denied.

  <u>d.</u>  <u>Count IX—Tortious Interference Claim against Soufleris</u>

Count IX asserts a claim for tortious interference with a business relationship against Soufleris, alleging that Soufleris interfered with Plaintiff's relationship with its surgeon customers. The elements of a tortious interference claim are: "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship."[1] *Ingenuity, Inc. v. Linshell Innovations Ltd.*, No. 6:11-cv-93-Orl-28KRS, 2014 U.S. Dist. LEXIS 40336, at *11 (M.D. Fla. Mar. 25, 2014) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)).

Soufleris argues that this claim fails for two reasons—because Plaintiff did not recover any damages from the Final Award in arbitration and because "there is no evidence that [Plaintiff] had any contracts with surgeons obligating them to purchase products from [Plaintiff] in the future." (Doc. 308 at 12). As to the argument regarding the Final Award from arbitration, the Court has already addressed in the Reconsideration Order why the Final Award has no binding effect on the remaining claims in this case, including this count. (Doc. 331 at 7–9).

---

[1] While the Second Amended Complaint does not specify what state's law this claim is brought under, (Doc. 188 at 23), both parties appear to agree that this claim arises under Florida law, (*see* Doc. 308 at 10; Doc. 323 at 16 (both citing Florida law)).

As to Soufleris's remaining argument, he relies on *Ethan Allen*, which explains that an action for tortious interference may be proper even absent an enforceable agreement between the business parties if there was "an understanding between the parties" that the business agreement "would have been completed had the defendant not interfered." 647 So. 2d at 815 (citing *United Yacht Brokers v. Gillespie*, 377 So. 2d 668 (Fla. 1979)). However, "no cause of action exists for tortious interference with a business's relationship to the community at large." *Id.* (citing *Southern Alliance Corp. v. Winter Haven*, 505 So. 2d 489, 496 (Fla. 2d DCA 1987)).

Here, Soufleris argues that "there is no evidence that [Plaintiff] had any contracts with surgeons obligating them to purchase products from [Plaintiff] in the future" nor any agreement to continue purchasing products from Plaintiff, and therefore Soufleris could not have interfered with the relationship between Plaintiff and its surgeon customers. (Doc. 308 at 12). Specifically, Soufleris points to one of Plaintiff's surgeon customers, Dr. Sawin, who stated that he "ha[s] utilized dozens of different product types from dozens of manufacturers for spinal surgeries" and "continue[s] to utilize multiple different manufacturers through the present date." (Sawin Decl., Doc. 308-1, at 5).

This argument misunderstands the precedent of *Ethan Allen*. While interference with a business's relationship with the "community at large" is not

actionable, *Ethan Allen*, 647 So. 2d at 815, "a relationship with an identifiable customer, . . . whom [Plaintiff] continually supplied" with products is actionable, *Int'l Sales & Serv. v. Austral Insulated Prods.*, 262 F.3d 1152, 1156 (11th Cir. 2001). Further, a contract is not required, merely "an actual and identifiable understanding . . . which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So. 2d at 815. There is evidence in the record that Dr. Sawin had an identifiable business relationship with Plaintiff and would have continued to purchase products from Plaintiff had Soufleris not interfered with that relationship. (AM Q4 Business Plan, Doc. 323-6, at 9 (stating that "Sawin will have comparable revenue to Q4 2016"); Soufleris Dep., Doc. 323-2, at 3–4, 6 (discussing Soufleris's planned attempts to bring revenue from Dr. Sawin over to AMS)). Thus, at very least, there is an issue of disputed material fact over whether Dr. Sawin would have continued to purchase products from Plaintiff, as he had previously done, if Soufleris had not allegedly interfered with the relationship between Plaintiff and Dr. Sawin. Summary judgment is due to be denied as to Count IX.

2.   *AMS's MSJ*

a.   <u>Summary Judgment</u>

AMS moves for summary judgment on Count III—breach of contract against AMS for the 2017 Sales Agreement—or in the alternative, to compel arbitration as to Count III. By way of background as to this count, the Court ruled in its previous

Summary Judgment Order that "AMS is a mere continuation of AM and therefore is liable as a successor company to AM." (Doc. 290 at 57). Now, AMS argues that the Final Award by the arbitration panel resulted in no damages to AM, and therefore, AMS, as the successor entity, also has no liability. However, the arbitration panel made clear in its Final Award that it was "prohibited from making any findings concerning whether AMS is [AM]'s successor in interest" and "obviously, [was] not able to make findings against any person or entity not a party to this arbitration," which included AMS. (Doc. 283-2 at 7). This Court can, and must, consider the evidence on the record in this case regarding AMS's actions—evidence that was not properly before the arbitration panel—and therefore may hold AMS liable for any potential breach of the 2017 Sales Agreement regardless of the outcome of the arbitration. Indeed, this determination is consistent with the findings by the arbitration panel in the Final Award. Therefore, AMS is not entitled to summary judgment on this basis.

Next, AMS argues that even as a successor entity, it is not bound by the contractual obligations of the 2017 Sales Agreement. Notably, the only legal authority cited by AMS in support of this argument stands for the unremarkable proposition that "Florida law does not allow a predecessor corporation's liability to be imposed upon a successor corporation absent an assumption, a de facto merger, where the successor is a mere continuation of predecessor, or the transaction is

fraudulent." (Doc. 312 at 5–6 (citing *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 614 (11th Cir. 2008))). However, as discussed above, the Court has already determined that AMS is a mere continuation of AM. (Doc. 290 at 57). AMS further contends that "no case law extends the mere continuation doctrine to create separate and distinct affirmative contractual obligations upon a successor." (Doc. 312 at 6). This is an incorrect statement of the law. A mere successor entity can unquestionably be held responsible for "the continuing contractual obligations undertaken by its corporate predecessor in interest." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630 (11th Cir. 1996).

AMS also argues that enforcing such contractual obligations on the successor entity, and specifically restrictive covenants, would "would run afoul of Florida's restrictive covenants statute," (Doc. 312 at 6), which requires that "[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought," Fla. Stat. § 542.335(1)(a). The Court disagrees. AMS's argument, if true, would permit any company that wished to avoid restrictive covenants to simply form a new entity with a different name. This is nonsensical.[2] Accordingly, the Court will deny AMS's request for summary judgment as to Count III.

---

[2] The Court is not persuaded by the ruling in *Interim Healthcare, Inc. v. Interim Healthcare of Southeast Louisiana, Inc.*, which refused to enforce restrictive covenants on a successor entity merely because the contract had not been signed by the successor entity. No. 19-cv-62412-

b.    Arbitration

Finally, AMS argues that if AMS is bound by the 2017 Sales Agreement, then any claims thereunder must be submitted to binding arbitration, per the arbitration clause in the sales agreement. In general, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., governs the enforceability of arbitration provisions in contracts involving transactions in interstate commerce. *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In determining whether to compel arbitration, courts do not weigh the merits of the parties' claims. *AT&T Techs.*, 475 U.S. at 649. Rather, courts must limit their review to three factors: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Fla. Farm Bureau Ins. Cos. v. Pulte Home Corp.*, No. 8:04-CV-2357-T-EAJ, 2005 U.S. Dist. LEXIS 21903, at *9 (M.D. Fla. June 6, 2005) (citing cases).

The Court agrees that the 2017 Sales Agreement contains a valid and enforceable arbitration clause, an issue that was previously analyzed by this Court

---

BLOOM/Valle, 2020 U.S. Dist. LEXIS 101841, at *54 (S.D. Fla. June 10, 2020). *Interim Healthcare* merely cites the Florida statute without any explanation or elaboration, and this Court disagrees that the plain statutory language should be interpreted in such a manner.

as to AM and applies equally to AMS as the successor entity responsible for the same contractual rights and obligations in the 2017 Sales Agreement. (Doc. 178 at 3). However, Plaintiff argues that AMS waived its right to compel arbitration.

"There is no set rule . . . as to what constitutes a waiver . . . of [an] arbitration agreement. Whether waiver has occurred depends upon the facts of each case." *Palmer v. Navient Sols., LLC*, No. 3:17-cv-657-J-39JBT, 2018 U.S. Dist. LEXIS 67718, at *1 (M.D. Fla. Jan. 31, 2018) (quoting *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 635 F. App'x. 728, 731 (11th Cir. 2015)), *Report and Recommendation adopted*, 2018 U.S. Dist. LEXIS 68048, at *1 (M.D. Fla. Apr. 17, 2018). However, the Eleventh Circuit has applied a two-part test "[t]o determine whether a party has waived its contractual right to arbitrate . . . : 'First, [courts] decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, [courts] look to see whether, by doing so, that party has in some way prejudiced the other party.'" *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011) (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002). "Because federal policy strongly favors arbitration, the party who argues waiver 'bears a heavy burden of proof' under this two-part test." *Krinsk*, 654 F.3d at 1200 n.17 (quoting *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam)).

First the Court must consider whether AMS has acted inconsistently with its arbitration right. A party acts inconsistently with its right to arbitration when it "'[s]ubstantially invok[es] the litigation machinery' prior to demanding arbitration." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (quoting *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977))[3] (alteration in original), *cert. denied*, 498 U.S. 1026 (1991). "[C]ourts have held that long delays in seeking to compel arbitration and participation in discovery can amount to acting inconsistently with the right to arbitrate." *Hauser v. Westlake Servs., LLC*, No. 3:18-cv-143-J-39JRK, 2018 U.S. Dist. LEXIS 222959, at *6 (M.D. Fla. Oct. 31, 2018) (citing *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012)), *Report and Recommendation adopted sub nom.*, 2018 U.S. Dist. LEXIS 222958, at *2 (M.D. Fla. Dec. 3, 2018).

Here, Plaintiff argues that AMS "acted inconsistently with its right to arbitrate when it made the strategic decision to ask this Court to stay [Plaintiff]'s claim against it rather than proceed to arbitration along with [AM]" and by fully participating in this litigation, including extensive discovery and motions practice. (Doc. 322 at 6). This Court agrees that AMS has "[s]ubstantially invok[ed] the litigation machinery"

---

[3] Cases decided by the Fifth Circuit prior to October 1, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

at this stage of this case, which has been pending for nearly four years.[4] *S & H Contractors*, 906 F.2d at 1514; (*see* Compl., Doc. 1, at 1 (showing a filing date of December 29, 2017)). For example, AMS participated in the preliminary injunction proceeding, (Defs.' Hearing Memo., Doc. 78, at 1); filed a Motion to Dismiss (Doc. 83); participated in lengthy discovery, (*see, e.g.*, Defs.' Mot. to Quash, Doc. 92, at 1; Defs.' Mot. to Quash, Doc. 124, at 1; AMS Dep., Doc. 260-2); filed a Motion for Summary Judgment, (*see generally* Doc. 257); and filed responses to numerous other motions without protest, (*see generally* docket). Now, after four long years, AMS filed two motions for summary judgment, one jointly with the other Defendants, (*see generally* Doc. Nos. 308, 312), and only included its motion to compel arbitration as an alternative argument to summary judgment, (Doc. 312 at 7–8). These motions were filed approximately three months shy of the date certain trial in this case, which is scheduled for less than one month from now, on November 29, 2021. (Notice of Hearing, Doc. 286). All of these actions demonstrate that AMS undoubtedly has acted inconsistently with its right to arbitration. *Fannie Mae v. Prowant*, 209 F. Supp. 3d 1295, 1308 (N.D. Ga. 2016).

Second, the Court must consider whether AMS has in some way prejudiced Plaintiff by acting inconsistently with its right to arbitrate. "Prejudice has been found

---

[4] AMS was added as a defendant in the case on June 11, 2018, with Plaintiff's filing of the Amended Complaint (Doc. 68).

in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Hauser*, 2018 U.S. Dist. LEXIS 222959, at *7 (quoting *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1366 (11th Cir. 1995)). "In determining whether the party opposing arbitration has been prejudiced, courts consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *Palmer*, 2018 U.S. Dist. LEXIS 67718, at *3 (quoting *Krinsk*, 654 F.3d at 1201 (citations and quotations omitted)).

Plaintiff contends that it will be substantially prejudiced if AMS is allowed to invoke its arbitration right at this late date in this proceeding. This Court agrees. As noted above, this case has been pending for nearly four years and was pending for forty-four months prior to AMS's request to compel arbitration. During this time, unquestionably the parties have expended significant resources litigating this case through the completion of summary judgment. And even after this Court definitively held that AMS was a successor entity to AM, AMS chose to file two motions for summary judgment instead of expeditiously moving to compel arbitration, an action it certainly could have taken prior to filing the summary judgment motions. AMS does not get to test the waters by moving for summary judgment in federal court and then proceeding to arbitration only if the outcome here is not favorable. AMS's

lengthy delay in seeking arbitration and substantial participation in this case through summary judgment would cause extraordinary prejudice to Plaintiff if the Court were to now allow arbitration to be compelled on the eve of trial. *Johnson v. KeyBank Nat'l Assoc (In re Checking Account Overdraft Litig.)*, 754 F.3d 1290, 1295 (11th Cir. 2014) ("Substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of waiver." (quoting *E.C. Ernst*, 559 F.2d at 269)); *Netplanner Sys. v. GSC Constr., Inc.*, No. 4:16-CV-150 (CDL), 2017 U.S. Dist. LEXIS 131210, at *6 (M.D. Ga. Aug. 17, 2017) ("Defendants' eve-of-trial motion is not only inconsistent with an agreement to arbitrate but also plainly flouts the purposes of the FAA, all to the prejudice of Plaintiff."). Accordingly, AMS's request to compel arbitration will be denied.

### III.   MOTION TO BIFURCATE

#### A.   Legal Standard

Federal Rule of Civil Procedure 42(b) provides that a court may bifurcate a trial "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings. A district court is afforded "broad discretion" in the decision of whether to bifurcate proceedings. *Blue Water Marine Servs. v. M/Y Natalita III*, No. 08-14925, 2009 U.S. App. LEXIS 29119, at *4 (11th Cir. Sep. 8, 2009). However, the Court's "paramount consideration must remain a fair and impartial trial to all litigants through a balance of benefits and prejudice.'" *B-K Cypress Log Homes Inc.*

*v. Auto-Owners Ins. Co.*, No. 1:09-cv-211-GRJ, 2012 U.S. Dist. LEXIS 200754, at *4 (N.D. Fla. May 10, 2012). And, "the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice." *Resp. of Carolina, Inc. v. Leasco Resp., Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976) (quotation omitted).[5]

In addition to the factors set forth in Rule 42(b), courts in the Eleventh Circuit have considered a number of other factors in the discretionary decision of whether to bifurcate trial. *Venerus v. Avis Budget Car Rental*, No. 6:13-cv-921-Orl-41GJK, 2016 U.S. Dist. LEXIS 203551, at *6–7 (M.D. Fla. Apr. 27, 2016). These factors include: (1) "whether the issues sought to be tried separately are significantly different;" (2) "whether they are triable by jury or the court;" (3) "whether discovery has been directed to a single trial of all issues;" (4) "whether the evidence required for each issue is substantially different;" (5) "whether one party would gain some unfair advantage from separate trials;" (6) "whether a single trial of all issues would create the potential for jury bias or confusion;" and (7) "whether bifurcation would enhance or reduce the possibility of a pretrial settlement." *Berman v. Liberty Mut. Ins. Co.*, No. 3:16-cv-384-J-39JBT, 2018 U.S. Dist. LEXIS 128281, at *7 (M.D. Fla. Mar. 6, 2018) (quoting *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 608–09 (N.D. Ga. 1989)).

---

[5] *See Bonner*, 661 F.2d at 1207.

**B.     Analysis**

Defendants argue that the Court should bifurcate the issue of piercing the corporate veil—Count VII—only hearing evidence on this issue after a trial to determine the liability of AM and AMS. Defendants argue that such a bifurcation would "would conserve judicial resources and the jury's time" because "resolution of corporate liability could render the individual liability issue moot," (Doc. 311 at 4), and bifurcation "will likely sidestep any evidentiary confusion for the jury," (*id.* at 5). Further, Defendants argue that because evidence on the corporate veil issue is irrelevant to the breach of contract issues, presentation of such evidence would "almost certain[ly]" prejudice Defendants, and bifurcation would not prejudice Plaintiff. (*Id.*). Plaintiff on the other hand contends that bifurcation "will waste judicial resources, inconvenience the Court, the parties, and the witnesses, and delay resolution of this matter." (Doc. 320 at 2).

As to the Rule 42(b) factors, it would not be more convenient or judicially efficient to bifurcate the trial for this single issue since, by Defendants' own contention, only Soufleris will be likely to testify as to the corporate veil issue, and Soufleris will almost surely be testifying as to issues involving the remainder of the case. Further, if the Court is unable to fit the extra time for a bifurcated trial into the current timeslot for trial of this case, a new jury would need to be empaneled and counsel and parties would need to travel to Orlando on a second separate occasion.

Given the Court's currently congested docket due to the backlog created by COVID-19, it could be months before the Court is able to find additional time on the trial calendar for this case—which has been pending for nearly four years.[6] As to prejudice, the Court is not persuaded by Defendants' summary argument that they would be prejudiced. Certainly, the Court can craft appropriate jury instructions and a verdict form to ensure that the jury understands its duty to determine corporate liability before determining the corporate veil issue.

As to the remaining applicable factors considered by courts in this circuit, these too weigh against bifurcation. All of the counts are triable by jury, discovery in this case has proceeded for nearly four years with the understanding that a single trial of all issues would occur, and bifurcation would greatly reduce the possibility of pretrial settlement. Given that all of the relevant factors weigh against bifurcation—and given the highly discretionary nature of bifurcation, *Blue Water Marine*, 2009 U.S. App. LEXIS 29119, at *4—the Motion to Bifurcate will be denied, and this case will proceed to a single trial on all counts.

---

[6] The Court previously raised these concerns to the parties during the March 25, 2021 status conference. (Mar. 25, 2021 Tr., Doc. 315, at 2 ("What [the Court is] not going to is, try part of them—bifurcate, try part of them now and the rest of them later. I think that's an unwise use of judicial resources, and, also, there is a bottleneck in this district for people trying to get trials. We are having [to] travel out of town and take all other types of measures to try to get these cases tried because of the limitations [the Court has] agreed to with regard to seating juries with all of the COVID restrictions.")).

## IV.   MOTION TO EXCLUDE

### A.   Legal Standard

Although opinion testimony is generally inadmissible, Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony in limited circumstances. Expert opinion testimony is admissible if: (1) "the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Pursuant to *Daubert*, the determination of admissibility is "uniquely entrusted to the district court," which is given "considerable leeway in the execution of its duty." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quotation omitted). However, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown

by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

The Eleventh Circuit has distilled the test for determining the admissibility of expert testimony under Rule 702 and *Daubert* into three basic inquiries—(1) is the expert qualified; (2) is the expert's methodology reliable; and (3) will the testimony assist the trier of fact. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

## B.    Analysis

Defendants have moved to exclude the expert testimony of Misty Decker. Decker was retained by Plaintiff "to evaluate and render opinions regarding the economic remedies" in this case and "to evaluate opinions proffered by . . . Defendants' financial expert and other witnesses." (Decker Supplemented Report, Doc. 321-1, at 4). Defendants move to exclude Decker's testimony on relevancy and *Daubert* grounds.[7] (*See generally* Doc. 309).

Defendants first argue that Decker's testimony should be excluded because she relies on insufficient underlying data and her methodology is therefore

---

[7] While Defendants move to exclude Decker's testimony on both relevancy and *Daubert* grounds, Defendants only include argument regarding *Daubert*, so the Court will only address the relevancy argument as it fits within the *Daubert* analysis. *See McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004) ("The second prong of the *Daubert* analysis requires that the proposed testimony be relevant[,] . . . [t]he relevance requirement is not satisfied where the proffered testimony does not assist the trier of fact." (citing Fed. R. Evid. 702)).

unreliable. Specifically, Defendants argue that Decker's analysis fails to satisfy

*Daubert* because she:

> (1) blindly accepts [Plaintiff]'s subjective opinions
> regarding historical sales declines without conducting any
> independent investigation; (2) ignores actual sales data
> available for the alleged loss period; (3) admits to lacking
> a methodology to apportion past biologics sales to each
> Defendant; (4) ignores variable market factors like
> Doctors' freedom of choice of treatments; and (5) blindly
> accepts [Plaintiff]'s subjective opinions for future sales
> projections, costs and expenses without conducting an
> independent investigation.

(Doc. 309 at 6–7).

The Court first addresses Defendants' third argument—that Decker "admits

to lacking a methodology to apportion past biologics sales to each Defendant," (Doc.

309 at 6)—because it attacks Decker's underlying methodology. Decker explains

that she "utilized the 'Before-and-After Method'" for assessing Plaintiff's economic

damages, which "compar[es] . . . Plaintiff's but-for profits, estimated using the

Plaintiff's performance before the economic injury, with the Plaintiff's actual,

impaired performance after the injury." (Doc. 321-1 at 12). This is one of "two

generally recognized methods of proving lost profits." *G.M. Brod & Co. v. U.S.*

*Home Corp.*, 759 F.2d 1526, 1538 (11th Cir. 1985) (quoting *Lehrman v. Gulf Oil*

*Corp.*, 500 F.2d 659, 667 (5th Cir. 1974)).[8] Thus, "[t]here can be little dispute" that

---

[8] *See Bonner*, 661 F.2d at 1207.

Decker's underlying methodology was appropriate. *B-K Cypress Log Homes*, 2012 U.S. Dist. LEXIS 73773, at *9. However, if Defendants believe that Decker improperly used the results of her analysis to apportion estimated damages to each Defendant, that is appropriate questioning for cross-examination. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (explaining that arguments regarding incorrect assumptions in calculations should be addressed through cross-examination because they "impugn the accuracy of [the] results, not the general scientific validity of [the] methods").

Having determined that Decker used a reliable methodology, the Court moves on to Defendants four other arguments. As to Defendants' first and fifth arguments, it appears that Defendants take issue with Decker using sales data provided by Plaintiff. Federal Rule of Evidence 703 permits an expert to base her "opinion on facts or data in the case that the expert *has been made aware of* or personally observed." Fed. R. Evid. 703 (emphasis added). Here, Decker was made aware of Plaintiff's financial data by Plaintiff providing it. Rule 703 allows this.

As to Defendants' second and fourth arguments, Defendants assert that Decker improperly failed to consider factors other than the data provided by Plaintiffs, such as other sales data and market factors. If Defendants disagree with the factors that Decker considered in her analysis, this is the proper subject of cross-examination. *Apple Inc. v. Corellium, LLC*, No. 19-81160-cv, 2020 U.S. Dist.

LEXIS 136499, at *18 (S.D. Fla. July 29, 2020). "This is not a case for exclusion of [Decker's] testimony in its entirety under *Daubert*; rather, it is a case where [Decker] has asserted [Plaintiff's] damages opinions and calculations which, at this juncture, sufficiently demonstrate a causal nexus and a sufficiently reliable methodology. . . . [I]t will be up to the trier of fact to determine the weight to give those opinions. However, they should not be excluded in their entirety under a *Daubert* analysis." *Id.*; *Quiet Tech.*, 326 F.3d at 1345.

Finally, Defendants argue that even if Decker's data and analysis are sufficient, her testimony would be "unfairly prejudicial and likely to lead to jury confusion" because "Decker assumes a 'but-for world' that ignores all the variables at play and provides an all or nothing lost profits figure." (Doc. 309 at 11). This argument essentially relies on Defendants prevailing on their arguments already discussed by the Court above. However, as explained above, if Defendants believe that Decker should have considered more or different factors in her analysis, that is not a basis for exclusion but rather an issue appropriate for cross-examination. *Quiet Tech.*, 326 F.3d at 1345; *Apple Inc.*, 2020 U.S. Dist. LEXIS 136499, at *18.

## V.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion for Partial Summary Judgment (Doc. 308) is **DENIED**.

2. Defendant Absolute Medical Systems, LLC's Motion for Summary Judgment (Doc. 312) is **DENIED**.

3. Defendants' Motion to Bifurcate Trial (Doc. 311) is **DENIED**.

4. Defendants' Motion to Exclude Expert Testimony of Misty L. Decker, CPA (Doc. 309) is **DENIED**.

5. Defendants' Request for Oral Arguments (Doc. 310) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on November 12, 2021.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record