## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

NUVASIVE, INC.,            )
                           )
        Plaintiff,        )
                           )
v.                     )   Case No. 6:17-cv-2206-Orl-41GJK
                           )
ABSOLUTE MEDICAL, LLC,   )
ABSOLUTE MEDICAL SYSTEMS, )
LLC, GREG SOUFLERIS, DAVE  )
HAWLEY, and RYAN MILLER,   )
                           )
        Defendants,      )
_____ )

## NUVASIVE, INC.'S MOTION TO VACATE ARBITRATION AWARD AND SUPPORTING MEMORANDUM OF LAW

Through its counsel of record, and pursuant to 9 U.S.C. § 10, Plaintiff, NuVasive, Inc. ("NuVasive"), respectfully moves this Court to vacate the March 4, 2021, arbitration award (the "Arbitration Award") issued in *NuVasive, Inc. v. Absolute Medical, LLC*, AAA Case No. 01-19-0002-0663 (the "Arbitration") because it was procured by corruption, fraud, and/or undue means. In support of its Motion, NuVasive states:

## I.      INTRODUCTION

Defendant, Absolute Medical Systems, LLC, procured the March 4, 2021, Arbitration Award through corruption, fraud, or undue means. 9 U.S.C. § 10. More specifically, Absolute Medical's sole member, Defendant Greg Soufleris, via text,

instructed its sales representative, Defendant Dave Hawley on how to answer questions NuVasive asked Hawley during the Arbitration as Hawley testified. NuVasive did not know – and had no way of knowing – of Defendants' malfeasance in the Arbitration until Soufleris produced various iMessage threads on November 4, 2021—70 days after this Court ordered him to do so.

## II.    <u>RELEVANT FACTS</u>

1.      NuVasive and Absolute Medical arbitrated Count II of NuVasive's Second Amended Complaint, as ordered by this Court (Doc. 178), remotely, via Zoom, between December 14 and 17, 2020.  Hawley testified in the Arbitration on the evening of December 16, 2020, from the Orlando, Florida, metropolitan area. (Decl. C. Cardwell, attached as **Exhibit 1**, ¶ 6).

2.      During Hawley's testimony, Soufleris – who was in his counsel's Atlanta, Georgia office (**id.** at ¶ 5) – heard the questions NuVasive asked of him and, in real time, instructed Hawley how to answer several of those questions via iMessage.

3.      At 6:17 p.m. EST on December 16, 2020, shortly before Hawley took the stand in the Arbitration, Soufleris texted ██████████. (iMessages between Soufleris and Hawley, attached as **Exhibit 2**).[1]  Hawley responded that he would do so through an iMessage he sent to Soufleris one minute later, at 6:18 p.m.

---

[1] The Court granted leave to file the iMessages under seal on November 17, 2021. (Doc. 349).

4.    Hawley's testimony began at 6:24 p.m.   Just before that testimony began, at 6:23 p.m., Hawley took the following two-part oath:

Q:    Would you raise your right hand, please.  Do you swear or affirm that the evidence you're about to give will be the truth, the whole truth, and nothing but the truth?

A:    Yes, sir.

Q:    Second part.  Do you also affirm that there is no one else in the room with you who is not identified and that no unauthorized person can communicate with you while you are giving your testimony?

A:    Yes, sir.[2]

(Arb. Tr., Hawley Test., attached as **Exhibit 3**, 754:20–755:4).

5.    The December 16, 2020, text exchange between Soufleris and Hawley reads:



15:13 DH:

15:26 GS:

* * *

17:44 GS:

---

[2] After receiving the November 4, 2021, production NuVasive ordered a copy of the arbitration transcript that contains the oath given by Hawley and time stamps.  (Dec. C. Cardwell, **Exhibit 1**, ¶ 4).  NuVasive notes that the time stamps on the transcript are in PST as the Arbitration Panel and the court reporter transcribing the arbitration remotely were located in California. As such, the transcript time stamp of "15:23:17" when Arbitrator John L'Estrange administered this oath is three (3) hours behind the time stamps on the iMessages, which are EST. (Dec. R. Clayton, attached as **Exhibit 4**).

* * *

17:45 DH: ██████

* * *

18:17 GS: █████████

18:18 DH: █

18:24 GS: ████████████

18:26 GS: █

18:27 GS: ██████

18:28 GS: ████████████████████████

18:28 GS: ████████████████████

18:30 GS: ██████

18:33 GS: ████████

18:47 GS: ██████████████████

18:47 GS: ██████

18:51 GS: █

18:52 GS: █████

18:52 GS: █████

18:52 GS: ████

18:55 GS: ███████

19:14 GS: ███████████████

19:23 GS: █

19:38 GS:  ███████████████

20:10 GS:  ████████████████

20:11 GS:  ██████████████████████

20:12 GS:  ██████

(iMessages, **Exhibit 2**).

6.      The iMessage ███████████████████ came at 6:24 p.m. and the iMessage ████████ came at 8:12 p.m.  (**Id.**)  These iMessages – and the ones in between – are consistent with answers Hawley gave in response to NuVasive's questions.  Further, Hawley admitted that one of his answers that was consistent with a iMessage "doesn't make[] sense" and that another differed from his sworn deposition testimony.  (Arb. Tr., **Exhibit 3** at 818:10–821:15, 830:17–831:5).

7.      NuVasive's first line of questioning, which began at 6:24, addressed non-compete agreements Hawley signed with Absolute.  (**Id.** at 755:11–756:17).  As shown above, at 6:24, Soufleris texted ███████████████████ to Hawley.  It appears that this text caused Hawley to change his testimony as he initially acknowledged signing several non-compete agreements but then, after NuVasive began posing another question, modified his answer to say that he signed them on behalf of his corporate entity.  Specifically, he testified, at 6:25 that:

Q:      In fact, you signed numerous noncompetes with Absolute Medical, correct?

A:      Over the years, yes.

Q:      Now, I want to go back - -

A:      On behalf of Hawley Med.

(**Id.** at 756:13–17).

8.      Soufleris sent the next iMessage – which simply states ████ – at 6:26. At that time, NuVasive was questioning Hawley about when a commission is earned: a topic relevant to the Arbitration because Hawley and Soufleris challenged the definition of a "sale."  Hawley testified, at 6:26:

Q:      By the way you get a commission when you make a sale; is that correct?

A:      You get a commission when a product is used in the OR by a surgeon, yes.

Q:      That's a sale, right?

A:      Yeah, it's up for interpretation, but the surgeon uses the product, and we get a commission on it.

(**Id.** at 757:5-12).

9.      The next three iMessages came at 6:27 and two at 6:28. The first states "Culture was sh*t[,]" the second reads ████████████████ ████ and the third reads ██████████████████████ At this time, NuVasive was questioning Hawley about NuVasive's culture and senior leadership, which are things the Defendants cite for their and Dr. Sawin's decision to end their affiliations with NuVasive.  (**Id.** at 797:3–798:23).  The relevant testimony took place

6

between 6:27 and 6:30. (**Id.** at 758:3–760:4). It concluded with Hawley talking about past members of NuVasive's senior management leaving the company, and classifying emails in which he lauded members of NuVasive's senior management and NuVasive's culture as "clearly one of those kind of political emails where I'm, you know, trying to get on the good side of the CEO of the company that I'm working for" at 6:30. (**Id.** at 759:12–760:4). At that time, Soufleris texted ███████████ to Hawley. Three minutes later, at 6:33, Soufleris reiterated that message as he "loved" that text.

10.      The next text, which reads ████████████████████ came at 6:47,[3] just after NuVasive showed Hawley an email he sent to Soufleris. At 6:46, Hawley identified this email as his "resignation email" and then acknowledged that "it says, hello, Absolute Medical. Effective immediately I hereby terminate my contract with Absolute Medical." (**Id.** at 771:11–22). This area of questioning was relevant to whether Hawley remained affiliated with Absolute after it separated from NuVasive and whether Hawley qualified as a Representative Affiliate of Absolute in his individual capacity.

11.      Next, at 6:51, Soufleris texted "████ to Hawley. This text coincides with testimony Hawley gave between 6:50 and 6:51 about whether Alphatec had a

---

[3] Soufleris also texted ██████████████" to Hawley at 6:47. NuVasive is not certain as to what Soufleris meant by that text, but believes it had to do with the number of surgeries performed by Dr. Sawin on December 5, 2017, that Hawley supported. (Arb. Tr., **Exhibit 3**, at 771:23–772:6).

"full bag of products" and the necessity of obtaining other products to satisfy Dr. Sawin's surgical needs.  (**Id.** at 774:12–19).

12.     At 6:52, Soufleris texted, ████████ ████████ and ████████ to Hawley in separate messages.  These iMessages are relevant to testimony Hawley began giving at 6:51 about how Soufleris made other products, including Orthofix's biologic products, available to him to provide to Dr. Sawin.  (**Id.** at 775:1–777:17). Of course, Soufleris' and Hawley's interactions with Dr. Sawin after they separated from NuVasive was one of the central issues in the Arbitration.

13.     Three more iMessages came at 6:54: ████ ████ and ████ It appears these texts were in response to Hawley's testimony at 6:54:

Q:      In that year, between 12/1/17 and 11/31/18, can you put a percentage on the amount of Alphatec hardware you used versus the amount of those other companies hardware you used for Dr. Sawin?

A:      Between what time period?

Q:      December of '17 and November of '18.

A:      That was almost all Alphatec.  I don't know maybe 95 percent.  I don't know how to give an accurate number but 90, 95 maybe.

(**Id.** at 777:18–778:1).  Then, at 6:55, NuVasive asked Hawley if Dr. Sawin moved all of his biologics business to Orthofix's Trinity product.  (**Id.** at 778:2–5).  Hawley acknowledged that he did so (**id.**) but Soufleris texted ████████████████

14.     Absolute's cross-examination of Hawley began at 7:11. (**Id.** at 789:1). At 7:14, Soufleris texted ██████████████████████████ This came at the same time Absolute asked Hawley about signing an agreement with it and then asked about numerous other agreements Hawley signed with Absolute.  (**Id.** at 791:7–796:1).  In those follow-up questions, Hawley continuously stressed that he signed the agreements on behalf of his company, Hawley Medical, and not himself.  (**Id.**).

15.     Soufleris texted ██████ to Hawley at 6:23. This happened at the same time Hawley answered "yes" to whether he informed Soufleris about Defendant Ryan Miller's refusal to sign a 2017 agreement with Absolute.  (**Id.** at 797:24-798:5). In addition to prompting Hawley, this iMessages caused Hawley to diverge from his deposition testimony, which was that he and Miller never discussed signing the 2017 agreements.  (**Id.** at 818:10–821:15; Dep. D. Hawley, attached as **Exhibit 5**, at 47:4–48:17)

16.     Absolute's examination of Hawley concluded at 7:58. (Arb. Tr., **Exhibit 3**, at 817:16). Prior to that, at 7:38, Soufleris texted ██████████████ to Hawley.  At that time, Absolute posed a question about NuVasive's damages expert's opinions that included the phrase "but for." (**Id.** at 805:13–806:1).

17.     Finally, during NuVasive's redirect of Hawley, Soufleris at 8:10, 8:11, and 8:12:

- texted ███████████████████████

9

- "loved" the above text; and

- texted ███████ to Hawley.

These texts came at a time when NuVasive was questioning Hawley about instruments that NuVasive believes belong to it that Hawley shipped to Alphatec. (**Id.** at 825:7–831:5). Hawley's testimony shows that he followed Soufleris' directions on how to answer these questions, noted that at least one of his answers "doesn't make sense," and then followed Soufleris' direction to testify "Stryker" on the last question asked of him. (**Id.**)

### III.   <u>LAW AND ARGUMENT</u>

Equitable tolling permits this Court, in circumstances such as those at bar, to suspend the limitations period set forth in the Federal Arbitration Act ("FAA"). Further, extraordinary circumstances exist in this case warranting equitable tolling of the FAA's three-month time period to file a motion to vacate. Finally, NuVasive has established that Defendants' fraud in the Arbitration proceedings by clear and convincing evidence sufficient to warrant vacatur of the Arbitration Award.

**A.** <u>**The Doctrine Of Equitable Estoppel Tolls The Time Period For Filing Of Motions To Vacate, Modify, Or Correct Provided By 9 U.S.C. § 12.**</u>

Despite the Court granting leave to NuVasive to file the instant motion on November 17, 2021 (Doc. 348), NuVasive anticipates that Defendants will argue the three-month time period provided for in Section 12 of the FAA forecloses the relief it seeks. 9 U.S.C. § 12. However, this Court can (and should) utilize the doctrine of

equitable estoppel to toll the FAA's limitations period due to Soufleris' and Hawley's fraudulent acts and blatant disregard for the integrity of the litigation/arbitration process as set forth in Section III(B).

### 1. The Court May Apply Equitable Tolling To 9 U.S.C. § 12.

The doctrine of equitable tolling suspends the running of a limitations period if a party was prevented from asserting a claim due to inequitable circumstances. *E.g.*, *Julin v. Chiquita Brands Int'l, Inc. (In re Chiquita Brands Int'l, Inc.)*, 690 F. Supp. 2d 1296, 1305 (S.D. Fla. 2010); *see also Barreto-Barreto v. U.S.*, 551 F.3d 95, 100 ("The doctrine of equitable tolling suspends the running of [a] statute of limitations if a plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to [his claim]." (alterations in original)).[4] Equitable estoppel applies where "a plaintiff untimely files due to extraordinary circumstances that are both beyond her control and unavoidable even with diligence." *Belz v. Morgan Stanley Smith Barney, LLCI,* No. 3:13-cv-636-J-34MCR, 2014 U.S. Dist. LEXIS 28906, at *26 (M.D. Fla. Mar. 5, 2014) (quoting *Hunt v. Ga. Dep't of Cmty. Affairs.*, 490 Fed. App'x 196, 198 (11th Cir. 2012)). Typically, equitable tolling "requires some misconduct, such as fraud, misinformation, or deliberate

---

[4] Section 12 of the FAA is akin to a statute of limitations. *Wubben v. Kirkland*, No. 6:08-cv-1105-Orl-22DAB, 2011 U.S. Dist. LEXIS 166013, at *15 (M.D. Fla. Jul. 14, 2011).

concealment." *Id.*[5]  Although not definitive on the issue, a district court in the Sixth Circuit recognized that "[t]he doctrine of equitable tolling may be applicable to the FAA statute of limitations" because "the Supreme Court has long held that the doctrine of equitable tolling 'is read into every federal statute of limitations.'" *Alpaca Shop Franchise Co. v. Roxburgh*, No. 08-10048, 2008 U.S. Dist. LEXIS 144993, at *11 (E.D. Mich. Sept. 26, 2008) (citing *Berry*, 92, Fed. App'x 243, 247-48).

In *Move, Inc. v. Citigroup Glob. Mkts.*, the Ninth Circuit definitively held that equitable tolling applies to Section 12 of the FAA.  840 F.3d 1152 (9th Cir. 2016). In *Move, Inc.* the claimant to a FINRA arbitration selected the chairperson to its three-member arbitration panel based, at least in part, on his tenure as a licensed attorney in California, New York, and Florida.  *Id.* at 1155.  Over four years after the panel issued its unanimous award, a periodical published a story revealing that the chairperson lied about his qualifications, was never a licensed attorney, and merely impersonated one for years.  *Id.*  The claimant in the FINRA arbitration

---

[5] As this Court previously noted, ambiguity exists regarding the application of this doctrine to the FAA's three-month period for motions to vacate, but—like most other federal circuits—it did not foreclose its application. *Belz*, 2014 U.S. Dist. LEXIS 28906, at *15; *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Spencer*, 92 Fed. App'x 243, 247-48 (6th Cir. 2004) (Hood, D.J., concurring); *Sargent v. Paine Webber, Jackson & Curtis, Inc.*, 687 F. Supp. 7, 9 (D.D.C. 1988) (holding that equitable tolling applied to § 12 because it akin to a statute of limitations which would be "subject to waiver, estoppel, and equitable tolling"); *Foster v. Turley*, 808 F.2d 38, 41 (10th Cir. 1986) (finding 9 U.S.C. § 12 is "in the nature of a statute of limitations, which is subject to wavier").

instated proceedings to vacate the arbitration award in which the Ninth Circuit held that equitable tolling applies to the FAA because: (i) the text of the FAA's three-month period "is neither 'unusually generous' nor 'unusually emphatic' . . . [and] is neither detailed nor technical and is not reiterated elsewhere in the statute"; (ii) the structure of the FAA is not incompatible with equitable tolling; and (iii) equitable tolling does not undermine the basic purpose[6] of the FAA (which was enacted to make valid and enforceable agreements for arbitration of disputes). *Id.* at 1157.

Respectfully, the circumstances *sub judice* weigh even more heavily in favor of applying equitable tolling to the FAA's limitations period than those in *Move, Inc.*, where it was the actions of the non-party arbitrator justifying the underlying motion to vacate. Allowing parties to arbitrations to perpetrate a fraud upon those proceedings with the hope that their deceit remains concealed for three months after issuance of the award would undermine the FAA's basic purpose, which inherently requires that the favored arbitrations are conducted fairly.

### 2.  The Court Should Equitably Toll The FAA's Limitations Period.

"In order to show entitlement to equitable tolling, [a party] must show that he was unable to timely file 'because of extraordinary circumstances that are both

---

[6] As the *Move, Inc.* Court pointed out, the national general policy favoring arbitration "relies on the assumption that the forum is fair, and therefore cannot justify special deference to arbitration outcomes in the face of a colorable claim that the forum was unfair in a particular case." 840 F.3d at 1157-58 (quoting *Berry*, 92 Fed. App'x at 246).

beyond his control and unavoidable even with diligence." *Ruiz v. U.S.*, No. 6:18-cv-137-Orl-41TBS, 2018 U.S. Dist. LEXIS 235625, at *4 n.3 (M.D. Fla. Mar. 7, 2018) (quoting *Jones v. U.S.*, 304 F.3d 1035, 1039 (11th Cir. 2002)). Stated differently, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Cerrito v. Sec'y, Dep' of Corr.*, No. 8:14-cv-721-T-23TBM, 2015 U.S. Dist. LEXIS 139782, at *3 (M.D. Fla. Oct. 14, 2015) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The movant controls the first requirement – due diligence – but not the second – extraordinary circumstances. *Id.* "Regarding the first requirement, an applicant's lack of diligence precludes equity's operation, but the diligence required for equitable tolling purposes is "reasonable diligence,' not 'maximum feasible diligence.'" *Id.* (quoting *Pace*, 544 U.S. at 419; *Holland v. Florida*, 560 U.S. 631, 645 (2010)). Extraordinary circumstances must be beyond the movant's control and unavoidable even with diligence. *Id.* (citing *Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999)). These elements are satisfied in this case.

First, NuVasive diligently pursued its rights. After this Court lifted its stay following the Arbitration Award, NuVasive served additional discovery upon Soufleris and Absolute Medical Systems. It then necessitated a motion to compel and the Court denying Defendants' motion for reconsideration *sua sponte* before

Defendants produced the iMessages seventy (70) days after being ordered to do so.[7]

(Doc. 325). Put simply, NuVasive acted with reasonable diligence in bringing the

instant motion despite Defendants' consistent and repeated efforts to conceal their

fraud in the Arbitration in an attempt to "run out the clock" on the FAA's three-

month limitations period. The first prong of equitable tolling is satisfied.

Next, extraordinary circumstances exist warranting equitable tolling of the

Section 12 of the FAA in this case. Soufleris' and Hawley's actions are precisely

the type of "misconduct, such as fraud, misinformation, or deliberate concealment"

sufficient to satisfy equitable tolling. *Belz*, 2014 U.S. Dist. LEXIS 28906, at \*26.

Indeed, this Court found this requirement satisfied in *Luna v. Colvin*, where an

agency inadvertently mailed its decision—which commenced the running of the

applicable limitations period—to the petitioner's old residence and old counsel. No.

8:16-CV-2010-T-27MAP, 2016 U.S. Dist. LEXIS 179778, at \*6 (M.D. Fla. Nov.

30, 2016). Respectfully, the fact that Soufleris directed Hawley how to answer

questions during the Arbitration in real time—despite his sworn oath that no

---

[7] Of course, this timeline ignores the fact that the iMessages were always responsive to other discovery requests served on Defendants years ago, which responses they failed to supplement. NuVasive requested, in discovery, communications Soufleris exchanged with Hawley "from November 30, 2017, to the present that reference or relate to Absolute, AMS, Alphatec, or any other spinal hardware or biologics company, or the business of marketing, selling, and/or distributing spinal hardware and/or biologics products" on August 6, 2018. The iMessages are responsive to these initial requests, and Soufleris was obligated to supplement his production even in the absence of NuVasive's additional discovery and/or Judge Kelly's Orders. Fed. R. Civ. P. 26(e)(1)(A); *e.g.*, *U.S. ex rel. Holland v. Davita, Inc.*, No. 6:17-cv-1592-RBD-GJK, 2021 U.S. Dist. LEXIS 161184, at \*7 (M.D. Fla. Jul 20, 2021).

authorized person (i.e., Soufleris) was communicating with him during his testimony—is so egregious that it barely warrants exposition. Defendants should not be permitted to hide behind NuVasive's inability, despite reasonable diligence, to discover the fraud they perpetrated on the Arbitration until after the FAA's three-month limitations period expired to avoid vacatur of the Arbitration Award. As Defendants' conduct is functionally equivalent to Hawley wearing an earpiece that enables Soufleris to feed him answers while testifying on the stand in this Court, extraordinary circumstances exist to support equitable tolling in this instance.

## B. __The Court Should Vacate The Arbitration Award Because It Was Procured By Corruption, Fraud, And/or Undue Means.__

The FAA provides that a District Court may vacate an arbitration award for four (4) reasons, including "where the award was procured by corruption, fraud, or undue means."[8] 9 U.S.C. § 10(a)(1). Vacatur of an arbitration award based on fraud "requires: 1) that the movant establish fraud by clear and convincing evidence; 2) that the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; and 3) that the fraud materially related to an issue in the arbitration. *Floridians for Solar Choice v. PCI Consultants, Inc.*, 314 F. Supp.

---

[8] NuVasive notes at the outset of this analysis that it is "well settled that this Court retains jurisdiction to entertain" its motion to vacate. *See, e.g., Procraft of S. Fla., LLC v. Kryton Corp., Inc.*, No. 03-80975-Civ-Hurley/Hopkins, 2006 U.S. Dist. LEXIS 106908, at *4-5 (S.D. Fla. Jan. 19, 2006) (citing *Collins v. D.R. Horton, Inc.*, 361 F. Supp. 2d 1085, 1091 (D. Ariz. 2005) ("Courts have held that once a court obtains jurisdiction in an action and enters an order compelling arbitration, that court retains jurisdiction with respect to subsequent motions to confirm or vacate.")).

3d 1346, 1355 (quoting *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988) (internal quotations omitted)).  The final prong of this analysis *does not* require the movant to establish that the end result of the proceedings (i.e., the Arbitration Award) would have been different absent the fraud.  *Bonar*, 835 F.2d at 1383.

### 1. NuVasive established Defendants' fraud by clear and convincing evidence.

There can be no reasonable doubt that NuVasive carried its evidentiary burden in establishing Defendants' fraudulent conduct during the Arbitration.  As set forth in minute-by-minute detail in Section II, Soufleris improperly coached, directed, and encouraged Hawley's testimony to comport with Absolute Medical's position in the Arbitration.[9]  In short, NuVasive met its burden to establish Soufleris' and Hawley's fraud sufficient to vacate the Arbitration Award.

### 2. Defendants' fraud was not discoverable prior to or during the Arbitration.

Next, NuVasive could not have discovered Defendants' fraud until the production of the iMessages on November 4, 2021.  It goes without saying that NuVasive could not have discovered the fraud prior to the Arbitration as it was yet

---

[9] *See Crutchfield v. Wainwright*, 803 F.2d 1103, 1110 (11th Cir. 1986) ("Coaching has come to mean improperly directing a witness's testimony in such a way as to have it conform with, conflict with, or supplement the testimony of other witnesses."), *overruled on other grounds by Perry v. Leeke*, 488 U.S. 272 (1989).

to occur.  Furthermore, because the Arbitration was conducted remotely via Zoom, there is no way NuVasive could have discovered the fraud during the proceedings. In fact, NuVasive's representatives and its counsel were physically present at counsel's office in Nashville, Tennessee, whereas Defendant Soufleris was located with Absolute Medical's counsel in Atlanta, Georgia (and not visible onscreen during this point of the proceedings), and Defendant Hawley was located in the Orlando, Florida area.  (Decl. C. Cardwell, **Exhibit 1**, ¶¶ 5–6).  Moreover, Hawley stated, under oath, that no unauthorized person can communicate with him during the course of his testimony.  (Arb. Tr., Hawley Test., **Exhibit 3**, 754:20–755:4). NuVasive took Hawley at his word when he gave that oath.  Accordingly, there was simply no way NuVasive could have discovered Soufleris' real-time electronic communications with Hawley during the Arbitration on December 16, 2020.

### 3.  Defendants' fraud materially related to issues in the arbitration.

Finally, Defendants' fraud materially related to issues at stake in the Arbitration.  This Court is well-versed in those issues as some overlap with those to be tried by this Court on February 7, 2022.  Specifically, Hawley's tainted testimony related to, among others: (1) the nature of his contractual arrangements with Absolute Medical; (2) his sales activities on behalf of Alphatec/Absolute Medical Systems after resigning from Absolute Medical; and (3) damages NuVasive contended it incurred from lost sales to Dr. Paul Sawin.  As such, Hawley's

testimony—surreptitiously elicited at the direction and encouragement of Soufleris—was materially related to the issues before the panel in the Arbitration.

In sum, each of the three requirements set forth in *Bonar* are satisfied in this case. Therefore, vacatur of the Arbitration Award is appropriate.

## IV.   <u>CONCLUSION</u>

Our judicial system relies on witnesses to tell the truth when they testify in proceedings, whether they be in depositions, at trial, or in arbitration. For this reason, each witness is sworn to tell the truth prior to testifying. In this case, Hawley not only swore to tell the truth, but also that he was not being assisted during his testimony. With Soufleris' direction and assistance, Hawley violated those oaths. This Court should not condone or excuse this behavior. Rather, it should enter an order vacating the Arbitration Award and awarding it any such other further and general relief as it deems just and appropriate.

Dated: November 22, 2021          Respectfully submitted,


                                  *s/ Christopher W. Cardwell*
                                  R. Craig Mayfield (Fla. Bar No. 0429643)
                                  Cmayfield@bradley.com
                                  Diana N. Evans (Fla. Bar No. 98945)
                                  Dnevans@bradley.com
                                  Bradley Arant Boult Cummings LLP
                                  100 North Tampa Street, Suite 2200
                                  Tampa, Florida 33602
                                  Tel: (813) 559-5500
                                  Fax: (813) 229-5946

                                  Christopher W. Cardwell, Esq. (*pro hac vice*)
                                  ccardwell@gsrm.com
                                  Mary Taylor Gallagher, Esq. (*pro hac vice*)
                                  mtgallagher@gsrm.com
                                  M. Thomas McFarland, Esq. (*pro hac vice*)
                                  tmcfarland@gsrm.com
                                  GULLETT, SANFORD, ROBINSON &
                                  MARTIN, PLLC
                                  150 Third Avenue South, Suite 1700
                                  Nashville, TN 37201
                                  Tel: (615) 244-4994
                                  Fax: (615) 256-6339

                                  *Attorneys for Plaintiff, NuVasive, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2021, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.  The party or parties served are as follows:

Busch, Mills & Slomka, LLP

Bryan E. Busch
Email: bb@buschmills.com
Laura H. Mirmelli
Email: lm@ buschmills.com
6400 Powers Ferry Road, N.E., Suite 391
Atlanta, GA 30339

Christopher Y. Mills
Email: cm@ buschmills.com
319 Clematis Street, Suite 109
West Palm Beach, FL 33401

*Attorneys for Defendants*

Accel IP Law, PLLC

Stephen D. Milbrath
Email:  smilbrath@acceliplaw.com
1137 Edgewater Drive
Orlando, FL  32804

*Attorney for Absolute Medical Systems, LLC and Absolute Medical, LLC*

*s/ Christopher W. Cardwell*