UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | 6:17-cv-2206-Orl-41GJK |
| VS | ) | |
| | ) | |
| | ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE | ) | |
| MEDICAL SYSTEMS, LLC, GREG | ) | |
| SOUFLERIS, DAVE HAWLEY, and | ) | |
| RYAN MILLER | ) | |
| | ) | |
| Defendant, | ) | |

## DEFENDANTS' RESPONSE TO JANUARY 10, 2022 SHOW CAUSE ORDER

The Court's January 10, 2022 Show Cause Order ("Order") leaves Defendants facing a "civil death penalty" without ample opportunity to respond to the false assumptions and misapplication of facts Defendants believe were reached by the Court in error.[1] The Court's conclusion that a global default is an appropriate remedy is born out of frustration rather than fact and requires Defendants to challenge the Court's factual findings/assumptions, as well as its jurisdiction to sanction all Defendants for the conduct of some in a separate arbitration proceeding. A global default against all Defendants on all claims would be a disproportional and unreasonable remedy approaching abuse of judicial discretion as it unfairly deprives Defendants of an opportunity for adjudication on the merits.

---

[1] The Court's Order demands a response within seven (7) days limited to no more than ten (10) pages from all five (5) Defendants and counsel. These arbitrary constraints deprive Defendants of due process on claims for damages that are baseless, as found by the arbitration panel, and for reasons that are unrelated to the alleged witness coaching.

The sanction of default judgment should only be considered as a last resort in the most extreme circumstances where there is willful contempt of a court order and irremediable prejudice to the other side. Here, the three-person arbitration panel conducted the proceedings in compliance with the AAA rules and procedures outside of the Court's jurisdiction. *See gen. Positive Software Solutions, Inc. v. New Century Mortg. Corp.,* 619 F. 3d 458, 461 (5th Cir. 2010) (court lacks inherent authority and jurisdiction to sanction for conduct in arbitration proceedings where conduct was not in direct defiance to a court order). Moreover, to the extent that any contemplated sanctions are seemingly justified as a violation of the Court's August 20, 2021 discovery order, Defendants submit that the six-day turn around on such voluminous discovery was inherently unreasonable and the rolling production of documents with Plaintiff's implicit authority does not support a finding of willful contempt justifying a default judgment sanction.[2] *See gen. Chudasama v. Mazda Motor Corp.,* 123 F. 3d 1353 (11th Cir. 1997)(finding sanction of default for failure to timely comply with discovery unduly severe and abuse of discretion particularly where violation of discovery order caused by simple negligence, misunderstanding, or inability to comply). Thus, Defendants respectfully submit that the Court must fashion a more reasonable remedy than the default judgment it contemplates against all Defendants.

A. The Court has already sanctioned Defendants for missing emails.

Despite its previous sanctions against Defendants for missing emails, this issue continues to cast a long shadow over the Court's consideration of penalties against Defendants and counsel. Defendants and its counsel acknowledge their missteps with the preservation of the Absolute Medical domain emails. However, the Court must distinguish between *intentional misconduct* versus mistaken technology assumptions. The Court's assessment that "Defendants and their

---

[2] Importantly, Plaintiff never moved for any contempt of the Court's Discovery Order as it ultimately received all of the requested documents and has suffered no harm from the delay.

counsel not only failed to take reasonable steps to preserve that evidence, … but intentionally destroyed vast amounts of evidence … that cannot be restored or replaced" (Order, p. 21-22) unnecessarily inflates the facts at issue and must be reexamined.

As admitted by Defense counsel in full disclosure to the Court during the Court's hearing on the Spoliation Motion (Min. Entry, Doc. 214), Mr. Soufleris presented counsel for Defendants with copies of notices from Google in January and February 2018 concerning the Absolute Medical domain (hereafter "Google Renewal Notices") and inquired as to what steps should be taken to comply with his legal responsibilities. *See* Declaration of Bryan Busch, attached hereto as **Exhibit 1**, at ¶ 3-4. In light of the allegations of "commingling" at issue, Defense Counsel did not believe it was in the best interest of Absolute Medical to borrow money in order to keep the dormant domain alive when the entity had filed for dissolution and had no active operations. *Id.* The Google Renewal Notices did not expressly state, imply, suggest or otherwise indicate that emails from the Absolute Medical domain would be permanently lost if the activation payment was not immediately received. *Id.* Instead, the Renewal Notice discussed a "suspension" of the domain creating the impression that it could be reopened at a later date. Neither Defense counsel nor Mr. Soufleris was aware of Google's draconian policy concerning the status of emails in a dormant account. *Id.* at ¶ 5.

Thereafter, upon NuVasive's service of its first written discovery requests in August 2018, Mr. Soufleris began the process of gathering responsive documents. Following direct conversations with Google, and technology professionals hired by Defendants to assist with document production and retrieval, Mr. Soufleris and Defense Counsel first learned about Google's dormant account policy. *Id.* at ¶ 6. Mr. Soufleris attempted to reinstate the "suspended" account and pay any outstanding balances; however, Google asserted the emails could not be

retrieved under any circumstances. *Id.* Faced with the issue of missing emails, Defendants began the process of trying to recover emails from the Absolute Medical domain through alternative means. Defendants hired the technology firm D4, LLC ("D4") to assist with the search paying $7,000 for these additional search efforts. *Id.* at ¶ 7. Defendants Soufleris, Hawley and Miller submitted their respective computers to D4 for inspection and review. Based on these efforts, Defendants were able to retrieve and produce over 6,000 emails from the Absolute Medical domain bringing their total production at that time to over 139,000 emails. *Id.*

The Court's suggestion that Mr. Soufleris intentionally destroyed all responsive emails from the dormant Absolute Medical domain is belied by the fact that Mr. Soufleris was not aware of Google's dormant account policy, discussed his obligations with legal counsel, and took immediate remedial steps to retrieve the lost emails from alternative sources. More importantly, the Court's blanket extension of Mr. Soufleris' missteps to Mr. Hawley and Mr. Miller continues to ignore the fact that Mr. Hawley and Mr. Miller did not have any authority or control over the Absolute Medical domain and were not involved in the domain renewal decision. Notably, Mr. Miller was not even a party to this action at the time Mr. Soufleris made his renewal decision, yet Mr. Miller faces a second round of sanctions, and possible default, for conduct outside his control.

Equally troubling, is the Court's *sua sponte* suggestion that defense counsel was involved in intentional destruction of evidence. Mr. Busch voluntarily informed the court of his advice to Mr. Soufleris in open court on November 15, 2019 concerning the "suspended" Absolute Medical Domain. Mr. Busch did not have any knowledge of Google's dormant account policy and no knowledge (constructive or otherwise) that responsive emails from the Absolute Medical domain would be lost in cyberspace at the time of Mr. Soufleris' non-renewal decision. While Mr. Busch fully acknowledges and appreciates his misunderstanding of Google's dormant account policy and

the ripple effect on discovery, there is no evidence in front of this Court to assume an improper motive by defense counsel, or to suggest Mr. Busch intentionally participated in the destruction of evidence.

B. The Court does not maintain jurisdiction over conduct in the Arbitration Proceeding.

Defendants submit that this Court's jurisdiction and authority is limited by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"). The FAA does not provide the Court with expansive powers to oversee, manage, or sanction conduct occurring within the actual arbitration proceeding. *See gen. Positive Software Solutions, Inc. v. New Century Mortg. Corp.,* 619 F. 3d 458, 461 (5th Cir. 2010); 9 U.S.C. § 12. The misconduct of Mr. Soufleris during the Arbitration Hearing on December 16, 2020 occurred in a separate proceeding, in a separate venue, in front of a separate tribunal, under a separate set of rules and procedures governed by the AAA, involving only one of the five Defendants and involving only one of the 9 counts at issue before the Court. While the Court compelled NuVasive to arbitrate its claim against Absolute Medical for breach of contract pursuant to a binding arbitration clause, its jurisdiction is limited to confirming, modifying, or vacating the arbitration award under the FAA.

The Court has already exercised its authority under the FAA by vacating the award even after the 90 day deadline to challenge had passed. Additional sanctions for the same misconduct would be an overreach of delegated authority. *See Latele TV, C.A. v. Telemundo Communs. Group, LLC,* 2014 U.S. Dist. LEXIS 158634, at fn. 17 (S.D. Fla. Nov. 10, 2014)(severe sanction of default judgment appropriate only as a last resort where less drastic sanctions would not ensure compliance with court order). The Arbitration proceedings were between NuVasive and Absolute Medical only, the remaining Defendants (Absolute Medical Systems, Soufleris [individually], Hawley [individually] and Miller [individually]) were non-party witnesses before the Arbitration Panel. Their testimony was limited to the claims pending against Absolute Medical in the

Arbitration and did not concern their own separate claims pending before this Court. Any additional sanctions crafted by this Court should at a minimum be limited to the actual parties to the Arbitration and not be extended to third party witnesses, particularly with respect to Defendant Miller who has not been accused of any misconduct during his Arbitration testimony. *See gen. In re Bricam Am. LLC Equip. Lease Litig.,* 977 F. Supp. 2d 1287, 1293-1294 (S.D. Fla. 2013)(terminating sanctions require clear and convincing evidence of actual witness tampering and not mere conjecture and speculation.)

Additionally, since the Arbitration concerned only the breach of contract claim against Absolute Medical (Count II), the evidence, exhibits, testimony, and Mr. Soufleris' alleged coaching dealt solely with this count. The Arbitration Panel did not consider, discuss or hear evidence on any of the remaining 8 counts in the lawsuit. The legal issues presented in the other 8 counts are separate and distinct from the contract claim adjudicated by the Arbitration Panel. Whatever misconduct that occurred during the Arbitration was isolated to the specific claim adjudicated therein and has no taint, relevance or bearing upon the remaining 8 Counts in front of this Court, particularly now that the Arbitration Award has been vacated. The disproportional and unnecessary result of defaulting all claims against all Defendants can be seen when reviewing each of the remaining 8 Counts individually. For instance, a default of the breach of contract claim (Count III) against Hawley and Miller individually would have the unjust result of enforcing contracts against them individually that were written for and signed by their corporate entities in violation of Fla Statute § 542.335 and would result in enforcing a 2017 agreement that does not exist.

C.  Defendants engaged in good faith efforts to comply with the Court's Discovery Orders.

The delay in production of text messages should not be interpreted as an attempt to defraud the Court. In its Order, the Court harshly criticizes Defendants for the delay in production of recent

text messages accusing Defendants and their counsel of an attempted "fraud on the Court" by "openly defying the Court's discovery Order" and advancing legal arguments to enforce an arbitration award they knew had been obtained through fraud. (Order, p. 23, 29). However, these conclusory assumptions without the benefit of a full evidentiary hearing deny Defendants the required due process protections while serving as justification for the proposed sanctions.

The Court must review and analyze a full record before levying additional sanctions against all Defendants. NuVasive served Defendant Soufleris with its Second Request for Production of Documents on May 26, 2021 consisting of eight separate requests and sixteen separate subparts. NuVasive served Defendant AMS with its Third Request for Production of Documents on May 26, 2021 consisting of twenty-five separate requests and thirty subparts (collectively "Document Requests").[3] The Document Requests called for the production of thousands of documents including emails, tax returns, financial records, text messages and other correspondence over many years. Defendants timely objected to the Document Requests and Plaintiff filed a Motion to Compel.

The Court issued its initial ruling on August 20 granting the motion to compel and requiring the production be completed in six days. (D.E. 319.) Defendants immediately filed a motion for reconsideration which was summarily denied by the Court on August 27. (D.E. 325.) Immediately thereafter, Defense counsel had an initial conference call with Plaintiff's counsel to discuss the details of the production and the fact that there would be a "rolling" production as documents became available due to the nature of the Document Requests, volume of requested documents,

---

[3] Responses to the Discovery Requests were not due by Defendants until well after the 90-day period to object to the Arbitration Award under the FAA had expired. Thus, the proposition that the delayed production was part of an orchestrated fraud to run the clock out on Plaintiff's time frame in which to object to the Arbitration Award is entirely dispelled by a complete review of the actual events.

location of responsive documents[4] and the time frame for each document to be reviewed by Defense counsel for privilege. Busch Dec. at ¶ 12-13. Thereafter, the "rolling" production of documents proceeded between the parties as follows: (1) September 8, 2021, AMS01-679 (financial documents and tax returns); (2) September 15, 2021, AMS 680-1407 (bank statements, financial documents, and tax returns); (3) September 24, 2021, Soufleris's AMS email domain in its raw format; (1.5GB); (4) November 4, 2021, Soufleris's Text messages in excel format (104 batches/3.12MB).

Immediately after the August 27 Order was entered, Defendants and their counsel also started the process of retrieving and formatting responsive text messages for Greg Soufleris. After attempting an initial search and retrieval of Soufleris's text messages in-house, Defense Counsel interviewed and retained the services of Hawkins Consulting, LLC (a computer forensic company) to assist with the text message production. Hawkins Consulting received a $4,000 flat fee for the requested forensic services. *Id.* at ¶ 15.

Hawkins Consulting reviewed the downloaded information from Mr. Soufleris's cell phone and determined that the majority of text messages were likely located on the "cloud." *Id.* at ¶ 16. Thereafter, Hawkins Consulting worked with Mr. Soufleris and Apple to pull responsive text messages from backups stored on the "cloud", then downloaded and converted the documents into a usable format. *Id.* at ¶ 17-18; *See also* John Hawkins Declaration, attached hereto as **Exhibit 2**, ¶ 6-16. Hawkins Consulting provided Defense counsel with a "rolling" production of text messages for each of the requested individuals from November 1, 2021 through November 5, 2021.

---

[4] Many of the financial records and documents were in the possession, custody and control of the accounting firm for Mr. Soufleris and AMS named Toro CPA & Associates ("Toro"). The Toro firm periodically placed requested documents in a "dropbox" where the documents could be downloaded and reviewed by Defense Counsel for privilege prior to production. After the review was completed, the responsive documents had to be bates stamped before being produced to Plaintiff. The process of gathering responsive documents from the Toro firm took several weeks. Busch Dec. at ¶ 14.

*Id.* Each of these batches were turned over to Plaintiff immediately following a privilege review as set forth in the above production schedule. Defense counsel remained in contact with opposing counsel providing periodic updates via telephone and email. *Id.* at ¶ 19. This entire process took several weeks from start to finish and was pursued by Defendants, Defense Counsel and Hawkins Consulting in an expedient manner.

Defense Counsel first reviewed the batch of text messages between Greg Soufleris and Dave Hawley on November 4, 2021. At that time, the messages were reviewed for privileged communications only and then immediately provided to Plaintiff's counsel. Defense Counsel did not become aware of the alleged coaching emails until he was notified by Plaintiff's counsel via email on November 8, 2021 about the text messages between Mr. Soufleris and Mr. Hawley during the pendency of the Arbitration. *Id.* at ¶ 21. Prior to review of the email on November 8, 2021 from Plaintiff's counsel, Defense Counsel had no knowledge of the text messages from Mr. Soufleris to Mr. Hawley during the Arbitration. *Id.* at ¶ 22. As discussed in the accompanying declaration, Mr. Soufleris was in Mr. Busch's Atlanta's Office for the Arbitration proceeding on December 16, 2020 and testified in front of the panel beginning at 9:10 am (pacific time) through 11:57 am (pacific time). *Id.* at ¶ 24. Thereafter, Defense expert Paul Dopp testified before Mr. Hawley was called to testify beginning at 3:24 pm (pacific time). *Id.* Defense Counsel had arranged for food to be brought into the office given the time difference and the food was set up on a table in the hallway outside of the office where the Arbitration proceeding was ongoing. *Id.* at ¶ 25-27. Shortly after Mr. Hawley began testifying, the food arrived, and Mr. Soufleris left the office where the Arbitration was ongoing and was not in the direct line of sight of Defense counsel. *Id.* Mr. Busch did not see or observe Mr. Soufleris texting Mr. Hawley during the pendency of his Arbitration testimony as his focus was entirely on the questions and answers provided by the witness. *Id.* Mr.

Busch did not observe Mr. Soufleris operating his cell phone and had no conversations with Mr. Soufleris during or after Mr. Hawley's testimony about his actions or the testimony. *Id.* As such, there was no way for Mr. Busch to participate in any alleged "fraud on the court" as he had no knowledge of Mr. Soufleris' actions until the issue was brought to his attention by Plaintiff's counsel via email on November 8, 2021. *Id.* at ¶ 28-29.

Likewise, the motions for summary judgment and to enforce the Arbitration Award filed by Defense Counsel prior to November 8, 2021 could not have been the byproduct of any "fraud on the Court" as Mr. Busch had no knowledge of Mr. Soufleris' conduct at the time they were filed. *Id.* The Motion to Confirm Award filed by Defense Counsel on November 10, 2021 (D.E. 333) placed the Court on notice of the impending coaching problems but maintained that enforcement of the Arbitration Action was still appropriate as none of the text messages from Mr. Soufleris or responses by Mr. Hawley impacted NuVasive's failure to prove actual damages[5]. *Id.*

D. <u>Conclusion</u>

In light of the foregoing, a global default against all Defendants on all claims would be an unreasonably harsh punishment while rewarding Plaintiff with a considerable financial windfall without prevailing on the merits.

Dated:  January 17, 2022

Respectfully,

---

[5] The Court's inflammatory statements that Mr. Busch participated in the "intentional destruction of evidence" and orchestrated a "fraud on the Court" impugn Mr. Busch's character and assail his integrity as a respected officer of the court. As demonstrated above, these statements are not supported by the record and were born out of the Court's frustration rather than a fair and impartial review of the facts. Upon discovery of the "coaching" text messages, Plaintiff's Counsel (who is a zealous advocate for his client) "<u>assume[d] it went unnoticed</u>" when discussing the issue with Defense Counsel for the first time in the November 8, 2021 email exchange.  However, the Court (who is an impartial fact finder) took the exact opposite position <u>assuming</u> that Defense Counsel was aware of the conduct and accusing Mr. Busch of perpetuating a "fraud on the Court." These false statements should be stricken from the record or kept under seal to protect Mr. Busch's reputation in the legal community.

/s/ Bryan E. Busch
Bryan E. Busch, Esquire (*Pro Hac Vice*)
bb@buschmills.com
BUSCH, MILLS & SLOMKA, LLP
6400 Powers Ferry Road, N.W. Suite 391
Atlanta, Georgia 30339
(404) 800-4062 (Telephone)
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 17, 2022, I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system. I further certify that I electronically transmitted a true copy to:

R. Craig Mayfield, Esquire
cmayfield@bradley.com
Diana N. Evans, Esquire
devans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
*Attorneys for NuVasive*

Christopher W. Cardwell, Esquire (*pro hac vice*)
ccardwell@gsrm.com
Mary Taylor Gallagher, Esquire (*pro hac vice*)
mtgallagher@gsrm.com
M. Thomas McFarland (*pro hac vice*)
tmcfarland@gsrm.com
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
*Attorneys for NuVasive*

Stephen D. Milbrath
Accel IP Law, PLLC
smilbrath@acceliplaw.com
1137 Edgewater Drive
Orlando, FL 32804
*Attorneys for Absolute Medical*
*Systems, LLC and Absolute Medical, LLB*

/s/ Bryan E. Busch
Bryan E. Busch, Esq. (*Pro Hac Vice*)
bb@buschmills.com

# EXHIBIT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | 6:17-cv-2206-Orl-41GJK |
| VS | ) | |
| | ) | |
| | ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE | ) | |
| MEDICAL SYSTEMS, LLC, GREG | ) | |
| SOUFLERIS, DAVE HAWLEY, and | ) | |
| RYAN MILLER | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |

## DECLARATION OF BRYAN E. BUSCH

Under penalty of perjury and pursuant to 28 U.S.C. Section 1746, Declarant Bryan E. Busch, states as follows:

1. My name is Bryan E. Busch. I am over the age of 21 and am fully competent to give the testimony contained in this Declaration, all of which is from my personal knowledge.

2. I am a partner with the law firm of Busch, Mills & Slomka, LLP located in Atlanta, Georgia. This law firm represents all Defendants in the above-captioned litigation.

3. After the case was filed on December 29, 2017, but prior to service of any discovery requests by NuVasive on in August 2018, I had discussions with Mr. Soufleris regarding the domain renewal notices from Google pertaining to the Absolute Medical email accounts and his legal responsibilities. *See* Google Renewal Notices attached hereto as Exhibit A.

1

4.  Based on allegations of "commingling" that were made by NuVasive against Mr. Soufleris individually and his other corporate entities, I did not believe it was in the best interest of Absolute Medical to borrow money in order to keep the dormant domain alive when the entity had filed for dissolution and had no active operations.

5.  The Google Renewal Notices did not imply, suggest or otherwise indicate that emails from the Absolute Medical domain could be lost in cyberspace if the activation payment was not immediately received. The Google Notices stated the account would be "suspended" giving the impression that the account could be activated at a later date. Neither I, nor Mr. Soufleris, was aware of Google's policy concerning the status of emails in a dormant account.

6.  After service of NuVasive's written discovery requests in August 2018, based on direct communications with Google and technology professionals, I learned for the first time about Google's dormant account policy. Mr. Soufleris offered to reinstate the account and pay any outstanding balances, however, Google declared the emails could not be retrieved under any circumstances.

7.  Mr. Soufleris and Absolute Medical, LLC began the process of trying to recover emails from the Absolute Medical domain through alternative means. Defendants hired the technology firm of D4, LLC ("D4") to assist with the search paying $7,000.00 for these additional search efforts. Defendants Soufleris, Hawley and Miller submitted their respective computers to D4 for inspection and review. Based on these efforts, Defendants were able to retrieve and produce 6,000 of emails from the Absolute Medical domain, bringing their total production at that time to over 139,000 emails.

8. I voluntarily informed the Court of my involvement in the matter in open court on November 15, 2019, including my participation in Mr. Soufleris' decision not to continue paying fees to Google for a dormant email account on behalf of a defunct entity. I had no knowledge of Google's dormant account policy and no knowledge (constructive or otherwise) that responsive emails from the Absolute Medical domain could be lost in cyberspace at the time of Mr. Soufleris' non-renewal decision.

9. I fully acknowledge my misunderstanding of Google's dormant account policy, I did not intentionally participate in destruction of any evidence.

10. NuVasive served Defendant Soufleris with its Second Request for Production of Documents on May 26, 2021 consisting of eight separate requests and sixteen separate subparts and Defendant AMS with its Third Request for Production of Documents on May 26, 2021 consisting of twenty-five separate requests and thirty subparts (collectively "Document Requests"). The Document Requests called for the production of thousands of documents including emails, tax returns, financial records, text messages and other correspondence over many years. Defendants timely objected to the Document Requests and Plaintiff filed a Motion to Compel.

11. The Court issued its initial ruling on August 20 granting the motion to compel and requiring the production be completed in six days. Defendants immediately filed a motion for reconsideration which was summarily denied by the Court on August 27. Immediately thereafter, Defendants began the process of producing all of the responsive documents.

12. I had an initial conference call with Plaintiff's counsel to discuss the details of the production and the fact that there would be a "rolling" production as documents became available due to the nature of the Document Requests, volume of requested documents,

3

location of responsive documents and the time frame for each document to be reviewed by Defense counsel for privilege. *See* August 30, 2021 Email attached hereto as Exhibit B.

13. Thereafter, the "rolling" production of documents began as follows: (1) September 8, 2021, AMS01-679 (financial documents and tax returns); (2) September 15, 2021, AMS 680-1407 (bank statements, financial documents, and tax returns); (3) September 24, 2021, Soufleris's AMS email domain in its raw format (1.5GB); (4) November 4, 2021, Soufleris's Text messages in excel format (104 batches/3.12MB).

14. Many of the financial records and documents were in the possession, custody and control of the accounting firm for Mr. Soufleris and AMS named Toro CPA & Associates ("Toro"). The Toro firm periodically placed requested documents in a "dropbox" where the documents could be downloaded and reviewed by Defense Counsel for privilege prior to production. After the review was completed, the responsive documents had to be bates stamped before being produced to Plaintiff. The process of gathering responsive documents from the Toro firm took several weeks.

15. Immediately after the August 27 Order was entered, we started the process of retrieving and formatting responsive text messages for Greg Soufleris. We interviewed and retained the services of Hawkins Consulting, LLC (a computer forensic company) to assist with the text message production. Hawkins Consulting received a $4,000 flat fee for the requested forensic services. *See* Hawkins Invoice attached hereto as Exhibit C.

16. Hawkins Consulting reviewed the previously downloaded information from Mr. Soufleris' cell phone and communicated that the majority of text messages were likely located on the "cloud."

17. Thereafter, Hawkins Consulting worked with Mr. Soufleris and Apple to pull responsive text messages from the "cloud" and download into the requested format.

18. Hawkins Consulting provided Defense counsel with a "rolling" production of text messages for each of the requested individuals from November 1, 2021 through November 5, 2021, which were turned over to Plaintiff immediately upon a privilege review as set forth in the above production schedule.

19. We remained in contact with opposing counsel providing periodic updates via telephone and email. *See* Correspondence attached hereto as composite Exhibit D. This entire process took several weeks from start to finish and was pursued by all parties in an expedient manner.

20. I first reviewed the text messages between Greg Soufleris and Dave Hawley for privilege only on November 4, 2021 and then immediately provided to Plaintiff's counsel.

21. I first learned of the text messages between Greg Soufleris and Dave Hawley during the arbitration when I was notified by Plaintiff's counsel via email on November 8, 2021 of the alleged "coaching" between Mr. Soufleris and Mr. Hawley during the pendency of the Arbitration. *See* November 8, 2021 email attached hereto as Exhibit E.

22. Prior to review of the email on November 8, 2021 from Plaintiff's counsel, I had no knowledge of the text messages from Mr. Soufleris to Mr. Hawley during the Arbitration.

23. Mr. Soufleris was in our law firm's Atlanta Office for the Arbitration proceeding on December 16, 2020 and testified in front of the panel beginning at 9:10 am (pacific time) through 11:57 am (pacific time).

24. Thereafter, Defense expert Paul Dopp testified before Mr. Hawley was called to testify beginning at 3:24 pm (pacific time). We arranged for food to be brought into the office

given the time difference (it was 6:24 pm when Mr. Hawley began his testimony) and the food was set up on a table in the hallway outside of the office where the Arbitration proceeding was ongoing.

25. Shortly after Mr. Hawley began testifying, the food arrived and Mr. Soufleris left the office where the Arbitration was ongoing and was not in my direct line of sight.

26. I did not see or observe Mr. Soufleris texting Mr. Hawley during the pendency of his Arbitration testimony as my focus was entirely on the questions and answers provided by the witness.

27. I did not observe Mr. Soufleris operating his cell phone and had no conversations with Mr. Soufleris during or after Mr. Hawley's testimony about his actions.

28. I did not participate in any alleged "fraud on the court" and had no knowledge of Mr. Soufleris' actions until the issue was brought to my attention by Plaintiff's counsel via email on November 8, 2021.

29. I had no knowledge of the actions of Mr. Soufleris during the Arbitration Proceeding before filing the motions to enforce the Arbitration Award prior to November 8, 2021.

30. The enforcement action filed by Defendants on after November 10, 2021 (D. E. No. 333) placed the Court on notice of the impending problems but we maintained that enforcement of the Arbitration Action was still appropriate as none of the text messages from Mr. Soufleris or responses by Mr. Hawley impacted NuVasive's failure to prove actual damages.

6

Further this Declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct.

Date: 1-17-22



BRYAN E. BUSCH

# EXHIBIT A

**To:**    gsoufleris@gmail.com[gsoufleris@gmail.com]
**From:**  Google Domains[noreply-domain-registrar@google.com]
**Sent:**   Sat 1/27/2018 10:30:18 PM (UTC)
**Subject:** Overdue payment alert: G Suite on absolute-medical.org

**This is your third and final notice. Your G Suite access may be suspended on or after Jan 28, 2018.**

Hello,

We have not received your monthly subscription payment for G Suite on **absolute-medical.org**. Usually this means your payment method has expired or your account number has changed. Please visit Google Domains to update your payment information.

If you take no action, your G Suite access may be **suspended on or after Jan 28, 2018**. This means that your users will no longer be able to send or receive email or log in to their accounts.

**Update payment information**

<https://domains.google.com/registrar?d=absolute-medical.org&de>

See you online,
The Google Domains Team

Message

| | |
|---|---|
| **From:** | gsuite-noreply@google.com [gsuite-noreply@google.com] |
| **Sent:** | 2/1/2018 7:51:33 PM |
| **To:** | gsoufleris@gmail.com |
| **Subject:** | Payment failure: G Suite Basic for absolute-med.com |

# G Suite

## Payment failure: G Suite Basic for absolute-med.com

Hello

The last payment for your G Suite Basic subscription for absolute-med.com failed. This indicates that there's something wrong with your payment method.

**To prevent the suspension of all services for all users on March 2, 2018:**

- **Contact your bank or credit card company to resolve the issue with your payment method.**
- **Go to your Admin console to retry or update your payment method and pay your outstanding balance. If you couldn't resolve the issue, you'll need to add a new payment method instead.**

See complete instructions for <u>fixing a payment failure</u>.



Go to Admin console

Sincerely,
**The G Suite Team**

© 2017 Google Inc. 1600 Amphitheatro Parkway, Mountain View, CA 94043

You have received this mandatory email service announcement to update you about important changes to your G Suite product or account.

# EXHIBIT B

# BUSCHMILLS

# BUSCHMILLS

**From:** Chris Cardwell <ccardwell@gsrm.com>
**Sent:** Monday, August 30, 2021 5:02 PM
**To:** Thomas McFarland <tmcfarland@gsrm.com>; Laura Mirmelli <lm@buschmills.com>
**Cc:** Chris Mills <cm@buschmills.com>; Tillie Noble <tnoble@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>; Bryan Busch <bb@buschmills.com>; Evans, Diana <dnevans@bradley.com>
**Subject:** RE: Motion for Reconsideration

I'm sorry.  Bryan and I just discussed this issue a while ago and I haven't brought Thomas up to

speed.  My understanding is that we will receive tax returns, quick books, etc. in relatively short order and that it will be a week or so before we get the text messages, emails, etc.

---

**From:** Thomas McFarland
**Sent:** Monday, August 30, 2021 4:01 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Laura Mirmelli <lm@buschmills.com>
**Cc:** Chris Mills <cm@buschmills.com>; Tillie Noble <tnoble@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>; Bryan Busch <bb@buschmills.com>; Evans, Diana <dnevans@bradley.com>
**Subject:** RE: Motion for Reconsideration

Laura,

In light of the Court's order denying the motion for reconsideration Friday afternoon, we would ask that Defendants' complete their production by close of business this Wednesday, September 1st. Thanks.

Regards,



**Thomas McFarland**
**Gullett Sanford Robinson & Martin PLLC**
Main: 615.244.4994 | Direct: 615.921.4214
150 Third Avenue South, Suite 1700, Nashville, TN 37201
tmcfarland@gsrm.com | www.gsrm.com



---

**From:** Chris Cardwell <ccardwell@gsrm.com>
**Sent:** Friday, August 27, 2021 12:28 PM
**To:** Laura Mirmelli <lm@buschmills.com>; Thomas McFarland <tmcfarland@gsrm.com>
**Cc:** Chris Mills <cm@buschmills.com>; Tillie Noble <tnoble@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>; Bryan Busch <bb@buschmills.com>; Evans, Diana <dnevans@bradley.com>
**Subject:** RE: Motion for Reconsideration

Laura,

I have not found a rule which allows a party to disregard a discovery order by filing a motion to reconsider.  Accordingly, I ask that you make a full production of the documents the Court instructed you to produce by yesterday.  If you are not willing to do that, I ask that produce those documents that are not at issue in your motion to reconsider.

Thanks,

Chris

**From:** Laura Mirmelli [mailto:lm@buschmills.com]
**Sent:** Thursday, August 26, 2021 4:24 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>
**Cc:** Chris Mills <cm@buschmills.com>; Tillie Noble <tnoble@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>; Bryan Busch <bb@buschmills.com>
**Subject:** RE: Motion for Reconsideration

Understood.

**From:** Chris Cardwell <ccardwell@gsrm.com>
**Sent:** Thursday, August 26, 2021 5:22 PM
**To:** Laura Mirmelli <lm@buschmills.com>; Thomas McFarland <tmcfarland@gsrm.com>
**Cc:** Chris Mills <cm@buschmills.com>; Tillie Noble <tnoble@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>
**Subject:** RE: Motion for Reconsideration

Thanks for the clarification.  We have to oppose as we need that information for, without limitation, our attempt to pierce the corporate veil.  Of course, we have no issue with them being designated AEO.

Chris

**From:** Laura Mirmelli [mailto:lm@buschmills.com]
**Sent:** Thursday, August 26, 2021 4:19 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>
**Cc:** Chris Mills <cm@buschmills.com>
**Subject:** RE: Motion for Reconsideration

Cardwell,
AMS and Soufleris are agreeable to producing relevant responsive emails. But they are seeking to reconsider the remainder of the financial documents, tax returns, bank statements, check registers, and quickbooks records, for themselves or the unrelated entities.

**From:** Chris Cardwell <ccardwell@gsrm.com>
**Sent:** Thursday, August 26, 2021 4:55 PM
**To:** Laura Mirmelli <lm@buschmills.com>; Thomas McFarland <tmcfarland@gsrm.com>
**Subject:** RE: Motion for Reconsideration

What part of the order do you want the court to reconsider?

**From:** Laura Mirmelli [mailto:lm@buschmills.com]

**Sent:** Thursday, August 26, 2021 3:51 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>
**Subject:** Motion for Reconsideration

Good Afternoon, Gentlemen.

Hope you're both well. We intend to file a motion for reconsideration as to the discovery order entered last week. I assume you're opposed to the relief sought? Please let us know.

Thank you,

# BUSCHMILLS

**Laura H. Mirmelli, Esq.**
**Busch Mills & Slomka, LLP**
6400 Powers Ferry Road, N.E., Suite 391
Atlanta, GA 30339
lm@buschmills.com
D: 404 800-4031

NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. Under U.S. Treasury regulations, we are required to inform you that any advice contained in this e-mail or any attachment hereto is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code.

# EXHIBIT C

**Hawkins Consulting, LLC**
2435 Wall Street SE Ste 103
Conyers, GA  30013 US
accounting@consulthawkins.com
https://consulthawkins.com



CONSULTHAWKINS.COM

# INVOICE

**BILL TO**
April Williams
Busch Mills, LLP
319 Clematis Street, Suite 109
West Palm Beach, FL  33401

**INVOICE #** 1913
**DATE** 12/06/2021
**DUE DATE** 12/21/2021
**TERMS** Net 15

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|------|--|-------------|-----|------|--------|
| | **Consulting & Support** | Data Retrieval and Reporting Services | 1 | 4,000.00 | 4,000.00 |

Thank you for your business!

| | |
|---|---|
| SUBTOTAL | 4,000.00 |
| TAX | 0.00 |
| TOTAL | 4,000.00 |
| BALANCE DUE | **$4,000.00** |

# EXHIBIT D

| | |
|---|---|
| **From:** | Laura Mirmelli |
| **To:** | Bryan Busch; Beverly Padilla |
| **Subject:** | FW: Laura Mirmelli shared the folder "AMS 9.8.2021 Production" with you. |
| **Date:** | Monday, January 17, 2022 3:08:32 PM |
| **Attachments:** | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | image002.png |

**Laura H. Mirmelli, Esq.**
**Busch Mills & Slomka, LLP**
6400 Powers Ferry Road, N.E., Suite 319
Atlanta, GA 30339
lm@buschmills.com
D: 404 800-4031

**From:** Laura Mirmelli
**Sent:** Wednesday, September 8, 2021 11:16 AM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>; Tillie Noble <tnoble@gsrm.com>; Bryan Busch <bb@bsms.law>
**Subject:** Laura Mirmelli shared the folder "AMS 9.8.2021 Production" with you.



# Laura Mirmelli shared a folder with you

Enclosed please find a link eto AMS's first document production.  Please let me know if you encounter any issues accessing the file.



AMS 9.8.2021 Production

⊕ This link will work for anyone.



Open



Privacy Statement

| | |
|---|---|
| **From:** | Laura Mirmelli |
| **To:** | Bryan Busch; Beverly Padilla |
| **Subject:** | FW: Laura Mirmelli shared "AMS000680-AMS001407" with you. |
| **Date:** | Monday, January 17, 2022 3:08:15 PM |
| **Attachments:** | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | image002.png |

**Laura H. Mirmelli, Esq.**
**Busch Mills & Slomka, LLP**
6400 Powers Ferry Road, N.E., Suite 319
Atlanta, GA 30339
lm@buschmills.com
D: 404 800-4031

**From:** Laura Mirmelli
**Sent:** Thursday, September 16, 2021 11:02 AM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>; Bryan Busch <bb@bsms.law>
**Subject:** Laura Mirmelli shared "AMS000680-AMS001407" with you.



# Laura Mirmelli shared a file with you

Here's the document that Laura Mirmelli shared with you.



AMS000680-AMS001407

⊕ This link will work for anyone.

**Open**

Microsoft

| From: | Laura Mirmelli |
| --- | --- |
| To: | Bryan Busch; Beverly Padilla |
| Subject: | FW: Laura Mirmelli shared the folder "AMS 9.24.2021 Production" with you. |
| Date: | Monday, January 17, 2022 3:07:51 PM |
| Attachments: | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | image002.png |

## Laura H. Mirmelli, Esq.

**Busch Mills & Slomka, LLP**
6400 Powers Ferry Road, N.E., Suite 319
Atlanta, GA 30339
lm@buschmills.com
D: 404 800-4031

**From:** Laura Mirmelli
**Sent:** Friday, September 24, 2021 3:27 PM
**To:** Tillie Noble <tnoble@gsrm.com>; Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>; Bryan Busch <bb@bsms.law>; Beverly Padilla <bp@bsms.law>
**Subject:** Laura Mirmelli shared the folder "AMS 9.24.2021 Production" with you.



# Laura Mirmelli shared a folder with you

Good Afternoon, Attached please find a link to Soufleris' document production and correspondence from Bryan Busch. Please let me know if you encounter any issues downloading.

Thank you,
Laura

 AMS 9.24.2021 Production

 This link will work for anyone.



| From: | Laura Mirmelli |
|---|---|
| To: | Beverly Padilla; Bryan Busch |
| Subject: | FW: Laura Mirmelli shared the folder "AMS 10.5.2021 - confidential production" with you. |
| Date: | Monday, January 17, 2022 3:07:33 PM |
| Attachments: | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | image002.png |

### Laura H. Mirmelli, Esq.
**Busch Mills & Slomka, LLP**
6400 Powers Ferry Road, N.E., Suite 319
Atlanta, GA 30339
lm@buschmills.com
D: 404 800-4031

**From:** Laura Mirmelli
**Sent:** Tuesday, October 5, 2021 1:47 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>; Tillie Noble <tnoble@gsrm.com>; Bryan Busch <bb@bsms.law>; Beverly Padilla <bp@bsms.law>; dnevans@bradley.com
**Subject:** Laura Mirmelli shared the folder "AMS 10.5.2021 - confidential production" with you.



## Laura Mirmelli shared a folder with you

Here's the folder that Laura Mirmelli shared with you.


📁 AMS 10.5.2021 - confidential production

🌐 This link will work for anyone.

**Open**

Microsoft

Privacy Statement

| | |
|---|---|
| **From:** | Laura Mirmelli |
| **To:** | Beverly Padilla; Bryan Busch |
| **Subject:** | FW: Laura Mirmelli shared the folder "Soufleris 11.4.2021 prod" with you. |
| **Date:** | Monday, January 17, 2022 3:07:14 PM |
| **Attachments:** | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | AttachedImage |
| | image002.png |

**Laura H. Mirmelli, Esq.**
**Busch Mills & Slomka, LLP**
6400 Powers Ferry Road, N.E., Suite 319
Atlanta, GA 30339
lm@buschmills.com
D: 404 800-4031

**From:** Laura Mirmelli
**Sent:** Thursday, November 4, 2021 9:18 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>; Tillie Noble <tnoble@gsrm.com>; Bryan Busch <bb@bsms.law>
**Subject:** Laura Mirmelli shared the folder "Soufleris 11.4.2021 prod" with you.



## Laura Mirmelli shared a folder with you

Good Evening. Below please find a link to the text production from Soufleris. Please let me know if you encounter any issues accessing the files.

Thanks,
Laura



Soufleris 11.4.2021 prod





# EXHIBIT E

**From:** Chris Cardwell <ccardwell@gsrm.com>
**Sent:** Monday, November 8, 2021 4:42 PM
**To:** smilbrath@acceliplaw.com; Thomas McFarland <tmcfarland@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>
**Cc:** smaisonave@acceliplaw.com; Bryan Busch <bb@buschmills.com>; Tillie Noble <tnoble@gsrm.com>
**Subject:** RE: Meet and Confer Under Local Rule 3.01: Nuvasive, Inc. v. Absolute Medical, LLC , et al Case Number 6:17cv02206-CEM-GJK

The coaching was in real time.  Mr. Soufleris was texting the answers to Mr. Hawley as I asked the questions.  I assume it went unnoticed because, as the hearing was via Zoom, Mr. Hawley's telephone was hidden by his computer.  I suggest the three of us have a conversation about this behavior and try to agree on a resolution before you file your motions.

Chris

**From:** smilbrath@acceliplaw.com [mailto:smilbrath@acceliplaw.com]
**Sent:** Monday, November 8, 2021 3:39 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>
**Cc:** smaisonave@acceliplaw.com; 'Bryan Busch' <bb@buschmills.com>; Tillie Noble <tnoble@gsrm.com>
**Subject:** RE: Meet and Confer Under Local Rule 3.01: Nuvasive, Inc. v. Absolute Medical, LLC , et al Case Number 6:17cv02206-CEM-GJK

Chris:  You will find that I am straight forward and follow the rules. So, no, if that happened, I certainly would have no knowledge of it. I am happy to hear you out on the matter, of course, but would want Mr. Busch involved in the discussion. How is it that the coaching, if that is what it was,

went unnoticed during the hearing by the lawyers and the entire panel?

As to your first point, I disagree that the order on reconsideration resolves the matter, though I will go back and look at it again. But based on what you are saying, we certainly have a disagreement on my two proposed motions. Do you agree that I can certify under local rule 3.01 that we have met and conferred but disagree on the merits of the two contemplated motions?

If so, I will file them.

Please let me know.

Steve

**Stephen D. Milbrath, Esquire**
**Board Certified in Business**
**Litigation & Intellectual Property Law**
Florida Bar No. 0239194
**Accel IP Law, PLLC**
1137 Edgewater Drive, Orlando, FL 32804
Direct:  (407) 986-3970
Cell: (407) 492-0259
www.TheIPLitigator.com
Cocoa Office:
505 Brevard Avenue, Suite 104, Cocoa, FL 32922

---

**From:** Chris Cardwell <ccardwell@gsrm.com>
**Sent:** Monday, November 8, 2021 3:28 PM
**To:** smilbrath@acceliplaw.com; Thomas McFarland <tmcfarland@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>
**Cc:** smaisonave@acceliplaw.com; 'Bryan Busch' <bb@buschmills.com>; Tillie Noble <tnoble@gsrm.com>
**Subject:** RE: Meet and Confer Under Local Rule 3.01: Nuvasive, Inc. v. Absolute Medical, LLC , et al Case Number 6:17cv02206-CEM-GJK

Steve,

I'm happy to discuss these motions with you, but we cannot agree to them for at least two reasons.

First, I believe the recent order on your clients' motion to reconsider resolves the issues raised in your letter.

Second, we just received evidence that indicates Mr. Soufleris, via text messages (and in real time), instructed Mr. Hawley on how to answer questions I posed to him during the arbitration.  As I

assume that neither you nor Mr. Busch were aware of (and do not condone) Mr. Soufleris' actions, I suggest we have a call to discuss the appropriate sanction(s) for his behavior.

I'm free after 3:00 cdt tomorrow.

Chris

---

**From:** smilbrath@acceliplaw.com [mailto:smilbrath@acceliplaw.com]
**Sent:** Monday, November 8, 2021 2:01 PM
**To:** Chris Cardwell <ccardwell@gsrm.com>; Thomas McFarland <tmcfarland@gsrm.com>; Mary Taylor Gallagher <mtgallagher@gsrm.com>
**Cc:** smaisonave@acceliplaw.com; 'Bryan Busch' <bb@buschmills.com>
**Subject:** Meet and Confer Under Local Rule 3.01: Nuvasive, Inc. v. Absolute Medical, LLC , et al Case Number 6:17cv02206-CEM-GJK

Dear Counsel: Please see and respond to the attached letter at your earliest convenience. This letter is in reference to two proposed motions to be filed in the above referenced matter.

Thanks, Steve Milbrath

**Stephen D. Milbrath, Esquire**
**Board Certified in Business**
**Litigation & Intellectual Property Law**
Florida Bar No. 0239194
**Accel IP Law, PLLC**
1137 Edgewater Drive, Orlando, FL 32804
Direct:  (407) 986-3970
Cell: (407) 492-0259
www.TheIPLitigator.com
Cocoa Office:
505 Brevard Avenue, Suite 104, Cocoa, FL 32922

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2022, I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system. I further certify that I electronically transmitted a true copy to:

R. Craig Mayfield, Esquire
cmayfield@bradley.com
Diana N. Evans, Esquire
devans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
*Attorneys for NuVasive*

Christopher W. Cardwell, Esquire (*pro hac vice*)
ccardwell@gsrm.com
Mary Taylor Gallagher, Esquire (*pro hac vice*)
mtgallagher@gsrm.com
M. Thomas McFarland (*pro hac vice*)
tmcfarland@gsrm.com
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
*Attorneys for NuVasive*

Stephen D. Milbrath
Accel IP Law, PLLC
smilbrath@acceliplaw.com
1137 Edgewater Drive
Orlando, FL 32804
*Attorneys for Absolute Medical*
*Systems, LLC and Absolute Medical, LLB*

/s/ Bryan E. Busch
Bryan E. Busch, Esq. (*Pro Hac Vice*)
bb@buschmills.com

8

# EXHIBIT 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| NUVASIVE, INC. ) | |
| ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| ) | 6:17-cv-2206-Orl-41GJK |
| VS ) | |
| ) | |
| ) | |
| ABSOLUTE MEDICAL, LLC, ABSOLUTE ) | |
| MEDICAL SYSTEMS, LLC, GREG ) | |
| SOUFLERIS, DAVE HAWLEY, and ) | |
| RYAN MILLER ) | |
| ) | |
| Defendant, ) | |
| _____ ) | |

**DECLARATION OF JOHN HAWKINS**

Under penalty of perjury and pursuant to 28 U.S.C. Section 1746, Declarant John Hawkins,

states as follows:

1. My name is John Hawkins. I am over the age of 21 and am fully competent to give the

   testimony contained in this Declaration, all of which is from my personal knowledge.

2. I am CEO of Hawkins Consulting, LLC, a technology focused business consulting

   company, located in Conyers, Georgia.

3. Hawkins Consulting, LLC was engaged by Busch, Mills & Slomka, LLP to perform data

   collection and processing of electronically stored text messages for Gregory Soufleris.

4. At that time, Mr. Soufleris used an Apple iPhone. Retrieving text messages on Mr.

   Soufleris's iPhone required following the various security protocols in place by Apple.

5. As a first step, believing it to be the most expedient method of retrieving the data, I sought

   to access Mr. Soufleris's messages via his iMessage account online. This process took

   several days, as it required various authentication steps and coordinating directly with Mr.

1

Soufleris. However, upon accessing the account, I learned that Mr. Soufleris did not have the account set up for online backup of iMessages.

6. Next, we pursued securing a secondary iPhone to synchronize Mr. Soufleris's Apple account and iPhone to a locally cloned iPhone. This process required activating the clone iPhone and coordinating the authentication process with Mr. Soufleris.

7. Once the clone iPhone was fully activated, the process of synchronizing the clone iPhone to Mr. Soufleris's iPhone and Apple account took several days to download.

8. Once the clone iPhone was fully synced, I learned that the messages stored on the iPhone only went back approximately sixty days. At this time, it appeared that there were no archived messages to be retrieved.

9. Next, I coordinated with Mr. Soufleris over several days to access other Apple devices he owned in an effort to determine if older backups were stored on Apple's iCloud or on any of his devices.

10. After that, I was able to confirm that Mr. Soufleris's Mac laptop was backing up his messages and had messages stored in his local iMessage archive that could be retrieved.

11. Upon examining his laptop, I learned that it would be necessary to update his Mac laptop to a newer version of the operating system to enable the functionality that synchronizes iMessage online, and therefore would allow them to be brought down to the cloned iPhone.

12. There was a possibility that the data extraction could be completed by having Mr. Soufleris physically mail the laptop to me, but I decided it would be more expedient to pursue the synchronization function.

13. However, because the laptop was significantly older and out of local hard drive storage space, I had to coordinate with Mr. Soufleris over a week to identify data that could be

deleted in order to create enough space on the hard drive to update the laptop's operating system.

14. Updating the operating system on the old laptop took a few days since it was an older computer. However, once the operating system was updated on the old laptop, I was able to synchronize the backup data to the cloned iPhone. This process took one full day. The steps involved were synchronizing from his laptop up to his Apple account, back down to the cloned iPhone local to me, and then synchronizing the data from the cloned iPhone to a computer which would allow searching of the data.

15. At this point, the extraction of the messages from his iMessage account could begin. We used a software solution called iMazing to extract messages according to the search terms provided by counsel.

16. In total, we extracted over 100 batch searches into an Excel format as requested by counsel. This process took another 3-4 days to complete. The work was performed by both myself and my staff, under my review and supervision in accordance with normal business practice. At this point, the search results were turned over to counsel and our work was complete.

Further this Declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct.

Date: 1/17/22

JOHN HAWKINS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2022, I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system. I further certify that I electronically transmitted a true copy to:

R. Craig Mayfield, Esquire
cmayfield@bradley.com
Diana N. Evans, Esquire
devans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
*Attorneys for NuVasive*

Christopher W. Cardwell, Esquire (*Pro Hac Vice*)
ccardwell@gsrm.com
Mary Taylor Gallagher, Esquire (*Pro Hac Vice*)
mtgallagher@gsrm.com
M. Thomas McFarland (*Pro Hac Vice*)
tmcfarland@gsrm.com
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
*Attorneys for NuVasive*

Stephen D. Milbrath
Accel IP Law, PLLC
smilbrath@acceliplaw.com
1137 Edgewater Drive
Orlando, FL 32804
*Attorneys for Absolute Medical*
*Systems, LLC and Absolute Medical, LLB*

/s/ *Bryan E. Busch*
Bryan E. Busch, Esq. (*Pro Hac Vice*)
bb@buschmills.com

4