UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**NUVASIVE, INC.,**

       **Plaintiff,**

**v.**                            **Case No.  6:17-cv-2206-CEM-LHP**

**ABSOLUTE MEDICAL, LLC,
GREG SOUFLERIS, DAVE
HAWLEY, ABSOLUTE
MEDICAL SYSTEMS, LLC,
RYAN MILLER, and BRYAN E
BUSCH,**

       **Defendants.**

_____/

## ORDER

THIS CAUSE is before the Court following the Eleventh Circuit's affirmance (June 21, 2023 Opinion, Doc. 383, at 6, 38)[1] of the Court's January 10, 2022 Order (Doc. 371). *See Nuvasive, Inc. v. Absolute Med., LLC*, 71 F.4th 861, 866, 880 (11th Cir. 2023).

### I.    PROCEDURAL BACKGROUND

The underlying facts of this case have been recited many times over the last nearly six years. Nonetheless, given the likelihood that the subsequent decision

---

[1] Citations to this Eleventh Circuit Opinion are to the District Court electronic docket page numbers.

herein will be appealed, the Court will again summarize the events that brought the parties—and the Court—to this unfortunate juncture.[2]

### A.    Factual Background of the Underlying Claims

This case arises primarily from a contractual dispute between Plaintiff, a manufacturer of medical products and equipment, (Second Am. Compl., Doc. 188, at 3), and Absolute Medical, LLC ("AM"), which entered into an Exclusive Sales Representative Agreement (Doc. 60-7 at 3–27) with Plaintiff beginning in 2013. In 2017, Plaintiff and AM continued their relationship when they executed another Exclusive Sales Representative Agreement ("2017 Sales Agreement," Doc. 260-3, at 131–59). Defendant Greg Soufleris was the president and sole member of AM. (AM Dep., Doc. 260-1, at 4, 8, 10). Defendants Dave Hawley and Ryan Miller, each through their own company, were sales representatives for AM. (Soufleris Dep., Doc. 260-3, at 91–92; Hawley's 2016 Independent Contractor Agreement, Doc. 260-10, at 20; Miller's 2016 Independent Contractor Agreement, Doc. 260-11, at 20). Near the end of 2017, Soufleris "dissolve[d]" AM and created a "new entity," Absolute Medical Systems, LLC ("AMS"), to "replac[e]" AM. (AMS EIN Email, Doc. 260-1, at 121; Doc. 260-1 at 66–67). Shortly after Soufleris formed the new

---

[2] Though the Court notes that the Eleventh Circuit is obviously no stranger to the history of this case. (*See generally* Doc. 383).

company, Hawley and Miller began working for AMS. (Hawley Dep., Doc. 260-18, at 4, 8, 15–17, 46–49; Miller Dep., Doc. 260-20, at 11, 23–26, 28–29, 31–32).

## B. Initiation of the Instant Lawsuit

Following termination of the parties' business relationship and formation of AMS, Plaintiff filed this lawsuit, which asserted nine counts in the Second Amended Complaint. (*See generally* Doc. 188). Counts I and II are breach of contract claims against AM; Count III is a breach of contract claim against AMS; Count IV is a breach of contract claim against Hawley and Miller; Count V is a conversion claim against Hawley and AMS; Count VI is a Florida Revised Limited Liability Company Act claim against Soufleris; Count VII pertains to piercing the corporate veil as to Soufleris for the actions of AM and AMS; Count VIII is a Florida Deceptive and Unfair Trade Practices Act claim against all Defendants; and Count IX is a tortious interference claim against Soufleris. (*Id.* at 14–23).

## C. Arbitration

In 2019, pursuant to a "Dispute Resolution" clause in the 2017 Sales Agreement, (Doc. 260-3 at 145–46), the Court ordered Plaintiff and AM to "proceed to arbitration on Count II" and stayed "Counts III, to the extent that Plaintiff seeks monetary relief, VI, VII, VIII, and IX . . . pending arbitration." (May 31, 2019 Order, Doc. 178, at 5). While arbitration was proceeding, Plaintiff moved for summary judgment as to Counts I, III, and IV. (*See generally* Pl.'s Mot. for Summ. J., Doc.

260). Hawley, Miller, and AMS moved for summary judgment as to Counts IV and V. (*See generally* Hawley, Miller, and AMS's Mot. for Summ. J., Doc. 257). The Court granted partial summary judgment to each side on certain undisputed material facts and issues of law. ("Spoliation Order," Doc. 290, at 57–58). Once arbitration concluded, (*see generally* Final Award, Doc. 283-2), the stay on the non-arbitrable claims was lifted, and Defendants filed a second round of summary judgment motions, (*see generally* Defs.' Mot. for Partial Summ. J., Doc. 308; AMS's Mot. for Summ. J., Doc. 312). The Court denied both of the subsequent motions for summary judgment. (Nov. 12, 2021 Order, Doc. 334, at 30).

### D.    Motions to Confirm and Vacate Arbitration Award

At that point, the Court fully expected that the case would proceed to the long-awaited trial, which was scheduled to begin imminently. (Notice of Hearing, Doc. 286). Then mere weeks before trial, AM and AMS filed a Motion to Confirm Arbitration Award ("Motion to Confirm," Doc. 333), and Plaintiff filed a Motion to Vacate Arbitration Award ("Motion to Vacate," Doc. 353).[3] Given the timing of the quickly approaching trial, the Court was forced to once again continue the trial to consider the issues raised in the motions concerning the arbitration award. (Nov. 17, 2021 Endorsed Order, Doc. 350).

---

[3] Plaintiff also filed a Sealed Motion to Vacate Arbitration Award (Doc. 355).

The Court first confirmed that it had jurisdiction to consider the Motion to Vacate under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. (Doc. 371 at 7). The Court next considered the issue of equitable tolling under the FAA because Plaintiff's Motion to Vacate was untimely under the statute, (*id.* at 7–13), and determined that given the "extraordinary circumstances"[4] present in this case and the fact that "Plaintiff acted with due diligence," the "application of equitable tolling [wa]s appropriate," (*id.* at 13). Thus, the Court found that "Plaintiff's Motion to Vacate [wa]s timely based on that tolling." (*Id.*).

The Court next considered whether it should vacate the Arbitration Award. (*Id.* at 13–21). After a careful analysis, the Court concluded that "[a]s a result of . . . fraud committed by Soufleris and Hawley . . . it [was] necessary to vacate the Final Award issued by the arbitration panel."[5] (Doc. 371 at 20). Accordingly, the Court granted Plaintiff's Motion to Vacate and denied AM and AMS's Motion to Confirm. (*Id.* at 29). The Court also determined that "requiring Plaintiff to participate in a new arbitration proceeding would not be appropriate when the failure of the first 'lengthy and costly multi-day arbitration hearing,' . . . was due solely to Defendants' misconduct." (*Id.* (internal citation omitted)). Further, the Court found that "it would

---

[4] To avoid redundancy, the Court will elaborate on these extraordinary circumstances below in conjunction with its discussion of sanctions.
[5] Details of the fraud committed by Soufleris and Hawley will be provided later in this Order.

be extremely prejudicial to Plaintiff to require it to go through the time and expense of a new proceeding while simultaneously again delaying the remainder of this litigation." (*Id.*). Thus, the Court decided to "exercise jurisdiction over the arbitrated claims in conjunction with the ongoing litigation" in federal court. (*Id.* at 21).

### E.    Appeal

Defendants appealed. (Notice of Appeal, Doc. 378, at 1); *see* 9 U.S.C. § 16(a)(1)(D), (a)(1)(E), and (a)(3). "There [we]re four issues on appeal"—two regarding this Court's application of equitable tolling and two regarding the Court's decision to vacate the Final Award. (Doc. 383 at 19). First, Defendants argued that this "[C]ourt erred when it concluded that the three-month deadline for seeking vacatur of the arbitration award may be equitably tolled." (*Id.*). Second, Defendants argued "that even if the FAA's three-month deadline for moving to vacate an award may be equitably tolled in appropriate circumstances," this Court "abused its discretion by tolling the deadline and finding [Plaintiff]'s motion timely in this case." (*Id.*). Third, Defendants maintained that this "[C]ourt erred by granting the motion to vacate the arbitration award." (*Id.*). Finally, Defendants contended that this "[C]ourt abused its discretion when, after vacating the Final Award, . . . [it] denied their request to remand the case back to the arbitration panel." (*Id.*). The Eleventh Circuit affirmed this Court on all issues. (*Id.* at 26–37).

### F.    Bankruptcy

On September 6, 2023, the Eleventh Circuit issued the Mandate (Doc. 386) on its Opinion in this case. (*Id.* at 3). Ordinarily, the particular date of a mandate does not hold much meaning in a case. However, the Court must note the juxtaposition of events here. In this case, just two days following issuance of the Mandate, AM and AMS rushed to the Bankruptcy Court to file bankruptcy petitions. (Suggestion of Bankruptcy, Doc. 389, at 1). Pursuant to 11 U.S.C. § 362, an automatic stay immediately takes effect upon filing of the bankruptcy petitions, and this Court may not take any action in relation to AM or AMS while the bankruptcy stay is in place. However, on November 16, 2023, the Bankruptcy Court lifted the stay for the purpose of allowing this Court to finally resolve this case. (Nov. 16, 2023 Bankruptcy Order, Doc. 394-1, at 3 (ruling that this Court "is authorized to proceed with, and to rule on, its pending Show Cause Order, entered . . . on January 10, 2022"); Nov. 16, 2023 Bankruptcy Order, Doc. 394-2, at 3 (same)).

## II.   SANCTIONS

### A.   Background

With all appellate issues having been affirmed and the bankruptcy stay now lifted, this case is back to the posture it was in prior to Defendants' interlocutory appeal, and the Court is left to determine how to bring this case to an ultimate conclusion. The Court begrudgingly finds it necessary to once again recount, in the Eleventh Circuit's words, Defendants' "brazen, serious misconduct" in this case.

(Doc. 383 at 37). From the inception of this case, Defendants have lied and cheated—and at times even perjured themselves under oath—in an attempt to prevail.[6] While many of Defendants' falsehoods and misrepresentations are demonstrable based on the record evidence—and those instances have been painstakingly documented throughout the history of this case—some must be inferred because the spoliated evidence and falsified testimony runs so deep. The Court may make these credibility determinations when considering sanctions. *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1318 (11th Cir. 2021) (Luck, J., concurring) (not taking issue with a district court's credibility finding when considering appeal of a dismissal as a sanction); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2015 U.S. Dist. LEXIS 101474, at *46–47 n.13 (N.D. Ga. Aug. 3, 2015).

Beginning with the start of discovery, Defendants did not answer their first set of interrogatories truthfully. (June 28, 2018 Prelim. Inj. Hr'g Tr., Doc. 95, at 118). And the untruthful answers went to issues at the heart of this case—whether Soufleris, as the president of AM, required Hawley and Miller, among others, to sign

---

[6] Ordinarily, the Court is careful to be measured and tempered with its use of such brash language. But at this point in this years-long litigation, the Undersigned's naiveté with Defendants' character for truthfulness has been obliterated. "[I]f it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck." *Sierra Club v. Flowers*, 526 F.3d 1353, 1359 (11th Cir. 2008) (quoting *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 (11th Cir. 1998)). Defendants have been figuratively waddling and quacking for years in this case; the Court is now convinced that they are ducks.

non-competition agreements, as he was required contractually to do. (*See* Doc. 290 at 34 (explaining the history of Defendants' evolving interrogatory responses after they were caught giving untruthful responses based on Plaintiff's evidence)). It weighs heavily on the Court that at least some of those interrogatory responses were signed "[u]nder penalty of perjury." (*See, e.g.*, AM's Resp. to Pl.'s First Set of Interrogs., Doc. 260-6, at 11 (signed by Soufleris)).

Defendants' penchant for truthfulness fared no better at the preliminary injunction hearing. After Defendants' testimony under oath, the Court identified "some shenanigans being afoot," noting "variables that [we]re troublesome for the Court," such as Defendants having excellent recall on direct examination and not being able to remember anything on cross-examination. (Doc. 95 at 118). And, even though the Court did not realize it at the time, it had inadvertently identified an issue at the preliminary injunction hearing that would soon be a bombshell in this case, commenting on the fact that it was troublesome that one of Defendants had only had a "Gmail account a little over a month" but attempted to imply he had it for longer. (*Id.*).

At this point, Defendants' conduct turned from bad to worse. Back in November 2017, prior to the filing of this lawsuit, Plaintiff's counsel sent AM's and Soufleris's counsel a letter noticing the impending litigation. (Doc. 260-1 at 141–42). Among other things, the letter explicitly advised that AM was "required to take

all necessary steps to preserve, and not destroy, conceal, or alter, any and all communications and documents relevant to this matter, including by way of example, and without limitation, emails, text messages, voicemails, records, files, and other data, wherever located and regardless of the format or media." (*Id.* at 142). Further, the letter warned "that purposeful destruction of such evidence could result in penalties, including legal sanctions." (*Id.*).

And then once the Complaint (Doc. 1) was filed in this case in December 2017, all Defendants were on notice to preserve evidence relevant to this litigation because they were represented by counsel, who as attorneys practicing in federal court have a duty to be familiar with the Federal Rules of Civil Procedure.[7] One such rule, Rule 37(e), addresses the spoliation, or destruction, of electronically stored information ("ESI"). That Rule reminds parties of their duty "to take reasonable steps to preserve" ESI "in the anticipation or conduct of litigation" and the potential penalties for failing to do so. Fed. R. Civ. P. 37(e).

As explained earlier in this litigation, "[i]nexplicably, despite being on notice of the requirement to preserve evidence relevant to this litigation, Defendants—and their counsel—completely failed to do so." (Doc. 290 at 12). Defendants failed to

---

[7] At various times throughout the duration of the case, Defendants have been represented by various different attorneys, but counsel Bryan E. Busch has represented all Defendants at all times since the inception of the case.

preserve—and indeed, intentionally destroyed[8]—"an entire email domain, additional email accounts, and text messages from multiple cell phone numbers belonging to Defendants, all of which contained evidence relevant to the issues in this case." (Doc. 371 at 21 (citing Doc. 290 at 18, 10–21, 56–57)). "[T]he Court went through exhaustive efforts to recover [this] evidence" but was unsuccessful. (Doc. 371 at 26 (citing Jan. 3, 2020 Order, Doc. 219 at 1–2; Defs.' Notice of Compliance, Doc. 220, at 1–2; Defs.' Notice of Compliance, Doc. 221, at 1–2)). Thus, the Court was left with no choice but to grant spoliation sanctions to Plaintiff in the form of adverse inferences. (Doc. 290 at 56–57).

Still, Plaintiff and the Court marched forward towards trial in good faith. "Defendants meanwhile were continuing their abusive behavior, this time in the arbitration proceeding." (Doc. 371 at 27). While the relevant events during the arbitration that led to vacating of the Final Award have already been provided on the record in excruciating detail, (*see* Doc. 371 at 14–17), they can be summarized as follows. Hawley testified via video conference and began his testimony by swearing "under oath 'that the evidence you're about to give will be the truth, the whole truth, and nothing but the truth,' and 'that there is no one else in the room with you who is

---

[8] "The facts regarding Defendants' spoliation of vast amounts of evidence in this case are clear. Defendants were on notice to preserve evidence relevant to this case. Defendants and their counsel not only failed to take reasonable steps to preserve that evidence, as required by Rule 37(e)—but *intentionally destroyed* vast amounts of evidence." (Doc. 290 at 18).

not identified and that no unauthorized person can communicate with you while you are giving your testimony.'" (*Id.* at 14). Hawley violated this oath. Soufleris was, in real time, messaging Hawley while he was testifying, and Hawley was demonstrably conforming his answers to Soufleris's messages, which provided answers crafted to avoid any liability for the underlying alleged conduct. (*See id.* at 15–17).

The misconduct during the arbitration next landed on the Court's doorstep. As noted above in the Court's procedural history of the case, following issuance of the arbitration panel's Final Award, the Court lifted the stay on the remaining counts in the case and also briefly reopened discovery to bring the case to a conclusion. (*See* Second Am. Case Management and Scheduling Order, Doc. 291, at 1). Plaintiff propounded additional discovery requests on Soufleris and AMS, who did not fully respond, (Doc. 371 at 11 (citations omitted)), causing Plaintiff to file a Motion to Compel (Doc. 302), which was granted in part by the Court, (Aug. 20, 2021 Order, Doc. 319, at 7). "Soufleris and AMS failed to produce the compelled documents until . . . seventy days after the Court's deadline to do so." (Doc. 371 at 12 (citing Doc. 319 at 7)). The reason for this delay—in violation of the Court's Order—would soon become clear. Defendants were attempting to run the clock out on the three-month statutory time limit for filing a motion to vacate under the FAA. (*See* Doc. 371 at 13; Doc. 383 at 28, 29).

Once all this information came to light, "Defendants vigorously argued in no less than four motions before the Court that the Court was bound by the Final Award in the arbitration for Count II as applied to most of the remainder of the counts pending in this litigation. In other words, Defendants were attempting to have this Court enforce their fraudulently obtained arbitration award and to use that award to legally bar most of the remaining claims in this case. Thus, Defendants not only committed fraud in the arbitration, but they also attempted to commit fraud in this Court." (Doc. 371 at 23 (footnote omitted) (citing Defs.' Mot. for Reconsideration, Doc. 292, at 6–7; Doc. 308 at 2, 4–10; Doc. 312 at 4–7 (also arguing that Count III should be compelled to arbitration); Defs.' Mot. for Partial Reconsideration, Doc. 341, at 1–2)). As explained, however, the Court granted Plaintiff's Motion to Vacate, a decision affirmed on appeal. But Defendants did not back down on appeal. They stood by Hawley's "Declaration (Doc. 360-3), wherein he states that he 'was not aware that Mr. Soufleris was texting [him] during the course of [his] testimony and did not review or utilize the text messages from Mr. Soufleris prior to answering questions during the Arbitration,'" even though this Court has clearly "discredit[ed] Hawley's claims of ignorance and innocence." (Doc. 371 at 14–15; Doc. 383 at 33 (affirming this Court regarding discrediting Hawley's Declaration)).

To summarize Defendants' misconduct up to this point: Defendants[9] demonstrably lied in written discovery, refused to be forthright in answering questions under oath at the preliminary injunction hearing, failed to preserve and intentionally spoliated vast amounts of ESI evidence, conspired to commit fraud under oath during arbitration testimony,[10] violated Court Orders to timely turn over discovery, and submitted a false affidavit and misleading briefing in an attempt to prevent the Court from being able to remedy their lies and deceit. All of this misconduct caused substantial prejudice to Plaintiff. And now, Defendants ask the Court to proceed to trial as though nothing has occurred. Even assuming *arguendo* that the Court could cure the extreme prejudice caused to Plaintiff at this point—a feat that this Court is certain is impossible—the Court is left to ponder why exactly it would take Defendants at their word that they would *now* walk into the courtroom on the morning of trial, swear an oath to tell the truth, and then miraculously transform their character from that which they have demonstrated over the past six years and tell the truth, the whole truth, and nothing but the truth. With this in mind, the Court cautiously considers how to proceed.

---

[9] This captures Defendants' conduct collectively. The conduct of each Defendant individually has been laid out in this Court's Orders.

[10] To be clear, the Court only considers the misconduct in the related arbitration proceeding to the extent that Defendants attempted to enforce the fraudulently obtained Final Award here in this Court. (*See* Doc. 371 at 23).

**B.     Legal Standard[11]**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). Federal Rule of Civil Procedure 37(e), which governs the spoliation of electronically stored information states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

---

[11] The Court's previous Order referenced both Rule 37(e) and the Court's inherent authority as potential avenues for sanctioning Defendants. Upon further consideration, the Court finds sanctioning Defendants solely pursuant to Rule 37(e) to be most appropriate.

Fed. R. Civ. P. 37(e); *see Williford v. Carnival Corp.*, No. 17-21992-CIV-COOKE/GOODMAN, 2019 U.S. Dist. LEXIS 88808, at *13–17 (S.D. Fla. May 28, 2019) (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).

## C. Analysis

### 1. Defendants

Just prior to Defendants' appeal, the Court put Defendants on notice that it was "consider[ing] the ultimate sanction of default." (Doc. 371 at 27). "'Ultimate sanction' cases . . . rest upon the conviction that no lesser sanction will prevent the offending litigant from continuing to lie or distort the truth so pervasively that it 'prevent[s] the opposing party from fairly presenting his case or defense.' Use of the 'ultimate sanction' addresses not only prejudice suffered by the opposing litigants, but also vindicates the judicial system as a whole, for such misconduct threatens the very integrity of courts, which otherwise 'cannot command respect if they cannot maintain a level playing field amongst participants.'" *Chemtall Inc. v. Citi-Chem, Inc.*, 992 F. Supp. 1390, 1409 (S.D. Ga. 1998).

When the Court is considering sanctioning a party or an attorney, the Court must comply with "with the mandates of due process."[12] *Hernandez v. Acosta Tractors, Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) (quoting *Kornhauser v.*

---

[12] This legal authority references the Court's inherent sanctioning authority because, as noted above, the Court previously considered that as an option for sanctioning Defendants and wanted to ensure full compliance with Defendants' due process rights.

*Comm'r of Soc. Sec.*, 685 F.3d 1254, 1257 (11th Cir. 2012)). "[C]omplying with the mandates of due process means that the [party or] attorney must, first, be afforded 'fair notice that [their] conduct may warrant sanctions and the reasons why,' and, second, 'be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify [their] actions.'" *Kornhauser*, 685 F.3d at 1257–58 (quoting *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575–76 (11th Cir. 1995)). In compliance with this mandate, the Court previously required "all Defendants . . . to show cause as to why this Court should not grant default Judgment to Plaintiff on all counts and award attorneys' fees and costs." (Doc. 371 at 28).

Defendants responded. (*See generally* Defs.' Resp. ("OTSC Response"), Doc. 375). Defendants raise three points in their response, each of which the Court will address.[13] First, Defendants contend that the Court may not exercise jurisdiction over the claims pending from the vacated Final Award. This issue was resolved on appeal, and the Eleventh Circuit held that this Court may retain jurisdiction "over the entire case." (Doc. 383 at 37).

Second, Defendants argue that they "engaged in good faith efforts to comply with the Court's Discovery Orders" and did not intentionally delay producing the text messages revealing Soufleris's and Hawley's misconduct during the arbitration. (Doc. 375 at 6). This argument fails for at least two reasons. If Defendants were

---

[13] The Court addresses Defendants' points out of order.

having problems complying with the Court's discovery deadline, they should have advised the Court of such. Additionally, the Court finds it curious that the very last in a series of "rolling" production of documents was Soufleris's incriminating text messages. (Doc. 375 at 8). The Court simply cannot conclude that the described production of documents was in good faith.[14]

Finally, Defendants argue that the Court has already sanctioned them for the missing emails. This argument contains numerous flaws, each of which the Court will address in detail. Defendants protest that "this issue continues to cast a long shadow over the Court's consideration of penalties against Defendants." (Doc. 375 at 2). But Defendants' argument does not capture the primary purpose of Rule 37(e), which is "to cure the prejudice" to the opposing party caused by the spoliation. Fed. R. Civ. P. 37(e)(1). Defendants are correct that they were previously punished for their spoliation of evidence in the Spoliation Order by a ruling of adverse inferences. (Doc. 290 at 56–57). At the time, the Court believed that its sanction would cure the prejudice caused by Defendants from the spoliation because other evidence still existed that would be available at trial, primarily, the testimony of Defendants who were involved in the events as they occurred. This conclusion included the

---

[14] Alternatively, even if the Court assumes *arguendo* that Defendants' violation of the Court's Discovery Order was negligent rather than intentional, this violation was a small piece of the greater pattern of misconduct by Defendants, so it would not change the Court's conclusion herein.

presumption that Defendants would, when under oath, testify truthfully. The Court now has evidence on the record demonstrating that Defendants are exceedingly unlikely to do so. Upon reevaluation, given the events that have come to light since the Court's Spoliation Order, the Court is convinced that the previous sanction is not sufficient to satisfy the purpose of Rule 37(e). *See Google LLC v. Starovikov*, No. 21cv10260 (DLC), 2022 U.S. Dist. LEXIS 207437, at *27 (S.D.N.Y. Nov. 15, 2022) (reevaluating the court's previous ruling "[i]n light of the Defendants' subsequent dishonesty and the shifting explanations for their conduct" and ultimately issuing default judgment under Rule 37(e)(2)(C)).

Next, in support of this argument, Defendants contend that "the Court must distinguish between *intentional misconduct* versus mistaken technology assumptions." (Doc. 375 at 2). This argument is incredibly imperceptive to the whole spoliation picture. First, Defendants focus on the fact that they did not actively delete their email domains, they simply did nothing to preserve them. Defendants conveniently ignore the fact that the spoliation of ESI was not limited to just emails. "Text messages from Soufleris, Hawley, and Miller's cell phones [were] also . . . irretrievably deleted."[15] (Doc. 290 at 15 (citing *generally* Nov. 19, 2019 Spoliation

---

[15] Relatedly, the OTSC Response argues that "[m]ore importantly, the Court's blanket extension of Mr. Soufleris's missteps to Mr. Hawley and Mr. Miller continues to ignore the fact that Mr. Hawley and Mr. Miller did not have any authority or control over the [AM] domain and were not involved in the domain renewal decision. Notably, Mr. Miller was not even a party to this action at the time Mr. Soufleris made his renewal decision, yet Mr. Miller faces a second round of sanctions, and possible default, for conduct outside his control." (Doc. 375 at 4). Again, this

Hr'g Tr., Doc. 215)). And "notably, not *all* text messages were deleted from Defendants' cell phones. Rather, there [was] a gap in text messages" during a "timeframe . . . crucial to the issues in this case." (*Id.* at 16).

The Court also previously expressly addressed—and rejected—Defendants' argument that their spoliation conduct was unintentional. (*Id.* at 16–17 ("Defendants and their counsel all state that the wholesale destruction of evidence in this case was not intentional. However, given Defendants' previous penchant for duplicity on the record in this litigation, the Court finds these assertions to lack credibility. Numerous facts on the record support this conclusion." (internal citations omitted)). The Court refers Defendants to its detailed analysis of the evidence on the record in its Spoliation Order in support of this conclusion. (*Id.* at 17–18).

Defendants' OTSC Response does absolutely nothing to alleviate the Court's grave concerns previously set forth to Defendants. Defendants protest that "[t]he Court's conclusion that a global default is an appropriate remedy is born out of

---

argument wholly ignores much of the Court's Spoliation Order, including the Court's analysis of Hawley's and Miller's *own* failures to preserves their *own* emails, (Doc. 290 at 14), which they certainly could have done, and their *intentional* deletion of text messages on their *own* cell phones, (*id.* at 15–16), which were solely within their control. Indeed, if Hawley or Miller had preserved their emails and text messages, as they had a duty to do, they—and the Court—would not be in this position because the Court would readily be able to cure the prejudice to Plaintiff caused by the other Defendants' conduct and move forward to a trial on the merits for the claims against them.

frustration rather than fact."[16] (Doc. 375 at 1). But make no mistake, every decision in this case has been made only after a meticulous consideration of every piece of evidence in the voluminous record and a careful analysis of the applicable legal authority, (*see generally* Doc. 290; Doc. 334; Doc. 371), and those previous Orders are incorporated by reference into this Order in their entirety. And when Defendants pushed the Undersigned's judicial temperament to its absolute limit, even still, the Court exercised judicial restraint, prudently crafting the least severe sanction necessary to vindicate Plaintiff's rights, while also sanctioning—and attempting unsuccessfully to curb—Defendants' unacceptable conduct. But alas, it is Defendants who have forced the Court's proverbial hand at this juncture; no lesser sanction will do.

Accordingly, the Court makes the following findings. As determined previously, under Rule 37(e)(2), "Defendants destroyed [ESI] evidence with an intent to deprive Plaintiff from using the evidence in this case." (Doc. 290 at 18); *Ala. Aircraft Indus. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017), *rev'd in part and aff'd in relevant part*, No. 20-11141, 2022 U.S. App. LEXIS 4039, at *43 (11th Cir. Feb. 14, 2022) (finding an "intent to deprive" under Rule 37(e)(2) based on "sufficient circumstantial evidence"); *FTC v. F&G Int'l Grp. Holdings, LLC*, 339

---

[16] Indeed, it is Defendants' OTSC Response that disregards the factual record in this case, such as ignoring large portions of the Court's Spoliation Order, as evidenced by the discussion above.

F.R.D. 325, 332 (S.D. Ga. 2021) (finding an "intent to deprive" when the defendants "affirmatively delet[ed] emails . . . after being on notice of this investigation and subsequent lawsuit"); *O'Berry v. Turner*, Civil Action No. 7:15-CV-00064-HL, 2016 U.S. Dist. LEXIS 55714, at *12–13 (M.D. Ga. Apr. 27, 2016) (finding an "intent to deprive" under Rule 37(e)(2) when the defendants "print[ed] a single paper copy" of ESI and "had no written . . . document preservation policy").

Further, the spoliated ESI, virtually all emails relevant to the issues in the instant litigation and text messages from all individual Defendants during the "timeframe crucial to the issues in this litigation," (Doc. 290 at 18), is presumed to have been absolutely essential to determining the liability of Defendants for the conduct alleged by Plaintiff in this case. Finally, no sanction less than default can cure the prejudice caused to Plaintiff by Defendants' intentional spoliation of the ESI. Therefore, pursuant to Rule 37(e)(2)(C), the Court finds that a sanction of default judgment against all Defendants is warranted. *Wyndham Vacation Ownership, Inc. v. Am. Consumer Credit, LLC*, No. 18-80095-CIV, 2019 U.S. Dist. LEXIS 149624, at *17–19 (S.D. Fla. Aug. 30, 2019), *report and recommendation adopted by* 2019 U.S. Dist. LEXIS 160037, at *3 (S.D. Fla. Sep. 16, 2019) (granting the sanction of default judgment pursuant to Rule 37(e) for a defendant's "fail[ure] to take reasonable steps to preserve" "emails and electronic documents" which could "not be recovered or replaced"); *United Healthcare Servs., Inc. v. Next Health LLC*,

Civil Action No. 3:17-CV-0243-X-BT, 2023 U.S. Dist. LEXIS 47219, at *11 (N.D. Tex. Mar. 21, 2023) (granting default judgment under, in part, Rule 37(e)(2) for a defendant's spoliation of ESI, including "clos[ing an] account . . . , making no effort to retrieve the data before it fell prey to [the data holder]'s 12-month data retention policy").

### 2.    Mr. Busch

This leaves for the Court's disposition two outstanding Orders to Show Cause ("OTSC") issued as to Mr. Bryan E. Busch, counsel for Defendants. (Doc. 290 at 57; Doc. 371 at 30). Mr. Busch filed Responses (Doc. Nos. 293, 375).[17] The first OTSC was issued as part of the Court's Spoliation Order. (Doc. 290 at 57). During the hearing held on Defendant's Spoliation Motion, ("Spoliation Hearing," Min. Entry, Doc. 214), Mr. Busch "stated that he was 'to blame' for the loss of the email evidence because he—despite not knowing whether the emails would be preserved—instructed Soufleris that it was okay to close the email domain." (Doc. 290 at 14 (quoting Doc. 215 at 88)). The Court found "Mr. Busch's direction to Soufleris . . . particularly concerning . . . given that a member of the Bar is expected to have significantly more legal sophistication than a litigant." [18] (*Id.* (citing *Classic*

---

[17] The second Response was filed jointly with Defendants. (*See generally* Doc. 375).

[18] "The Court notes that Mr. Busch has been an attorney and member of the Georgia Bar for over twenty years." (Doc. 290 at 14 n.15 (citing *Georgia Bar Directory*, Mr. Bryan Edward Busch, https://www.gabar.org/MemberSearchDetail.cfm?ID=MDA2MDU1).

*Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237-Orl-78GJK, 2021 U.S. Dist. LEXIS 37008, at *16–17 (M.D. Fla. Feb. 10, 2021) (discussing a litigant's sophistication in determining whether evidence spoliation was intentional))).

Mr. Busch's Response indicates that his direction to Defendants permitting them to close the email domain was "a mistaken technology assumption by counsel without intimate knowledge of Google's policies, archive procedures and backup systems." (Doc. 293 at 2). Thus, Mr. Busch argues that he never intentionally directed Defendants to spoliate ESI.[19]

The Court expresses serious concerns that such an experienced member of the Bar never bothered to stop and consider the ramifications of allowing his client to close an entire email domain without even a simple online search about Google's archive policies.[20] Indeed, Mr. Busch stated at the Spoliation Hearing that he had "no idea" what "Google's policy was" in reference to "archived emails." (Doc. 215 at 88). The Court sincerely hopes that Mr. Busch has proactively used this experience to educate himself on best practices for preservation of ESI, given its ubiquity and often critical importance in cases. An attorney simply cannot bury his head in the sand and permit vast amounts of evidence to disappear, never to be recovered, and

---

[19] Mr. Busch also argues in his Response that AM did not intentionally spoliate ESI, (Doc. 293 at 2), but as already discussed at length above, there is ample evidence on the record that Defendants' spoliation of ESI was intentional.

[20] Or, if an online search was beyond Mr. Busch's technological capabilities, perhaps a phone call to Google; or more realistically, retaining an ESI discovery firm for the case.

claim technological ignorance when, as a member of the Bar, he has a sworn ethical duty to ensure preservation of that evidence.

While Mr. Busch's clients have proven themselves to be untruthful with the Court, the Court does not have concrete evidence of the same for Mr. Busch as to this issue, and so, as a member of the Bar, he is given the benefit of the doubt. *Adkins v. Hosp. Auth. of Hous. Cnty.*, No. 5:04-CV-80 (CAR), 2009 U.S. Dist. LEXIS 97361, at *21 (M.D. Ga. Oct. 20, 2009)[21] ("In Georgia, it is always presumed that members of the State Bar have complied with the relevant ethical directory and disciplinary rules in the absence of contrary evidence. (citing *Gene Thompson Lumber Co. v. Davis Parmer Lumber Co.*, 377 S.E.2d 15, 17 (Ga. 1988))). Thus, the Court will presume that Mr. Busch did not intentionally direct his clients to destroy evidence in this case.

While the Court finds it legally appropriate to apply the presumption from the Georgia Bar rules to Mr. Busch, it would be remiss if it left the matter at that. Quite frankly, the Court is concerned by the pattern of conduct exhibited by Mr. Busch's clients in this and a previous case. *See NuVasive, Inc. v. Day*, No. 19-cv-10800, 2022 U.S. Dist. LEXIS 55091 (D. Mass. Mar. 28, 2022), *aff'd*, 77 F.4th 23 (1st Cir. 2023). In *Day*, a case remarkably factually similar to the instant action, Mr. Busch's clients,

---

[21] Because Mr. Busch is a member of the Georgia Bar, for the purposes of this analysis, the Court applies Georgia's rule as to this issue as persuasive authority.

who like Defendants here were former sales representatives for Nuvasive, were sanctioned for intentionally spoliating text messages relevant to the issues in that case. *Day*, 2022 U.S. Dist. LEXIS 55091, at *7. While Mr. Busch was not implicated in that spoliation, lightening does not often strike twice. The Court questions the odds of a different client independently employing the same unscrupulous litigation tactics as occurred in this case. *See Johnson v. Comm'r of Internal Revenue*, 289 F.3d 452, 456–57 (7th Cir. 2002) ("The . . . Court was not required to ignore [the appellant]'s bad conduct in other cases; indeed it would have been remiss not to consider it."); *but see Faulk v. Volunteers of Am., N. Ala., Inc.*, No. 3:08-CV-0591-SLB, 2010 U.S. Dist. LEXIS 148525, at *2 (N.D. Ala. Sep. 29, 2010) ("[T]his court may not sanction conduct in cases other than its own.").

Nevertheless, even giving Mr. Busch the benefit of the presumption against intentional misconduct, he, at a minimum, clearly acted with gross negligence.[22] As such, the Court finds it appropriate to award to Plaintiff fees associated with its efforts in attempting to recover the spoliated ESI, for which Defendants will be jointly and severally liable. *Doe v. Willis*, No. 8:21-cv-1576-VMC-CPT, 2023 U.S. Dist. LEXIS 64370, at *43–44 (M.D. Fla. Apr. 12, 2023).

---

[22] The Court is left unsettled, having to forcibly digest an unlikely conclusion, that an experienced attorney is just flatly incompetent on the ubiquitous issue of ESI.

The Court issued its second OTSC as to Mr. Busch because it appeared that Soufleris was in Mr. Busch's office with him during the arbitration while Soufleris was sending the offending text messages to Hawley. (Doc. 371 at 28–29). Additionally, it appeared that Mr. Busch argued for confirmation of the arbitration award with the knowledge that the award had been obtained fraudulently. (*Id.* at 29). Mr. Busch has filed a Declaration, (Doc. 375 at 14–20), indicating that Soufleris exited Mr. Busch's office and entered the hallway out of Mr. Busch's "direct line of sight" just prior to Hawley testifying and thus, he did not observe the improper behavior by Soufleris. (*Id.* at 19). Further, Mr. Busch indicates that he was unaware of Soufleris's fraud until it was "brought to [his] attention by Plaintiff's counsel." (*Id.*). Based on this Declaration, the Court is left to take Mr. Busch at his word, *Adkins*, 2009 U.S. Dist. LEXIS 97361, at \*21, and this OTSC will be discharged without further action.

### III.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

> 1. Plaintiff is entitled to **DEFAULT JUDGMENT** on all claims as follows:[23]

---

[23] The Clerk will be directed to enter judgment following a determination on the issue of damages.

    a.  Counts I and II against AM;

    b.  Count III against AMS;

    c.  Count IV against Hawley and Miller;

    d.  Count V against Hawley and AMS;

    e.  Count VI against Soufleris;

    f.  Count VII against Soufleris, AM, and AMS;

    g.  Count VIII against all Defendants; and

    h.  Count IX against Soufleris.

2. **On or before December 6, 2023,** Plaintiff shall file a brief as to damages.

3. Regarding the May 4, 2021 Order to Show Cause (Doc. 290) as to Defendants' Counsel, Mr. Bryan E. Busch, Plaintiff is entitled to fees and costs associated with the litigation of Defendants' spoliation of the email domain and accounts.

    a.  **On or before December 6, 2023,** Plaintiff shall file an accounting of fees and costs associated with the litigation of Defendants' spoliation of the email domains and accounts.

    b.  Defendants and Defendants' Counsel, Mr. Bryan E. Busch will be jointly and severally liable for these fees and costs.

4.  The January 10, 2022 Order to Show Cause (Doc. 371) is

**DISCHARGED** as to Defendants' Counsel, Mr. Bryan E. Busch, only.

**DONE** and **ORDERED** in Orlando, Florida on November 22, 2023.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record