## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| NUVASIVE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:17-cv-2206-CEM-LHP |
| | ) |
| ABSOLUTE MEDICAL, LLC, | ) |
| ABSOLUTE MEDICAL SYSTEMS, | ) |
| LLC, GREG SOUFLERIS, DAVE | ) |
| HAWLEY, RYAN MILLER, and | ) |
| BRYAN E. BUSCH, | ) |
| | ) |
| Defendants, | ) |
| | ) |

## NUVASIVE, INC.'S DAMAGES MEMORANDUM

Through its counsel of record, Plaintiff, NuVasive, Inc., respectfully submits this Damages Memorandum pursuant to the Court's November 22, 2023, Order (the "Default Order") (Doc. 395), which granted default judgment in NuVasive's favor on all counts within its Second Amended Complaint (Doc. 188).

## INTRODUCTION

In total, NuVasive seeks to recover $19,826,835.66 from Defendants, Absolute Medical, LLC ("AM"), Absolute Medical Systems, LLC ("AMS"), Greg Soufleris, Dave Hawley, and Ryan Miller.  This amount consists of:

- $13,727,779.00 in actual lost profits for AM's violations of the January 1, 2017, Exclusive Sales Representative Agreement (the "Sales Agreement") (Doc. 188-1), for which AMS and Soufleris are also liable, and

Defendants' violations of Florida's Unfair and Deceptive Trade Practices Act (the "FUDTPA");

- $1,752,142.66 in costs and expenses (including attorneys' fees) NuVasive incurred as a result of AM's refusal to prosecute Hawley, Miller, and Soufleris pursuant to the relevant Compliance Agreements as required by Section 5.09 of the Sales Agreement and for Defendants' respective violations of FUDTPA;[1]

- $3,635,532.00 in prejudgment interest;[2] and

- $711,382.00 in constructive trust damages as to the amounts Hawley and Miller earned via their violations of the contractual obligations they owed to NuVasive.

## Count I – (Breach of Contract – Injunctive Relief against Absolute Medical)

Count I seeks injunctive relief against AM.  It does not seek any damages. Nevertheless, NuVasive notes that, prior to its Default Order, the Court entered summary judgment on this Count in its May 4, 2021, Summary Judgment Order (Doc. 290, pp. 25-27).

## Count II – (Breach of Contract – Damages/Arbitration against Absolute Medical)

Count II seeks damages against AM for its breach of the Sales Agreement.  In addition to its recent Default Order (Doc. 395), the Court's Summary Judgment

---

[1] NuVasive interprets the Court's Default Order—including the schedule of this briefing—in a manner that Local Rule of Court 7.01 is not applicable to its instant request for attorneys' fees and expenses, particularly in light of the Clerk's forthcoming entry of final judgment. (Doc. 395, p. 27, n.23).

[2] NuVasive's prejudgment interest is calculated (under Delaware law) up to and including the date of filing this Memorandum and accrues at a rate of a $2,538.70 per day until entry of final judgment.

Order held that AM violated the Sales Agreement in a number of ways (Doc. 290, pp. 25-27).   The damages NuVasive seeks through these contractual violations include:

- the profits NuVasive lost due to AM's (and then AMS') violations of the Sales Agreement;

- the fees and expenses NuVasive's incurred in prosecuting AM's Representative Affiliates; and

- prejudgment interest.

## A.   The profits NuVasive lost because of AM's (and then AMS') violations of the Sales Agreement.

NuVasive is entitled to recover its lost profits due to AM's (and then AMS') violations of the Sales Agreement, consistent with Delaware law, which holds that lost profits are the measure of damages for breach of contract.  *E.g.*, *Bonanza Rest. Co. v. Wink*, No. S10C-10-018 RFS, 2012 Del. Super. LEXIS 167, at *9 (Del. Super. Ct. Apr. 17, 2012); *see also M&G Polymers USA, LLC v. Carestream Health, Inc.*, No. 07C-11-242 PLA, 2010 Del. Super. LEXIS 161, at *95 (Del. Super. Ct. Apr. 21, 2010) (quoting *Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 110 (2d Cir. 2007) ("[T]he profits are precisely what the non-breaching party bargained for, and only an award of damages equal to lost profits will put the non-breaching party in the same position he would have occupied had the contract been performed.")). Furthermore, "[t]he breaching party cannot avoid responsibility for making the other party whole simply by arguing that expectation damages based on lost profits are

speculative because they come from an uncertain world created by the wrongdoer."
*SIGA Techs., Inc. v. Pharmathene, Inc.*, 132 A.3d 1108, 1111 (Del. 2015).  This
"wrongdoer rule" resolves whatever uncertainty that may exist as to the amount of
lost profits damages owed by the breaching party.  *Id.* at 1131, n.132; *Am. Gen.
Corp. v. Cont'l Airlines Corp.*, 622 A.2d 1, 10 (Del. Ch. 1992) ("[Because the acts
of a wrongdoer defendant created uncertainties], 'fundamental justice requires that,
as between [the plaintiff] and [the defendant], the perils of such uncertainty should
be 'laid at the defendant's door.'").  Put simply, an award of NuVasive's lost profits
due to AM's/AMS' violations of the Sales Agreement is the proper measure of
damages under Delaware law.  (Decl. M. Decker Dec., attached as **Exhibit 1**, at Ex.
A at pp. 10–11 (the "Decker Report")).

In a case with remarkably similar facts, *NuVasive v. Day*, the United States
District Court for the District of Massachusetts held, at the summary judgment stage,
that one of Soufleris' fellow distributors violated his post-employment restrictive
covenants and that these violations harmed NuVasive, and then set the matter for a
hearing on the amount of damages that flowed from those violations.[3]  After that
hearing, the court accepted—and the First Circuit affirmed—Misty Decker's
testimony on lost profits.  *NuVasive v. Day*, 77 F.4th 23, 28 n.3, 30 (1st Cir. 2023).

---

[3] Like the Sales Agreement, Delaware law governed the relevant agreement in the *Day* case.  *See
NuVasive, Inc. v. Day*, No. 19-cv-10800, 2021 U.S. Dist. LEXIS 30165, at *6 (D. Mass. Feb. 18,
2021).

Here, Decker, utilizes a different methodology for calculating lost profits—the "before-and-after method"—that *Day* Court expressly recognized as one of the "four, widely accepted methods to calculate lost profits." *See Day*, 2022 U.S. Dist. LEXIS 55091, at *17; (Decker Report, p. 12 (detailing Decker's utilization of the before-and-after method of calculating lost profits)).

Here, as in *Day*, Decker's methodology for computing NuVasive's lost profits is sound and complies with Delaware (as well as Florida) law. Accordingly, NuVasive respectfully requests that the Court accept her opinions that NuVasive incurred $13,727,779.00 in lost profits due to AM's (and AMS') breach of the Sales Agreement, with $12,069,765.00 of those lost profits attributable to surgeons associated with Hawley and the remaining $1,658,014.00 attributable to surgeons associated with Miller. (Decker Report, pp. 10, 13–22).

**B.** **The fees and expenses NuVasive incurred due to AM (and then AMS) refusing to enforce its Representative Affiliates' Compliance Agreements.**

Next, NuVasive is entitled to recover the fees and expenses (including attorneys' fees) it incurred due to AM either failing to obtain Compliance Agreements from its Representative Affiliates, or not enforcing those Compliance Agreements. Section 5.09(e) of the Sales Agreement requires AM to subject its Representative Affiliates to restrictive covenants that mirror those imposed on AM by the Sales Agreement and to, if necessary, enforce those restrictive covenants

against its Representative Affiliates, which, pursuant to the Definitions contained in the Sales Agreement, include Soufleris, Hawley, and Miller.[4]   (*See* Doc. 188-1, at pp. 7–8).   In violation of those obligations, AM failed to subject Soufleris to a Compliance Agreement and (after lying about their existence) failed to enforce those Compliance Agreements with Hawley and Miller.   As a result of these violations, Section 5.09(e) of the Sales Agreement requires AM to reimburse NuVasive for the costs it incurs in seeking to remedy these violations.   (Id.)

Through November 22, 2023, NuVasive incurred $1,752,142.66 in fees and expenses related to prosecuting claims related to AM/AMS failing to subject its Representative Affiliates (Hawley, Miller, and Soufleris) and/or prosecute the Representative Affiliates' failure to comply with those Agreements—$1,628,260.29 of which Christopher W. Cardwell discusses in his declaration and $123,882.37 of which R. Craig Mayfield discusses in his Declaration.   (Decl. C. Cardwell, attached as **Exhibit 2**, ¶¶ 23-33; Decl. R. Craig Mayfield, attached as **Exhibit 3**, ¶¶ 7-14).   Of this total, $1,488,309.00 constitutes fees and $263,833.66 represents expenses.   (**Id.**) As Section 5.09(e) of the Sales Agreement expressly recognizes NuVasive's

---

[4] Section 5.09(e) also expressly requires that each Compliance Agreement "name NuVasive as an intended third party beneficiary with full right to directly enforce provisions necessary to comply with this Section 5.09," and that AM "shall be liable for NuVasive for any breaches by the Representative Affiliate of the Compliance Agreement."

entitlement to these fees and expenses, NuVasive respectfully requests that the Court require AM/AMS to pay that amount in full.

## C. NuVasive is entitled to Prejudgment interest.

It is well-established that federal law allows courts to impose prejudgment interest when the substantive law governing the causes of action provides for such an award.  In diversity actions, the eligibility and rate for "pre-judgment interest is determined using the state law that applies." *Tropical Bees, LLC v. Barka Grp., LLC*, No. 2:16-cv-672-FtM-38MRM, 2017 U.S. Dist. LEXIS 222537, at *6 (M.D. Fla. Apr. 22, 2017); *see also United Funding, Inc. v. Boschert*, No. 6:09-cv-1839-Orl-28GJK, 2011 U.S. Dist. LEXIS 140220, at *8 (M.D. Fla. Nov. 14, 2011) ("Because the basis of this Court's jurisdiction is predicated on diversity [], Florida law governs the issue of prejudgment interest."); *Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989).  In choosing which state's laws and statutory rate to apply, courts in this jurisdiction engage in a choice-of-law analysis to identify and apply the appropriate substantive law to a request for prejudgment interest.  Where, as here, the court in the forum state is presented with a contract that sets another state's substantive law as the governing law, the Court is obligated to determine which state laws apply.

Here, Florida is the forum state.  Under its laws, courts award prejudgment interest as an element of damages to fully compensate plaintiffs for the value of their

losses and, "[b]ecause prejudgment interest comprises a portion of a plaintiff's recovery," Florida treats it as "a substantive right" and any award of prejudgment interest as "a substantive remedy." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 212 F. Supp. 3d 1232, 1240 (M.D. Fla. 2016). Therefore, the Sales Agreement's Delaware choice of law provision—which applies to all substantive issues and questions—governs NuVasive's request for prejudgment interest on any damages it receives.[5] *Blitz*, 212 F. Supp. 3d at 1240 (in diversity action, engaging in Florida conflict of laws analysis and applying Illinois law to plaintiff's request for prejudgment interest pursuant to contractual choice of law provision); *Torpy v. Unum Life Ins. Co. of Am.*, No. 6:16-cv-410-Orl-22DCI, 2017 U.S. Dist. LEXIS 216264, at *17 (M.D. Fla. Oct. 18, 2017) (same but applying New Mexico law).

Delaware law "awards pre-judgment interest as a matter of right." *Ahmed Al Balooshi v. GVP Glob. Corp.*, No. N19C-10-215 CEB, 2022 Del. Super. LEXIS 80, at *30 (Del. Super. Ct. Feb. 25, 2022). Under Delaware law, "[p]rejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011). In Delaware,

---

[5] Though dispositive of nothing, NuVasive notes that neither Defendants nor their damages expert objected to computing prejudgment interest through Delaware's statutory scheme for doing so.

"[w]here there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due[.]"  6 *Del. C.* § 2301(a); *see also Level 4 Yoga, LLC v. CorePower Yoga, LLC*, No. 2020-0249-JRS, 2022 Del. Ch. LEXIS 49, at *68 (Del. Ch. Mar. 1, 2022) (awarding damages for breach of contract plus pre- and post-judgment interest at the statutory rate); *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, No. N19C-07-103 PRW CCLD, 2021 Del. Super. LEXIS 519, at *41 (Super. Ct. July 21, 2021) (awarding damages for breach of contract plus pre- and post-judgment interest at the rate proscribed in the contract).[6]  In contract actions, such as the one at bar, the computation of pre-judgment interest starts from the date of the breach." *Ahmed Al Balooshi v. GVP Glob. Corp.*, No. N19C-10-215 CEB, 2022 Del. Super. LEXIS 80, at *30 (Super. Ct. Feb. 25, 2022).  Therefore, NuVasive is entitled to recover prejudgment interest from the date that AM first breached the Sales Agreement—that NuVasive conservatively states to be December 1, 2017, which is the date Dr. Sawin first used competitive products AM/AMS provided to

---

[6] NuVasive notes that, at present, the Delaware statutory rate is 10.5%, which reflects the 5% statutory 'kicker' added to the Discount Rate of 5.5% set by the Federal Reserve as of July 2023. 6 *Del. C.* § 2301(a).

him.[7]   This amount totals $3,635,532.00 through December 6, 2023.[8]   (Decker Report, pp. 10, 23–24).

### Count III – (Breach of Contract – Injunctive Relief and Damages against AMS)

Count III does not seek damages.  Rather, it asks the Court to hold that AMS is a mere continuation of AM and, therefore, is the same entity as AMS.  In fact, the Court made this holding, prior to issuing its Default Order, in its Summary Judgment Order (Doc. 290, pp. 27-32), which ruled on the parties' competing motions for summary judgment.

### Count IV – (Breach of Contract – Injunctive Relief and Damages against Hawley and Miller)

Count IV seeks injunctive relief and damages against Hawley and Miller for breaches of their Compliance Agreements with AM.  This claim originally focused on Hawley's and Miller's 2013 Compliance Agreements because of their incomplete and incorrect discovery responses.  However, the Court's May 4, 2020, Order (Doc. 243, p. 4) and the Summary Judgment Order (Doc. 290, p. 35) recognized that: NuVasive   later   discovered   documents   proving   Hawley   and   Miller   signed

---

[7] In addition to providing for prejudgment interest, Delaware allows for the possibility of compound interest.  *See, e.g., Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002) (although the Delaware Supreme Court explained that Delaware courts have "traditionally disfavored compound interest," it also noted that it is within a court's discretion to award compound interest).

[8] Prejudgment interest continues to accrue at a rate of $2,538.70 per day until the day this Court enters its final judgment.  (Decker Report, p. 10).

Compliance Agreements on behalf of their respective companies in 2013 through 2016, they might have signed such Compliance Agreements in 2017, and those issues (as well as the issue of whether Hawley and Miller are individually liable for breaches of those Compliance Agreements) are before the Court.

Further, the Court's Summary Judgment Order held that the 2016 Compliance Agreements are enforceable, that Hawley and Miller breached those Agreements, and that NuVasive is entitled to the damages arising from their breaches of those Compliance Agreements, which impose individual liability on Hawley and Miller. (Doc. 290, pp. 38-52). As to the 2017 Compliance Agreements, the Summary Judgment Order found disputed issues of fact as to whether Hawley and Miller signed them and, if they did, whether those Agreements imposed individual liability on them.[9] (Doc. 290, p. 52). Now, the Default Order establishes that Hawley and Miller are liable to NuVasive for their breaches of the 2016 and 2017 Compliance Agreements.

---

[9] Interestingly, Alphatec—Hawley's and Miller's current employer—filed a bench brief in a trial that is currently underway in the San Diego County, California Superior Court in the matter of *Alphatec Spine, Inc., et al. v. NuVasive, Inc., et al.*, Lead Case No. 37-2017-00038583-CU-BC-CTL (Cal. Super. Ct.), which argues that Hawley's and Miller's Compliance Agreements bind them individually. (Alphatec Bench Brief, attached as **Exhibit 4**, p. 2 ("In addition to binding the entities, these contracts also bind the individual principals—Dave Hawley and Ryan Miller. The first paragraph of each contract defines the entity – Hawley Med or Miller Time – as the 'Salesperson.' Though the principal line is not filled in, Dave Hawley and Ryan Miller, respectively, signed the agreements and operated as the principals.").

Hawley and Miller are liable to NuVasive for breach of their 2017 Agreements for lost profits and a constructive trust of the amounts they earned in violation of those agreements. The amount of lost profits equals $12,069,765.00 on accounts serviced by Hawley, and $1,658,014.00 on accounts serviced by Miller, plus prejudgment interest. That said, any award of lost profits and prejudgment interest for Hawley's and Miller's breaches of their Compliance Agreements is likely, at least in part, duplicative of the lost profits (and prejudgment interest on those lost profits) for which they are jointly and severally liable to NuVasive under Count VIII.

As to the constructive trusts, Sections 4.1 and 5.8 of Hawley's and Miller's 2017 Compliance Agreements (like their 2014 through 2016 Compliance Agreements) describe the manner in which moneys Hawley and Miller earn through their violations of those Agreements are placed in a constructive trust for NuVasive's benefit. *See Ciappa Constr., Inc. v. Innovative Prop. Res., LLC*, No. 05L-07-035, 2007 Del. Super. LEXIS 86, at *2 (Del. Super. Ct. Mar. 2, 2007) ("The doctrine of constructive trust is based on the equitable principle that one who would be unjustly enriched, if permitted to retain property, is under an equitable duty to convey it to the rightful owner."). Where, as here, "'a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty, the court may disgorge a defendant's profits by imposing a constructive trust, an equitable remedy.'" *Id.* at *3 (quoting *Adams v.*

*Jankouskas*, 452 A.2d 148, 152 (Del. 1982)).[10]  Conversely, NuVasive's recovery of lost profits damages under the Sales Agreement is a legal remedy.  *See, e.g.*, *Triton Constr. Co. v. E. Shore Elec. Servs, Inc.*, No. 3290-VCP, 2009 Del. Ch. LEXIS 88, at \*97 n.171 (Del. Ch. May 18, 2009); *Topps Chewing Gum, Inc. v. Fleer Corp.*, No. 6781, 1985 Del. Ch. LEXIS 527, at \*6 (Del. Ch. No. 20, 1985).  Because the imposition of a constructive trust and disgorgement of Hawley's and Miller's ill-gotten Alphatec compensation is a separate and distinct remedy, it is not duplicative of NuVasive's recovery of its lost profits under the Sales Agreement.

The amount of the constructive trusts the Court should impose total $548,882.00 for Hawley and $162,500.00 for Miller.  (Decker Report, pp. 11, 24–25).  Further, this number is conservative as Soufleris should have, but did not, sign a Compliance Agreement (much less the standard AM Compliance Agreement that contained the constructive trust provisions).

### Count V – (Conversion against Hawley and AMS)

As noted in the Summary Judgment Order, Count V seeks to recover damages against Hawley and AMS that they caused by, without NuVasive's permission, removing custom surgical instruments that NuVasive created for Dr. Sawin and then

---

[10] The imposition of a constructive trust and disgorgement of those ill-gotten gains is likewise an equitable remedy under Florida law.  *See Apt. Inv. & Mgmt. Co. v. Flamingo/South Beach 1 Condo. Ass'n*, 84 So. 3d 1090, 1093 n.3 (Fla. 3d DCA 2012) ("A constructive trust is an equitable remedy invoked to avoid an unjust enrichment."); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 698 (Fla. 3d DCA 2018) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment.").

shipping those instruments to Alphatec, which created knockoff instruments for Dr. Sawin's use (Doc. 290, pp. 53-56). The purpose of this exercise was to aid in converting Dr. Sawin's business from NuVasive to Alphatec by ensuring he felt comfortable using Alphatec's competitive products in surgeries. *Cf. Day*, 77 F.4th at 28 (citing the import of providing custom instruments to surgeons when attempting to convert their business).

Respectfully, NuVasive cannot put a price on the value of the instruments Hawley and AMS converted, other than to say that they represent the total value of Dr. Sawin's business since Alphatec's ability to create knock-off instruments was critical to the conversion of that business. With this being the case, the value of the instruments is duplicative of NuVasive's lost profits, the majority of which arise from Defendants' illegal conversion of Dr. Sawin's business.

### **<u>Count VI – (Statutory Individual Liability against Soufleris)</u>**

Count VI seeks to hold Soufleris individually liable for AM's and AMS' liabilities to NuVasive under Florida's Revised Limited Liability Company Act. It does not seek damages, but the Default Order makes Soufleris liable for AM's and AMS' collective liabilities to NuVasive. Fla. Stat. § 605.04093(1)(a)–(b).

## **Count VII – (Piercing the Corporate Veil against Soufleris)**

Similar to Count VI, Count VII seeks to pierce the corporate veil against Soufleris. Like Count VI, it does not seek damages. However, the Default Order makes Soufleris liable for AM's and AMS' collective liabilities to NuVasive.

## **Count VIII – (Florida Deceptive and Unfair Trade Practices Act against all Defendants)**

Count VIII alleges that the Defendants violated FUDTPA, which prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204(1). Parties seeking recovery under the FUDTPA may recover their actual damages, the attorneys' fees and costs they incur in bringing the claim, and pre-judgement interest.

In this case, the actual damages NuVasive suffered because of Defendants' bad acts are its "past lost profits." *Tymar Distrib. LLC v. Mitchell Grp. United States, LLC*, 558 F. Supp. 3d 1275, 1283–86 (S.D. Fla. 2021) (agreeing with the weight of Florida law that holds past lost profits are recoverable under the FDUTPA). Here, NuVasive seeks past lost profits of $13,727,779.00. (Decker Report, p. 10). Additionally, NuVasive seeks the costs and expenses, including attorneys' fees, it incurred in this matter, as discussed on page 6 of this

Memorandum,[11] which is a conservative total as that amount omits fees and expenses that are not related to AM's/AMS' failure to subject the Representative Affiliates to Compliance Agreements and/or prosecute their violations of those Agreements. Finally, it is entitled to prejudgment interest on the amount of actual damages, which comes to $3,635,532.00 as of December 6, 2023, at Delaware's statutory rate of 6.75% in effect on December 1, 2017.[12]  6 *Del. C.* § 2301(a); (Decker Report, pp. 10, 24, Ex. D-26–D-37).

### Count IX – (Tortious Interference with Business Relationships against Soufleris)

Count IX seeks to hold Soufleris liable for tortiously interfering with NuVasive's business relationships with its surgeon-customers.  Lost profits are appropriate damages in such cases.  However, they are duplicative of the lost profits NuVasive is entitled to recover under other causes of action.

---

[11] NuVasive recognizes that an award of fees to prevailing parties under FUDTPA rests entirely within the trial court's sound discretion.  *See, e.g.*, *Armstrong v. KG*, No. 8:21-cv-2771-SCB-DAB, 2023 U.S. Dist. LEXIS 190022, at *10 (M.D. Fla. Oct. 23, 2023) (citing *Humane Soc. Of Broward Cnty, Inc. v. Florida Humane Soc.*, 951 So. 2d 966, 968 (Fla. 4th DCA 2007)).  That said, each of the *Humane Society* factors weigh heavily in favor of an award of NuVasive's fees, particularly: (i) the scope and history of this litigation; (ii) deterring conduct similar to Defendants' in the future; and (iii) Defendants' culpability and bad faith.  *See id.* (citing *Chow v. Chak Yam Chau*, 640 F. App'x 834, 839 (11th Cir. 2015)).

[12] NuVasive believes the Delaware statutory rate applies and the Court should use it when calculating prejudgment interest due on NuVasive's FDUTPA claim because one of the predicate wrongs underlying this claim is AM's breach of the Sales Agreement, which is governed by Delaware law.  That said, if the Court determines that the calculation of prejudgment interest is governed by Florida law—as a result of the Compliance Agreements or the FUDTPA—Decker provides an appropriate prejudgment interest calculation of $2,887,595.00 through December 6, 2023, and accruing at a rate of $2,076.09 per day until entry of final judgment.  (Decker Report, pp. 10, 23–24).

## **CONCLUSION**

In sum, NuVasive recognizes that some of its causes of action call for the same measure of damages, and that it is not entitled to double recovery. Accordingly, pursuant to the Default Order, NuVasive respectfully requests that the Court award it a total of at least $19,826,835.66 made up of:

- lost profits in the amount of $13,727,779.00;

- attorneys' fees incurred through November 22, 2023, in the amount of $1,488,309.00;

- expenses in the amount of $263,833.66;

- prejudgment interest in the amount of $3,635,532.00 through December 6, 2023, and accruing at a rate of $2,538.70 per day through the date of final judgment; and

- the imposition of constructive trusts over the $548,882.00 paid to Hawley and the $162,500.00 paid to Miller for their violations of their respective Compliance Agreements.

Dated: December 6, 2023                    Respectfully submitted,


**/s/*Christopher W. Cardwell*_____**
R. Craig Mayfield (Fla. Bar No. 0429643)
Cmayfield@bradley.com
Diana N. Evans (Fla. Bar No. 98945)
Dnevans@bradley.com
Bradley Arant Boult Cummings LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
Fax: (813) 229-5946

Christopher W. Cardwell, Esq.
ccardwell@gsrm.com
Mary Taylor Gallagher, Esq.
mtgallagher@gsrm.com
M. Thomas McFarland, Esq.
tmcfarland@gsrm.com
GULLETT, SANFORD, ROBINSON &
MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Tel: (615) 244-4994
Fax: (615) 256-6339

*Attorneys for NuVasive, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system. The party or parties served are as follows:

Busch, Mills & Slomka, LLP

Bryan E. Busch
Email: bb@buschmills.com
3000 Heritage Walk, Suite 304
Milton, GA 30004

Christopher Y. Mills
Email: cm@buschmills.com
319 Clematis Street, Suite 109
West Palm Beach, FL 33401

*Attorneys for Defendants*

/s/*Christopher W. Cardwell*