## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| NUVASIVE, INC., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| V. | ) Civil Action No. 6:17-CV-2206- |
| | ) CEM-LHP |
| ABSOLUTE MEDICAL, LLC, GREG | ) |
| SOUFLERIS, DAVE HAWLEY, | ) |
| ABSOLUTE MEDICAL SYSTEMS, LLC, | ) |
| RYAN MILLER, and BRYAN E BUSCH, | ) |
| | ) |
| **Defendants.** | ) |

### NUVASIVE, INC.'S RENEWED MEMORANDUM OF DAMAGES

The Court's November 22, 2023, Order (Doc. 395) that granted a default judgment in NuVasive's favor on the entirety of its Second Amended Complaint (the "Default Order") established Defendants' liability on all of NuVasive's causes of action, including the fact that their misconduct caused NuVasive to incur damages. Pursuant to the Court's May 17, 2024, Order (Doc. 401), NuVasive submits this Renewed Memorandum to establish the amount of those damages, and respectfully submits that it incurred:

- $13,727,779.00 in lost profits against Absolute Medical, Absolute Medical Systems, and Greg Soufleris under Delaware law that are attributable to the default judgments entered on Count II (breach of contract against Absolute Medical); Count III (breach of contract against Absolute Medical Systems due to it being Absolute Medical's successor in interest), and

Counts VI and VII (holding Soufleris liable for Absolute Medical's and Absolute Medical Systems' debts) (Doc. 395 at 28);

- the same amount of lost profits under Florida law (which are duplicative of and not in addition to those against Absolute Medical, Absolute Medical Systems, and Soufleris) against all Defendants (Counts IV, VIII, and IX);

- $548,882.00 against David Hawley and $162,500.00 against Ryan Miller under Florida law that are attributable to constructive trusts created pursuant to the judgments entered against them under Count IV (breach of their 2017 Independent Contractor Agreements (the "ICAs"));

- prejudgment interest under Delaware (against Absolute Medical, Absolute Medical Systems, and Soufleris) and Florida law (against all Defendants) in the amounts of $4,102,653.00, and $3,483,084.00 respectively; and

- an agreed upon amount of $1,300,000.00 in attorneys' fees and litigation costs under Delaware law that is attributable to Absolute Medical, Absolute Medical Systems, and Soufleris.

## I.    <u>**NUVASIVE IS ENTITLED TO RECOVER ITS LOST PROFITS.**</u>

NuVasive is entitled to recover its lost profits as a compensatory damages award under both Delaware and Florida law.  These lost profits, as calculated by NuVasive's expert witness, Misty L. Decker, amount to $13,727,779.00 for the remainder of the January 1, 2017 Exclusive Sales Agreement's (the "Sales Agreement") term (following Absolute Medical's breach starting December 1, 2017) through the end of the Sales Agreement's non-compete period (December 31, 2022). (Declaration of Misty L. Decker, June 7, 2024, attached as **Exhibit 1**, ¶19, Declaration Exhibit B, Supplemented Report of Misty L. Decker, June 7, 2024, (the

"Decker Report"), 22).[1]  Of these lost profits, $12,069,765.00 relate to Hawley's accounts and $1,658,014.00 of them relate to Miller's accounts.  (Decker Report at 22).  Pursuant to the Default Order (Doc. 395, at 27-28), NuVasive is entitled to recover these lost profits (under Delaware law) from Absolute Medical, Absolute Medical Systems, and Soufleris due to Absolute Medical's breach of the Sales Agreement, from all Defendants (under Florida law) as a result of the adjudicated violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and from Soufleris for his tortious interference with NuVasive's business relationships.

**A.** **Lost profits under Delaware law are the appropriate remedy for Absolute Medical's breach of the Sales Agreement.**

In its Default Order granting NuVasive default judgment as to Counts I-IX against Defendants, the Court found NuVasive was damaged, as a matter of fact and law and, therefore, ordered NuVasive to "file a brief as to damages."  (Doc. 395 at 27-28).  This ruling complies with Delaware law's recognition that default judgment on a claim that includes damages among its elements, such as a claim for breach of contract, establishes the element of damages as a matter of fact and law.  *Diamond Fortress Techs., Inc. v. EverID, Inc.*, 274 A.3d 287, 295-296 (Del. Super. Ct. 2022)

---

[1] Exhibit A to Decker's Declaration is a copy of the Supplemented Expert Report of Misty L. Decker dated December 6, 2023.  (Ex. 1 ¶2).  Citations to the Decker Report are from Exhibit B, the June 7, 2024 Supplemented Expert Report, which is substantively identical to the December 2023 Report and "updated solely to include prejudgment interest from December 6, 2023, through June 7, 2024[.]"  (Id.)

(finding defendants' repudiation and non-performance to be a "total breach" of the parties' agreement, "grant[ing] the Plaintiff's [default] motion with respect to [defendant's] liability for its breaches," and holding a hearing solely to determine the nature and "amount of damages"); *Creative Research Mfg. v. Advanced Bio-Delivery LLC*, C.A. No. 1211-N, 2007 Del. Ch. LEXIS 15, at *1, 12-21 (Del. Ch. Jan. 30, 2007) (same).  To be clear, this Court's finding that the breach of the Sales Agreement damaged NuVasive is no longer disputable, because default judgment "is final and conclusive and has the same effect as a trial on the merits."  *Gebelein v. Four State Builders*, C.A. No. 6187 (1980), 1982 Del. Ch. LEXIS 479, at *4 (Del. Ch. Oct. 8, 1982).[2]  As the Court's Default Order established the fact that the breach of the Sales Agreement caused NuVasive to incur damages, the Court now must determine the nature and amount of those damages.

## 1. Delaware law recognizes lost profits as an appropriate method to quantify damages in breach of contract cases.

As to the nature of NuVasive's damages, Delaware law recognizes lost profits as an appropriate and reliable measure of damages in breach of contract cases, such as the one at bar.  Under Delaware law:

---

[2] In Delaware, following a default judgment, the court may hear further evidence to determine the nature and amount of damages.  *Thorton v. Schiavello*, 93 A.3d 656, 658 (Del. Super. Ct. June 5, 2014) (after granting default judgment on "on all of Plaintiffs' claims," the court held a hearing "to determine damages" pursuant to Delaware Superior Court Rule 55(b)(2)); *see also* Del. Ch. Ct. R. 55(b).

> '[T]he standard remedy for breach of contract is based on the reasonable expectations of the parties that existed before or at the time of the breach.' Expectation damages 'require the breaching promisor to compensate the promisee for the promisee's reasonable expectation of the value of the breached contract, and, hence, what the promisee lost.' Lost profits are an accepted means of quantifying expectation damages in a breach of contract action. However, 'no recovery can be had for loss of profits which are determined to be uncertain, contingent, conjectural, or speculative.'

*Abbvie Endocrine, Inc. v. Takeda Pharm. Co.*, No. 2020-0953-SG, 2023 Del. Ch. LEXIS 360, at **5-6 (Del. Ch. Sep. 5, 2023) (quoting *SIGA Techs., Inc. v. Pharmathene, Inc.*, 132 A.3d 1108, 1132-33 (Del. 2015), *as corrected* (Dec. 28, 2015); *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001)). The "proper measure of damages for breach of a covenant not to compete is [the plaintiff's] lost profits" under Delaware law. *All Pro Maids, Inc. v. Layton*, No. 058-N, 2004 Del. Ch. LEXIS 116, at *39 (Del. Ch. Aug. 9, 2004) (citing *RHIS, Inc. v. Boyce*, C.A. No. 18924, 2001 Del. Ch. LEXIS 118, at *24 (Del. Ch. Sep. 26, 2001).

**2. A quantification of lost profits is not uncertain, contingent, conjectural, or speculative when supported by substantial evidence.**

Under Delaware law, the "general rule" "is that future lost profits must be established by 'substantial evidence' and not by speculation." *SIGA Techs.*, 132 A.3d at 1134, 1151 (quoting *Agilent Techs. v. Kirkland*, C.A. No. 3512-VCS, 2010 Del. Ch. LEXIS 34, **116 n.271 (Del. Ch. Feb. 18, 2010)); *Abbvie*, 2023 Del. Ch. LEXIS 360, at *14 (applying the "substantial evidence" standard and awarding damages for breach of contract). This substantial evidence standard for establishing

the amount of lost profits is more relaxed than the preponderance of evidence standard required to establish the fact of damages, but requires more than a scintilla of proof. *Wilson v. Klabe Constr. Co.*, C.A. No. 03A-09-001-JOH, 2004 Del. Super. LEXIS 234 (Del. Super. Ct. July 29, 2004) (holding that "substantial evidence is more than a scintilla but less than a preponderance") (citing *Olney v. Cooch*, 425 A.2d 610 (Del. 1981)). In sum, the substantial evidence standard – which the Court should adopt in this matter – requires "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion" regarding the amount of damages. *Abbvie*, 2023 Del. Ch. LEXIS 360, at *6 (citing *Standard Distrib. v. Hall*, 897 A.2d 155 (Del. 2006)).

### 3. Delaware law recognizes the "before-and-after" methodology as a reliable and appropriate methodology for quantifying damages.

Here, through her utilization of the before-and-after method, NuVasive's expert provides the Court with substantial evidence that NuVasive incurred $13,727,779.00 of lost profits caused by Absolute Medical's breach of the Sales Agreement. In its November 12, 2021, Order denying Defendants' motion to exclude Decker's opinions, this Court found the before-and-after method to be "a reliable methodology" for determining lost profits damages in this case. (Doc. 334 at 27-38). And even Defendants' proffered expert acknowledges it to be an appropriate methodology to use in this matter. (Doc. 321-4 at 90:24-91:3). Like this Court and Defendants' proffered expert, Delaware courts recognize the before-and-

after methodology as a "fundamentally reliable" and "appropriate" measure for determining lost profits in breach of contract actions.[3] *Abbvie*, 2023 Del. Ch. LEXIS 360, at **13, 40-41.

For example, in *Abbvie*, the plaintiff claimed lost profits as damages, and the parties' damages experts used the before-and-after methodology to calculate and compare the plaintiff's sales before and after the defendant's breach of contract. *Id*. at **12-13. The Delaware Court of Chancery then assessed the competing expert reports and the underlying contract, which was governed by Delaware law, and "[found] that the damages model employed by the parties is capable of producing a reliable, non-speculative estimation of damages." *Id*. at *13. "Accordingly," the court "adopt[ed] it" and ultimately found the plaintiff had satisfied its burden of proof and was entitled to compensatory damages. *Id*. at **13-14. Similarly, in *All Pro Maids*, a case involving breaches of a non-competition agreement, the Delaware Court of Chancery heard expert testimony and considered an expert report that calculated lost profits using the before-and-after methodology, and it found the expert's "calculation was proper." 2004 Del. Ch. LEXIS 116, at **38-46. In making this ruling and addressing the opposing expert's critiques of the opinion, the court

---

[3] Delaware courts also recognize this methodology as appropriate for determining damages for other claims, such as those sounding in tort, *Zaleski v. Mart Assocs.*, C.A. No. 82C-NO-11, 1988 Del. Super. LEXIS 260 (Del. Super. Ct. July 25, 1988), and trade secret misappropriation. *Agilent Techs.*, 2010 Del. Ch. LEXIS 34.

noted that Delaware "law does not require certainty in the award of damages when a wrong has been proven and injury established. Responsible estimates that lack mathematical certainty are permissible so long as the Court has a basis to make a responsible estimate of damages." *Id.* at \*\*44-45 (quoting *Del. Express Shuttle v. Older*, No. 19596, 2002 Del. Ch. LEXIS 124, at \*59-60 (Del. Ch. Oct. 23, 2002)).

### 4. Decker properly utilized the before-and-after method to determine the amount of NuVasive's damages.

Here, Decker's utilization of the before and after methodology, which she chose because it "uses verifiable data from the Plaintiff's business to make the estimate of lost profits," reasonably quantifies NuVasive's total lost profits for hardware and biologics due to the breach of the Sales Agreement at $13,727,779.00, and apportions those lost profits per doctor as:

- Dr. Sawin:    $7,093,845.00;
- Dr. Rosen:    $4,132,050.00;
- Dr. Gandhi:   $843,869.00;
- Dr. Allende:  $665,369.00;
- Dr. Rodas:    $607,671.00; and
- Dr. Burry:    $384,975.00.[4]

(Ex. 1 ¶¶7-11, 19).  In reaching these conclusions, Decker comprehensively analyzed NuVasive's lost profits by appropriately defining and utilizing all factors necessary to produce a reasonable and well-supported determination of NuVasive's lost

---

[4] NuVasive's lost profits amounts are detailed further, by year and specific doctor, in NuVasive's appendix of lost profits, attached as **Exhibit 2**, and in Decker's Report at Exhibit D-11 though D-22.

profits, including, without limitation, NuVasive's historical sales data for hardware and biologics sales, direct variable costs, and actual sales results during the loss period. (Ex. 1 ¶¶4-5, 12-13, Decker Rpt. 16-22). In addition, Decker accounted for other factors, internal and external, that could have influenced the amount of NuVasive's lost profits including:

- the "costs of goods sold" ("COGS");
- the commissions NuVasive would have paid Absolute Medical absent its breach;
- applicable taxes;
- fixed costs;
- NuVasive's mitigating sales;
- expenses borne by NuVasive's distributors; and
- the COVID-19 pandemic.

(Ex. 1 ¶¶13, 16-17, Decker Rpt. 13-23). In other words, Decker's opinions consider several factors beyond the immediate "but for" effect of Defendants' wrongful conduct on the parties' contractual relationship, and Decker's analysis of both internal and external factors comports with Delaware and Florida law.

The primary critiques of Decker's analysis offered by Defendants' proffered expert witness – though baseless – demonstrate the strength of Decker's work. His primary critiques are that Decker's calculation of lost revenue is less than the amount of revenue Absolute Medical generated through sales of Alphatec Spine's competing products and that Decker failed to consider certain fixed costs. (Doc. 343-6 at 14-18). The first critique is a red herring as Absolute Medical violated its duty to

exclusively sell NuVasive's products by selling competitive products marketed by several of NuVasive's competitors (not just Alphatec). (Ex. 1 ¶7, Decker Rpt. 8-9, n.27). Indeed, Absolute Medical Systems was selling products manufactured by Alphatec, NovaBone, Orthofix, Spine Wave, and K2M. (Id.) The Court's Default Order resolved these allegations in NuVasive's favor as a matter of fact and law. (Doc. 395 at 28). Moreover, Decker considered and properly addressed this critique, stating that in order to conduct the analysis under that method "additional sales data from all third-party manufacturers beginning December 1, 2017," which NuVasive requested in discovery and Defendants failed to provide, "would be relevant and needed for an analysis" of NuVasive's lost profits. (Ex. 1 ¶7, Decker Rpt. 8-9, n.27).

There is also no merit to the second critique as, under Delaware law, it is not proper to deduct taxes or fixed costs when determining lost profits. *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, C.A. No. 3369-VCP, 2009 Del. Ch. LEXIS 168, at *53 (Del. Ch. Sep. 30, 2009). Indeed, the Delaware Court of Chancery rejected similar arguments where a defendant challenged a lost profits damages calculation for not deducting taxes and fixed costs. *All Pro Maids*, 2004 Del. Ch. LEXIS 116, at **42-44 (under Delaware law, "fixed overhead is not to be charged against Plaintiffs damages" and because lost profits damages "are considered taxable income by the IRS," "[d]educting taxes from the lost profits calculation would result

in a double tax on the award") (quoting *W.L. Gore & Assoc., Inc. v. Carlisle Corp.*,
1978 U.S. Dist. LEXIS 17698, at \*39 (D. Del. May 17, 1978)).

An appropriate comparator to Decker's Report is the one authored by
plaintiff's expert in *All Pro Maids*, in which the expert considered "fixed costs, taxes,
and the starting point for his first year of damages," in addition to other inputs such
as the plaintiff's client attrition rate, conservative revenue growth assumptions,
market risk conditions, and the appropriate discount rate for projected revenues. *Id*.
at \*\*39-42. Further, the expert report in *All Pro Maids* assumed the plaintiff's clients
would have remained with the plaintiff, absent the defendants' breach and tortious
conduct during the term of the underlying agreement. *Id*. at \*40. In rejecting the
defendants' challenge to the plaintiff's expert's opinion, the court found "the
aggregate numbers [were] sufficient" to support the plaintiff's lost profits claim
given that Delaware "law does not require certainty in the award of damages when
a wrong has been proven and injury established." *Id*. at \*44-45 (quoting *Delaware
Express Shuttle*, 2002 Del. Ch. LEXIS 124, at \*60). It then noted that "[r]esponsible
estimates that lack mathematical certainty are permissible so long as the Court has a
basis to make a responsible estimate of damages." *Id*.

Respectfully, the Decker Report goes above and beyond the one accepted by
the court in *All Pro Maids*. For example, the *All Pro Maids* expert relied on
projections, *id*. at \*40, but Decker bases her analysis on NuVasive's complete sales

results during the loss period, including its mitigating sales.  (Ex. 1 ¶¶5, 12, 15-16,
Decker Rpt. 13-20).  In doing so, Decker "use[d] the conservative 2017 period as a
baseline for lost revenues suffered by" NuVasive, despite increasing revenue periods
between 2015 and 2016.  (Ex. 1 ¶12).  Further, Decker adjusted the loss period to
account for Dr. Sawin's retirement on July 19, 2021, and the impact of Dr. Allende
moving his practice outside of Absolute Medical's sales territory.  (Ex. 1 ¶5, Decker
Rpt. 13-15).    To account for NuVasive's variable costs, Decker deducted
NuVasive's mitigating sales, COGS (which include NuVasive's "costs to
manufacture and distribute" its devices), and the commissions NuVasive would owe
to Absolute Medical on sales during the loss period.[5]  (Ex. 1 ¶17, Decker Rpt. 20-
22).  Finally, Decker accounted for the COVID-19 pandemic by adjusting the sales
projections according to qualitative guidance produced by industry experts,
NuVasive, and its competitors regarding appropriate adjustments on cash flow and
revenue projections, discount rates, and the postponement (rather than cancellation)
of scheduled spine surgeries.  (Ex. 1 ¶13, Decker Rpt. 16-19).  In sum, Decker's
projections are "consistent, and conservative, given NuVasive's actual results"
during the loss period.  (Decker Rpt. 19).

---

[5] Decker estimated the amount that should be deducted for commissions based on
"the average commissions [NuVasive] paid to Absolute Medical for 2015 and 2016,
22.3%" of revenue.  (Decker Rpt. 21).

The opinions Decker articulates in her Report provide a comprehensive assessment of NuVasive's lost profits based on a time-tested methodology that uses reasonably defined and corroborated sales metrics, accounts for internal and extraneous factors beyond the parties' contractual relationship, and fully comports with Delaware law.  Therefore, NuVasive respectfully requests that the Court apply Delaware law, accept Decker's opinions, and award NuVasive lost profits in the amount of $13,727,779.00 for Absolute Medical's breaches of the Sales Agreement.

**5. Absolute Medical, Absolute Medical Systems, and Soufleris are jointly and severally liable for the lost profits caused by the breach of the Sales Agreement.**

Absolute Medical, Absolute Medical Systems, and Soufleris are jointly and severally liable for NuVasive's lost profits.  The Default Order on Count II of the Second Amended Complaint awarded damages against Absolute Medical for its breach of the Sales Agreement, and Count III awarded the same relief against Absolute Medical Systems due to it being Absolute Medical's successor in interest.[6] Similarly, the Default Order on Counts VI and VII make Soufleris liable for Absolute Medical's and Absolute Medical Systems' debts, including these lost profits.

---

[6] This, of course, comports with the Court's previous finding of successor liability as to Absolute Medical Systems. (Doc. 290 at 27-32).

4853-4481-6320, v. 10

**B. <u>Decker's lost profits analysis is also proper under Florida law and the
Court should adopt her relevant opinions on NuVasive's claims based on
Florida law where lost profits are the appropriate remedy.</u>**

Defendants are also liable to NuVasive for its lost profits under various

theories asserted under Florida law, which, like Delaware law, recognizes the before-

and-after methodology[7] as a reliable means of determining lost profits.  Indeed,

Florida law, which awards lost profits that "can be established with reasonable

certainty," recognizes the before-and-after methodology as a valid way to establish

the amount of lost profits.  *Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 585 F.

Supp. 3d 1326, 1332 (M.D. Fla. 2022) (quoting *Devon Medical, Inc. v. Ryvared*

---

[7] Under Florida law (just like under Delaware law), the "before and after theory
compares a plaintiff's profits recorded prior to the breach [] with those after the
breach or anticipated profits." *Architectural Ingenieria Siglo Xxi, LLC v. Dominican
Republic*, No. 20-14058, 2023 U.S. App. LEXIS 34430, at *35 (11th Cir. Dec. 28,
2023).  In other cases, this Court heard challenges to expert reports that used the
before-and-after method to measure lost profits and held that "under Florida law, the
method [] is reliable" and that "any criticisms of this method are properly dealt with
on cross-examination and are not grounds for excluding the expert's testimony."
*Britt Green Trucking, Inc. v. FedEx Nat'l, LTL Inc.,* No. 8:09-cv-445-T-33TBM,
2014 U.S. Dist. LEXIS 85749, at *14 (M.D. Fla. June 24, 2014); *B-K Cypress Log
Homes Inc. v. Auto-Owners Ins. Co.,* No. 1:09-cv-211-GRJ, 2012 U.S. Dist. LEXIS
73773, at *14 (N.D. Fla. May 25, 2012) (rejecting motion to exclude expert report
that applied the "well known 'before and after' method for measuring lost profits"
and finding it is "within the province of the jury to consider and weigh" the evidence
and criticism of the method "by way of cross-examination").  Moreover, this Court
applied Florida law to hold that lost profits damages are available in breach of
contract cases "if the evidence show[s] the extent of the damages as a matter of just
and reasonable inference, although the result be only approximate." *Moon v. Med.
Tech. Assocs.*, No. 8: 13-cv-02782-EAK-EAJ, 2015 U.S. Dist. LEXIS 32914, at *5
(M.D. Fla. Mar. 17, 2015) (quotation omitted).

*Medical Inc.*, 60 So. 3d 1125, 1128 (Fla. 4th DCA 2011)).  In fact, the before-and-after method is among "the most common and 'generally accepted' methods of proving lost profits" under Florida law.  *Deluna Oyster Co., Inc. v. Skanska USA Civ. Se., Inc.*, No. 2020CA001679, 2023 Fla. Cir. LEXIS 2997, at *4 (1st Fla. Cir. Dec. 28, 2023).  Likewise, the Eleventh Circuit Court of Appeals recognizes there "are 'two generally recognized methods of proving lost profits" under Florida law, which include "the before and after theory[.]'" *Architectural Ingenieria Siglo Xxi, LLC*, 2023 U.S. App. LEXIS 34430, at *34 (quoting *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1538 (11th Cir. 1985)).

Here, the Court's consideration of NuVasive's lost profits under Florida law should mirror its analysis under Delaware law.  The law of both states recognize the before-and-after method as a reliable, well-known, and generally accepted methodology of determining lost profits, and Decker's application of this method is sound under the laws of each state.  To that end, under Florida law, the Court should award NuVasive $13,727,779.00 for its lost profits pursuant to the default judgements entered on: Hawley's and Miller's breaches of their Compliance Agreements with Absolute Medical (Count IV); all Defendants' violations of the FDUTPA (Count VIII); and Soufleris for his tortious interference with NuVasive's business relationships (Count IX).

As to Count IV, the Court should adopt Decker's opinions and apportion the lost profits: $12,069,765.00 against Hawley; and $1,658,014.00 against Miller. (Decker Rpt. 11, 22).  Under Count VIII, all Defendants should be held jointly and severally liable for the same lost profits through their collective violations of the FDUTPA, as this Court has held that "[w]here a party brings a FDUTPA claim against a corporate competitor, as here, the aggrieved party may seek past lost profits damages under FDUTPA." *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274-VMC-TGW, 2022 U.S. Dist. LEXIS 142861, *54 (M.D. Fla. Aug. 10, 2022) (collecting authorities and noting "a recent consensus forming in the Middle District of Florida, holding that businesses may recover past lost profits under FDUTPA"); *Tymar Distribution LLC v. Mitchell Grp. United States, LLC*, 558 F. Supp. 3d 1275, 1283, 1286 (S.D. Fla. 2021) (agreeing that "the weight of Florida law holds past lost profits recoverable under [the] FDUTPA[,]" and "holding a corporate-competitor plaintiff may seek lost profits damages under the FDUTPA."). Finally, the Court should hold Soufleris liable for NuVasive's lost profits as a result of his tortious interference of its business relationships under Count IX.[8]  Moreover,

---

[8] Florida law recognizes lost profits as an appropriate remedy for tortious interference. *Wilco Trading LLC v. Shabat*, No. 8:20-cv-579-TPB-JSS, 2021 U.S. Dist. LEXIS 60399, at **24-25 (M.D. Fla. Mar. 8, 2021) ("In a tort action under Florida law, such as one for tortious interference [], lost profits can be recoverable as a proper element of damages if the loss is proved with a reasonable degree of certainty."); *Hush Little Baby, LLC v. Chapman*, No. 8:13-cv-2027-T-17AEP, 2016 U.S. Dist. LEXIS 91508, at **7-8 (M.D. Fla. June 28, 2016) (awarding "damages

the Court should hold Absolute Medical and Absolute Medical Systems jointly and severally liable with Soufleris for these lost profits pursuant to its the rulings piercing the corporate veils of these entities and rendering them (and Soufleris) liable for each other's debts.

## II.    NUVASIVE IS ENTITLED TO THE IMPOSITION OF A CONSTRUCTIVE TRUST ON HAWLEY'S AND MILLER'S EARNINGS.

Next, Florida law, which governs Hawley's and Miller's ICAs, allows NuVasive to seek equitable remedies for their violations of those agreements, including the imposition of a constructive trust on their earnings and disgorgement. *Apt. Inv. & Mgmt. Co. v. Flamingo/South Beach 1 Condo. Ass'n*, 84 So. 3d 1090, 1093 n.3 (Fla. 3d DCA 2012) ("A constructive trust is an equitable remedy invoked to avoid an unjust enrichment."); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 698 (Fla. 3d DCA 2018) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment.") (quoting *S.E.C. v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014)).  Sections 4.1 and 5.8 of Hawley's and Miller's 2017 ICAs (like their 2014 through 2016 ICAs) expressly provide that any improperly paid compensation may be placed in a constructive trust for NuVasive's

---

for the lost profits [plaintiff] suffered as a result of [fiduciary duty] breach and tortious interference" with "a business relationship under Florida law."), *as adopted*, *Hush Little Baby, LLC v. Chapman*, No. 8:13-CV-2027-T-17AEP, 2016 U.S. Dist. LEXIS 91719 (M.D. Fla. July 14, 2016).

benefit. (Docs. 260-10 and 260-11 at 10). Therefore, this Court should impose a constructive trust on the compensation that Hawley and Miller earned from Alphatec[9] between December 2017 and December 2018 and disgorge these ill-gotten gains for NuVasive's benefit.

The Court "may disgorge a defendant's profits by imposing a constructive trust, an equitable remedy" where, as here, "a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty." *Ciappa Constr., Inc. v. Innovative Prop. Res., LLC*, C.A. No. 05L-07-035, 2007 Del. Super. LEXIS 86, at *3 (Del. Super. Ct. Mar. 2, 2007) (quotation omitted). A damages award for NuVasive's lost profits is designed to compensate it for lost sales during the terms of the restrictive covenants and is a legal remedy granted separately and distinctly from any equitable remedies.[10] Constructive trust and disgorgement are equitable remedies that may be imposed independently from the legal remedy of lost profits damages. *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2016 U.S. Dist.

---

[9] NuVasive is entitled to the commissions Hawley and Miller earned from all competitive companies following their violations of the non-compete agreements contained in their respective ICAs, but NuVasive only possesses information related to the commissions they earned from Alphatec. (Ex. 1 ¶20).

[10] *Meth Lab Cleanup, LLC v. Spaulding Decon, Decon*, No. 8:14-cv-3129-T-30TBM, 2016 U.S. Dist. LEXIS 198808, at *8 (M.D. Fla. Feb. 6, 2016) (reasoning that "if the offending conduct causes the non-breaching party to lose profits, the defendant can be required to compensate the plaintiff for the lost profits.") (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1494 (11th Cir. 1983)).

LEXIS 52263, at *17 (M.D. Fla. Apr. 19, 2016) ("A constructive trust is an equitable

remedy designed to prevent the unjust enrichment of culpable parties.")

(quoting *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255,

1262 (M.D. Fla. 2013); *Swope Rodante, P.A. v. Harmon*, 85 So. 3d 508, 511 (Fla.

Dist. Ct. App. 2012) ("A constructive trust . . . is not a traditional cause of action; it

is more accurately defined as an equitable remedy") (quoting *Collinson v. Miller*,

903 So. 2d 221, 228 (Fla. 2d DCA 2005)); *Provence v. Palm Beach Taverns*, 676

So. 2d 1022, 1025 (Fla. 4th DCA 1996) (noting that "a constructive trust is a

remedial device with dual objectives: to restore property to the rightful owner and

to prevent unjust enrichment.").

Due to their differing objectives, Florida law recognizes that equitable

remedies, including constructive trust and disgorgement, may be imposed in addition

to – and not in lieu of – legal remedies such as lost profits damages. *FTC v. Leshin*,

719 F.3d 1227, 1232 (11th Cir. 2013) (noting that, in appropriate contexts, courts

"regularly grant both equitable and legal relief"); *Little v. White Diamond Int'l*, No.

10-60109-CIV-MARTINEZ-BROWN, 2010 U.S. Dist. LEXIS 163131, at *10 (S.D.

Fla. Apr. 27, 2010) (denying motion to dismiss in an action for lost profits damages

and constructive trust for breach of contract); *see also Hellmich v. Mastiff Constr.,*

*LLC*, No. SACV14-01354 DOC-KES, 2016 U.S. Dist. LEXIS 197722, at *3-4 (C.D.

Cal. Jan. 25, 2016) (awarding lost and future profits damages and constructive

trust);; *Agilent Techs.*, 2010 Del. Ch. LEXIS 34, at **132-133 (reserving right to impose a constructive trust over disputed patents in addition to awarding damages for lost profits, unjust enrichment, and interest).

Between December 2017 and December 2018, Alphatec paid Hawley and Miller no less than $548,882.00 and $162,500.00, respectively, in salary and commissions. (Ex. 1 ¶20, Decker Rpt. 24-25). These payments are unrelated to NuVasive's lost profits during the restrictive covenant terms. *Duty Free World*, 253 So. 3d at 698 ("The equitable remedy of disgorgement is measured by the defendant's ill-gotten profits or gains rather than the plaintiff's losses"). Therefore, an order imposing constructive trust and disgorgement of Hawley's and Miller's compensation from Alphatec would not duplicate the separate and distinct relief provided by an award for NuVasive's lost profits. *Leshin*, 719 F.3d at 1232 (finding the district court had "the power to grant both the equitable remedy and the legal one so long as it did not permit double recovery"); *see also Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-24681-Civ-Scola, 2023 U.S. Dist. LEXIS 76539, at *36 (S.D. Fla. May 2, 2023); *Choice Hotels Int'l, Inc. v. Key Hotels of Atmore II*, No. 16-452-CG-B, 2017 U.S. Dist. LEXIS 222711, at *8 (S.D. Ala. Aug. 18, 2017). Accordingly, NuVasive respectfully requests that this Court impose a constructive trust and order a disgorgement of Hawley's and Miller's ill-gotten gains in the amount of $548,882.00 from Hawley and $162,500.00 from Miller.

### III.    NUVASIVE IS ENTITLED TO PRE- AND POST-JUDGMENT INTEREST.

It is well-established that federal law allows courts to impose prejudgment interest when the substantive law governing the causes of action provides for such an award.  *Spedag Ams., Inc. v. Petters Hosp. & Entm't Grp. LLC*, No. 07-80576-CIV-HURLEY, 2008 U.S. Dist. LEXIS 62911, at *22 (S.D. Fla. Aug. 18, 2008) ("As a general rule, assessment of prejudgment interest is an equitable remedy which rests in the sound discretion of the court.") (citing *Blasland, Bouck & Lee, Inc. v City of North Miami*, 283 F. 3d 1286 (11th Cir. 2002)).  In diversity actions, the eligibility and rate for "pre-judgment interest is determined using the state law that applies." *Tropical Bees, LLC v. Barka Grp., LLC*, No. 2:16-cv-672-FtM-38MRM, 2017 U.S. Dist. LEXIS 222537, at *6 (M.D. Fla. Apr. 22, 2017); *United Funding, Inc. v. Boschert*, No. 6:09-cv-1839- Orl-28GJK, 2011 U.S. Dist. LEXIS 140220, at *8 (M.D. Fla. Nov. 14, 2011) ("Because the basis of this Court's jurisdiction is predicated on diversity [], Florida law governs the issue of prejudgment interest."); *see also Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989).  Where a contract contains a choice of law provision, the court in the forum state is obligated to determine which state laws apply.

Here, Florida is the forum state.  Under its laws, courts award prejudgment interest as an element of damages to fully compensate plaintiffs for the value of their losses and, "[b]ecause prejudgment interest comprises a portion of a plaintiff's

recovery," Florida treats it as "a substantive right" and any award of prejudgment interest as "a substantive remedy." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 212 F. Supp. 3d 1232, 1240 (M.D. Fla. 2016). Therefore, the Sales Agreement's Delaware choice of law provision – which applies to all substantive issues and questions – governs NuVasive's request for prejudgment interest on any damages it receives.[11] *Blitz*, 212 F. Supp. 3d at 1240 (in diversity action, engaging in Florida conflict of laws analysis and applying Illinois law to plaintiff's request for prejudgment interest pursuant to contractual choice of law provision); *Torpy v. Unum Life Ins. Co. of Am.*, No. 6:16-cv-410-Orl-22DCI, 2017 U.S. Dist. LEXIS 216264, at *17 (M.D. Fla. Oct. 18, 2017) (same but applying New Mexico law).

Delaware law "awards pre-judgment interest as a matter of right." *Ahmed Al Balooshi v. GVP Glob. Corp.*, No. N19C-10-215 CEB, 2022 Del. Super. LEXIS 80, at *30 (Del. Super. Ct. Feb. 25, 2022). Under Delaware law, "[p]rejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011). "Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve

---

[11] Neither Defendants nor their damages expert object to computing prejudgment interest through Delaware's statutory scheme for doing so.

discount rate including any surcharge as of the time from which interest is due[.]"  6

*Del. C.* § 2301(a); *Level 4 Yoga, LLC v. CorePower Yoga, LLC*, No. 2020-0249-

JRS, 2022 Del. Ch. LEXIS 49, at *68 (Del. Ch. Mar. 1, 2022) (awarding breach of

contract damages and prejudgment interest at the statutory rate).[12]

In contract actions, such as the one at bar, the computation of prejudgment

interest starts from the date of the breach.  *Ahmed Al Balooshi*, 2022 Del. Super.

LEXIS 80, at *30.  Here, the evidence establishes December 1, 2017, as the date

Absolute Medical first violated the Sales Agreement, as that is the date Dr. Sawin

first used competitive products that Absolute Medical/Absolute Medical Systems

(through Hawley) provided to him.  (Doc. 290 at 7-8; Decker Rpt. 13, 23–24).  As

detailed in the Decker Report and supplemented by her Declaration, Decker

calculated prejudgment interest on NuVasive's lost profits from the date of Absolute

Medical's breach of the Sales Agreement, December 1, 2017, through June 7, 2024.

(Ex. 1 ¶¶5, 21, Decker Rpt. 23-24).  Decker explained that, should the Court find

that prejudgment interest is properly calculated under Delaware law, prejudgment

interest totals $4,102,653.00 ($3,599,803.00 on accounts served by Hawley and

$502,850.00 on accounts served by Miller) as of the date of her Declaration, based

on Delaware's daily statutory rates.  (Ex. 1 ¶21, Decker Rpt. 23-24).  For each

---

[12] NuVasive notes that the Delaware statutory rate is 10.5%, which reflects the 5%
statutory 'kicker' added to the Discount Rate of 5.5% set by the Federal Reserve as
of June 2024. 6 *Del. C.* § 2301(a).

relevant year, Decker utilized a simple interest calculation and the applicable Delaware statutory rate adjusted for the number of days in the period to calculate daily interest accrued on the lost profits principal amounts attributable to each doctor. (Ex. 1 ¶21, Decker Rpt. 23-34, Exhibit D-26-D37). Further, under Delaware law, prejudgment interest continues to accrue at a rate of $2,538.70 per day until entry of final judgment. (Ex. 1 ¶21, Decker Rpt. 24).

Decker's lost profits and prejudgment interest calculations find substantial support in Delaware law, including from *Abbvie*, where the court delved into the parties' dispute over which values, time periods, and other inputs should be used in a before-and-after lost profits analysis, the appropriate "benchmark period" to calibrate the plaintiff's pre-breach market share, and the plaintiff's prejudgment interest estimates. *Abbvie*, 2023 Del. Ch. LEXIS 360, at **9-31. Ultimately, the Delaware Court of Chancery held the plaintiff offered substantial evidence of its damages such that it was "entitled to expectation damages as well as accompanying pre- and post-judgment interest," and the court directed the parties to "submit an adjusted damages calculation" using their before-and-after analyses and the inputs the court deemed to be supported by the evidence. *Id*. at **13-14, 41.

Here, NuVasive has proffered substantial evidence to support its lost profits damages calculation and its calculation of prejudgment interest. Based on this evidence, as interpreted under Delaware law, NuVasive respectfully requests that

this Court find that NuVasive has established its damages and is entitled to no less than $4,102,653.00 in prejudgment interest as of June 7, 2024 under Counts II and III, with an additional $2,538.70 for each day that passes that date. (Ex. 1 ¶21).

NuVasive is also entitled to prejudgment interest on any lost profits awarded under Florida law pursuant to Counts IV and VIII because in Florida, "a plaintiff is entitled to prejudgment interest as a matter of law." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (quoting *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)). Florida Courts award prejudgment interest for damages granted under FDUTPA and breach of contract claims. *Id. as adopted*, *Gov't Emps. Ins. Co. v. Gomez-Cortes*, No. 20-21558-CIV-WILLIAMS, 2022 U.S. Dist. LEXIS 60322 (S.D. Fla. Mar. 31, 2022); *Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753 (11th Cir. 2017). Therefore, for any lost profits the Court awards under Counts IV and/or VIII, the Court should apply Florida law and grant NuVasive prejudgment interest in the amount of $3,483,084.00. (Ex. 1 ¶21).[13]

## IV.  NUVASIVE IS ENTITLED TO ITS ATTORNEYS' FEES AND LITIGATION EXPENSES.

Section 5.09(e) of the Sales Agreement contains Absolute Medical's promise to subject its sales representatives to ICAs that contain the same restrictive covenants

---

[13] To be clear, NuVasive is not entitled to double recovery of prejudgment interest (or any other category of damages sought via this Renewed Memorandum of Damages). The differing prejudgment interest calculations relate to the apportionment of NuVasive's damages amongst the various Defendants.

to which it is subjected.  (Doc. 260-3, at 131-159).  In the event one or more of the

sales representatives violate their covenants, this section obligates Absolute Medical

to "vigorously enforce" those obligations or, if it does not do so, "pay for NuVasive

to enforce the obligations.  (Id. at 137-138).  Such a fee shifting provision passes

muster under Delaware law, which hold that:

> [u]nder the American Rule and Delaware law, litigants are normally
> responsible for paying their own litigation costs. An exception to this
> rule is found in contract litigation that involves a fee shifting provision.
> In these cases, a trial judge may award the prevailing party all of the
> costs it incurred during litigation.

*Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007) (citations omitted).

Under this precedent, Delaware courts routinely award attorneys' fees and costs to

the prevailing party in contract actions where, as here, the underlying contract

contains a fee-shifting provision.  *Energy Transfer, LP v. Williams Cos.*, No. 391,

2022, 2023 Del. LEXIS 325, at *52 (Del. Oct. 10, 2023) (affirming the Chancery

Court's finding that the prevailing party's fees were not unreasonable and a

"$85,440,716.36 million [sic] attorney's fees award (including prejudgment interest

compounded quarterly) under a contractual fee-shifting provision"); *Optical Air

Data Sys., LLC v. L-3 Communs. Corp.*, No. : N17C-05-619 EMD CCLD, 2021 Del.

Super. LEXIS 113, at *6 (Del. Super. Ct. Feb. 8, 2021) (awarding attorneys' fees

and expenses to the "prevailing party on all contractual claims" pursuant to the

contract's fee-shifting provision).

Over the week of June 3, 2024, counsel for NuVasive and Defendants conferred in good faith multiple times regarding NuVasive's attorneys' fees and expenses. (Declaration of Christopher W. Cardwell, June 7, 2024, attached as **Exhibit 3** ¶3). While the parties did not reach an agreement on NuVasive's entitlement to recover the attorneys' fees and costs it incurred in enforcing Hawley's and Miller's ICAs or a proper apportionment of such fees (should they be awarded) amongst the Defendants, they agreed that $1,300.000.00 is a reasonable amount of fees and expenses for these tasks. (Id. ¶¶3-4). In other words, the parties agree that if the Court awards NuVasive fees and expenses under the Sales Agreement's fee-shifting provision, the amount of those fees and expenses should be $1,300,000.00. (Id.) That said, there is no question that, under Delaware law (which governs the Sales Agreement), NuVasive is entitled to recover the fees and expenses it incurred in enforcing the ICAs.

In sum, there is no reason for the Court not to award NuVasive the agreed upon amount of fees and costs. As there is no question that Absolute Medical breached its obligation to enforce the ICAs and that NuVasive incurred fees and expenses in doing so, NuVasive respectfully requests that this Court find NuVasive is entitled to recover the agreed upon $1,300,000.00 in fees and costs from Absolute Medical (who incurred the obligation to pay for NuVasive to enforce the ICAs after

it failed to do so), as well as Absolute Medical Systems and Soufleris (both of whom the Court ruled to be jointly and severally liable for Absolute Medical's debts).

## V.    **DEFENDANTS ARE NOT ENTITLED TO A RESPONSE.**

Although Defendants, as defaulting parties, are entitled to "notice and an opportunity to be heard as to the amount of unliquidated damages[,]" Florida law does not impose specific requirements as to the manner of Defendants' opportunity to be heard. *Talel Corp. v. Shimonovitch*, 84 So. 3d 1192, 1194 (Fla. Dist. Ct. App. 2012). "At a minimum, due process requires that [Defendants] be given sufficient notice to prepare for a hearing." *1445 Wash. Ltd. P'ship v. Lemontang*, 19 So. 3d 1079, 1081 (Fla. 3d DCA 2009). However, the Court is under no mandate to enable Defendants to continue re-litigating the facts in this case via responsive briefing.[14] This is especially the case given Defendants' spoliation of evidence that NuVasive could have used to further support its damages analysis and this Court's well-founded doubts that Defendants "would *now* walk into the courtroom[], swear an

---

[14] Indeed, this Court found that, "[f]rom the inception of this case, Defendants have lied and cheated—and at times even perjured themselves under oath—in an attempt to prevail." (Doc. 395 at 8). Summarizing this misconduct, the Court explained that "Defendants demonstrably lied in written discovery, refused to be forthright in answering questions under oath at the preliminary injunction hearing, failed to preserve and intentionally spoliated vast amounts of ESI evidence, conspired to commit fraud under oath during arbitration testimony, violated Court Orders to timely turn over discovery, and submitted a false affidavit and misleading briefing in an attempt to prevent the Court from being able to remedy their lies and deceit. All of this misconduct caused substantial prejudice to Plaintiff." (Id. at 14).

oath to tell the truth, and then miraculously transform their character from that which they have demonstrated over the past six years and tell the truth." (Doc. 395 at 14). Because of Defendants' recidivist spoliation and "untruthful[ness] with the Court," the Court should, if due process dictates, allow a damages hearing, but deny any attempt by Defendants to respond to this Memorandum. (Id. at 25).

## VI.   <u>CONCLUSION</u>

In sum, it is well past time for this litigation to end. Defendants' untruthful testimony and other bad acts adversely affected this Court's ability to enter the preliminary injunction NuVasive requested at the onset of this litigation that, if granted, would have given NuVasive the opportunity to better mitigate the damages it incurred. Then, hoping to prejudice NuVasive's ability to establish their liability and it damages, Defendants spoliated evidence relevant to those topics. It is now time for Defendants to bear the consequences of their bad acts and compensate NuVasive for the damages they caused it to incur. Accordingly, NuVasive respectfully requests that the Court award it:

- $13,727,779.00 in lost profits damages under:

  - Count II jointly and severally against Absolute Medical and Soufleris;
  - Count III jointly and severally against Absolute Medical Systems and Soufleris;
  - Count IV jointly and severally against Hawley and Miller;
  - Count VI against Soufleris;
  - Count VII against Soufleris;
  - Count VIII jointly and severally against all Defendants;

- o Count IX against Soufleris;[15]

- Constructive trust against Hawley in the amount of $548,882.00 (Count IV);

- Constructive trust against Miller in the amount of $162,500.00 (Count IV);

- Prejudgment interest against Absolute Medical, Absolute Medical Systems, and Soufleris in the amount of $4,102,653.00, under Delaware law (Counts II and III);

- Prejudgment interest jointly and severally against all Defendants in the amount of $3,483,084.00, under Florida law (Counts IV, and VIII); and

- Attorneys' fees and litigation expenses jointly and severally against Absolute Medical, Absolute Medical Systems, and Soufleris in the amount of $1,300,000.00.

---

[15] If the Court awards NuVasive its lost profits pursuant to FDUTPA (Count VIII), liability for such damages should be imposed jointly and severally against all Defendants under the other Florida law claims (Counts IV and IX). *Democratic Republic of the Congo v. Air Capital Grp., LLC*, 614 F. App'x 460 (11th Cir. 2015) (affirming order "hold[ing] defendants jointly and severally liable on plaintiff's fraud and FDUTPA claims"); ; *Gov't Emps. Ins. Co. v. A & C Med. Ctr. Servs. Corp.*, No. 1:18-cv-24198-JEM, Doc. 181, (S.D. Fla. May 26, 2020) (granting default judgment and imposing joint and several liability on the fraud, unjust enrichment, and FDUTPA claims because the defendants acted together).

Dated: June 7, 2024                    Respectfully submitted,

                                       /s/ *Christopher W. Cardwell*
                                       R. Craig Mayfield (Fla. Bar No. 0429643)
                                       Cmayfield@bradley.com
                                       Diana N. Evans (Fla. Bar No. 98945)
                                       Dnevans@bradley.com
                                       Bradley Arant Boult Cummings LLP
                                       100 North Tampa Street, Suite 2200
                                       Tampa, Florida 33602
                                       Tel: (813) 559-5500
                                       Fax: (813) 229-5946

                                       Christopher W. Cardwell, Esq.
                                       ccardwell@gsrm.com
                                       Mary Taylor Gallagher, Esq.
                                       mtgallagher@gsrm.com
                                       M. Thomas McFarland, Esq.
                                       tmcfarland@gsrm.com
                                       GULLETT, SANFORD, ROBINSON &
                                       MARTIN, PLLC
                                       150 Third Avenue South, Suite 1700
                                       Nashville, TN 37201
                                       Tel: (615) 244-4994
                                       Fax: (615) 256-6339

                                       *Attorneys for NuVasive, Inc.*

4853-4481-6320, v. 10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system. The party or parties served are as follows:

Busch, Mills & Slomka, LLP

Bryan E. Busch
Email: bb@buschmills.com
3000 Heritage Walk, Suite 304
Milton, GA 30004

Christopher Y. Mills
Email: cm@buschmills.com
319 Clematis Street, Suite 109
West Palm Beach, FL 33401

*Attorneys for Defendants*

/s/ *Christopher W. Cardwell*
Christopher W. Cardwell, Esq.